1   ROB BONTA
    Attorney General of California
2   JENNIFER G. PERKELL
    Supervising Deputy Attorney General
3   JACQUELINE YOUNG, SBN 306094
    KATHERINE J. GRAINGER SBN 333901
4   Deputy Attorneys General
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3870
6     Fax:  (415) 703-5480
      E-mail:  Katherine.Grainger@doj.ca.gov
7   *Attorneys for Defendant Erica Pan, in her official
    capacity as the Director of the California
8   Department of Public Health*

9               IN THE UNITED STATES DISTRICT COURT

10             FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14  **JANE DOE, on her own behalf and          2:25-cv-04659-AB-JC
    on behalf of Child 1; WE THE
15  PATRIOTS USA, INC.,**                       **DEFENDANT CALIFORNIA
                                                DEPARTMENT OF PUBLIC
16                          Plaintiffs,         HEALTH'S REQUEST FOR
                                                JUDICIAL NOTICE IN SUPPORT
17          **v.**                              OF MOTION TO STAY ACTION**

18  **VENTURA UNIFIED SCHOOL                    Date:       July 25, 2025
    DISTRICT; ANTONIO CASTRO, in                Time:       10:00 a.m.
19  his official capacity only; ERIK            Courtroom:  7B
    NASARENKO, in his official capacity         Judge:      The Honorable Andre
20  only; SARA BRUCKER, in her                              Birotte, Jr.
    official capacity only; TONY                Action Filed: 5/22/2025
21  THURMOND, in his official capacity
    only; ERICA PAN, in her official
22  capacity only,**

23                          Defendants.

24

25          Pursuant to Federal Rule of Evidence 201, Defendant Erica Pan, in her official

26  capacity as Director of the California Department of Public Health (the

27  Department), hereby requests that the Court take judicial notice of the following

28

                                            1

documents in support of the Department's Motion to Stay the Action.  These documents are relevant to establish that Plaintiffs' claims are identical or substantially similar to the claims already brought by the plaintiffs in two other federal cases: the United States District Court, Southern District of California case of *Royce v. Pan* (no. 3:23-CV-02012-H-BLM), and the United States District Court, Eastern District of California case of *Doescher v. Pan* (no. 2:23-CV-02995-KJM-JDP).

### MATTERS TO BE NOTICED

1.     The Assembly Committee on Health analysis for California Senate Bill 277 (2015), dated June 9, 2015, a true and correct copy of which is attached hereto as Exhibit 1.

2.     California Senate Bill 276 (2019), modifying the medical exemption to compulsory school vaccination requirements, a true and correct copy of which is attached hereto as Exhibit 2.

3.     California Stats. 1880 chapter 24, establishing compulsory smallpox vaccination for school children, a true and correct copy of which is attached hereto as Exhibit 3.

4.     California Stats. 1961, chapter 837, establishing compulsory polio vaccination for school children (with medical and philosophical exemptions), a true and correct copy of which is attached hereto as Exhibit 4.

5.     California Senate Bill 277 (2015), modifying compulsory school vaccination requirements and repealing the personal beliefs exemption, a true and correct copy of which is attached hereto as Exhibit 5.

6.     The Senate Committee on Health Analysis of SB 277, dated April 7, 2015, a true and correct copy of which is attached hereto as Exhibit 6.

7.     The Centers for Disease Control and Prevention, Morbidity and Mortality Weekly Report, Measles Outbreak – California, December 2014–February 2015, a true and correct copy of which is attached hereto as Exhibit 7.

8.    The California Department of Public Health's 2019–2020 7th Grade Immunization Assessment, a true and correct copy of which is attached hereto as Exhibit 8.

9.    The California Department of Public Health's 2019–2020 Kindergarten Immunization Assessment, a true and correct copy of which is attached hereto as Exhibit 9.

10.    The Assembly Committee on Health analysis, dated June 20, 2019, for Senate Bill No. 276 related to medical exemptions from vaccination, a true and correct copy of which is attached hereto as Exhibit 10.

11.    The California Department of Public Health's Kindergarten Immunization Assessment for 2020–2021 and 2021–2022, and First Grade Immunization Assessment for 2021–2022, a true and correct copy of which is attached hereto as Exhibit 11.

12.    The California Department of Public Health's 2020–2021 and 2021–2022 Seventh Grade Immunization Assessment, a true and correct copy of which is attached hereto as Exhibit 12.

13.    The initial complaint filed in United States District Court, Southern District of California case *Royce v. Bonta* (no. 3:23-CV-02012-H-BLM) on October 31, 2023, a true and correct copy of which is attached hereto as Exhibit 13.

14.    The third amended complaint filed in United States District Court, Southern District of California case *Royce v. Aragón* (no. 3:23-CV-02012-H-BLM) on December 20, 2024, a true and correct copy of which is attached hereto as Exhibit 14.

15.    The Notice of Appeal filed in United States District Court, Southern District of California case *Royce v. Aragón* (no. 3:23-CV-02012-H-BLM) on April 16, 2025, a true and correct copy of which is attached hereto as Exhibit 15.

16.    The initial complaint filed in United States District Court, Eastern District of California case *Doescher v. Aragón* (no. 2:23-CV-02995-KJM-JDP) on

December 22, 2023, a true and correct copy of which is attached hereto as Exhibit 16.

17.    The second amended complaint filed in United States District Court, Eastern District of California case *Doescher v. Aragón* (no. 2:23-CV-02995-KJM-JDP) on December 9, 2024, a true and correct copy of which is attached hereto as Exhibit 17.

18.    Defendant Tomás Aragón's memorandum of points and authorities in support of his motion to dismiss the plaintiffs' second amended complaint filed in United States District Court, Eastern District of California case *Doescher v. Aragón* (no. 2:23-CV-02995-KJM-JDP) on January 27, 2025, a true and correct copy of which is attached hereto as Exhibit 18.

19.    An order issued by the district court in advance of a hearing on Defendant Aragón's motion to dismiss the second amended complaint in United States District Court, Eastern District of California case *Doescher v. Aragón* (no. 2:23-CV-02995-KJM-JDP) on March 12, 2025, a true and correct copy of which is attached hereto as Exhibit 19.

## LEGAL STANDARD AND ARGUMENT

Federal Rule of Evidence 201(b) establishes the criteria for judicially noticed facts: a judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Further, under Federal Rule of Evidence 901(b)(7), a public record or report from the public office where items of that nature are kept satisfies the requirement that admitted evidence be authenticated. Federal Rule of Evidence 902(5) likewise allows for the self-authentication of official publications issued by a public authority.

**I.    ACTS OF LEGISLATION AND LEGISLATIVE COMMITTEE REPORTS (EXHIBITS 1-6, 10)**

A court may take judicial notice of the legislative history of a piece of legislation, including, for instance, "prior versions of the bill, amendments, committee reports, and the written recommendations of the legislative counsel." *Est. of Graham v. Sotheby's Inc*., 860 F. Supp. 2d 1117, 1125-26 n.6 (C.D. Cal. 2012) (citing *Territory of Alaska v. Am. Can Co*., 358 U.S. 224, 226–27 (1959); Chaker v. Crogan, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005); *In re Reeves*, 35 Cal.4th 765, 777 n. 15 (2005)); *Zephyr v. Saxon Mortg. Servs., Inc*., 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (judicial notice of California legislative history documents that were readily available and whose authenticity was not challenged). The legislative committee reports (Exhibits 1, 6, 10) and California legislative acts (Exhibits 2-5) are all publicly available and their accuracy cannot be reasonably questioned. Moreover, the content of these documents is relevant background information in support of the Director's arguments that Plaintiffs' claims are identical or substantially similar to the claims brought by the plaintiffs in the *Doescher* and *Royce* cases.

**II.    REPORTS, RECORDS, AND GUIDANCE FROM GOVERNMENT AGENCIES (EXHIBITS 7-9, 11, 12)**

A court may also take judicial notice of records and reports of state administrative agencies, such as guidance and opinion letters. *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1243 (C.D. Cal. 2005) (noting it is "well established" that a court may take judicial notice of the reports of an administrative body, and granting request for judicial notice of an opinion letter and notice issued by California Department of Insurance); *see United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice proper for records and reports of government agencies). This includes information published on government websites. *City and County of San Francisco v. Garland*, 42 F.4th 1078, 1083 n. 3 (9th Cir. 2022) (judicial notice of a legal-notice document available on

government website); *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 852 n.3 (9th Cir. 2011) (Veterans Health Administration website for statistics on service), *opinion vacated on reh'g en banc*, 678 F.3d 1013 (9th Cir. 2012); *Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (judicial notice of, among other items, a report by and "a description of the price-control regime" on the U.S. Department of Health and Human Services' website).

The annual immunization-data reports published by the California Department of Public Health (Exhibits 8, 9, 11, 12), and the report published by the federal Centers for Disease Control and Prevention (Exhibit 7), are publicly available and their accuracy cannot be reasonably questioned. Moreover, the content of these documents, irrespective of the truth of analysis contained therein, is relevant to Defendants' arguments that Plaintiffs' claims are identical or substantially similar to the claims brought by the plaintiffs in the *Doescher* and *Royce* cases.

## III. COURT RECORDS AND FILES

Exhibits 13 through 19 are court records and files in the *Doescher* and *Royce* cases.  Court records and files are routinely subject to judicial notice. *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987) (judicial notice of "pleadings, orders and other papers on file in the underlying bankruptcy case"); *Schweitzer v. Scott*, 469 F. Supp. 1017, 1020 (C.D. Cal. 1979) ("[T]he Court is empowered to and does take judicial notice of court files and records".); *Rhodes v. Sailor*, No. CV 08-6419-DDP DTB, 2011 WL 3876937, at *5 (C.D. Cal. Aug. 31, 2011) (explaining "[j]udicial notice also may be taken of court records" and taking "judicial notice of the fact that certain arguments or allegations were made in those filings").  The court records in *Doescher* and *Royce* are relevant to the Department's argument that this case should be stayed as identical or substantially similar Free Exercise claims have already been considered and resolved on the merits in the trial court in both cases.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CONCLUSION

For the foregoing reasons, the Court should grant this request for judicial notice.

Dated:  June 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
JENNIFER G. PERKELL
Supervising Deputy Attorney General

/s/ Katherine J. Grainger

KATHERINE J. GRAINGER
Deputy Attorney General
*Attorneys for Defendant CDPH
Director Erica Pan*

SF2025801746

# EXHIBIT 1

Date of Hearing:  June 9, 2015

ASSEMBLY COMMITTEE ON HEALTH
Rob Bonta, Chair
SB 277 (Pan and Allen)  – As Amended May 7, 2015

**SENATE VOTE**:  25-11

**SUBJECT**:  Public health: vaccinations.

**SUMMARY:** Eliminates non-medical exemptions from the requirement that children receive vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school, or day care center.  Specifically, **this bill**:

1) Deletes the exemption based on personal beliefs from the existing immunization requirement for children in child care and public and private schools.  Deletes related law requiring a form to accompany a personal belief exemption (PBE).

2) Exempts students enrolled in home-based private schools or in an independent study program from the existing immunization requirement.

3) Permits the California Department of Public Health (DPH) to add diseases to the immunization requirements only if exemptions are allowed for both medical reasons and personal beliefs.

**EXISTING LAW**:

1) Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against diphtheria, *Haemophilus influenzae* type b (Hib meningitis), measles, mumps, pertussis (whooping cough), poliomyelitis, rubella (German measles), tetanus, hepatitis B, and varicella (chickenpox).

2) Permits DPH to add to this list any other disease deemed appropriate, taking into consideration the recommendations of the Centers for Disease Control and Prevention (CDC) Advisory Committee on Immunization Practices (ACIP) and the American Academy of Pediatrics Committee on Infectious Diseases.

3) Waives immunization requirements in 1) above, if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization.

4) Waives the above immunization requirements if the parent, guardian, or an emancipated minor, files a letter with the governing authority stating that the immunization is contrary to his or her beliefs.

5) Requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Requires the form to include:

    a) A signed attestation from the health care practitioner that indicates that the parent, guardian, or emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the specified diseases to the person and to the community. Requires the attestation to be signed not more than six months before the date when the person first becomes subject to the immunization requirement for which exemption is being sought.

    b) A written statement signed by the parent, guardian, or emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above. Requires the statement to be signed not more than six months before the date when the person first becomes subject to the immunization requirements as a condition of admittance.

6) Permits a local health officer to temporarily exclude from the school or institution a child for whom the requirement has been waived, whenever there is good cause to believe that he or she has been exposed to one of the specified communicable diseases, until the local health officer is satisfied that the child is no longer at risk of developing the disease.

**FISCAL EFFECT**: None.

**COMMENTS**:

1) **PURPOSE OF THIS BILL.** According to the author, in early 2015, California became the epicenter of a measles outbreak, which spread in large part because of communities with large numbers of unvaccinated people. According to the CDC, there have been more cases of measles in January 2015 than in any one month in the past 20 years. Between 2000 and 2012, the number of PBEs from vaccinations required for school entry that were filed rose by 337%. In 2000, the PBE rate for kindergartners entering California schools was under 1%. However, by 2013, that number rose to 3.15%. In certain geographic pockets of California, exemption rates are 21% or more, placing our communities at risk for the rapid spread of entirely preventable diseases, according to the author. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary to protect the public health of the community and prevent future outbreaks.

2) **BACKGROUND.** The diseases that vaccines prevent can be dangerous, or even deadly. According to the CDC, vaccines reduce the risk of infection by working with the body's natural defenses to help it safely develop immunity to disease. When bacteria or viruses invade the body, they attack and multiply, creating an infection. The immune system then has to fight the illness. Once it fights off the infection, the body is left with a supply of cells that help recognize and fight that disease in the future. Vaccines contain the same antigens or parts of antigens that cause diseases, but the antigens in vaccines are either killed or greatly weakened. This exposure to the antigens teaches the immune system to develop the same response as it does to the real infection so the body can recognize and fight the disease in the future.

Public health experts agree that vaccines represent one of the greatest achievements of science and medicine in the battle against disease. Vaccines are responsible for the control of many infectious diseases that were once common around the world, including polio, measles, diphtheria, pertussis, rubella, mumps, tetanus, and Hib meningitis. Vaccine helped to eradicate smallpox, one of the most devastating diseases in history. Over the years, vaccines have prevented countless cases of infectious diseases and saved literally millions of lives.

Vaccine-preventable diseases have a costly impact, resulting in doctor's visits, hospitalizations, and premature deaths. Sick children can also cause parents to lose time from work. CDC recommends routine vaccination to prevent 17 vaccine-preventable diseases that occur in infants, children, adolescents, or adults.

In the U.S., the high vaccination rate for routinely recommended immunizations for infant and childhood diseases has brought about dramatic declines in the incidence of polio, measles, mumps, rubella, *Haemophilus influenza* type b, hepatitis, and chickenpox. In the past decade, recommendations for annual influenza vaccination have been expanded to encompass all children six months to eighteen years of age, and new vaccines have been added to the immunization schedule to help protect infants from rotavirus disease and adolescents from meningitis. As a result of the advances in developing vaccines and including them as standard of care, most diseases that are preventable by vaccination are at record low levels in the U.S.

For years many of these diseases were thought to be ordinary childhood experiences and many older adults had these diseases as children. Nevertheless, they are serious deadly diseases for some. For example, measles in children has a mortality rate as high as about one in 500 among healthy children, higher if there are complicating health factors.

In the past couple of decades, controversy has arisen about vaccines and autism, the best number of injections to be administered during a single visit or over the course of the first years of life, and vaccine ingredients which has prompted parents, the media, policy makers, and others to raise concerns about the safety of recommended immunizations as well as the vaccination schedule. Despite their positive impact on health and well-being, vaccines have had a long history of arousing anxiety. The rapid growth of the Internet and social media has made it easier to find and disseminate immunization-related concerns and misperceptions. According to a 2011 study published in the journal *Health Affairs*, results indicate that although the overwhelming majority of parents surveyed intended to vaccinate their children fully, a majority of parents still had questions or concerns about vaccines.

3) **SCHOOL IMMUNIZATION REQUIREMENTS.** States enact laws or regulations that require children to receive certain vaccines before they enter childcare facilities and school, but with some exceptions, including medical, religious, and philosophical objections. School vaccination requirements are thought to serve an important public health function, but can also face resistance.

An article published in the 2001-02 *Kentucky Law Journal* reviewed historical and modern legal, political, philosophical, and social struggles surrounding vaccination requirements. The authors stated that though school vaccination has been an important component of public health practice for decades, it has had a controversial history in the U.S. and abroad. Historical and modern examples of the real, perceived, and potential harms of vaccination,

governmental abuses underlying its widespread practice and strongly held religious beliefs have led to fervent objections among parents and other persons who object to vaccines on legal, ethical, social, and epidemiological grounds. The article states that public health authorities argue that school vaccination requirements have led to a drastic decrease in the incidence of once common childhood diseases. Those who object to vaccines tend to view the consequences of mass vaccination on an individualistic basis, focusing on alleged or actual harms to children from vaccinations. As part of their research, the authors compared childhood immunization rates and rates of vaccine-preventable childhood diseases before and after the introduction of school vaccination requirements. The data suggest that school vaccination requirements have succeeded in increasing vaccination rates and reducing the incidence of childhood disease

Current state law mandates immunization of school-aged children against 10 specific diseases. Each of the 10 diseases was added to California code through legislative action, after careful consideration of the public health risks of these diseases, cost to the state and health system, communicability, and rates of transmission. The Legislature has a long history of thoughtful consideration for which diseases pose the most serious health risks to the public. Following is a brief summary of activity related to mandated immunizations for children enrolling in school:

> 1889: School districts first allowed to exclude a student who is not vaccinated against smallpox, and schools were required to maintain a list of unvaccinated children (SB 92, Briceland, Chapter 24).
> 1961: Polio immunization added as a requirement, as well as the first appearance of a philosophical exemption (AB 1940, DeLotto and Rumford, Chapter 837).
> 1977: Diphtheria, pertussis, tetanus, and measles were added to immunization requirements for children entering school (SB 942, Rains, Chapter 1176).
> 1979: Mumps and rubella were added to the list (AB 805, Mangers, Chapter 435).
> 1992: *Haemophilus influenzae* type b was added (AB 2798, Floyd, Chapter 1300, and AB 2294, Alpert, Chapter 1320).
> 1995 and 1997: Hepatitis B was added (AB 1194, Takasugi, Chapter 291, Statutes of 1995 and AB 381, Takasugi, Chapter 882, Statutes of 1997).
> 1999: The Legislature voted to add Hepatitis A to the list, but it was vetoed by Governor Davis (AB 1594, Florez).
> 1999: Varicella was added to the list (SB 741, Alpert, Chapter 747).
> 2007: The Legislature voted to add pneumococcus to the list, but it was vetoed by Governor Schwarzenegger (SB 533, Yee).
> 2010: Tetanus, diphtheria and pertussis (TDaP) booster was required for 7th graders (AB 354, Arambula, Chapter 434).

All of the diseases for which California requires school vaccinations are very serious conditions that pose very real health risks to children. Most of the diseases can be spread by contact with other infected children. Tetanus does not spread from student to student but because it is such a serious potentially fatal disease, and it is easily preventable by vaccine, the vaccination of children is required prior to enrollment in school.

4) **COMMUNITY IMMUNITY**. Herd immunity occurs when a significant proportion of the population (or the herd) has been vaccinated, and this provides protection for unprotected individuals. The larger the number of people who are vaccinated in a population, the lower

the likelihood that a susceptible (unvaccinated) person will physically come into contact with the infection. It is more difficult for diseases to spread between individuals if large numbers of people are already immune, and the chain of infection is broken. The reduction of herd immunity places unvaccinated persons at risk, including those who cannot receive vaccinations for medical reasons. Those who cannot receive vaccines include those with compromised immune systems, older adults, small children and babies, all depending on the vaccine.

There the protective effect of herd immunity wanes as large numbers of children do not receive some or all of the required vaccinations, resulting in the reemergence of vaccine preventable diseases in the U.S. Statewide statistics indicate that in 2014-15 school year, 90.4% of kindergartens received all required immunizations. The widespread reporting of statewide numbers, however, potentially mask a better understanding of more relevant data, such as town, city, or county vaccination rates. Because students are not interacting with every individual in the entire state, the local vaccination rate is more relevant to the discussion of community immunity.

The vaccination rate in various communities varies widely across the state. Those areas become more susceptible to an outbreak than the state's overall vaccination levels may suggest. These communities make it difficult to control the spread of disease and make us vulnerable to having the virus re-establish itself.

Studies find that when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease. An analysis by the *New York Times* found that more than a quarter of schools in California have measles-immunization rates below the 92-94% recommended by the CDC. Research shows that people with lower vaccine acceptance tend to group together in communities. A study recently published in the journal *Pediatrics* found that schools with high PBE rates are clustered in suburbs in the peripheral areas of California cities. The same analysis found that schools with low proportion of white students, or a high proportion of students receiving free or reduced lunch, were more likely to have high vaccination rates (less PBEs).

5) **CALIFORNIA MEASLES OUTBREAK**. The authors point to an outbreak of measles linked to Disneyland in in December 2014 as one of the reasons for the introduction of this bill. This outbreak led to 131 confirmed measles cases reported in California as part of this outbreak. The outbreak, now declared over by DPH, led to 19% of those infected requiring hospitalization. The outbreak likely started from a traveler who became infected overseas with measles, then visited the amusement park while infectious; however, no source was identified. Analysis by CDC scientists showed that the measles virus type in this outbreak (B3) was identical to the virus type that caused the large measles outbreak in the Philippines in 2014.

According to the CDC, measles is one of the first diseases to reappear when vaccination coverage rates fall. In 2014, there were over 600 cases reported to the CDC, the highest in many years. Between 2000 and 2007, the average number of cases was 63 per year, less than half the number of the Disney outbreak, which is one of five outbreaks so far this year reported by the CDC.

Of the confirmed cases, DPH reported:

- Forty-two cases visited Disneyland during December 17-20, 2014 where they are presumed to have been exposed to measles;
- Thirty-one are household or close contacts to a confirmed case;
- Fourteen were exposed in a community setting (e.g., emergency room) where a confirmed case was known to be present;
- Forty-four have unknown exposure source but are presumed to be linked to the outbreak based on a combination of descriptive epidemiology or strain type;
- Five cases are known to have a different genotype from the outbreak strain; and,
- Among measles cases for whom DPH has vaccination documentation, 57 were unvaccinated and 25 had 1 or more doses of measles, mumps, and rubella (MMR) vaccine. A number of those unvaccinated had a personal belief exemption and also include many infants too young to be vaccinated.

6) **NATIONAL CHILDHOOD VACCINE INJURY ACT.** During the mid-1970s, there was an increased focus on personal health and more people became concerned about vaccine safety. Several lawsuits were filed against vaccine manufacturers and healthcare providers by people who believed they had been injured by the TDaP vaccine. Damages were awarded despite the lack of scientific evidence to support vaccine injury claims. In 1976, a preemptive attempt to conduct a nationwide influenza vaccination campaign for the swine flu stoked peoples' fears. The predicted epidemic did not occur and there were some who argued this particular influenza vaccine resulted in serious side effects.

As a result, potential liability costs and vaccine prices soared, and several vaccine manufacturers halted production. A vaccine shortage resulted and public health officials became concerned about the return of epidemic disease.

To reduce liability and respond to public health concerns, Congress passed the National Childhood Vaccine Injury Act (NCVIA) in 1986. The NCVIA established the National Vaccine Program Office (NVPO) to coordinate immunization related activities among various federal agencies and requires health care providers who give vaccines to provide an information statement to the patient or guardian that contains a brief description of the disease as well as the risks and benefits of the vaccine. Additionally, the NCVIA requires health care providers to report certain adverse health events following vaccination to the Vaccine Adverse Event Reporting System (VAERS). The VAERS system remains an important source of information for the CDC and others to monitor the vaccine program, but the system allows self-reporting by any citizen or healthcare provider what they believe to be an adverse vaccine-related event, but the event numbers publicly available have not necessarily been medically verified or scientifically studied. The National Vaccine Injury Compensation Program (NVICP) was created to compensate those injured by vaccines on a "no fault" basis. The NVICP has been loudly criticized by some for inefficient operations, and for providing legal immunity to the pharmaceutical industry.

The NCVIA established a committee from the Institute of Medicine (IOM) to review the literature on vaccine reactions. This group concluded that there are limitations in our knowledge of the risks associated with vaccines. The group looked at 76 health problems to see if they were caused by vaccines. Of those, 50 (66%) had no or inadequate research to form a conclusion. The IOM identified several specific problems, such as a limited understanding of biological processes that underlie adverse events, incomplete and inconsistent information from individual reports, poorly constructed research studies (not enough people enrolled for the period of time), inadequate systems to track vaccine side effects, and few experimental studies were published in the medical literature. The CDC states that in the time since the publication of the IOM reports in the 1990s, significant progress has been made to monitor side effects and conduct research relevant to vaccine safety. In 2011 the IOM published *Adverse Effects of Vaccines: Evidence and Causality*, representing an extensive study of peer-reviewed vaccine related research to date. The IOM Committee reviewed eight vaccines given to children or adults (MMR, varicella, influenza, hepatitis A, hepatitis B, human papillomavirus, meningococcal, and DTP) and again found that vaccines are generally very safe and that serious adverse events are quite rare.

7) **VACCINES AND AUTISM.** The idea that autism is caused by vaccination is influencing public policy, even though rigorous studies do not support this hypothesis. The hypothesis is based on the observation that the number of autism cases increased in the 1980s, coinciding with a push for greater childhood vaccinations, which increased above recommended levels children's exposure to mercury in the vaccine preservative thimerosal. However, autism diagnosis continued to rise even after thimerosal was removed from US childhood vaccines in 2001. A review by the IOM of over 200 studies concluded that that there was no causal link between thimerosal-containing vaccines and autism. Other studies have found that autism is no more common among vaccinated than unvaccinated children.

8) **EXEMPTIONS TO VACCINE REQUIREMENTS.** There are currently three types of exemptions to the requirement that children be vaccinated before entering school: medical; religious; and, philosophical.

a) A medical exemption letter can be written by a licensed physician that believes that vaccination is not safe for the medical conditions of the patient, such as those whose immune systems are compromised, who are allergic to vaccines, are ill at the time of vaccination, or have other medical contraindications to vaccines for that individual patient. Every state allows medical exemptions from school vaccination requirements. This determination is entirely up to the professional clinical judgment of the physician. There are no required medical criteria for diagnosing circumstances that contraindicate vaccination. A physician must base that decision on their professional judgment and the standard of practice for their field. According to the Medical Board of California, the "standard of care" (or "standard of practice") for general practitioners is defined as that level of skill, knowledge and care in diagnosis and treatment ordinarily possessed and exercised by other reasonably careful and prudent physicians in the same or similar circumstances at the time in question. Specialists are held to the standard of skill, knowledge and care ordinarily possessed and exercised by other reasonably careful and prudent specialist in the same or similar circumstances.

b) Religious exemptions allow parents to exempt their children from vaccination if it contradicts their sincere religious beliefs. Many states allow religious exemptions from

school vaccination requirements, although states interpret the enforcement of them differently. In some states, a parent may simply attest that vaccinations are against their religious beliefs, while in other states the parent must show membership in a church, and that the church's official policy is opposed to vaccination. According to the National Conference of State Legislatures (NCSL), as of June 2014, 48 states allow religious exemptions (all but Mississippi and West Virginia).

c) Philosophical exemption, which is defined differently in different states, generally means that the statutory language does not restrict the exemption to purely religious or spiritual beliefs. For example, Maine allows restrictions based on "moral, philosophical or other personal beliefs," and California allows objections based on simply the parent(s) beliefs. According to NCSL, 20 states (Arizona, California, Colorado, Idaho, Louisiana, Maine, Michigan, Minnesota, Missouri (limited to childcare enrollees), New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin) permit philosophic exemptions.

As of February, several state legislatures had introduced bills that would address non-medical exemptions. In addition to California, legislators in Oregon, Vermont, and Washington proposed to remove philosophical/personal belief exemption this year. The bills were tabled in Oregon and Washington. On May 25, 2015, the Governor of Vermont signed legislation removing philosophical exemptions, but not religious ones, in that state.

9) **SPECIAL EDUCATION.** Pursuant to the federal Individuals with Disabilities Education Act (IDEA), children with disabilities are guaranteed the right to a free, appropriate public education, including necessary services for a child to benefit from his or her education. Between 1976 and 1984, to meet this federal mandate, California schools provided mental health services to special education students who needed the services pursuant to an Individualized Education Program (IEP). An IEP is a legally binding document that determines what special education services a child will receive and why. IEPs include a child's classification, placement, specialized services, academic and behavioral goals, a behavior plan if needed, percentage of time in regular education, and progress reports from teachers and therapists. A child may require any related services in order to benefit from special education, including (but not limited to): speech-language pathology and audiology services, early identification and assessment of disabilities in children, medical services, physical and occupational therapy, orientation and mobility services; and psychological services.

According to the California Department of Education (CDE), over 700,000, or approximately 11% of, California students received Special Education services in the 2013-14 academic year.

10) **INDEPENDENT STUDY.** April 22, 2015 amendments to this bill exclude pupils who are enrolled in an independent study program from the immunization requirements of the bill. Independent study is an optional educational alternative, available to students from kindergarten through high school that is meant to respond to the student's specific educational needs, interests, aptitudes, and abilities. Independent study is an alternative to classroom instruction consistent with a school district's regular course of study and is expected to be equal or superior in quality to classroom instruction. Each school district can develop Independent Study options in its own way. Parents and students may also develop

alternative forms of independent study and propose them to the school board. The options are based on the kinds of students being served. The following are some of the ways in which independent study is organized:

a) School-within-a-school;
b) District or county alternative in a community location;
c) School-based independent study offered part-time and full-time;
d) Countywide home-based independent study offered by the county superintendent of schools;
e) District dropout prevention centers at selected community sites;
f) Curricular enrichment options offered to high school students with special abilities and interests, scheduling problems, or individual needs that cannot be met in the regular program;
g) Alternative school-based independent study, on-or off-site; and,
h) Some combination of the above.

Independent study can be operated on a traditional school calendar, with a summer school option for eligible students, or on a year-round calendar within a year-round school. Students must have the option of a classroom setting for a full program at the time independent study is made available. This option must be continuously available the student decide to transfer from independent study. The classroom setting option can be offered by the county office of education if the district and county have a formal agreement that has the effect of providing the student with a program that is equivalent to what is offered in the school of residence.

a) **Seat Time / Average Daily Attendance.** Participation in independent study must be voluntary. For students participating in independent study, a contractual agreement is drawn among the certificated teacher, the student, and his or her parent, guardian, or caregiver. Attendance records are based on a student's work within the terms and conditions of his or her written agreement and not on traditional "seat-time." In independent study, the student's performance, measured by the terms in the agreement, is converted by the supervising teacher into school days. The computed school days are reported as if the student were physically in attendance.

b) **Legal Enrollment Restrictions.** California education law mandates the following for the administration of independent study programs:

   i) No pupil shall be required to participate in independent study;
   ii) Not more than 10% of the students enrolled in an opportunity school or program, or a continuation high school, shall be eligible for independent study. A student who is pregnant or is a parent and primary caregiver for one or more of his or her children shall not be counted within the 10% cap;
   iii) No individual with exceptional needs may participate in independent study unless his or her IEP specifically provides for that participation; and,
   iv) No temporarily disabled pupil may receive individual instruction. However, if the temporarily disabled pupil's parents and the district(s) agree, the pupil may receive instruction through independent study instead of the "home and hospital" instruction.

c) **Enrollment History.** According to CDE, in 2013-14 there were approximately 122,000 independent study students reported by charter schools and 34,000 reported by school

districts. Independent study enrollment was not collected for the 2009–10 and 2010–11 school years. In October 2008, data collected from schools reported that 128,000 students in kindergarten through grade twelve were enrolled in independent study.

11) **LEGAL CONSIDERATIONS.** Courts have determined that the family itself is not beyond regulation in the public interest and neither rights of religion nor rights of parenthood are beyond limitation. As discussed at length in the Senate Judiciary Committee analysis, extensive case law establishes that the police powers of the state may restrict the parent's control in many ways, such as requiring school attendance and regulating or prohibiting the child's labor. This authority is not nullified because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, a parent cannot claim freedom from compulsory vaccination for their child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. For a further discussion of the legal rights and ramifications of this bill, please see the Senate Judiciary Committee Analysis as published on April 28, 2015.

12) **SUPPORT.** The Superintendent of Public Instruction (SPI), Tom Torlakson, supports this bill, stating that school and child care immunization requirements have proven effective in increasing immunization rates, limiting the spread of disease, and providing an overall public health benefit. He further states that California has seen a dramatic increase in the PBE rate for students entering kindergarten over the past fifteen years, placing other children, and the overall public health of our citizens, at risk of illness or death from preventable diseases. The SPI concludes that education is a fundamental right in California, and this bill provides education choices for families opting not to vaccinate their children.

The California Medical Association, a cosponsor of this bill, states that in 2000, the CDC determined that measles had been eradicated in the U.S. However, since December 2014, California has had 136 confirmed cases of measles across fourteen counties. Almost 20% of those cases have required hospitalization. Efforts to contain the outbreak have resulted in mandatory quarantines and the redirection of public health resources to investigations into exposure. The California Immunization Coalition, writing in support of this bill, notes that in the 2013-14 school year more than 16,800 kindergarteners in California started school with either no vaccinations or only some of their required vaccinations because their parent had chosen to exempt them from vaccinations, representing a 25% increase over the previous two school years.

March of Dimes Foundation and the Medical Oncology Association of Southern California, Inc. state that public participation in immunization programs is critical to their effectiveness. Protection is greatly affected by rates of immunization: the more people immunized, the less the risk of exposure to, and illness from, vaccine-preventable infections.

The Medical Board of California states that vaccines have been scientifically proven to be effective in preventing illnesses. Ensuring that children receive the ACIP recommended vaccination schedule is the standard of care, unless there is a medical reason that the child should not receive the vaccine; this bill would still allow for a medical exemption to address these concerns. The Children's Specialty Care Coalition notes that high vaccine coverage, particularly at the community level, is extremely important for people who cannot be vaccinated, including people who have medical contraindications to vaccinations and those

who are too young to be vaccinated. Protecting the individual and the community from communicable diseases such as measles, mumps, and pertussis, is important to the public's health.

The Committee notes it has received hundreds of letters in support of this bill. Many letters from individuals in support write to raise similar points regarding reductions in vaccination rates for school children, recent dangerous measles and pertussis outbreaks, concerns for the health of children and medically fragile individuals, and concerns for the safety of communities at large.

13) **OPPOSITION.** Opponents state that this bill is an extreme measure that is not necessary at this time. The California Chiropractic Association states that this bill proffers the notion that health officials will be given the power to nullify the doctor-patient relationship, and veto the judgment of any physician who questions the status quo and believes that a patient should not receive a particular vaccine. A Voice for Choice states that the Legislature should look to alternative approaches that will stop the transmission of disease and continue to allow parents to work with their doctors for the best vaccination schedule for their individual children, and allow their children their constitutional right to a free and public education.

The Committee also notes that it received hundreds of letters in opposition to this bill. A letter from Our Kids Our Choice and many other similar letters argue that the bill removes federally mandated rights of services to students with disabilities under the federal IDEA. This group, like many others, points to the NVIC and the fact that the U.S. government "has paid out more than $3 billion to the victims of vaccine injury" as support for why medical choice is appropriate. "If there is risk of injury or death there must be a choice." In contrast, they argue that "vaccination rates of California schoolchildren are high at 98.64%" and cite the success of recent legislation, AB 2109 (Pan), Chapter 821, Statutes of 2012, which they say has resulted in a 19% decrease in exemptions amongst kindergarteners in just one year. They argue the public health concerns are already adequately addressed with current California laws. Many letters from individuals write to raise relatively similar points regarding various constitutional rights, informed consent, vaccine safety/injuries, absence of a health crisis, lack of educational choice, difficulty in obtaining medical exemptions, and the like.

ParentalRights.Org states that "...while we appreciate the intent of the amendment to exempt homeschoolers from the vaccination requirement, it is not sufficient to protect the rights of parents and children in California. While there are many parents with strong convictions that the risks of vaccines to their child (as reflected in lengthy disclaimers which accompany these products) outweigh the potential benefits, many of these same parents are also deeply convinced that the best educational opportunity they can provide their child is in the public schools. These parents should not be forced to give up their rights in one area to exercise their rights in another. No child should have to forego the best available education for the sake of his best health, nor give up his best health for the sake of a better education."

14) **CONCERNS.** American Civil Liberties Union of California (ACLU-CA) states that "while we appreciate that vaccination against childhood diseases is a prudent step that should be promoted for the general welfare, we do not believe there has been a sufficient showing of need at present to warrant conditioning access to education on mandatory vaccination for each of the diseases covered by this bill for every school district in the state." ACLU-CA

further states that unlike other states where a vaccination mandate may be more permissible, public education is a fundamental right under the California Constitution. Equal access to education must therefore not be limited or denied unless the State demonstrates that its actions are "necessary to achieve a compelling state interest." The California Association of Private School Organizations states that that association has taken no formal position on the measure, and does not oppose the elimination of the PBEs, they are concerned about the increased administrative burden to which schools will be subjected should this bill become law. The association urges amendments that would create a phase-in period, lengthen the time horizon for compliance as per the existing regulations, or enact such other provisions as may produce a combination of increased compliance and a decreased possibility of mandatory exclusion.

15) **RELATED LEGISLATION.** SB 792 (Mendoza) prohibits a person from being employed at a day care center or day care home unless he or she has been immunized against influenza, pertussis, and measles. SB 792 was approved by the Senate on May 22, 2015 by a vote of 34-3 and is currently pending committee referral in the Assembly.

16) **PREVIOUS LEGISLATION.**

   a) AB 2109 requires, on and after January 1, 2014, a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Required the form to include:

      i) A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community.

      ii) A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant to i) above.

      The Governor included a message with his signature on this bill, which stated, in part: "I will direct (DPH) to allow for a separate religious exemption on the form. In this way, people whose religious beliefs preclude vaccinations will not be required to seek a health care practitioner's signature."

   b) SB 614 (Kehoe, Chapter 123, Statutes of 2011) allows a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

   c) AB 354 (Arambula, Chapter 434, Statutes of 2010) allowed DPH to update vaccination requirements for children entering schools and child care facilities and added the

American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Requires children entering grades seven through 12 receive a TDaP booster prior to admittance to school.

**d)** SB 1179 (Aanestad, 2008) would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. SB 1179 died in Senate Health Committee.

## 17) POLICY COMMENTS.

**a)** **Collecting complete data will provide an accurate picture of partial vaccination rates throughout the state.** To date, we do not have an exact picture of the vaccination status of every student in California. For the 2014-15 school year, less than 95% of schools reported their vaccination numbers to DPH. Of the schools reporting, DPH found that 90.4% of enrolled kindergarteners had received the complete vaccination schedule. Additionally 6.9% of students were conditionally enrolled because they were lacking some immunizations, and were in the process of completing the required vaccination schedule. For the 2014-15 school year, DPH calculated individual antigen vaccination status (such as DTP, Polio, MMR, etc) based only on the number of fully vaccinated students and vaccinations completed by conditionally enrolled students. DPH did not include in this calculation the individual antigen status for partially vaccinated students with PBEs. Therefore, it is likely that individual antigen immunization coverage may be underestimated. Anecdotal evidence suggests that some percentage of students have some, but not all, required immunizations.

DPH is currently developing new regulations that will implement complete data collection for partially vaccinated students holding PBEs and medical exemptions. This will ensure that reported data are a more accurate reflection of the vaccination rate for each immunization.

**b)** **Identification of partially and non-vaccinated students.** Current law requires that parents filing a PBE must provide the school with documentation for "which immunizations have been given and which immunizations have not been given on the basis that they are contrary to his or her beliefs" for the purposes of immediate identification in case of disease outbreak in the community. As drafted, this requirement would be deleted by SB 277. If SB 277 is enacted, schools will still need to know which specific immunizations have or have not been received by all students, including those that are enrolled in independent study. The author may wish to take an amendment to clarify that schools will collect information for all enrolled students, regardless of immunization status.

## 18) SUGGESTED AMENDMENTS.

**a)** **A physician's professional judgment.** As previously discussed, it is entirely within the professional judgment of a physician to determine if vaccination is not recommended due to the medical history of the patient. Opponents of this bill have raised concerns that current law regarding the letter of medical exemption does not adequately make clear that

the letter may be written based on the best medical judgment of the physician. To that end, the author may wish to consider amending this bill.

> Section 120370. (a)If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances ~~that contraindicate~~ *for which the physician does not recommend* immunization, that child shall be exempt from the requirements of Chapter 1 (commencing with Section 120325, but excluding Section 120380) and Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician's statement.

b) **Implementation clarification clause.** As discussed in the Senate Judiciary Committee analysis, clarification is needed to address the status of students currently enrolled with an existing PBE upon the operative date of this bill.

> *Section 120335 (g) The governing authority shall allow continued enrollment to pupils who, prior to January 1, 2016, have a letter or affidavit on file in that institution stating beliefs opposed to immunization. On and after July 1, 2016, the governing authority shall not unconditionally admit to that institution for the first time or admit or advance any pupil to the 7th grade level unless the pupil has been immunized as required by this section.*

c) **Special education students must have access to services.** As previously discussed, under federal and state law disabled children are guaranteed the right to a free, appropriate public education, including necessary services for a child to benefit from his or her education. An amendment should be taken to clarify that students with an IEP will still have access to special education related services as directed by their IEP.

> *Section 120335 (h) Nothing in this section shall prohibit a pupil that qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by their individualized education program.*

d) **Independent study programs are highly variable.** As previously discussed, students enrolled in an independent study program are excluded from the provisions of this bill requiring them to be vaccinated. Independent study courses take many forms and in many places, including both on and off school sites. As currently drafted, there is nothing differentiating classroom based versus non-classroom based independent study instruction. An amendment should be taken to specify that students enrolled in off-campus independent study are not subject to vaccination requirements.

> Section 120335 (f): This section does not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code *and does not receive classroom-based instruction.*

**REGISTERED SUPPORT / OPPOSITION**:

SB 277
Page 15

## Support

California Immunization Coalition (cosponsor)
California Medical Association (cosponsor)
Vaccinate California (cosponsor)
Dave Jones, California Insurance Commissioner
Katie Rice, Supervisor, Marin County
Sheila Kuehl, Los Angeles County Supervisor and former State Senator
Tom Torlakson, California Superintendent of Public Instruction
AIDS Healthcare Foundation
Alameda County Board of Supervisors
Albany Unified School District
American Academy of Pediatrics - California
American College of Emergency Physicians California Chapter
American Federation of State, County and Municipal Employees, AFL-CIO
American Lung Association
American Nurses Association\California
Association of California School Administrators
Association of Northern California Oncologists
BIOCOM
California Academy of Family Physicians
California Academy of Physician Assistants
California Association for Nurse Practitioners
California Association of Physician Groups
California Black Health Network
California Children's Hospital Association
California Coverage and Health Initiatives
California Department of Insurance
California Disability Rights, Inc.
California Healthcare Institute
California Hepatitis Alliance
California Hospital Association
California Immunization Coalition
California Optometric Association
California Pharmacists Association
California Primary Care Association
California Public Health Association-North
California School Boards Association
California School Employees Association
California School Nurses Organization
California State Association of Counties
California State PTA

Carlsbad High School Parent-Teacher-Student Association
Child Care Law Center
Children Now
Children's Defense Fund California
Children's Healthcare Is a Legal Duty, Inc.
Children's Hospital Oakland
Children's Specialty Care Coalition
City and County of San Francisco Board of Supervisors
City of Berkeley
City of Beverly Hills
City of Pasadena
Contra Costa County
County Health Executives Association of California
County of Marin
County of Tehachapi
Democratic Women's Club of Santa Cruz County
Donate Life California
First 5 California
Foundation for Pediatric Health
Gilroy Unified School District
Health Officers Association of California
Jay Hansen, Sacramento County School Board Member
Junior Leagues of California
Kaiser Permanente
Los Angeles Community College District
Los Angeles County Board of Supervisors
Los Angeles County Supervisor Sheila Kuehl
Los Angeles Unified School District
March of Dimes California Chapter
Medical Board of California
Medical Oncology Association of Southern California
MemorialCare Health System Physician Society
National Coalition of 100 Black Women Sacramento Chapter
Osteopathic Physicians and Surgeons of California
Pasadena Public Health Department
Project Inform
Providence Health and Services, Southern California

Reed Union School District
San Dieguito Union High School District
San Francisco Democratic County Central
    Committee
San Francisco Unified School District
Santa Clara County Board of Supervisors
Santa Cruz County
Santa Cruz County Democratic Party
Santa Monica Malibu Union Unified School
    District
School for Integrated Academics and
    Technologies, California
Secular Coalition for California
Silicon Valley Leadership Group
Solano Beach School District
Sonoma County Board of Supervisors

The Children's Partnership
UAW Local 5810, University of California
    Postdoctoral Researchers
University of California Hastings College of
    the Law
University of California, Irvine Center for
    Virus Research
University of California, Irvine School of
    Medicine
Yolo County Board of Supervisors
Numerous Medical Doctors
Numerous Osteopathic Doctors
Numerous health care professionals, including
    RNs, PAs and NPs
Hundreds of individuals

**Opposition**

A Voice for Choice
Alliance of California Autism Organizations
Association of American Physicians and
    Surgeons (Tucson, AZ)
APLUS+ Network Association
Autism Society
AWAKE California
California Chiropractic Association
California Coalition for Health Choice
California Naturopathic Doctors Association
California Nurses for Ethical Standards
California Nurses for Ethical Standards
California ProLife Council
California Right to Life Committee, Inc.
Canary Party
Capitol Resource Institute
Educate. Advocate.
Educate. Advocate.
Faith and Public Policy
Families for Early Autism Treatment
Foundation for Pediatric Health
Gold Mine Natural Food Co.

Homeschool Association of California
HSC Homeschool Association of California
National Autism Association California
National Vaccine Information Center
Our Kids, Our Choice
Pacific Justice Institute
Pacific Justice Institute Center for Public
    Policy
ParentalRights.Org
Pediatric Alternatives
SafeMinds
Saint Andrew Orthodox Christian Church
Standing Tall Chiropractic: A Creating
    Wellness Center
Unblind My Mind
Vaccine Choice Canada (Winlaw, British
    Columbia)
Vaccine-Injury Awareness League
Weston A. Price Foundation
Numerous Chiropractors
Numerous Medical and Osteopathic Doctors
Hundreds of individuals

**Analysis Prepared by**: Dharia McGrew and Paula Villescaz / HEALTH / (916) 319-2097

# EXHIBIT 2

## Senate Bill No. 276

### CHAPTER 278

An act to amend Sections 120370, 120375, and 120440 of, and to add Sections 120372 and 120372.05 to, the Health and Safety Code, relating to public health.

[Approved by Governor September 9, 2019. Filed with Secretary of State September 9, 2019.]

LEGISLATIVE COUNSEL'S DIGEST

SB 276, Pan. Immunizations: medical exemptions.

Existing law prohibits the governing authority of a school or other institution from admitting for attendance any pupil who fails to obtain required immunizations within the time limits prescribed by the State Department of Public Health. Existing law exempts from those requirements a pupil whose parents have filed with the governing authority a written statement by a licensed physician to the effect that immunization is not considered safe for that child, indicating the specific nature and probable duration of their medical condition or circumstances, including, but not limited to, family medical history.

This bill would instead require the State Department of Public Health, by January 1, 2021, to develop and make available for use by licensed physicians and surgeons an electronic, standardized, statewide medical exemption request that would be transmitted using the California Immunization Registry (CAIR), and which, commencing January 1, 2021, would be the only documentation of a medical exemption that a governing authority may accept. The bill would specify the information to be included in the medical exemption form, including a certification under penalty of perjury that the statements and information contained in the form are true, accurate, and complete. The bill would, commencing January 1, 2021, require a physician and surgeon to inform a parent or guardian of the bill's requirements and to examine the child and submit a completed medical exemption request form to the department, as specified. By expanding the crime of perjury, the bill would impose a state-mandated local program.

This bill would require a parent or guardian, by January 1, 2021, to submit to the department a copy of a medical exemption granted prior to that date for inclusion in a state database in order for the medical exemption to remain valid. The bill would require the department to annually review immunization reports from schools and institutions to identify schools with an overall immunization rate of less than 95%, physicians and surgeons who submitted 5 or more medical exemption forms in a calendar year, and schools and institutions that do not report immunization rates to the department. The bill would require a clinically trained department staff member who is a

physician and surgeon or a registered nurse to review all medical exemption forms submitted meeting those conditions. The bill would authorize the medical exemptions determined by that staff member to be inappropriate or otherwise invalid to be reviewed by the State Public Health Officer or a physician and surgeon designated by the State Public Health Officer, and revoked by the State Public Health Officer or physician and surgeon designee, under prescribed circumstances.

The bill would authorize a parent or guardian to appeal a medical exemption denial or revocation to the Secretary of California Health and Human Services. The appeal would be conducted by an independent expert review panel of licensed physicians and surgeons established by the secretary. The bill would require the independent expert review panel to evaluate appeals consistent with specified guidelines and to submit its decision to the secretary. The bill would require the secretary to adopt the determination of the independent expert review panel and promptly issue a written decision to the child's parent or guardian. The final decision of the secretary would not be subject to further administrative review. The bill would allow a child whose medical exemption revocation is appealed to continue in attendance at the school or institution without being required to commence the immunization schedule required for conditional admittance, provided that the appeal is filed within 30 calendar days of revocation of the medical exemption.

The bill would require the department and the independent expert review panel to comply with all applicable state and federal privacy and confidentiality laws and would authorize disclosure of information submitted in the medical exemption form in accordance with requirements set forth in the bill. The bill would make related conforming changes. The bill would authorize the department to implement and administer the medical exemption provisions through provider bulletins, or similar instructions, without taking regulatory action.

Existing law requires the governing authority of a school or other institution to file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department at times and on forms prescribed by the department.

This bill would instead require these reports to be filed on at least an annual basis.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares all of the following:

(a)  Immunizations are public health measures to ensure protection against debilitating and sometimes fatal diseases.

(b)  Immunization requirements have led to greatly diminished or eliminated debilitating childhood diseases, such as measles.

(c)  According to the State Department of Public Health immunization assessment for the 2018–19 school year:

(1)  The immunization rate, or the rate at which children attending school are fully vaccinated on schedule, for kindergarten-aged children was 94.8 percent, which is 0.3 percent less than the previous school year.

(2)  Of the schools reporting, 16 percent of California counties had kindergarten immunization rates below 90 percent.

(d)  By May 2019, the federal Centers for Disease Control and Prevention reported 1,022 cases of the measles nationwide. Fifty-one of those incidences were in California.

(e)  For all but a small number of individuals, immunizations are safe and effective.

(f)  Effective immunizations not only protect immunized individuals from disease, but have the ability to provide indirect protection for which immunizations are not effective or safe. This indirect protection is called herd or community immunity.

(g)  Herd immunity successfully occurs if and when a sufficient portion of the community is immune. Herd immunity prevents sustained transmission of disease even when immunization coverage is below 100 percent.

SEC. 2.  Section 120370 of the Health and Safety Code is amended to read:

120370.  (a)  (1)  Prior to January 1, 2021, if the parent or guardian files with the governing authority a written statement by a licensed physician and surgeon to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family medical history, for which the physician and surgeon does not recommend immunization, that child shall be exempt from the requirements of this chapter, except for Section 120380, and exempt from Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician and surgeon's statement.

(2)  Commencing January 1, 2021, an exemption issued before January 1, 2021, pursuant to this subdivision is valid only if the parent or guardian has complied with paragraph (2) of subdivision (c) of Section 120372.

(b)  If there is good cause to believe that a child has been exposed to a disease listed in subdivision (b) of Section 120335 and the child's documentary proof of immunization status does not show proof of immunization against that disease, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.

SEC. 3.  Section 120372 is added to the Health and Safety Code, to read:

120372.  (a) (1)  By January 1, 2021, the department shall develop and make available for use by licensed physicians and surgeons an electronic, standardized, statewide medical exemption certification form that shall be transmitted directly to the department's California Immunization Registry (CAIR) established pursuant to Section 120440. Pursuant to Section 120375, the form shall be printed, signed, and submitted directly to the school or institution at which the child will attend, submitted directly to the governing authority of the school or institution, or submitted to that governing authority through the CAIR where applicable. Notwithstanding Section 120370, commencing January 1, 2021, the standardized form shall be the only documentation of a medical exemption that the governing authority may accept, except as provided in paragraph (2) of subdivision (c).

(2)  At a minimum, the form shall require all of the following information:

(A)  The name, California medical license number, business address, and telephone number of the physician and surgeon who issued the medical exemption, and of the primary care physician of the child, if different from the physician and surgeon who issued the medical exemption.

(B)  The name of the child for whom the exemption is sought, the name and address of the child's parent or guardian, and the name and address of the child's school or other institution.

(C)  A statement certifying that the physician and surgeon has conducted a physical examination and evaluation of the child consistent with the relevant standard of care and complied with all applicable requirements of this section.

(D)  Whether the physician and surgeon who issued the medical exemption is the child's primary care physician. If the issuing physician and surgeon is not the child's primary care physician, the issuing physician and surgeon shall also provide an explanation as to why the issuing physician and not the primary care physician is filling out the medical exemption form.

(E)  How long the physician and surgeon has been treating the child.

(F)  A description of the medical basis for which the exemption for each individual immunization is sought. Each specific immunization shall be listed separately and space on the form shall be provided to allow for the inclusion of descriptive information for each immunization for which the exemption is sought.

(G)  Whether the medical exemption is permanent or temporary, including the date upon which a temporary medical exemption will expire. A temporary exemption shall not exceed one year.

(H)  An authorization for the department to contact the issuing physician and surgeon for purposes of this section and for the release of records related to the medical exemption to the department, the Medical Board of California, and the Osteopathic Medical Board of California.

(I)  A certification by the issuing physician and surgeon, under penalty of perjury, that the statements and information contained in the form are true, accurate, and complete.

(3)  An issuing physician and surgeon shall not charge for either of the following:

(A)  Filling out a medical exemption form pursuant to this section.

(B)  A physical examination related to the renewal of a temporary medical exemption.

(b)  Commencing January 1, 2021, if a parent or guardian requests a licensed physician and surgeon to submit a medical exemption for the parent's or guardian's child, the physician and surgeon shall inform the parent or guardian of the requirements of this section. If the parent or guardian consents, the physician and surgeon shall examine the child and submit a completed medical exemption certification form to the department. A medical exemption certification form may be submitted to the department at any time.

(c)  (1)  By January 1, 2021, the department shall create a standardized system to monitor immunization levels in schools and institutions as specified in Sections 120375 and 120440, and to monitor patterns of unusually high exemption form submissions by a particular physician and surgeon.

(2)  If a medical exemption has been authorized pursuant to Section 120370 prior to the adoption of the statewide standardized form, a parent or guardian shall submit, by January 1, 2021, a copy of the medical exemption to the department for inclusion in a state database in order for the medical exemption to remain valid.

(d)  (1)  The department, at a minimum, shall annually review immunization reports from all schools and institutions in order to identify medical exemption forms submitted to the department pursuant to Section 120370 and under this section that will be subject to paragraph (2).

(2)  A clinically trained immunization department staff member, who is either a physician and surgeon or a registered nurse, shall review all medical exemptions from any of the following:

(A)  Schools or institutions subject to Section 120375 with an overall immunization rate of less than 95 percent.

(B)  Physicians and surgeons who have submitted five or more medical exemptions in a calendar year.

(C)  Schools or institutions subject to Section 120375 that do not provide reports of vaccination rates to the department.

(3)  (A)  The department shall identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. The department may contact the primary care physician and surgeon or issuing physician and surgeon to request additional information to support the medical exemption.

(B)  Notwithstanding subparagraph (A), the department, based on the medical discretion of the clinically trained immunization staff member, may accept a medical exemption that is based on other contraindications or precautions, including consideration of family medical history, if the issuing physician and surgeon provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

(C)  A medical exemption that the reviewing immunization department staff member determines to be inappropriate or otherwise invalid under

subparagraphs (A) and (B) shall also be reviewed by the State Public Health Officer or a physician and surgeon from the department's immunization program designated by the State Public Health Officer. Pursuant to this review, the State Public Health Officer or physician and surgeon designee may revoke the medical exemption.

(4)  The department shall notify the parent or guardian, issuing physician and surgeon, the school or institution, and the local public health officer with jurisdiction over the school or institution of a denial or revocation under this subdivision.

(5)  If a medical exemption is revoked pursuant to this subdivision, the child shall continue in attendance. However, within 30 calendar days of the revocation, the child shall commence the immunization schedule required for conditional admittance under Chapter 4 (commencing with Section 6000) of Division 1 of Title 17 of the California Code of Regulations in order to remain in attendance, unless an appeal is filed pursuant to Section 120372.05 within that 30-day time period, in which case the child shall continue in attendance and shall not be required to otherwise comply with immunization requirements unless and until the revocation is upheld on appeal.

(6) (A)  If the department determines that a physician's and surgeon's practice is contributing to a public health risk in one or more communities, the department shall report the physician and surgeon to the Medical Board of California or the Osteopathic Medical Board of California, as appropriate. The department shall not accept a medical exemption form from the physician and surgeon until the physician and surgeon demonstrates to the department that the public health risk no longer exists, but in no event shall the physician and surgeon be barred from submitting these forms for less than two years.

(B)  If there is a pending accusation against a physician and surgeon with the Medical Board of California or the Osteopathic Medical Board of California relating to immunization standards of care, the department shall not accept a medical exemption form from the physician and surgeon unless and until the accusation is resolved in favor of the physician and surgeon.

(7)  The department shall notify the Medical Board of California or the Osteopathic Medical Board of California, as appropriate, of any physician and surgeon who has five or more medical exemption forms in a calendar year that are revoked pursuant to this subdivision.

(8)  Notwithstanding any other provision of this section, a clinically trained immunization program staff member who is a physician and surgeon or a registered nurse may review any exemption in the CAIR or other state database as necessary to protect public health.

(e)  The department, the Medical Board of California, and the Osteopathic Medical Board of California shall enter into a memorandum of understanding or similar agreement to ensure compliance with the requirements of this section.

(f)  In administering this section, the department and the independent expert review panel created pursuant to Section 120372.05 shall comply with all applicable state and federal privacy and confidentiality laws, and

may disclose information submitted in the medical exemption form in accordance with Section 120440.

(g) The department shall establish the process and guidelines for review of medical exemptions pursuant to this section. The department shall communicate the process to providers and post this information on the department's website.

(h) If the department or the California Health and Human Services Agency determines that contracts are required to implement this section, the department may award these contracts on a single-source or sole-source basis. The contracts are not subject to Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code.

(i) Notwithstanding the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code), the department may implement and administer this section through provider bulletins, or similar instructions, without taking regulatory action.

(j) For purposes of administering this section, the department and the California Health and Human Services Agency appeals process shall be exempt from the rulemaking and administrative adjudication provisions in the Administrative Procedure Act Chapter 3.5 (commencing with Section 11340), and Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with 11400), and Chapter 5 (commencing with Section 11500) of, Part 1 of Division 3 of Title 2 of the Government Code.

SEC. 4.   Section 120372.05 is added to the Health and Safety Code, to read:

120372.05.   (a) A medical exemption revoked pursuant to Section 120372 may be appealed by a parent or guardian to the Secretary of California Health and Human Services. Parents or guardians may provide necessary information for purposes of the appeal.

(b) The secretary shall establish an independent expert review panel, consisting of three licensed physicians and surgeons who have relevant knowledge, training, and experience relating to primary care or immunization to review appeals. The agency shall establish the process and guidelines for the appeals process pursuant to this section. The agency shall post this information on the agency's internet website. The agency shall also establish requirements, including conflict-of-interest standards, consistent with the purposes of this chapter, that a physician and surgeon shall meet in order to qualify to serve on the panel.

(c) The independent expert review panel shall evaluate appeals consistent with the federal Centers for Disease Control and Prevention, federal Advisory Committee on Immunization Practices, or American Academy of Pediatrics guidelines or the relevant standard of care, as applicable.

(d) The independent expert review panel shall submit its determination to the secretary. The secretary shall adopt the determination of the independent expert review panel and shall promptly issue a written decision to the child's parent or guardian. The decision shall not be subject to further administrative review.

(e) A child whose medical exemption revocation pursuant to subdivision (d) of Section 120372 is appealed under this section shall continue in attendance and shall not be required to commence the immunization required for conditional admittance under Chapter 4 (commencing with Section 6000) of Division 1 of Title 17 of the California Code of Regulations, provided that the appeal is filed within 30 calendar days of revocation of the medical exemption.

(f) For purposes for administering this section, the department and the California Health and Human Services Agency appeals process shall be exempt from the rulemaking and administrative adjudication provisions in the Administrative Procedure Act Chapter 3.5 (commencing with Section 11340), and Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with 11400), and Chapter 5 (commencing with Section 11500) of, Part 1 of Division 3 of Title 2 of the Government Code.

SEC. 5.   Section 120375 of the Health and Safety Code is amended to read:

120375.   (a) The governing authority of each school or institution included in Section 120335 shall require documentary proof of each entrant's immunization status. The governing authority shall record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by the department. The immunization record of each new entrant admitted conditionally shall be reviewed periodically by the governing authority to ensure that within the time periods designated by regulation of the department the entrant has been fully immunized against all of the diseases listed in Section 120335, and immunizations received after entry shall be added to the pupil's immunization record.

(b) The governing authority of each school or institution included in Section 120335 shall prohibit from further attendance any pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of the department until that pupil has been fully immunized against all of the diseases listed in Section 120335, unless the pupil is exempted under Section 120370 or 120372.

(c) The governing authority shall file a written report, on at least an annual basis, on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department on forms prescribed by the department. As provided in paragraph (4) of subdivision (a) of Section 49076 of the Education Code, the local health department shall have access to the complete health information as it relates to immunization of each student in the schools or other institutions listed in Section 120335 in order to determine immunization deficiencies.

(d) The governing authority shall cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. The governing board of any school district may use funds, property, and personnel of the district for that purpose. The governing authority of any school or other institution may permit any licensed physician or any qualified registered

nurse to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

SEC. 6.  Section 120440 of the Health and Safety Code is amended to read:

120440.  (a)  For the purposes of this chapter, the following definitions shall apply:

(1)  "Health care provider" means any person licensed pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code or a clinic or health facility licensed pursuant to Division 2 (commencing with Section 1200).

(2)  "Schools, child care facilities, and family child care homes" means those institutions referred to in subdivision (b) of Section 120335, regardless of whether they directly provide immunizations to patients or clients.

(3)  "WIC service provider" means any public or private nonprofit agency contracting with the department to provide services under the California Special Supplemental Food Program for Women, Infants, and Children, as provided for in Article 2 (commencing with Section 123275) of Chapter 1 of Part 2 of Division 106.

(4)  "Health care plan" means a health care service plan as defined in subdivision (f) of Section 1345, a government-funded program the purpose of which is paying the costs of health care, or an insurer as described in Sections 10123.5 and 10123.55 of the Insurance Code, regardless of whether the plan directly provides immunizations to patients or clients.

(5)  "County welfare department" means a county welfare agency administering the California Work Opportunity and Responsibility to Kids (CalWORKs) program, pursuant to Chapter 2 (commencing with Section 11200.5) of Part 3 of Division 9 of the Welfare and Institutions Code.

(6)  "Foster care agency" means any of the county and state social services agencies providing foster care services in California.

(7)  "Tuberculosis screening" means an approved intradermal tuberculin test or any other test for tuberculosis infection that is recommended by the federal Centers for Disease Control and Prevention and licensed by the federal Food and Drug Administration.

(b)  (1)  Local health officers may operate immunization information systems pursuant to their authority under Section 120175, in conjunction with the Immunization Branch of the State Department of Public Health. Local health officers and the State Department of Public Health may operate these systems in either or both of the following manners:

(A)  Separately within their individual jurisdictions.

(B)  Jointly among more than one jurisdiction.

(2)  This subdivision does not preclude local health officers from sharing the information set forth in paragraphs (1) to (11), inclusive, of subdivision (c) with other health officers jointly operating the system.

(c)  Notwithstanding Sections 49075 and 49076 of the Education Code, Chapter 5 (commencing with Section 10850) of Part 2 of Division 9 of the Welfare and Institutions Code, or any other provision of law, unless a refusal to permit recordsharing is made pursuant to subdivision (e), health care

providers, and other agencies, including, but not limited to, schools, child care facilities, service providers for the California Special Supplemental Food Program for Women, Infants, and Children (WIC), health care plans, foster care agencies, and county welfare departments, may disclose the information set forth in paragraphs (1) to (11), inclusive, from the patient's medical record, or the client's record, to local health departments operating countywide or regional immunization information and reminder systems and the State Department of Public Health. Local health departments and the State Department of Public Health may disclose the information set forth in paragraphs (1) to (11), inclusive, to each other and, upon a request for information pertaining to a specific person, to health care providers taking care of the patient and to the Medical Board of California and the Osteopathic Medical Board of California. Local health departments and the State Department of Public Health may disclose the information in paragraphs (1) to (7), inclusive, and paragraphs (9) to (11), inclusive, to schools, child care facilities, county welfare departments, and family child care homes to which the person is being admitted or in attendance, foster care agencies in assessing and providing medical care for children in foster care, and WIC service providers providing services to the person, health care plans arranging for immunization services for the patient, and county welfare departments assessing immunization histories of dependents of CalWORKs participants, upon request for information pertaining to a specific person. Determination of benefits based upon immunization of a dependent CalWORKs participant shall be made pursuant to Section 11265.8 of the Welfare and Institutions Code. The following information shall be subject to this subdivision:

(1) The name of the patient or client and names of the parents or guardians of the patient or client.

(2) Date of birth of the patient or client.

(3) Types and dates of immunizations received by the patient or client.

(4) Manufacturer and lot number for each immunization received.

(5) Adverse reaction to immunizations received.

(6) Other nonmedical information necessary to establish the patient's or client's unique identity and record.

(7) Results of tuberculosis screening.

(8) Current address and telephone number of the patient or client and the parents or guardians of the patient or client.

(9) Patient's or client's gender.

(10) Patient's or client's place of birth.

(11) Patient's or client's information needed to comply with Chapter 1 (commencing with Section 120325), but excluding Section 120380.

(d) (1) Health care providers, local health departments, and the State Department of Public Health shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other medical record information with patient identification that they possess. These providers, departments, and contracting agencies are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision

(c), in accordance with existing law. They shall use the information listed in subdivision (c) only for the following purposes:

(A)  To provide immunization services to the patient or client, including issuing reminder notifications to patients or clients or their parents or guardians when immunizations are due.

(B)  To provide or facilitate provision of third-party payer payments for immunizations.

(C)  To compile and disseminate statistical information of immunization status on groups of patients or clients or populations in California, without identifying information for these patients or clients included in these groups or populations.

(D)  In the case of health care providers only, as authorized by Part 2.6 (commencing with Section 56) of Division 1 of the Civil Code.

(2)  Schools, child care facilities, family child care homes, WIC service providers, foster care agencies, county welfare departments, and health care plans shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other client, patient, and pupil information that they possess. These institutions and providers are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision (c), in accordance with existing law. They shall use the information listed in subdivision (c) only for those purposes provided in subparagraphs (A) to (D), inclusive, of paragraph (1) and as follows:

(A)  In the case of schools, child care facilities, family child care homes, and county welfare departments, to carry out their responsibilities regarding required immunization for attendance or participation benefits, or both, as described in Chapter 1 (commencing with Section 120325), and in Section 11265.8 of the Welfare and Institutions Code.

(B)  In the case of WIC service providers, to perform immunization status assessments of clients and to refer those clients found to be due or overdue for immunizations to health care providers.

(C)  In the case of health care plans, to facilitate payments to health care providers, to assess the immunization status of their clients, and to tabulate statistical information on the immunization status of groups of patients, without including patient-identifying information in these tabulations.

(D)  In the case of foster care agencies, to perform immunization status assessments of foster children and to assist those foster children found to be due or overdue for immunization in obtaining immunizations from health care providers.

(e)  A patient or a patient's parent or guardian may refuse to permit recordsharing. The health care provider administering immunization and any other agency possessing any patient or client information listed in subdivision (c), if planning to provide patient or client information to an immunization system, as described in subdivision (b), shall inform the patient or client, or the parent or guardian of the patient or client, of the following:

(1)  The information listed in subdivision (c) may be shared with local health departments and the State Department of Public Health. The health

care provider or other agency shall provide the name and address of the State Department of Public Health or of the immunization registry with which the provider or other agency will share the information.

(2) Any of the information shared with local health departments and the State Department of Public Health shall be treated as confidential medical information and shall be used only to share with each other, and, upon request, with health care providers, schools, child care facilities, family child care homes, WIC service providers, county welfare departments, foster care agencies, and health care plans. These providers, agencies, and institutions shall, in turn, treat the shared information as confidential, and shall use it only as described in subdivision (d).

(3) The patient or client, or parent or guardian of the patient or client, has the right to examine any immunization-related information or tuberculosis screening results shared pursuant to this section and to correct any errors in it.

(4) The patient or client, or the parent or guardian of the patient or client, may refuse to allow this information to be shared pursuant to this section or to receive immunization reminder notifications at any time, or both. After refusal, the patient's or client's physician may maintain access to this information for the purposes of patient care or protecting the public health. After refusal, the local health department and the State Department of Public Health may maintain access to this information for the purpose of protecting the public health pursuant to Sections 100325, 120140, and 120175, as well as Sections 2500 to 2643.20, inclusive, of Title 17 of the California Code of Regulations.

(f) (1) The health care provider administering the immunization or tuberculosis screening and any other agency possessing any patient or client information listed in subdivision (c), may inform the patient or client, or the parent or guardian of the patient or client, by ordinary mail, of the information in paragraphs (1) to (4), inclusive, of subdivision (e). The mailing shall include a reasonable means for refusal, such as a return form or contact telephone number.

(2) The information in paragraphs (1) to (4), inclusive, of subdivision (e) may also be presented to the parent or guardian of the patient or client during any hospitalization of the patient or client.

(g) If the patient or client, or parent or guardian of the patient or client, refuses to allow the information to be shared, pursuant to paragraph (4) of subdivision (e), the health care provider or other agency may not share this information in the manner described in subdivision (c), except as provided in subparagraph (D) of paragraph (1) of subdivision (d).

(h) (1) Upon request of the patient or client, or the parent or guardian of the patient or client, in writing or by other means acceptable to the recipient, a local health department or the State Department of Public Health that has received information about a person pursuant to subdivision (c) shall do all of the following:

(A) Provide the name and address of other persons or agencies with whom the recipient has shared the information.

(B)  Stop sharing the information in its possession after the date of the receipt of the request.

(2)  After refusal, the patient's or client's physician may maintain access to this information for the purposes of patient care or protecting the public health. After refusal, the local health department and the State Department of Public Health may maintain access to this information for the purpose of protecting the public health pursuant to Sections 100325, 120140, and 120175, as well as Sections 2500 to 2643.20, inclusive, of Title 17 of the California Code of Regulations.

(i)  Upon notification, in writing or by other means acceptable to the recipient, of an error in the information, a local health department or the State Department of Public Health that has information about a person pursuant to subdivision (c) shall correct the error. If the recipient is aware of a disagreement about whether an error exists, information to that effect may be included.

(j) (1)  Any party authorized to make medical decisions for a patient or client, including, but not limited to, those authorized by Section 6922, 6926, or 6927 of, Part 1.5 (commencing with Section 6550), Chapter 2 (commencing with Section 6910) of Part 4, or Chapter 1 (commencing with Section 7000) of Part 6, of Division 11 of, the Family Code, Section 1530.6 of the Health and Safety Code, or Sections 727 and 1755.3 of, and Article 6 (commencing with Section 300) of Chapter 2 of Part 1 of Division 2 of, the Welfare and Institutions Code, may permit sharing of the patient's or client's record with any of the immunization information systems authorized by this section.

(2)  For a patient or client who is a dependent of a juvenile court, the court or a person or agency designated by the court may permit this recordsharing.

(3)  For a patient or client receiving foster care, a person or persons licensed to provide residential foster care, or having legal custody, may permit this recordsharing.

(k)  For purposes of supporting immunization information systems, the State Department of Public Health shall assist the Immunization Branch of the State Department of Public Health in both of the following:

(1)  Providing department records containing information about publicly funded immunizations.

(2)  Supporting efforts for the reporting of publicly funded immunizations into immunization information systems by health care providers and health care plans.

(*l*)  Subject to any other provisions of state and federal law or regulation that limit the disclosure of health information and protect the privacy and confidentiality of personal information, local health departments and the State Department of Public Health may share the information listed in subdivision (c) with a state, local health departments, health care providers, immunization information systems, or any representative of an entity designated by federal or state law or regulation to receive this information. The State Department of Public Health may enter into written agreements

to exchange confidential immunization information with other states for the purposes of patient care, protecting the public health, entrance into school, child care and other institutions requiring immunization prior to entry, and the other purposes described in subdivision (d). The written agreement shall provide that the state that receives confidential immunization information must maintain its confidentiality and may only use it for purposes of patient care, protecting the public health, entrance into school, child care and other institutions requiring immunization prior to entry, and the other purposes described in subdivision (d). Information may not be shared pursuant to this subdivision if a patient or client, or parent or guardian of a patient or client, refuses to allow the sharing of immunization information pursuant to subdivision (e).

SEC. 7.   No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# EXHIBIT 3

32                     STATUTES OF CALIFORNIA,

the same manner and at the same time as the ad valorem State taxes for other purposes are assessed and collected.

**How expended.** SEC. 19. The money collected from the special tax herein provided shall be expended in establishing a new asylum according to the provisions of this Act; *provided,* if it be opened before the meeting of the next Legislature, the maintenance thereof shall be temporarily paid out of this special fund until other provisions shall be made by law for its support.

**Duty of Controller.** SEC. 20. The Controller of State is hereby authorized and directed to draw his warrants on the Treasury of State in favor of the respective Directors, on their requisition upon the fund hereby created in accordance with the provisions of this Act; *provided,* not more than fifteen thousand dollars shall be drawn at any one time for building purposes; *and,* **Accounts to be filed with Board of Examiners.** *provided further,* that a detailed account of the expenditures of the sum previously drawn shall be filed with the State Board of Examiners by said Directors before the approval of any other requisition from the same Board of Directors for money for the purposes aforesaid.

SEC. 21. This Act shall take effect from and after its passage.

————

CHAPTER XXIV.

*An Act to encourage and provide for a general vaccination in the State of California.*

[Approved February 20, 1889.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

**Exclusion of children from schools unless vaccinated.** SECTION 1. The Trustees of the several common school districts in this State, and Boards of common school government in the several cities and towns, are directed to exclude from the benefits of the common schools therein any child or any person who has not been vaccinated, until such time when said child or person shall be successfully vaccinated; *provided,* that any practicing and licensed physician may certify that the child or person has used due diligence and cannot be vaccinated so as to produce a successful vaccination, whereupon such child or person shall be excepted from the operation of this Act.

**Notice by School Trustees.** SEC. 2. The Trustees or local Boards, annually, or at such special times to be stated by the State Board of Health, must give at least ten days' notice, by posting a notice in two or more public or conspicuous places within their jurisdiction, that provision has been made for the vaccination of any child of suitable age who may desire to attend the common schools, and whose parents or guardians are pecuniarily or otherwise unable to procure vaccination for such child.

**List of children not vaccinated.** SEC. 3. The said Trustees or Board must within sixty days after the passage of this Act, and every year thereafter, ascertain the number of children or persons in their respective

School Districts or subdivision of the City School Government being of an age suitable to attend common schools, who have not been already vaccinated, and make a list of the names of all such children or persons. It also shall be duty of said Trustees or Board to provide, for the vaccination of all such children or persons in their respective school districts, a good and reliable vaccine virus wherewith to vaccinate such children or persons who have not been vaccinated. And when so vaccinated to give a certificate of vaccination, which certificate shall be evidence thereof for the purpose of complying with section one. *Vaccine virus to be supplied.*

SEC. 4. The necessary expenses incurred by the provisions of this Act shall be paid out of the common school moneys apportioned to the district, city, or town. And if there be not sufficient money, the Trustees must notify the Board of Supervisors of the amount of money necessary, and the Board must, at the time of levying the county tax, levy a tax upon the taxable property in the district sufficient to raise the amount needed. The rate of taxation is ascertained by deducting fifteen per cent for delinquencies from the assessment, and the rate must be based upon the remainder. The tax so levied must be computed and entered upon the assessment roll by the County Auditor, and collected at the same time and in the same manner as State and county taxes, and when collected shall be paid into the county treasury for the use of the district. *Expenses for, how paid.* *Rate of taxation, how ascertained.*

SEC. 5. The Trustees of the several school districts of this State are hereby required to include in their annual report, and report to the Secretary of the State Board of Health, the number in their several districts between the ages of five and seventeen years who are vaccinated and the number unvaccinated. *Annual report of Trustees.*

SEC. 6. This Act shall take effect immediately.

———

## CHAPTER XXV.

*An Act to amend section seven hundred and thirty-seven of the Political Code, fixing and providing for the salaries of the Judges of the Superior Courts of the City and County of San Francisco, and of the Counties of Alameda, San Joaquin, Los Angeles, Santa Clara, Santa Cruz, San Mateo, Yuba and Sutter combined, Sacramento, Butte, Nevada, Sonoma, Colusa, Monterey, Santa Barbara, San Diego, Tulare, Fresno, Solano, Amador, San Bernardino, Kern, Placer, Humboldt, Marin, Mendocino, Tehama, El Dorado, Alpine, Stanislaus, and Calaveras.*

[Approved February 21, 1889.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

SECTION 1. Section seven hundred and thirty-seven of the Political Code of the State of California is hereby amended so as to read as follows:

3

# EXHIBIT 4

pair the completed part of the program and further will wholly eliminate in the future a continuance of such expanded program because of lack of continuing finances available from such excess tax revenues. In order to remove at the earliest possible time this serious obstacle to the formation of a junior college district which includes all of the identical territory comprising a single existing high school district and to continue the policy of this Legislature in encouraging the formation of such districts and in order to prevent the hardships resulting from the termination of the excess tax rate previously authorized by the identical electorate and to insure the continuous orderly administration of the entire high school and junior college program in operation and effect under such excess tax rate so authorized by the electorate, and all without interruption or loss of tax income essential to the purposes of both districts, it is necessary that this act take effect immediately.

———

## CHAPTER 837

*An act to add Chapter 7 (commencing with Section 3380) to Division 4 of the Health and Safety Code, relating to the immunization of pupils of schools.*

[Approved by Governor June 13, 1961. Filed with Secretary of State June 14, 1961.]    In effect September 15, 1961

*The people of the State of California do enact as follows:*

SECTION 1.   Chapter 7 (commencing with Section 3380) is added to Division 4 of the Health and Safety Code, to read:

### CHAPTER 7.   IMMUNIZATION AGAINST POLIOMYELITIS

3380.   No minor or adult shall be admitted to any public or private elementary or secondary school as a pupil unless such person has, prior to admission, been immunized against poliomyelitis in the manner and with immunizing agents approved by the State Department of Public Health. *Immunization against poliomyelitis*

3381.   Such immunization shall be evidenced by a written record made on a form prescribed by the department. A copy of the record shall be given to the parent or guardian of the child, or if the person receiving immunization is an adult, the copy shall be given to him. *Same: Written record*

3382.   The county health officer of each county shall organize and have in operation by January 1, 1962, an immunization program so that immunization is made available to all persons required by this chapter to be immunized. He shall also determine how the cost of such a program is to be recovered. To the extent that the cost to the county is in excess of that sum recovered from persons immunized, funds made available by the school districts may be used to pay the cost of *Immunization program*

the immunization of any persons seeking admission to the public schools. The remainder of the cost shall be paid by the county in the same manner as other expenses of the county are paid.

Immunization performed by a private physician shall be acceptable for admission to school if the immunization is performed and records are made in accordance with rules established by the State Department of Public Health.

**Co-operation with county health officer** 3383. The governing board of each school district and the governing authority of each private school shall co-operate with the county health officer in carrying out the program for immunization of persons applying for admission to any school under its jurisdiction. The governing board of any school district may use any funds, property, and personnel of the district for that purpose. The governing board of any school district and the governing authority of any private school may permit any person licensed as a physician and surgeon to administer immunization agents to the children and adults seeking admission to any school under its jurisdiction.

**Exemption on account of beliefs** 3384. Immunization of a person shall not be required for admission to a public or private elementary or secondary school if the parent or guardian (in the case of a minor), or the person seeking admission (if an adult), files with the governing board of the school district or the governing authority of the private school, as the case may be, a letter stating that such immunization is contrary to his or her beliefs. However, whenever there is good cause to believe that a person is suffering from poliomyelitis, the person may be temporarily excluded from the school until the governing board of the school district or the governing authority of the private school is satisfied that the disease does not exist.

**Exemption on account of medical circumstances** 3385. If the parent or guardian (in the case of a minor) or the person seeking admission (if an adult) files with the governing board of the school district or the governing authority of the private school a written statement by a licensed physician to the effect that the physical condition of the child or adult is such, or medical circumstances relating to the child or adult are such that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances which contraindicate immunization, such person shall be exempt from the requirements of this chapter to the extent indicated by the physician's statement.

**Rules and regulations** 3386. The department shall adopt and enforce all rules and regulations necessary to carry out the provisions of this chapter.

# EXHIBIT 5

**Senate Bill No. 277**

CHAPTER 35

An act to amend Sections 120325, 120335, 120370, and 120375 of, to add Section 120338 to, and to repeal Section 120365 of, the Health and Safety Code, relating to public health.

[Approved by Governor June 30, 2015. Filed with Secretary of State June 30, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

SB 277, Pan. Public health: vaccinations.

Existing law prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any public or private elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless prior to his or her admission to that institution he or she has been fully immunized against various diseases, including measles, mumps, and pertussis, subject to any specific age criteria. Existing law authorizes an exemption from those provisions for medical reasons or because of personal beliefs, if specified forms are submitted to the governing authority. Existing law requires the governing authority of a school or other institution to require documentary proof of each entrant's immunization status. Existing law authorizes the governing authority of a school or other institution to temporarily exclude a child from the school or institution if the authority has good cause to believe that the child has been exposed to one of those diseases, as specified.

This bill would eliminate the exemption from existing specified immunization requirements based upon personal beliefs, but would allow exemption from future immunization requirements deemed appropriate by the State Department of Public Health for either medical reasons or personal beliefs. The bill would exempt pupils in a home-based private school and students enrolled in an independent study program and who do not receive classroom-based instruction, pursuant to specified law from the prohibition described above. The bill would allow pupils who, prior to January 1, 2016, have a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization, to be enrolled in any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span, as defined. Except as under the circumstances described above, on and after July 1, 2016, the bill would prohibit a governing authority from unconditionally admitting to any of those institutions for the first time or

91

admitting or advancing any pupil to the 7th grade level, unless the pupil has been immunized as required by the bill. The bill would specify that its provisions do not prohibit a pupil who qualifies for an individualized education program, pursuant to specified laws, from accessing any special education and related services required by his or her individualized education program. The bill would narrow the authorization for temporary exclusion from a school or other institution to make it applicable only to a child who has been exposed to a specified disease and whose documentary proof of immunization status does not show proof of immunization against one of the diseases described above. The bill would make conforming changes to related provisions.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 120325 of the Health and Safety Code is amended to read:

120325.   In enacting this chapter, but excluding Section 120380, and in enacting Sections 120400, 120405, 120410, and 120415, it is the intent of the Legislature to provide:

(a) A means for the eventual achievement of total immunization of appropriate age groups against the following childhood diseases:

(1)  Diphtheria.

(2)  Hepatitis B.

(3)  Haemophilus influenzae type b.

(4)  Measles.

(5)  Mumps.

(6)  Pertussis (whooping cough).

(7)  Poliomyelitis.

(8)  Rubella.

(9)  Tetanus.

(10)  Varicella (chickenpox).

(11)  Any other disease deemed appropriate by the department, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services, the American Academy of Pediatrics, and the American Academy of Family Physicians.

(b) That the persons required to be immunized be allowed to obtain immunizations from whatever medical source they so desire, subject only to the condition that the immunization be performed in accordance with the regulations of the department and that a record of the immunization is made in accordance with the regulations.

(c)  Exemptions from immunization for medical reasons.

(d)  For the keeping of adequate records of immunization so that health departments, schools, and other institutions, parents or guardians, and the persons immunized will be able to ascertain that a child is fully or only partially immunized, and so that appropriate public agencies will be able

to ascertain the immunization needs of groups of children in schools or other institutions.

(e)  Incentives to public health authorities to design innovative and creative programs that will promote and achieve full and timely immunization of children.

SEC. 2.  Section 120335 of the Health and Safety Code is amended to read:

120335.  (a)  As used in this chapter, "governing authority" means the governing board of each school district or the authority of each other private or public institution responsible for the operation and control of the institution or the principal or administrator of each school or institution.

(b)  The governing authority shall not unconditionally admit any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized. The following are the diseases for which immunizations shall be documented:

(1)  Diphtheria.

(2)  Haemophilus influenzae type b.

(3)  Measles.

(4)  Mumps.

(5)  Pertussis (whooping cough).

(6)  Poliomyelitis.

(7)  Rubella.

(8)  Tetanus.

(9)  Hepatitis B.

(10)  Varicella (chickenpox).

(11)  Any other disease deemed appropriate by the department, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services, the American Academy of Pediatrics, and the American Academy of Family Physicians.

(c)  Notwithstanding subdivision (b), full immunization against hepatitis B shall not be a condition by which the governing authority shall admit or advance any pupil to the 7th grade level of any private or public elementary or secondary school.

(d)  The governing authority shall not unconditionally admit or advance any pupil to the 7th grade level of any private or public elementary or secondary school unless the pupil has been fully immunized against pertussis, including all pertussis boosters appropriate for the pupil's age.

(e)  The department may specify the immunizing agents that may be utilized and the manner in which immunizations are administered.

(f)  This section does not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code and does not receive classroom-based instruction.

(g) (1) A pupil who, prior to January 1, 2016, submitted a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization shall be allowed enrollment to any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span.

(2) For purposes of this subdivision, "grade span" means each of the following:

(A) Birth to preschool.

(B) Kindergarten and grades 1 to 6, inclusive, including transitional kindergarten.

(C) Grades 7 to 12, inclusive.

(3) Except as provided in this subdivision, on and after July 1, 2016, the governing authority shall not unconditionally admit to any of those institutions specified in this subdivision for the first time, or admit or advance any pupil to 7th grade level, unless the pupil has been immunized for his or her age as required by this section.

(h) This section does not prohibit a pupil who qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by his or her individualized education program.

SEC. 3.   Section 120338 is added to the Health and Safety Code, to read:

120338.   Notwithstanding Sections 120325 and 120335, any immunizations deemed appropriate by the department pursuant to paragraph (11) of subdivision (a) of Section 120325 or paragraph (11) of subdivision (b) of Section 120335, may be mandated before a pupil's first admission to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, only if exemptions are allowed for both medical reasons and personal beliefs.

SEC. 4.   Section 120365 of the Health and Safety Code is repealed.

SEC. 5.   Section 120370 of the Health and Safety Code is amended to read:

120370.   (a) If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization, that child shall be exempt from the requirements of Chapter 1 (commencing with Section 120325, but excluding Section 120380) and Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician's statement.

(b) If there is good cause to believe that a child has been exposed to a disease listed in subdivision (b) of Section 120335 and his or her documentary proof of immunization status does not show proof of

immunization against that disease, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.

SEC. 6.   Section 120375 of the Health and Safety Code is amended to read:

120375.   (a) The governing authority of each school or institution included in Section 120335 shall require documentary proof of each entrant's immunization status. The governing authority shall record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by the department. The immunization record of each new entrant admitted conditionally shall be reviewed periodically by the governing authority to ensure that within the time periods designated by regulation of the department he or she has been fully immunized against all of the diseases listed in Section 120335, and immunizations received subsequent to entry shall be added to the pupil's immunization record.

(b)  The governing authority of each school or institution included in Section 120335 shall prohibit from further attendance any pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of the department, unless the pupil is exempted under Section 120370, until that pupil has been fully immunized against all of the diseases listed in Section 120335.

(c)  The governing authority shall file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department at times and on forms prescribed by the department. As provided in paragraph (4) of subdivision (a) of Section 49076 of the Education Code, the local health department shall have access to the complete health information as it relates to immunization of each student in the schools or other institutions listed in Section 120335 in order to determine immunization deficiencies.

(d)  The governing authority shall cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. The governing board of any school district may use funds, property, and personnel of the district for that purpose. The governing authority of any school or other institution may permit any licensed physician or any qualified registered nurse as provided in Section 2727.3 of the Business and Professions Code to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

O

# Exhibit 6

# SENATE COMMITTEE ON HEALTH
### Senator Ed Hernandez, O.D., Chair

| | |
|---|---|
| **BILL NO:** | SB 277 |
| **AUTHOR:** | Pan and Allen |
| **VERSION:** | February 19, 2015 |
| **HEARING DATE:** | April 8, 2015 |
| **CONSULTANT:** | Melanie Moreno |

**SUBJECT:** Public health: vaccinations

**SUMMARY:** Eliminates the personal belief exemption from the requirement that children receive specified vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school or day care center.

**Existing law:**

1. Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against diphtheria, haemophilus influenzae type b (Hib), measles, mumps, pertussis, poliomyelitis, rubella, tetanus, hepatitis b (except after 7th grade), and chickenpox, as specified.

2. Permits the Department of Public Health (DPH) to add to this list any other disease deemed appropriate, taking into consideration the recommendations of the Centers for Disease Control and Prevention (CDC) Advisory Committee on Immunization Practices (ACIP) and the American Academy of Pediatrics (AAP) Committee on Infectious Diseases.

3. Waives the above immunization requirements if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization.

4. Waives the above immunization requirements if the parent or guardian or adult who has assumed responsibility for the child's care and custody, or the person seeking admission, if an emancipated minor, files a letter with the governing authority stating that the immunization is contrary to his or her beliefs.

5. Requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Requires the form to include:

   a. A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community. Requires the attestation to be signed not more than six months before the date when the person first

**SB 277 (Pan and Allen)**                                    Page 2 of 10

becomes subject to the immunization requirement for which exemption is being sought.

b. A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above. Requires the statement to be signed not more than six months before the date when the person first becomes subject to the immunization requirements as a condition of admittance.

6. Permits a child for whom the requirement has been waived, whenever there is good cause to believe that he or she has been exposed to one of the specified communicable diseases, to be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing the disease.

**This bill:**

1. Deletes the exemption for personal beliefs in #4 above and related existing law requiring a specified form to accompany a letter to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian.

2. Requires school districts, at the beginning of the first semester or quarter of the regular school term, to notify parents or guardians of students of the immunization rates for the school in which a pupil is enrolled, as specified.

<u>FISCAL EFFECT:</u>  This bill has not yet been analyzed by a fiscal committee.

<u>COMMENTS:</u>

1. **Author's statement.** According to the author, in early 2015, California became the epicenter of a measles outbreak which was the result of unvaccinated individuals infecting vulnerable individuals including children who are unable to receive vaccinations due to health conditions or age requirements. According to the CDC, there were been more cases of measles in January 2015 in the U.S. than in any one month in the past 20 years. Measles has spread through California and the U.S., in large part, because of communities with large numbers of unvaccinated people. Between 2000 and 2012, the number of Personal Belief Exemptions (PBE) from vaccinations required for school entry that were filed rose by 337 percent. In 2000, the PBE rate for Kindergartners entering California schools was under one percent. However, as of 2012, that number rose to 2.6 percent. From 2012 to 2014, the number of children entering Kindergarten without receiving some or all of their required vaccinations due to their parent's personal beliefs increased to 3.15 percent (a 25 percent increase over the previous two years). In certain pockets of California, exemption rates are as high as 21 percent which places our communities at risk for preventable diseases. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95 percent are necessary to preserve herd immunity and prevent future outbreaks.

2. **Immunizations.** According to the CDC, vaccines contain the same antigens or parts of antigens that cause diseases, but the antigens in vaccines are either killed or greatly weakened. Vaccine antigens are not strong enough to cause disease, but they are strong enough to make the immune system produce antibodies against them. Memory cells prevent re-infection when they encounter that disease again in the future. Vaccines are responsible

for the control of many infectious diseases that were once common around the world, including polio, measles, diphtheria, pertussis (whooping cough), rubella (German measles), mumps, tetanus, and Hib. Vaccine eradicated smallpox, one of the most devastating diseases in history. Over the years, vaccines have prevented countless cases of infectious diseases and saved literally millions of lives. Vaccine-preventable diseases have a costly impact, resulting in doctor's visits, hospitalizations, and premature deaths. Sick children can also cause parents to lose time from work. CDC recommends routine vaccination to prevent 17 vaccine-preventable diseases that occur in infants, children, adolescents, or adults.

3. **ACIP.** According to ACIP, it consists of 15 experts who are voting members and are responsible for making vaccine recommendations. The Secretary of the U.S. Department of Health and Human Services selects these members after an application, interview, and nomination process. Fourteen of the members have expertise in vaccinology, immunology, pediatrics, internal medicine, nursing, family medicine, virology, public health, infectious diseases, and/or preventive medicine; one member is a consumer representative who provides perspectives on the social and community aspects of vaccination. ACIP develops written recommendations for the routine administration of vaccines to pediatric and adult populations, along with schedules regarding the appropriate periodicity, dosage, and contraindications applicable to the vaccines and is the only entity within the federal government which makes such recommendations. The overall goals of ACIP are to provide advice to assist in reducing the incidence of vaccine-preventable diseases and to increase the safe usage of vaccines and related biological products.

ACIP, along with AAP, the American Academy of Family Physicians, and the American College of Obstetricians and Gynecologists, approved the 2015 Recommended Immunization Schedules for Persons Aged 0 Through 18 Years. Children under six are recommended to receive vaccines for: hepatitis b; rotavirus; diphtheria, tetanus, and pertussis (DTaP); Hib; pneumococcal; polio; influenza; measles, mumps, rubella (MMR); varicella; hepatitis a; and meningococcal.

4. **School vaccination requirements.** States enact laws or regulations that require children to receive certain vaccines before they enter childcare facilities and school, but with some exceptions, including medical, religious, and philosophical objections. School vaccination requirements are thought to serve an important public health function, but can also face resistance. An article published in the 2001-2002 Kentucky Law Journal reviewed historical and modern legal, political, philosophical, and social struggles surrounding vaccination requirements. The authors stated that though school vaccination has been an important component of public health practice for decades, it has had a controversial history in the United States and abroad. Historical and modern examples of the real, perceived, and potential harms of vaccination, governmental abuses underlying its widespread practice and strongly held religious beliefs have led to fervent objections among parents and other persons who object to vaccines on legal, ethical, social, and epidemiological grounds. The article states that public health authorities argue that school vaccination requirements have led to a drastic decrease in the incidence of once common childhood diseases. Those who object to vaccines tend to view the consequences of mass vaccination on an individualistic basis, focusing on alleged or actual harms to children from vaccinations. As part of their research, the authors compared childhood immunization rates and rates of vaccine-preventable childhood diseases before and after the introduction of school vaccination requirements. The data suggest that school vaccination requirements have succeeded in increasing vaccination rates and reducing the incidence of childhood disease

5. **Exemptions to vaccine requirements.** There are two types of non-medical exemptions to the requirement that children be vaccinated before entering school: religious exemption and philosophical exemption. Religious exemption means that there is a provision in the statute that allows parents to exempt their children from vaccination if it contradicts their sincere religious beliefs. Philosophical exemption means that the statutory language does not restrict the exemption to purely religious or spiritual beliefs. For example, Maine allows restrictions based on "moral, philosophical or other personal beliefs," and California allows objections based on simply the parent(s) beliefs. According to the National Conference of State Legislatures, as of June 2014, 48 states allow religious exemptions (all but Mississippi and West Virginia), and 20 states (Arizona, California, Colorado, Idaho, Louisiana, Maine, Michigan, Minnesota, Missouri (limited to childcare enrollees), New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Utah, Vermont, Washington, West Virginia and Wisconsin) permit philosophic exemptions. As of February, several state legislatures had introduced bills that would address non-medical exemptions. In addition to California, legislators in Oregon, Vermont, and Washington proposed to remove philosophical/personal belief exemption this year. Those bills were tabled in Oregon and Washington.

6. **California vaccination rates.** According to an August 2014 DPH fact sheet, vaccination coverage in California is at or near all-time high levels. DPH states that the implementation of current vaccine requirements has been effective in maintaining greater than or equal to 92 percent immunization coverage among children in licensed child care facilities and kindergartens. The DPH Immunization Branch maintains data on its website related to vaccination rates and is searchable statewide and by school (kindergarten and 7th grade rates) and child care facility. For school year 2014-15, DPH reported that 90.4 percent of the 535,332 students enrolled in reporting kindergartens received all required immunizations, which is a 0.2 percent increase from last year. In addition, the percentage of conditional entrants increased by 0.4 percent from last year. The percentage of students with permanent medical exemptions (PMEs) stayed the same at 0.19 percent, and there was a 0.61 percent decrease in students with PBEs compared with last year. Immunization coverage remained above 92 percent for each vaccine for all schools since last year.

7. **California measles outbreak.** The authors point to an outbreak of measles that began in December 2014 in Disneyland (Orange County) as one of the reasons for the introduction of this bill. There have been 134 confirmed measles cases reported in California residents as part of this outbreak. The latest confirmed measles case had rash onset on March 2nd, and DPH will consider the outbreak over when 42 days have elapsed from the end of the infectious period of the last known measles cases that was a not a new importation. As of the most recent DPH Surveillance Update, that date will be April 17, 2015. Of the confirmed cases: 40 cases visited Disneyland between December 17 and 20 where they are presumed to have been exposed to measles; 30 are household or close contacts to a confirmed case; 11 were exposed in a community setting (e.g., emergency room) where a confirmed case was known to be present; 50 have an unknown exposure source but are presumed to be linked to the outbreak based on a combination of descriptive epidemiology or strain type; and, three cases are known to have a different genotype from the outbreak strain. The ages of those infected with the measles during this outbreak varied, with 56 percent being 20 years or older, 18 percent were between the ages of five and 19, 15 percent were ages one to four, and 11 percent were under the age of one. Among measles cases for whom DPH have vaccination documentation, 57 were unvaccinated and 25 had one or more doses of MMR vaccine.

8. **Triple referral.** This bill has been triple referred to the Committees on Health, Education, and Judiciary. Should it pass out of this Committee, it will be heard in Senate Education Committee next.

9. **Related legislation.** SB 792 (Mendoza) would prohibit a person from being employed at a day care center or day care home unless he or she has been immunized against influenza, pertussis, and measles. *SB 792 is set to be heard in this Committee on April 15, 2015.*

10. **Prior legislation.** SB 2109 (Pan), Chapter 821, Statutes of 2012, requires, on and after January 1, 2014, a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Requires the form to include:

    a. A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community.

    b. A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above.

The Governor included a message with his signature on this bill, which stated, in part:

> "*I will direct (DPH) to allow for a separate religious exemption on the form. In this way, people whose religious beliefs preclude vaccinations will not be required to seek a health care practitioner's signature.*"

AB 2064 (V. Manuel Pérez), would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group in an amount not less than the actual cost of acquiring the vaccine plus the cost of administration of the vaccine, as specified. *AB 2064 was held on the Assembly Appropriations Committee suspense file.*

SB 614 (Kehoe), Chapter 123, Statutes of 2011, allowed a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance for the 2011-12 school year, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

AB 354 (Arambula), Chapter 434, Statutes of 2010, allows DPH to update vaccination requirements for children entering schools and child care facilities and adds the American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Requires children entering grades 7 through 12 receive a TDaP booster prior to admittance to school.

AB 1201 (V. Manuel Pérez), of 2009, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group the entire cost of acquiring and administering the vaccine, and prohibits a health plan or insurer from requiring cost-sharing for immunizations. *AB 1201 was held on the Assembly Appropriations Committee suspense file.*

SB 1179 (Aanestad), of 2008, would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. *SB 1179 died in Senate Health Committee.*

AB 2580 (Arambula), of 2008, would have required pupils entering the seventh grade to be fully immunized against pertussis by receiving any necessary adolescent booster immunization. *AB 2580 was held on the Senate Appropriations Committee suspense file.*

SB 676 (Ridley-Thomas), of 2007, would have required pupils entering the seventh grade to be fully immunized against pertussis. *SB 676 was held on suspense in Assembly Appropriations Committee.*

SB 533 (Yee), of 2007, would have added pneumococcus to the list of diseases that pupils are required to be immunized against before entry into any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, except for children who are 24 months of age or older. *SB 533 was vetoed by the Governor, who stated that a mandate for this vaccination was not necessary.*

11. **Support.** Vaccinate California, the sponsor of this bill, writes that there is an overwhelming scientific consensus that vaccines work, and vaccines prevent terrible diseases that kill and maim. Vaccinate California states that when too many people forego vaccines, everyone is put at risk since no vaccine is 100 percent effective, and there are always people too young or too frail to be vaccinated. Vaccinate California asserts that experts can explain the science in detail, but the bottom line is that even though vaccine-refusers are small in number, their impact on the state is huge, and it is scary. The Health Officers Association of California (HOAC) states that despite the effectiveness of vaccines, California's public health departments have seen a rise in vaccine-preventable diseases such as pertussis and measles largely because many residents are choosing to selectively immunize or opt out of vaccinating their children. HOAC writes that these decisions risk the health of the community and can be particularly detrimental, even fatal, to newborns, infants, toddlers, and those living with immunocompromising health conditions. The Los Angeles County Board of Supervisors states that increased immunizations of school children can avoid preventable illnesses that could result in additional visits to hospital emergency rooms. The California Medical Association states that vaccines have undergone significant rigorous scientific review and continue to have ongoing safety tracking and that this indisputably shows that vaccines are effective and have very low risks. The California School Nurses Organization states that changing the school entry requirement to a medical exemption only will serve the public and schools well as "community immunity" varies by vaccine but it provides protection for those students and staff who, for medical reasons are unable to be vaccinated or are immunocompromised. California Coverage & Health Initiatives, Children NOW, The Children's Partnership, and Children's Defense Fund write that benefits of immunizations outweigh costs, and the social and direct economic costs of ensuring each child receives the ACIP recommended schedule of vaccines far outweighs the costs of not providing routine

immunizations. This coalition states that it is estimated that for every $1 spent on immunizations, as many as $29 can be saved in direct and indirect costs. The California State PTA recognizes that there are children in our schools who cannot receive vaccines and immunizations due to medical reasons and are therefore susceptible to diseases should an outbreak occur, and it is our duty as a community protect vulnerable children and families by vaccinating those children who can be vaccinated. The California Immunization Coalition writes that although AB 2109 helped tighten up the personal belief exemption process, it is not enough and California needs to take stronger measures to protect children in our schools and in our communities. Insurance Commissioner Dave Jones writes that that the higher number of unvaccinated students is jeopardizing public health not only in schools but in the broader community, and that we need to take steps to keep schools safe and students healthy by preventing serious and potentially life-threatening diseases.

12. **Support if amended.** The Marin County Board of Supervisors writes that in order to address concerns of parents who home school their children in their own home, they request that this bill be amended to clarify that it does not apply in a home school setting.

13. **Concerns.** The ACLU of California writes that while they appreciate that vaccination against childhood diseases is a prudent step that should be promoted for the general welfare, they do not believe there has been a sufficient showing of need at present to warrant conditioning access to education on mandatory vaccination for each of the diseases covered by this bill. ACLU of California writes that unlike other states, public education is a fundamental right under the California Constitution, and equal access to education must therefore not be limited or denied unless the State demonstrates that its actions are "necessary to achieve a compelling state interest." ACLU of California writes that this bill does not declare what this interest might be, nor does it explain why denying students access to education is necessary to advance that interest. If there is, in fact, a compelling governmental interest in mandating that all students in every school be vaccinated against each of the enumerated diseases except for medical reasons, the bill should be amended to explain specifically what that interest is, where it exists, and under what conditions and circumstances it arises.

ACLU of California further states that the reforms enacted by AB 2109 had been in effect for only about 12 months before this bill was announced, and that those reforms should be allowed an opportunity to work before they are stricken and replaced by an approach that restricts the fundamental right to education. If AB 2109 is thought not to be working, its effects should be analyzed and any deficiencies should be corrected. If for example herd-immunity levels have not been achieved for certain diseases in geographic areas where school districts may not be not fully complying with the law, those districts should be provided with additional resources and/or compliance incentives. ACLU of California writes that in some cases it appears the deficiencies may reflect a need for better data-keeping and reporting, rather than the actual rate of vaccinations. It has been reported for example that in just one week the Los Angeles Unified School District increased its vaccination rates significantly after the recent measles outbreak by temporarily hiring additional staff to replace nursing and clerical staff that had been laid off. Other media reports indicate that some districts may not be complying with existing law because there is no penalty and no mechanism for enforcement. ACLU of California states that in any event, herd immunity is a concept that applies to the entire population in a geographic area, not simply to public school students.

14. **Opposition.** The Association of American Physicians and Surgeons Inc. state that the need for informed consent is a firmly established principal of medical ethics and human rights and that the state has no right to force medical interventions on people without their consent. ParentalRights.Org contends that this measure violates the fundamental right of parents to direct the care and upbringing of their child and that it disenfranchises children whose parents oppose vaccinations from receiving free public education as provided by their parents' taxes. The California Chiropractic Association mentions that the Mayo Clinic warns against undermining the principle of informed consent in favor of universal vaccination and further states we ought not let a handful of measles cases at Disneyland turn into a full-scale assault on civil and human rights in America. The National Vaccine Information Center argues that it's particularly disturbing that physicians in the American Medical Association Code of Ethics affirm philosophical and religious exemptions for themselves yet want to remove this right for California parents. The Pacific Justice Institute argues that statewide vaccination rates exceed the threshold for herd immunity and, to the extent that a few communities have fallen below vaccination levels needed for herd immunity, the Legislature could consider approaches that allow greater local decision-making and accountability rather than imposing across-the-board statewide mandates. Families for Early Autism Treatment contend that this bill is contrary to the rights protected by the State and Federal Constitutions as it denies rights to privacy, education, free assembly, religious expression, consensual use of one's physical body and liberty. Educate. Advocate. writes that every medical intervention has both benefits and risks and that parents, not the State of California, have the right to decide which medical interventions their children receive. The Canary Party maintains that the United States Justice System deems each and every vaccine on the market as "unavoidably unsafe", which means that even when used as directed, someone will be harmed, or may even die from the vaccine. The Capitol Resource Institute notes that following the passage of AB 2109 the personal belief exemption rate fell from 3.1 percent in 2013 to 2.5 percent in 2014 after only a partial implementation of the law, and that this bill is far reaching and unnecessary. The Homeschool Association of California states this bill will negatively impact the freedom to homeschool and would make it impossible for many families to choose to homeschool legally. They argue that almost all homeschooling families use a legal option that involves attendance at some form of public or private school, either operated by a third party or operated by parents who file a private school affidavit, yet current law requires children admitted to private schools be fully vaccinated in accordance with existing law.

15. **Oppose unless amended.** California Naturopathic Doctors Association (CNDA) states that it supports immunization for the prevention of disease and the public health objective of achieving high rates of immunity to infectious disease. CNDA states that as licensed primary care doctors who can diagnose medical conditions such as anaphylaxis and immunodeficiency, reasons outlined in the CDC's list of contraindications to common pediatric vaccinations, naturopathic doctors must also be able to sign medical waivers for vaccination, when such medical conditions exist. CNDA opposes this bill unless it is amended to include NDs as providers who can sign medical waivers for vaccination.

16. **Amendments.** The author requests that the committee approve the following amendments:
    a. On page 5, delete lines 17-25, and move language contained in lines 26-31 to HSC 120370.

    b. *On page 5, beginning on line 26:*

**SB 277 (Pan and Allen)**                                                          Page 9 of 10

(b) When there is good cause to believe that ~~the~~ *a* person *who has not filed proof of immunization* has been exposed to one of the communicable diseases listed in subdivision of Section 120325

c.    *Add a new section:*
120335 (b) "The governing authority shall not unconditionally admit any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized. This section shall not apply to home-based private schools whose students are all members of the household or all members of a single family."

**SUPPORT AND OPPOSITION:**

**Support:**    Vaccinate California (sponsor)
American Academy of Pediatrics
American Lung Association
Biocom
California Association of Nurse Practitioners
California Chapter of the American College of Emergency Physicians
California Children's Hospital Association
California Coverage and Health Initiatives
California Immunization Coalition
California Medical Association
California Optometric Association
California School Nurses Organization
California State Parent-Teacher Association
Children Now
Children's Defense Fund California
Children's Specialty Care Coalition
County of Los Angeles
County of Santa Cruz
Health Officers Association of California
Insurance Commissioner Dave Jones
Kaiser Permanente
March of Dimes California Chapter
Providence Health and Services Southern California
San Francisco Unified School District
Secular Coalition for California
Silicon Valley Leadership Group
Solano Beach School District
The Children's Partnership
Hundreds of individuals

**Oppose:**    Association of American Physicians and Surgeons
California Chiropractic Association
California Naturopathic Doctors Association (unless amended)

**SB 277 (Pan and Allen)**                                      Page 10 of 10

       California Nurses for Ethical Standards
       California ProLife Council
       California Right to Life Committee, Inc.
       Canary Party
       Capitol Resource Institute
       Educate. Advocate.
       Families for Early Autism Treatment
       Homeschool Association of California
       National Vaccine Information Center
       Pacific Justice Institute Center for Public Policy
       ParentalRights.org
       SafeMinds
       Hundreds of individuals

**-- END --**

# Exhibit 7

**CDC** Centers for Disease Control and Prevention
CDC 24/7: Saving Lives, Protecting People.™

## Morbidity and Mortality Weekly Report (*MMWR*)

---

# Measles Outbreak — California, December 2014–February 2015

---

*Please note: An erratum has been published for this article. To view the erratum, please click* underline.

*Weekly*

**February 20, 2015 / 64(06);153-154**

*On February 13, 2015, this report was posted as an* MMWR *Early Release on the* MMWR *website (http://www.cdc.gov/mmwr).*

Jennifer Zipprich, PhD1, Kathleen Winter, MPH1, Jill Hacker, PhD1, Dongxiang Xia, MD, PhD1, James Watt, MD1, Kathleen Harriman, PhD1 (Author affiliations at end of text)

On January 5, 2015, the California Department of Public Health (CDPH) was notified about a suspected measles case. The patient was a hospitalized, unvaccinated child, aged 11 years with rash onset on December 28. The only notable travel history during the exposure period was a visit to one of two adjacent Disney theme parks located in Orange County, California. On the same day, CDPH received reports of four additional suspected measles cases in California residents and two in Utah residents, all of whom reported visiting one or both Disney theme parks during December 17–20. By January 7, seven California measles cases had been confirmed, and CDPH issued a press release and an Epidemic Information Exchange (Epi-X) notification to other states regarding this outbreak. Measles transmission is ongoing (Figure).

As of February 11, a total of 125 measles cases with rash occurring during December 28, 2014–February 8, 2015, had been confirmed in U.S. residents connected with this outbreak. Of these, 110 patients were California residents. Thirty-nine (35%) of the California patients visited one or both of the two Disney theme parks during December 17–20, where they are thought to have been exposed to measles, 37 have an unknown exposure source (34%), and 34 (31%) are secondary cases. Among the 34 secondary cases, 26 were household or close contacts, and eight were exposed in a community setting. Five (5%) of the California patients reported being in one or both of the two Disney theme parks during their exposure period outside of December 17–20, but their source of infection is unknown. In addition, 15 cases linked to the two Disney theme parks have been reported in seven other states: Arizona (seven), Colorado (one), Nebraska (one), Oregon (one), Utah (three), and Washington (two), as well as linked cases reported in two neighboring countries, Mexico (one) and Canada (10).

Among the 110 California patients, 49 (45%) were unvaccinated; five (5%) had 1 dose of measles-containing vaccine, seven (6%) had 2 doses, one (1%) had 3 doses, 47 (43%) had unknown or undocumented vaccination status, and one (1%) had immunoglobulin G seropositivity documented, which indicates prior vaccination or measles infection at an undetermined time. Twelve of the unvaccinated patients were infants too young to be vaccinated. Among the 37 remaining vaccine-eligible patients, 28 (67%) were intentionally unvaccinated because of personal beliefs, and one was on an alternative plan for vaccination. Among the 28 intentionally unvaccinated patients, 18 were children (aged <18 years), and 10 were adults. Patients range in age from 6 weeks to 70 years; the median age is 22 years. Among the 84 patients with known hospitalization status, 17 (20%) were hospitalized.

The source of the initial Disney theme park exposure has not been identified. Specimens from 30 California patients were genotyped; all were measles genotype B3, which has caused a large outbreak recently in the Philippines, but has also been detected in at least 14 countries and at least six U.S. states in the last 6 months (*1*).

Annual attendance at Disney theme parks in California is estimated at 24 million (*2*), including many international visitors from countries where measles is endemic. The December holiday season coincides with the exposure period of interest. Since 2011, six confirmed measles cases have been reported to CDPH in persons whose notable exposure was to large theme parks that attract international tourists. International travel to countries where measles is endemic is a well-known risk factor for measles, and measles importations continue to occur in the United States. The number of measles cases reported to CDC is updated weekly at http://www.cdc.gov/measles/cases-outbreaks.html. However, U.S. residents also can be exposed to measles in the United States at venues with large numbers of international visitors, such as other tourist attractions and airports. This outbreak illustrates the continued importance of ensuring high measles vaccination coverage in the United States.

## Acknowledgments

California local health jurisdictions. Regina Chase, Giorgio Cosentino, Alex Espinosa, Natasha Espinosa, Ashraf Fadol, Carlos Gonzalez, Kristina Hsieh, Ruth Lopez, Chris Preas, Maria Salas, Diana Singh, Abiy Tadesse, Patricia Stoll, Kim Hansard,

3/11/24, 11:02 AM    MMWR — November 2014 California Measles Outbreak, December 2014–February 2015

Viral and Rickettsial Disease Laboratory, California Department of Public Health. Patrick Ayscue, Brooke Bregman, Cynthia Yen, Anthony Moore, Anna Clayton, Shrimati Datta, Rosie Glenn-Finer, Immunization Branch, California Department of Public Health.

1California Department of Public Health (Corresponding author: Jennifer Zipprich, jennifer.zipprich@cdph.ca.gov, 510-620-3848)

## References

1. CDC. U.S. multi-state measles outbreak, December 2014–January 2015. Atlanta, GA: US Department of Health and Human Services, CDC; 2015. Available at http://emergency.cdc.gov/han/han00376.asp.
2. Themed Entertainment Association, AECOM. Global attractions attendance report. Burbank, CA: Themed Entertainment Association, AECOM; 2014. Available at http://www.aecom.com/deployedfiles/Internet/Capabilities/Economics/_documents/ThemeMuseumIndex_2013.pdf 📄 🔗 .

**FIGURE. Number of confirmed measles cases (N = 110),* by date of rash onset — California, December 2014–February 2015**



* Reported to the California Department of Public Health as of February 11, 2015.

**Alternate Text:** The figure above is a histogram showing the number of confirmed measles cases (N = 110), by date of rash onset in California during December 2014-February 2015.

Use of trade names and commercial sources is for identification only and does not imply endorsement by the U.S. Department of Health and Human Services.

References to non-CDC sites on the Internet are provided as a service to *MMWR* readers and do not constitute or imply endorsement of these organizations or their programs by CDC or the U.S. Department of Health and Human Services. CDC is not responsible for the content of pages found at these sites. URL addresses listed in *MMWR* were current as of the date of publication.

All *MMWR* HTML versions of articles are electronic conversions from typeset documents. This conversion might result in character translation or format errors in the HTML version. Users are referred to the electronic PDF version (http://www.cdc.gov/mmwr) and/or the original *MMWR* paper copy for printable versions of official text, figures, and tables. An original paper copy of this issue can be obtained from the Superintendent of

Documents, U.S. Government Printing Office (GPO), Washington, DC 20402-9371; telephone: (202) 512-1800. Contact GPO for current prices.

**Questions or messages regarding errors in formatting should be addressed to mmwrq@cdc.gov.

----------------------------------------------------------------------------------------------

Page last reviewed: February 20, 2015
Page last updated: February 20, 2015
Content source: Centers for Disease Control and Prevention

----------------------------------------------------------------------------------------------

Centers for Disease Control and Prevention   1600 Clifton Road Atlanta, GA 30329-4027, USA
800-CDC-INFO (800-232-4636) TTY: (888) 232-6348 - Contact CDC−INFO

☐



# Exhibit 8

**2019-2020 7th Grade Immunization Assessment – Executive Summary**
**California Department of Public Health, Immunization Branch**

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Each autumn California schools are required to report to the California Department of Public Health (CDPH) the status of their students under state immunization requirement laws. In recent years there have been changes to these laws and how public health departments assist schools to implement them. To align with longstanding national recommendations, starting in 2019 students entering 7th grade in California have been required to receive two doses of Varicella (chickenpox) vaccine. In 2014 and 2015 Assembly Bill (AB) 2109 added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 was the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Reported immunization rates remain at high levels but have decreased over the last few years. The proportion of students attending 7th grade in 2019-2020 reported to <u>have received the tetanus, diphtheria and pertussis (Tdap) booster immunization</u> was 97.3%, a 0.1 percentage point decrease from the 2019-2020 school year, a 1.1 percentage point decrease from the 2016-2017 school year, and a 0.8 percentage point increase over six years since 2013-2014.

Regarding the ongoing requirement for Tdap immunization, compared to 2018-2019, in 2019-2020 the proportion of 7th graders reported as:
- Lacking immunization for <u>other reasons specified under SB 277</u> increased from 1.4% to 1.5%, with 1.0% reported as being enrolled in independent study programs.
- Having <u>permanent medical exemptions</u> remained at 0.4%.
- <u>Conditional entrants</u> because of a temporary medical exemption remained at 0.1%.
- Being <u>overdue</u> for immunization increased from 0.6% to 0.7%.

Regarding the <u>new requirement for a second dose of Varicella vaccine</u>, 97.1% of students were reported in 2019-2020 as having received two doses. The proportion of 7th graders in 2019-2020 reported as:
- Lacking immunization for <u>other reasons specified under SB 277</u> was 1.0%, with 0.7% reported as being enrolled in independent study programs.
- Having <u>permanent medical exemption</u> was 0.9%, of which 0.4% were associated with a history of varicella disease.
- <u>Conditional entrants</u> was 0.1% or <u>overdue</u> was 0.7%, the same values as for Tdap immunization.

Because of SB 277, the proportion of 7th graders reported with PBEs for Tdap has remained at 0.0% since 2016-2017. Previously during measures specified in AB 2109, the rate of PBEs had decreased from 3.3% in 2013-2014 to 1.7% in 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities. The effects on the issuance of medical exemptions from legislation signed in 2019, SB 277 and SB 714, will be assessable after full implementation in 2021 and future years.

<u>Download Data</u>

**2019-2020 7th Grade Immunization Assessment – Technical Notes**

**Introduction**

Each autumn all schools with 7th grades in California are required to report student compliance with California School Immunization Laws (California Health and Safety Code Sections 120325-120375). This report summarizes data for the 2019-2020 school year reported by public and private schools with 7th grades, both statewide (Table 1, Figures 1-8) and by county (Tables 2-4, Figure 8).

To align with longstanding national recommendations, starting in 2019 changes to the California Code of Regulations have required students entering 7th grade in California to receive two doses of Varicella (chickenpox) vaccine.

In the 2014-2015 and 2015-2016 school years, entrants were subject to Assembly Bill (AB) 2109, which added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 was the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Two additional bills signed in 2019, SB 277 and SB 714, base criteria for medical exemptions to required immunizations on national standards of care. The effects of these laws on the issuance of medical exemptions will be assessable after full implementation in 2021 and future years.

**Methods**

During the autumn of 2019, California schools registered with the California Department of Education reported data on 7th graders in the 2019-2020 school year to the California Department of Public Health (CDPH). Based on their reported immunization status, students were classified by school staff into the following categories:

- Students immunized with required vaccines:
  - 1 or more doses of Tetanus, diphtheria and pertussis booster (Tdap) vaccine
  - 2 or more doses of Varicella vaccine ['2+ Var'].
- Conditional entrants who had a temporary medical exemption (TME) to Tdap or Varicella vaccine or were not yet due for their second dose of Varicella vaccine.
- Students with a permanent medical exemption (PME) to either Tdap or Varicella vaccine. For Varicella vaccine, PMEs were further distinguished between
  - Physician (MD/DO) verification of varicella disease
  - Medical reasons other than varicella disease
- Other students lacking required immunizations: Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - A home-based private school or
  - An independent study program and do not receive classroom-based instruction.
  - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.
  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Students overdue for required immunizations and subject to exclusion from school until the overdue requirement has been met.

Under SB 277, personal belief exemptions (PBEs) have no longer been an option for 7th graders since the 2016-2017 school year.

Due to rounding, total figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

___

## Results

The number of 7th graders in California whose immunization status was reported was 519,454 in 2018-2019 and 505,017 in 2019-2020 (Table 1). The number of schools that reported was 4,749 in 2018-2019 and 4,750 in 2019-2020, and the number of schools that did not report decreased from 263 to 207 (Tables 1 and 2). The number of public schools that reported increased from 2,989 in 2018-2019 to 3,014 in 2019-2020 (Tables 1 and 2). The number of private schools that reported was 1,760 in 2018-2019 and 1,736 in 2019-2020. Private schools accounted for 7% (35,952 / 505,017) of all 7th graders about whom data was reported in 2019-2020, 37% (1,736 / 4,750) of all schools that reported data on 7th graders and 80% (165/207) of schools that did not report.

Figures 1-3 and 8 show trends for 7th grade students in all, public or private schools reported as having: been immunized with Tdap; PBEs; and PMEs. Figures 4-8 display for recent school years the distribution of major reporting categories for students reported from: all schools; public schools; and private schools.

Immunized with Tdap: Of 505,017 7th graders whose schools reported their status in 2019-2020, 505,017 (97.3%) have been immunized with Tdap, a decrease from the previous school year of 0.1 percentage points (difference of unrounded values) and an increase over the six school years since 2013-2014 of 0.8 percentage points (Tables 1 and 3, Figures 1 and 4). For counties reporting at least 35 students, the highest rates of at least 99% were reported in Inyo, San Benito, Monterey, and Imperial counties (Table 3.

In 2019-2020 12 (21%) counties in California reported rates of 7th graders with Tdap of less than 95% compared to 13 (22%) of 58 counties in 2019-2020 (Table 3, Figure 8). The rate in some of these counties is influenced by online or virtual schools that are based in the county but that may enroll children who reside in other counties (Box); many students in virtual schools qualify for exemptions from requirements under SB 277 (see Methods and below).

| % of Pupils Reported to Receive Tdap or Varicella | | | | | |
|---|---|---|---|---|---|
| County | Vaccine | All Schools | Classroom-Based Schools | Virtual Schools | % of Pupils Reported to Attend Virtual Schools* |
| El Dorado | Tdap | 88.8% | 96.5% | 27.3% | 11.2% |
| Sutter | Tdap | 82.8% | 88.6% | 34.3% | 10.7% |
| | Varicella | 88.0% | 92.3% | 51.7% | 10.7% |

As in past years, a higher proportion of students in public compared to private schools were reported as being immunized with Tdap (97.6% vs. 94.1%; difference of 3.5 percentage points) (Table 1, Figures 6 and 7). This gap is 0.2 percentage points larger compared with 2018-2019 (97.7% vs. 94.4%).

Immunized with Varicella vaccine: 2019-2020 was the first school year that two or more doses of Varicella vaccine has been required for 7th graders in California. 97.1% were reported as having completed a two-dose series in 2019-2020 (Table 1). For counties reporting at least 35 students, the highest rates of at least 99% were reported in San Benito, Kings, Merced, and Tulare.

In 2019-2020, 16 (28%) counties in California reported rates of 7th graders with Varicella immunization less than 95% (Table 4, Figure 9). A higher proportion of students in public compared to private schools were reported as being immunized with Varicella (97.3% vs.94.6%; difference of 2.7 percentage points) (Table 1).

Conditional entrants: Over the last four school years, the proportion of students reported as conditional entrants because of a temporary medical exemption for Tdap immunization has remained at 0.1% (Tables 1 and 3), whether in all schools or in public schools. The proportion of 7th graders reported as conditional entrants for Varicella immunization in 2019-2020 was 0.3% (Table 1), of which 0.1% were reported as having had a temporary medical exemption and 0.3% were not yet due for their second dose.

In 2019-2020, 0.4% of 7th graders in private schools were reported as conditional entrants for Tdap, compared with 0.6% in 2018-2019, while 0.7% of 7th graders in private schools were reported as conditional entrants for Varicella.

PMEs: The percentage of students with PMEs for Tdap decreased from 0.5% in 2018-2019 to 0.4% in 2019-2020 (Tables 1 and 3, Figures 3 and 4). In public schools, the number (but not the percentage) of students reported with PMEs for Tdap decreased from 1,942 (0.4%) to 1,769 (0.4%) (Figure 6), while for private schools, the number of students decreased from 536 (1.5%) to 483 (1.3%) (Figure 7).

The proportion of students reported with PMEs for Varicella was 0.9% (Tables 1 and 4), of whom 0.4% were reported as having had physician verification of varicella disease and 0.4% were reported as having had other reasons for their exemptions (Tables 1 and 4).

Other students lacking required immunizations: The proportion of 7th graders reported to be lacking Tdap immunization and to attend an independent study program and do not receive classroom-based instruction, attend a home-based private school, or receive services in an IEP increased for Tdap from 1.4% in 2018-2019 to 1.5% in 2019-2020 (Tables 1 and 3, Figure 4). Children reported as being enrolled in independent study programs continue to account for most students in this category (1.0%, or 5,222) (Table 1), and for the increase compared to the previous year (0.1 of the 0.1 percentage point increase). The proportion of students in this category increased from 1.3% to 1.5% in public schools (Table 1, Figure 6), and decreased from 2.0% to 1.8% in private schools (Figure 7).

The proportion of 7th graders in this category reported to be lacking two doses of Varicella vaccine was reported as 1.0% (Tables 1and 4, Figure 5), including 1.0% in public schools (Table 1), and 1.7% in private schools.

Nearly 70% of the number of children enrolled in independent study programs and lacking immunizations were reported from schools based in 10 counties: San Diego, Kern, Los Angeles, San Bernardino, Riverside, Sacramento, Sutter, El Dorado, Orange, and Fresno. Some of these students are enrolled in virtual schools and reside in other counties.

Overdue: The percentage of students reported as being overdue for Tdap immunization (Tables 1 and 3, Figure 4) increased from 0.6% in 2018-2019 to 0.7% in 2019-2020, including 0.5% (2,528) in public schools (Figure 6) and 2.4% (852) in private schools (Figure 7).

The percentage of students reported as being overdue for Varicella immunization (Tables 1 and 4) was 0.7%, including 0.6% (3,022) in public schools and 1.3% (468) in private schools.

Combined categories: 7th graders who are required to receive immunization are reported in three categories: having been immunized; conditional entrants; and being overdue for required doses. After rounding, the 7th graders who were reported in the sum of these three categories:
- For Tdap, decreased by 0.1 percentage points from 98.2% in 2018-2019 to 98.1% in 2019-2020.
- For Varicella vaccine was also 98.1% in 2019-2020.

Conversely, the sum of 7th graders reported as not having to receive a required vaccine because of PMEs or for other criteria specified in SB 277 was 1.9% in 2019-2020 for either Tdap or Varicella vaccine.

## Discussion

Reported immunization rates remain at high levels but have decreased over the last three school years. The proportion of students reported to enter 7th grade in California after receiving Tdap increased by 1.8 percentage points from 96.6% to 98.4% between the four school years from 2013-2014 to 2016-2017 and further decreased by 1.1 percentage points to 97.3% in 2019-2020. The number of 7th graders (505,017) whose status was reported in 2019-2020 remains at amongst the largest numbers since the Tdap requirement began in the 2011-2012 school year.

The total proportion of 7th graders reported in 2019-2020 as exempted from required immunizations was 1.9% for both Tdap and Varicella vaccine. However, the proportion lacking required immunizations under other criteria introduced in SB 277 was 0.5% higher for Tdap than Varicella vaccine (1.5% vs. 1.0%), while the proportion with PMEs was 0.5% higher for Varicella vaccine than Tdap (0.4% vs 0.9%). The proportion of 7th graders with a PME due to a history or varicella disease (0.4%) might represent much of the difference between the two vaccines. As CDPH receives aggregate counts from each school rather than records on each student, it is not clear how many pupils with PMEs to varicella vaccine:
- Because of a history of varicella disease were also exempted from Tdap vaccine because of criteria introduced in SB 277.
- For reasons other than a history of varicella disease (0.4% of cohort) also had a PME to Tdap (0.4%)

Future assessments will continue to follow the trends for these categories.

Most 7th graders exempted from Tdap vaccine because of criteria introduced in SB 277 (1.0% of 1.5% for Tdap, 0.7% of 1.0% for Varicella vaccine) continue to be reported as being enrolled in

independent study programs, representing an increase for Tdap from 2019-2020 of 0.1 percentage points.

Adolescents categorized at the beginning of the school year as overdue entrants for Tdap represented 0.7% of 7th graders reported in 2019-2020, compared with 0.4% in both 2016-2017 and 2015-2016. Ongoing efforts to educate schools and support immunization services might reduce the number of children in this category in the future.

Adolescents who have not been immunized remain at higher risk of contracting vaccine-preventable diseases. In 2019-2020, rates of immunization less than 95% were reported for Tdap in 12 (21%) counties in California and for Varicella vaccine in 16 (28%) counties. As an additional source of vulnerability, recent changes to California's school immunization laws have not been applicable to many high school students. Ongoing efforts to further improve adolescent immunization are warranted.

## Limitations

This report is subject to limitations that include:

- 207 California schools that might have had students in 7th grade, including 165 private schools and 42 public schools, did not report their immunization data; in the absence of reporting, CDPH does not know how many of these schools enrolled 7th graders this year or the immunization status of any 7th graders enrolled there. Local health departments continue to work with schools to increase reporting.
- As in previous years, additional private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- It is possible that some immunization records provided to schools have been incomplete. The presence of incomplete records would underestimate immunization coverage. Any improvements over time in completion of records since reporting would increase estimates of coverage.
- Changes over time in the quality of reporting by schools are another potential explanation for changes in immunization rates.

*For further information, please contact the CDPH Immunization Branch at SchoolAssessments@cdph.ca.gov.*

*For media inquiries, please contact CDPH Office of Public Affairs via e-mail cdphpress@cdph.ca.gov or phone 916-440-7259.*

**Figures**

Figure 1. Percentage of 7th Grade Students with 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020

Figure 2. Percentage of 7th Grade Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2011-2012 to 2019-2020

Figure 3. Percentage of 7th Grade Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2011-2012 to 2019-2020

Figure 4. Percentage of All 7th Grade Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020

Figure 5. Percentage of All 7th Grade Students by Reported Admission Status by School Year, Tdap and Varicella Vaccine, 2019-2020

Figure 6. Percentage of Public School 7th Grade Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 7. Percentage of Private School 7th Grade Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 8. Map: 7th Grade Students with 1 or More Doses of Tdap Vaccine, by County, 2018-2019 and 2019-2020 School Years

Figure 9. Map: 7th Grade Students with 2 or More Doses of Varicella Vaccine, by County, 2019-2020 School Years

**Tables**

Table 1. 7th Grade Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years

Table 2. Number and Percentage of Schools Reporting, by County and School Type

Table 3. Total Enrollment and Admission Status, Tdap Vaccine, 2019-2020 and 2018-2019, by County

Table 4. Total Enrollment and Admission Status, Varicella Vaccine, by County



**Figure 1. Percentage of 7th Grade Students with 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020**



**Figure 2. Percentage of 7th Grade Students with Personal Beliefs Exemptions (PBEs) to 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020**



**Figure 3. Percentage of 7th Grade Students with Permanent Medical Exemptions (PMEs) to 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 4. Percentage of All 7th Grade Students by Reported Admission Status Related to Tdap Vaccine by School Year, 2013-2014 to 2019-2020.** In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. In the 2016-2017 school year and forward, entrants have been subject to SB 277.



**Figure 5. Percentage of All 7th Grade Students by Reported Admission Status by School Year, Tdap and Varicella Vaccine, 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277

**Figure 6. Percentage of Public School 7th Grade Students with 1 or More Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 7. Percentage of Private School 7th Grade Students with 1 or More Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



**Figure 8.  7th Grade Students with 1 or More Doses of Tdap Vaccine, by County, 2018-2019 and 2019-2020 School Years**



**Figure 9.  7th Grade Students with 2 or More Doses of Varicella Vaccine, by County, 2019-2020 School Year**

**Table 1. 7th Grade Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years**

| | 2019-2020 | | | 2018-2019 | | | 1-Year Percentage Point Change | | |
|---|---|---|---|---|---|---|---|---|---|
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools | 4,750 | 3,014 | 1,736 | 4,749 | 2,989 | 1,760 | | | |
| Number of Students | 505,017 | 469,065 | 35,952 | 519,454 | 483,429 | 36,025 | | | |
| **Received Tdap\*** | 97.3% | 97.6% | 94.1% | 97.5% | 97.7% | 94.4% | -0.1% | -0.1% | -0.4% |
| Conditional Entrants for Tdap | 0.1% | 0.1% | 0.4% | 0.1% | 0.1% | 0.6% | -0.1% | -0.1% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.4% | 0.4% | 1.3% | 0.5% | 0.4% | 1.5% | 0.0% | 0.0% | -0.1% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap | 1.5% | 1.5% | 1.8% | 1.4% | 1.3% | 2.0% | 0.1% | 0.2% | -0.1% |
| *Independent Study* | *1.0%* | *1.1%* | *0.1%* | *1.0%* | *1.0%* | *0.0%* | *0.1%* | *0.1%* | *0.1%* |
| *IEP Services* | *0.3%* | *0.3%* | *0.5%* | *0.3%* | *0.3%* | *0.6%* | *0.0%* | *0.0%* | *-0.1%* |
| *Home-Based Private* | *0.1%* | *0.0%* | *1.3%* | *0.1%* | *0.0%* | *1.4%* | *0.0%* | *0.0%* | *-0.1%* |
| Overdue for Tdap Vaccine | 0.7% | 0.5% | 2.4% | 0.6% | 0.5% | 1.5% | 0.1% | 0.0% | 0.8% |
| **Received 2+ Varicella\*\*** | 97.1% | 97.3% | 94.6% | | | | | | |
| Conditional Entrants for Varicella | 0.3% | 0.3% | 0.7% | | | | | | |
| Permanent Medical Exemptions for Varicella | 0.9% | 0.8% | 1.8% | | | | | | |
| *Medical Reason Other Than Varicella* | *0.4%* | *0.4%* | *1.3%* | | | | | | |
| *MD/DO Verification of Varicella Disease* | *0.4%* | *0.4%* | *0.5%* | | | | | | |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | | | | | | |
| Others Lacking Varicella† | 1.0% | 1.0% | 1.7% | | | | | | |
| *Independent Study* | *0.7%* | *0.7%* | *0.1%* | | | | | | |
| *IEP Services* | *0.2%* | *0.2%* | *0.4%* | | | | | | |
| *Home-Based Private* | *0.1%* | *0.0%* | *1.3%* | | | | | | |
| Overdue for 2 Doses of Varicella Vaccine | 0.7% | 0.6% | 1.3% | | | | | | |

\* Received pertussis-containing immunization on or after 7th birthday.

\*\* Received 2 doses of varicella vaccine

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING
BY COUNTY AND SCHOOL TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 4,957 | 4,750 | 95.8% | 3,056 | 3,014 | 98.6% | 1,901 | 1,736 | 91.3% |
| COUNTY | | | | | | | | | |
| ALAMEDA | 184 | 182 | 98.9% | 106 | 106 | 100.0% | 78 | 76 | 97.4% |
| ALPINE | 1 | 1 | 100.0% | 1 | 1 | 100.0% | 0 | 0 | 0.0% |
| AMADOR | 3 | 3 | 100.0% | 2 | 2 | 100.0% | 1 | 1 | 100.0% |
| BUTTE | 47 | 45 | 95.7% | 38 | 37 | 97.4% | 9 | 8 | 88.9% |
| CALAVERAS | 9 | 5 | 55.6% | 5 | 5 | 100.0% | 4 | 0 | 0.0% |
| COLUSA | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| CONTRA COSTA | 151 | 138 | 91.4% | 77 | 76 | 98.7% | 74 | 62 | 83.8% |
| DEL NORTE | 8 | 7 | 87.5% | 6 | 6 | 100.0% | 2 | 1 | 50.0% |
| EL DORADO | 38 | 38 | 100.0% | 26 | 26 | 100.0% | 12 | 12 | 100.0% |
| FRESNO | 113 | 113 | 100.0% | 91 | 91 | 100.0% | 22 | 22 | 100.0% |
| GLENN | 14 | 14 | 100.0% | 12 | 12 | 100.0% | 2 | 2 | 100.0% |
| HUMBOLDT | 50 | 50 | 100.0% | 45 | 45 | 100.0% | 5 | 5 | 100.0% |
| IMPERIAL | 30 | 27 | 90.0% | 22 | 22 | 100.0% | 8 | 5 | 62.5% |
| INYO | 8 | 7 | 87.5% | 6 | 6 | 100.0% | 2 | 1 | 50.0% |
| KERN | 108 | 108 | 100.0% | 84 | 84 | 100.0% | 24 | 24 | 100.0% |
| KINGS | 30 | 29 | 96.7% | 24 | 24 | 100.0% | 6 | 5 | 83.3% |
| LAKE | 23 | 19 | 82.6% | 17 | 16 | 94.1% | 6 | 3 | 50.0% |
| LASSEN | 12 | 12 | 100.0% | 12 | 12 | 100.0% | 0 | 0 | 0.0% |
| LOS ANGELES | 1,117 | 1,011 | 90.5% | 587 | 567 | 96.6% | 530 | 444 | 83.8% |
| MADERA | 34 | 28 | 82.4% | 30 | 26 | 86.7% | 4 | 2 | 50.0% |
| MARIN | 52 | 51 | 98.1% | 23 | 23 | 100.0% | 29 | 28 | 96.6% |
| MARIPOSA | 9 | 8 | 88.9% | 8 | 8 | 100.0% | 1 | 0 | 0.0% |
| MENDOCINO | 27 | 24 | 88.9% | 23 | 20 | 87.0% | 4 | 4 | 100.0% |
| MERCED | 48 | 39 | 81.3% | 34 | 30 | 88.2% | 14 | 9 | 64.3% |
| MODOC | 4 | 4 | 100.0% | 4 | 4 | 100.0% | 0 | 0 | 0.0% |
| MONO | 5 | 5 | 100.0% | 4 | 4 | 100.0% | 1 | 1 | 100.0% |
| MONTEREY | 52 | 52 | 100.0% | 36 | 36 | 100.0% | 16 | 16 | 100.0% |
| NAPA | 24 | 24 | 100.0% | 11 | 11 | 100.0% | 13 | 13 | 100.0% |
| NEVADA | 24 | 24 | 100.0% | 18 | 18 | 100.0% | 6 | 6 | 100.0% |

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING
BY COUNTY AND SCHOOL TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 4,957 | 4,750 | 95.8% | 3,056 | 3,014 | 98.6% | 1,901 | 1,736 | 91.3% |
| COUNTY | | | | | | | | | |
| ORANGE | 292 | 292 | 100.0% | 135 | 135 | 100.0% | 157 | 157 | 100.0% |
| PLACER | 59 | 59 | 100.0% | 44 | 44 | 100.0% | 15 | 15 | 100.0% |
| PLUMAS | 7 | 7 | 100.0% | 5 | 5 | 100.0% | 2 | 2 | 100.0% |
| RIVERSIDE | 207 | 196 | 94.7% | 132 | 132 | 100.0% | 75 | 64 | 85.3% |
| SACRAMENTO | 178 | 178 | 100.0% | 115 | 115 | 100.0% | 63 | 63 | 100.0% |
| SAN BENITO | 20 | 20 | 100.0% | 15 | 15 | 100.0% | 5 | 5 | 100.0% |
| SAN BERNARDINO | 220 | 220 | 100.0% | 147 | 147 | 100.0% | 73 | 73 | 100.0% |
| SAN DIEGO | 378 | 378 | 100.0% | 241 | 241 | 100.0% | 137 | 137 | 100.0% |
| SAN FRANCISCO | 104 | 101 | 97.1% | 28 | 28 | 100.0% | 76 | 73 | 96.1% |
| SAN JOAQUIN | 159 | 159 | 100.0% | 135 | 135 | 100.0% | 24 | 24 | 100.0% |
| SAN LUIS OBISPO | 33 | 33 | 100.0% | 20 | 20 | 100.0% | 13 | 13 | 100.0% |
| SAN MATEO | 105 | 105 | 100.0% | 50 | 50 | 100.0% | 55 | 55 | 100.0% |
| SANTA BARBARA | 61 | 61 | 100.0% | 35 | 35 | 100.0% | 26 | 26 | 100.0% |
| SANTA CLARA | 217 | 217 | 100.0% | 104 | 104 | 100.0% | 113 | 113 | 100.0% |
| SANTA CRUZ | 47 | 42 | 89.4% | 26 | 25 | 96.2% | 21 | 17 | 81.0% |
| SHASTA | 68 | 68 | 100.0% | 54 | 54 | 100.0% | 14 | 14 | 100.0% |
| SIERRA | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| SISKIYOU | 27 | 27 | 100.0% | 24 | 24 | 100.0% | 3 | 3 | 100.0% |
| SOLANO | 55 | 46 | 83.6% | 34 | 34 | 100.0% | 21 | 12 | 57.1% |
| SONOMA | 88 | 80 | 90.9% | 57 | 54 | 94.7% | 31 | 26 | 83.9% |
| STANISLAUS | 70 | 70 | 100.0% | 53 | 53 | 100.0% | 17 | 17 | 100.0% |
| SUTTER | 30 | 30 | 100.0% | 26 | 26 | 100.0% | 4 | 4 | 100.0% |
| TEHAMA | 29 | 24 | 82.8% | 24 | 22 | 91.7% | 5 | 2 | 40.0% |
| TRINITY | 8 | 8 | 100.0% | 8 | 8 | 100.0% | 0 | 0 | 0.0% |
| TULARE | 95 | 89 | 93.7% | 79 | 77 | 97.5% | 16 | 12 | 75.0% |
| TUOLUMNE | 17 | 16 | 94.1% | 12 | 12 | 100.0% | 5 | 4 | 80.0% |
| VENTURA | 106 | 105 | 99.1% | 60 | 60 | 100.0% | 46 | 45 | 97.8% |
| YOLO | 29 | 29 | 100.0% | 21 | 21 | 100.0% | 8 | 8 | 100.0% |
| YUBA | 15 | 14 | 93.3% | 13 | 13 | 100.0% | 2 | 1 | 50.0% |

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019, BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| ALAMEDA | 2019-20 | 18,849 | 98.0% | 0.1% | 0.3% | 0.2% | 1.5% |
| | 2018-19 | 19,471 | 98.2% | 0.1% | 0.2% | 0.4% | 1.0% |
| ALPINE | 2019-20 | <35* | --* | --* | --* | --* | --* |
| | 2018-19 | <35* | --* | --* | --* | --* | --* |
| AMADOR | 2019-20 | 325 | 94.2% | 0.0% | 1.8% | 3.4% | 0.6% |
| | 2018-19 | 341 | 95.6% | 0.6% | 1.2% | 1.2% | 1.5% |
| BUTTE | 2019-20 | 2,396 | 97.3% | 0.2% | 0.6% | 1.3% | 0.6% |
| | 2018-19 | 2,617 | 96.5% | 0.2% | 0.9% | 1.8% | 0.5% |
| CALAVERAS | 2019-20 | 403 | 95.0% | 0.0% | 1.5% | 2.7% | 0.7% |
| | 2018-19 | 415 | 92.0% | 0.7% | 0.7% | 5.8% | 0.7% |
| COLUSA | 2019-20 | 394 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| | 2018-19 | 399 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| CONTRA COSTA | 2019-20 | 14,765 | 98.3% | 0.0% | 0.3% | 0.5% | 0.8% |
| | 2018-19 | 15,330 | 98.7% | 0.2% | 0.3% | 0.6% | 0.3% |
| DEL NORTE | 2019-20 | 331 | 97.3% | 0.0% | 0.0% | 0.3% | 2.4% |
| | 2018-19 | 351 | 97.7% | 0.0% | 0.6% | 1.7% | 0.0% |
| EL DORADO | 2019-20 | 2,644 | 88.8% | 0.7% | 1.5% | 8.9% | 0.2% |
| | 2018-19 | 2,392 | 94.3% | 0.6% | 1.4% | 3.6% | 0.2% |
| FRESNO | 2019-20 | 15,839 | 98.3% | 0.0% | 0.1% | 1.3% | 0.2% |
| | 2018-19 | 16,432 | 98.1% | 0.1% | 0.3% | 1.1% | 0.4% |
| GLENN | 2019-20 | 442 | 94.3% | 0.0% | 0.0% | 5.0% | 0.7% |
| | 2018-19 | 504 | 99.0% | 0.0% | 0.4% | 0.0% | 0.6% |
| HUMBOLDT | 2019-20 | 1,380 | 90.7% | 0.7% | 3.2% | 1.5% | 3.9% |
| | 2018-19 | 1,455 | 93.7% | 0.3% | 2.8% | 0.8% | 2.3% |
| IMPERIAL | 2019-20 | 2,935 | 99.1% | 0.1% | 0.0% | 0.2% | 0.5% |
| | 2018-19 | 3,092 | 99.1% | 0.1% | 0.3% | 0.1% | 0.4% |
| INYO | 2019-20 | 213 | 98.6% | 0.0% | 0.9% | 0.5% | 0.0% |
| | 2018-19 | 236 | ≥99.5% | ≤0.5% | 0.0% | 0.0% | 0.0% |
| KERN | 2019-20 | 15,219 | 94.0% | 0.0% | 0.2% | 5.2% | 0.5% |
| | 2018-19 | 15,588 | 96.1% | 0.0% | 0.2% | 3.2% | 0.4% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019, BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| KINGS | 2019-20 | 2,294 | 98.7% | 0.2% | 0.0% | 1.0% | 0.1% |
| | 2018-19 | 2,326 | 99.1% | 0.0% | 0.1% | 0.0% | 0.9% |
| LAKE | 2019-20 | 736 | 95.4% | 0.1% | 1.1% | 2.2% | 1.2% |
| | 2018-19 | 750 | 96.5% | 0.1% | 0.7% | 1.9% | 0.8% |
| LASSEN | 2019-20 | 288 | 95.1% | 0.0% | 3.8% | 1.0% | 0.0% |
| | 2018-19 | 286 | 95.5% | 0.0% | 0.3% | 2.8% | 1.4% |
| LOS ANGELES | 2019-20 | 119,392 | 98.0% | 0.1% | 0.3% | 0.9% | 0.7% |
| | 2018-19 | 120,491 | 97.8% | 0.1% | 0.3% | 1.2% | 0.6% |
| MADERA | 2019-20 | 2,014 | 96.9% | 0.0% | 0.2% | 1.1% | 1.7% |
| | 2018-19 | 2,656 | 96.6% | 0.0% | 0.2% | 0.8% | 2.4% |
| MARIN | 2019-20 | 3,245 | 97.7% | 0.4% | 1.3% | 0.3% | 0.4% |
| | 2018-19 | 3,289 | 97.7% | 0.4% | 0.9% | 0.2% | 0.7% |
| MARIPOSA | 2019-20 | 130 | 98.5% | 0.0% | 0.8% | 0.8% | 0.0% |
| | 2018-19 | 164 | 90.9% | 1.2% | 0.6% | 6.1% | 1.2% |
| MENDOCINO | 2019-20 | 1,039 | 95.0% | 0.5% | 1.1% | 1.6% | 1.8% |
| | 2018-19 | 1,045 | 92.8% | 0.5% | 2.3% | 2.3% | 2.1% |
| MERCED | 2019-20 | 4,597 | 98.5% | 0.0% | 0.1% | 0.9% | 0.5% |
| | 2018-19 | 5,104 | 98.8% | 0.0% | 0.1% | 0.8% | 0.2% |
| MODOC | 2019-20 | 102 | 96.1% | 0.0% | 1.0% | 0.0% | 2.9% |
| | 2018-19 | 128 | 98.4% | 0.0% | 1.6% | 0.0% | 0.0% |
| MONO | 2019-20 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| | 2018-19 | 145 | 97.9% | 0.0% | 1.4% | 0.0% | 0.7% |
| MONTEREY | 2019-20 | 6,397 | 99.2% | 0.0% | 0.4% | 0.2% | 0.3% |
| | 2018-19 | 7,016 | 99.5% | 0.1% | 0.3% | 0.1% | 0.1% |
| NAPA | 2019-20 | 1,682 | 98.5% | 0.0% | 0.3% | 0.9% | 0.4% |
| | 2018-19 | 1,870 | 97.0% | 0.2% | 0.5% | 1.6% | 0.7% |
| NEVADA | 2019-20 | 842 | 89.2% | 0.7% | 5.5% | 4.3% | 0.4% |
| | 2018-19 | 821 | 89.8% | 1.3% | 3.7% | 4.9% | 0.4% |
| ORANGE | 2019-20 | 39,699 | 97.9% | 0.1% | 0.5% | 1.0% | 0.5% |
| | 2018-19 | 41,320 | 98.2% | 0.2% | 0.6% | 0.7% | 0.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| PLACER | 2019-20 | 5,990 | 95.9% | 0.1% | 1.4% | 2.0% | 0.6% |
| | 2018-19 | 6,145 | 96.2% | 0.3% | 1.4% | 1.4% | 0.7% |
| PLUMAS | 2019-20 | 197 | 98.0% | 0.0% | 1.0% | 1.0% | 0.0% |
| | 2018-19 | 180 | 94.4% | 1.1% | 2.8% | 1.1% | 0.6% |
| RIVERSIDE | 2019-20 | 35,413 | 97.6% | 0.0% | 0.3% | 1.5% | 0.5% |
| | 2018-19 | 35,923 | 98.7% | 0.1% | 0.4% | 0.5% | 0.4% |
| SACRAMENTO | 2019-20 | 19,967 | 96.9% | 0.1% | 0.6% | 2.1% | 0.4% |
| | 2018-19 | 20,558 | 96.5% | 0.2% | 0.7% | 2.1% | 0.5% |
| SAN BENITO | 2019-20 | 955 | 99.7% | 0.0% | 0.2% | 0.1% | 0.0% |
| | 2018-19 | 986 | 99.6% | 0.0% | 0.2% | 0.0% | 0.2% |
| SAN BERNARDINO | 2019-20 | 32,605 | 96.6% | 0.0% | 0.2% | 2.4% | 0.8% |
| | 2018-19 | 33,380 | 96.9% | 0.0% | 0.2% | 2.1% | 0.8% |
| SAN DIEGO | 2019-20 | 41,159 | 96.2% | 0.1% | 0.7% | 2.8% | 0.2% |
| | 2018-19 | 42,454 | 96.0% | 0.1% | 0.9% | 2.6% | 0.5% |
| SAN  FRANCISCO | 2019-20 | 6,118 | 96.7% | 0.1% | 0.3% | 0.5% | 2.4% |
| | 2018-19 | 6,076 | 96.8% | 0.1% | 0.2% | 0.4% | 2.5% |
| SAN JOAQUIN | 2019-20 | 12,155 | 97.6% | 0.0% | 0.2% | 1.6% | 0.5% |
| | 2018-19 | 12,541 | 98.1% | 0.1% | 0.2% | 1.0% | 0.6% |
| SAN LUIS OBISPO | 2019-20 | 3,151 | 97.3% | 0.0% | 1.0% | 1.0% | 0.7% |
| | 2018-19 | 3,056 | 97.6% | 0.1% | 1.2% | 0.9% | 0.1% |
| SAN MATEO | 2019-20 | 8,234 | 97.8% | 0.1% | 0.3% | 0.5% | 1.3% |
| | 2018-19 | 8,618 | 98.4% | 0.2% | 0.3% | 0.0% | 1.0% |
| SANTA BARBARA | 2019-20 | 5,670 | 98.1% | 0.1% | 0.9% | 0.7% | 0.2% |
| | 2018-19 | 5,733 | 98.2% | 0.2% | 0.7% | 0.8% | 0.1% |
| SANTA CLARA | 2019-20 | 22,852 | 98.7% | 0.1% | 0.3% | 0.3% | 0.6% |
| | 2018-19 | 24,120 | 98.9% | 0.2% | 0.4% | 0.2% | 0.4% |
| SANTA CRUZ | 2019-20 | 3,539 | 91.5% | 0.0% | 1.5% | 6.3% | 0.7% |
| | 2018-19 | 3,620 | 91.6% | 0.3% | 1.4% | 6.0% | 0.7% |
| SHASTA | 2019-20 | 2,130 | 93.3% | 0.4% | 1.7% | 3.5% | 1.0% |
| | 2018-19 | 2,260 | 91.6% | 0.8% | 1.5% | 5.1% | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| SIERRA | 2019-20 | <35* | --* | --* | --* | --* | --* |
| | 2018-19 | <35* | --* | --* | --* | --* | --* |
| SISKIYOU | 2019-20 | 499 | 96.8% | 0.2% | 0.6% | 1.6% | 0.8% |
| | 2018-19 | 491 | 92.1% | 1.2% | 0.6% | 5.1% | 1.0% |
| SOLANO | 2019-20 | 5,130 | 98.8% | 0.0% | 0.4% | 0.1% | 0.6% |
| | 2018-19 | 5,169 | 99.4% | 0.0% | 0.2% | 0.3% | 0.1% |
| SONOMA | 2019-20 | 5,422 | 95.9% | 0.2% | 1.4% | 1.6% | 0.9% |
| | 2018-19 | 5,794 | 94.5% | 0.3% | 1.5% | 2.1% | 1.6% |
| STANISLAUS | 2019-20 | 8,837 | 97.6% | 0.0% | 0.4% | 0.3% | 1.6% |
| | 2018-19 | 9,003 | 97.5% | 0.1% | 0.3% | 1.8% | 0.3% |
| SUTTER | 2019-20 | 1,927 | 82.8% | 0.0% | 0.4% | 16.7% | 0.2% |
| | 2018-19 | 2,039 | 76.5% | 0.1% | 0.1% | 20.8% | 2.5% |
| TEHAMA | 2019-20 | 870 | 98.0% | 0.0% | 0.7% | 1.0% | 1.0% |
| | 2018-19 | 928 | 95.3% | 0.3% | 1.6% | 1.0% | 1.8% |
| TRINITY | 2019-20 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| | 2018-19 | 164 | 95.7% | 0.0% | 4.3% | 0.0% | 0.0% |
| TULARE | 2019-20 | 8,232 | 98.2% | 0.0% | 0.6% | 0.9% | 0.2% |
| | 2018-19 | 8,183 | 99.3% | 0.0% | 0.1% | 0.6% | 0.0% |
| TUOLUMNE | 2019-20 | 481 | 93.8% | 0.2% | 1.5% | 3.3% | 1.2% |
| | 2018-19 | 543 | 90.6% | 1.7% | 1.7% | 4.4% | 1.7% |
| VENTURA | 2019-20 | 11,004 | 97.0% | 0.2% | 0.8% | 1.2% | 0.8% |
| | 2018-19 | 11,685 | 97.6% | 0.1% | 0.6% | 1.3% | 0.3% |
| YOLO | 2019-20 | 2,416 | 96.9% | 0.1% | 0.7% | 0.6% | 1.7% |
| | 2018-19 | 2,591 | 97.6% | 1.4% | 0.8% | 0.1% | 0.2% |
| YUBA | 2019-20 | 1,194 | 96.9% | 0.0% | 0.2% | 1.6% | 1.3% |
| | 2018-19 | 1,133 | 96.7% | 0.0% | 0.4% | 1.9% | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, VARICELLA VACCINE,
BY COUNTY

| | TOTAL STUDENTS | ENTRANTS WITH VARICELLA VACCINE | CONDITIONAL ENTRANTS TO VARICELLA VACCINE | ENTRANTS WITH PME TO VARICELLA | OTHERS LACKING VARICELLA VACCINE† | OVERDUE FOR VARICELLA VACCINE^ |
|---|---|---|---|---|---|---|
| | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 505,026 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| COUNTY | | | | | | |
| ALAMEDA | 18,849 | 97.1% | 0.3% | 0.7% | 0.1% | 1.8% |
| ALPINE | <35* | --* | --* | --* | --* | --* |
| AMADOR | 325 | 92.3% | 1.8% | 2.2% | 3.7% | 0.0% |
| BUTTE | 2,396 | 97.1% | 0.5% | 1.0% | 0.7% | 0.8% |
| CALAVERAS | 403 | 97.0% | 0.0% | 1.5% | 1.0% | 0.5% |
| COLUSA | 394 | 96.7% | 0.0% | 0.8% | 0.0% | 2.5% |
| CONTRA COSTA | 14,765 | 97.9% | 0.3% | 0.9% | 0.4% | 0.5% |
| DEL NORTE | 331 | 97.6% | 0.3% | 0.0% | 0.3% | 1.8% |
| EL DORADO | 2,644 | 91.7% | 0.8% | 1.6% | 5.4% | 0.5% |
| FRESNO | 15,839 | 98.5% | 0.2% | 0.4% | 0.7% | 0.2% |
| GLENN | 442 | 94.8% | 0.2% | 0.5% | 3.8% | 0.7% |
| HUMBOLDT | 1,380 | 92.5% | 1.7% | 3.4% | 0.7% | 1.7% |
| IMPERIAL | 2,935 | 98.2% | 0.5% | 0.3% | 0.1% | 0.9% |
| INYO | 213 | 97.2% | 0.5% | 1.9% | 0.5% | 0.0% |
| KERN | 15,219 | 95.4% | 0.2% | 0.4% | 3.5% | 0.5% |
| KINGS | 2,294 | 99.4% | 0.2% | 0.0% | 0.3% | 0.1% |
| LAKE | 736 | 94.8% | 0.7% | 2.2% | 1.0% | 1.4% |
| LASSEN | 288 | 95.1% | 0.0% | 4.2% | 0.7% | 0.0% |
| LOS ANGELES | 119,392 | 97.4% | 0.3% | 0.7% | 0.7% | 0.9% |
| MADERA | 2,014 | 97.4% | 0.1% | 0.3% | 0.7% | 1.4% |
| MARIN | 3,245 | 94.9% | 1.1% | 3.3% | 0.3% | 0.4% |
| MARIPOSA | 130 | 94.6% | 3.1% | 1.5% | 0.8% | 0.0% |
| MENDOCINO | 1,039 | 94.1% | 1.1% | 1.6% | 1.3% | 1.9% |
| MERCED | 4,597 | 99.1% | 0.3% | 0.2% | 0.2% | 0.2% |
| MODOC | 102 | 96.1% | 1.0% | 1.0% | 0.0% | 2.0% |
| MONO | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| MONTEREY | 6,397 | 98.6% | 0.3% | 0.7% | 0.1% | 0.4% |
| NAPA | 1,682 | 97.3% | 0.2% | 1.2% | 1.0% | 0.3% |
| NEVADA | 842 | 88.6% | 1.5% | 6.3% | 3.0% | 0.6% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Varicella vaccine.

* County reporting fewer than 35 children in 7th grade.

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, VARICELLA VACCINE,
BY COUNTY

| | TOTAL STUDENTS | ENTRANTS WITH VARICELLA VACCINE | CONDITIONAL ENTRANTS TO VARICELLA VACCINE | ENTRANTS WITH PME TO VARICELLA | OTHERS LACKING VARICELLA VACCINE† | OVERDUE FOR VARICELLA VACCINE^ |
|---|---|---|---|---|---|---|
| | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 505,026 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| COUNTY | | | | | | |
| ORANGE | 39,699 | 97.5% | 0.5% | 1.0% | 0.7% | 0.3% |
| PLACER | 5,990 | 95.0% | 0.6% | 1.8% | 1.7% | 0.9% |
| PLUMAS | 197 | 96.4% | 1.5% | 2.0% | 0.0% | 0.0% |
| RIVERSIDE | 35,413 | 97.3% | 0.2% | 0.6% | 0.9% | 0.9% |
| SACRAMENTO | 19,967 | 96.5% | 0.4% | 1.1% | 1.6% | 0.3% |
| SAN BENITO | 955 | 99.5% | 0.1% | 0.3% | 0.1% | 0.0% |
| SAN BERNARDINO | 32,605 | 97.0% | 0.2% | 0.3% | 1.8% | 0.7% |
| SAN DIEGO | 41,159 | 96.4% | 0.4% | 1.2% | 1.9% | 0.2% |
| SAN FRANCISCO | 6,118 | 96.6% | 0.4% | 0.9% | 0.2% | 1.9% |
| SAN JOAQUIN | 12,155 | 97.7% | 0.1% | 0.4% | 1.1% | 0.8% |
| SAN LUIS OBISPO | 3,151 | 96.7% | 0.3% | 1.6% | 0.5% | 0.9% |
| SAN MATEO | 8,234 | 98.0% | 0.4% | 1.0% | 0.2% | 0.4% |
| SANTA BARBARA | 5,670 | 97.4% | 0.5% | 1.2% | 0.5% | 0.4% |
| SANTA CLARA | 22,852 | 97.7% | 0.3% | 1.4% | 0.3% | 0.4% |
| SANTA CRUZ | 3,539 | 93.9% | 0.5% | 2.5% | 2.9% | 0.3% |
| SHASTA | 2,130 | 92.8% | 1.0% | 2.2% | 2.6% | 1.5% |
| SIERRA | <35* | --* | --* | --* | --* | --* |
| SISKIYOU | 499 | 94.6% | 1.6% | 1.0% | 1.6% | 1.2% |
| SOLANO | 5,130 | 97.8% | 0.2% | 0.4% | 0.0% | 1.5% |
| SONOMA | 5,422 | 95.3% | 0.8% | 2.0% | 1.0% | 0.9% |
| STANISLAUS | 8,846 | 97.2% | 0.4% | 0.8% | 0.4% | 1.3% |
| SUTTER | 1,927 | 88.0% | 0.2% | 0.5% | 11.2% | 0.2% |
| TEHAMA | 870 | 97.8% | 0.3% | 1.4% | 0.2% | 0.2% |
| TRINITY | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| TULARE | 8,232 | 99.1% | 0.2% | 0.2% | 0.5% | 0.1% |
| TUOLUMNE | 481 | 94.0% | 1.0% | 1.7% | 2.1% | 1.2% |
| VENTURA | 11,004 | 96.6% | 0.5% | 1.1% | 1.0% | 0.8% |
| YOLO | 2,416 | 96.0% | 0.4% | 1.7% | 0.6% | 1.2% |
| YUBA | 1,194 | 97.1% | 0.2% | 0.2% | 0.4% | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 35 children in 7th grade.

# Exhibit 9

## 2019-2020 Kindergarten Immunization Assessment – Executive Summary
## California Department of Public Health, Immunization Branch

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Each autumn California schools are required to report to the California Department of Public Health (CDPH) the status of their students under state immunization requirement laws. In recent years there have been changes to these laws and how public health departments assist schools to implement them. To reflect longstanding national recommendations, starting in 2019 students entering kindergarten in California have been required to receive two rather than one dose of Varicella (chickenpox) vaccine. In 2014 and 2015 Assembly Bill (AB) 2109 added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 is the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Reported immunization rates remain at high levels but have decreased in the last few years. The proportion of students attending kindergarten in 2019-2020 reported to have received all required vaccines is 94.3%, a 0.5 percentage point decrease from the 2018-2019 school year, a 0.8 percentage point decrease from the 2017-2018 school year, and a 4.1 percentage point increase over six years since 2013-2014.

The decrease in the combined rate reflects observance of the new requirement for a second dose of Varicella vaccine, for which 96.0% were reported as having completed in 2019-2020. In comparison, 97.9% in 2018-2019 were reported as having received the prior standard of at least one dose of vaccine or having had a history of chickenpox disease.

Compared to 2018-2019, completion rates for other specific immunization series were unchanged for Polio, Hepatitis B, and Measles, Mumps and Rubella (MMR) vaccine and increased 0.1 percentage points for Diphtheria, Tetanus and Pertussis (DTP) vaccine. In 2019-2020 and 2018-2019, 17 (29%) counties reported fewer than 95% of their kindergarteners as having had two doses of MMR vaccine, compared to 14 (24%) counties in 2016-2017 and 31 (53%) counties in 2015-2016.

Compared to 2018-2019, in 2019-2020, the proportion of kindergartners reported as:
- Being overdue for required immunizations increased from 1.1% to 1.5%.
- Lacking immunizations for other reasons specified under SB 277 increased from 1.5% to 1.6%, with 1.3% reported as being enrolled in independent study programs.
- Having permanent medical exemptions increased from 0.9% to 1.0%.
- Conditional entrants remained unchanged at 1.7% in both 2018-2019 and 2019-2020 school years, a 5.2 percentage point decrease over the five years since 2014-2015.
- PBEs remained unchanged at 0.0%, reflecting their cessation under SB 277. Previously during measures specified in AB 2109, the rate of PBEs had decreased from 3.2% in 2013-2014 to 2.4% in 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

**2019-2020 Kindergarten Immunization Assessment – Technical Notes**

**Introduction**

Each autumn all schools with kindergartens in California are required to report student compliance with California School Immunization Laws (California Health and Safety Code Sections 120325-120375). This report summarizes data for the 2019-2020 school year reported by public and private kindergartens statewide (Table 1, Figures 1-8) and by county (Tables 2-11).

To reflect longstanding national recommendations, starting in 2019 changes to the California Code of Regulations have required students entering kindergarten in California to receive two rather than one dose of Varicella (chickenpox) vaccine.

In the 2014-2015 and 2015-2016 school years, entrants were subject to Assembly Bill (AB) 2109, which added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 is the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Starting in the 2015-2016 school year, many public health departments in California have worked with schools to improve their application of the Conditional Admission Immunization Schedule for the conditional admission of eligible students.

**Methods**

During the autumn of 2019, California schools registered with the California Department of Education reported data on kindergarteners in the 2019-2020 school year to the California Department of Public Health (CDPH). Based on their immunization status, students were classified by school staff into the following categories:

- Received <u>all required immunizations</u>, including the following doses:
  - 5 or more of Diphtheria, Tetanus and Pertussis (DTP) vaccine (4 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['4+DTP'];
  - 3 or more of Polio vaccine (3 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['3+ Polio'];
  - 2 or more of Measles-containing and Mumps-containing vaccines received on or after the first birthday, and 1 or more of Rubella vaccine, typically combined as Measles, Mumps and Rubella (MMR) vaccine: ['2+ MMR'].Through 2018-2019, the requirement was for one rather two doses of Mumps-containing vaccine but was no different for Measles and Rubella vaccine;
  - 3 or more of Hepatitis B (Hep B) vaccine: ['3+ Hep B'], and
  - 2 or more of Varicella (Var): ['2+ Var'].  In contrast, from 2000-2001 through 2018-2019, the requirement was for 1 or more doses of Varicella vaccine or a history documented by a physician of having had chickenpox disease. History of disease is currently requested to be reported as a permanent medical exemption.
- <u>Conditional entrants</u> who had:
  - Not received all required doses but were not overdue for required doses, or
  - A temporary medical exemption to one or more required immunizations.
  Conditional entrants are required to receive additional doses after entry.

- Have a permanent medical exemption (PME) to one or more required immunizations.
- Other students lacking immunizations. Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
    - A home-based private school or
    - A public independent study program and do not receive classroom-based instruction.
    - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.

    Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Children overdue for one or more required immunizations and subject to exclusion from school until the overdue requirements have been met.

Under SB 277, since the 2016-2017 school year personal beliefs exemptions (PBEs) have no longer been an option for children entering kindergarten.

To simplify reporting, in 2015-2016 and earlier school years any immunizations received by children with PBEs or PMEs were not reported in the completion rates of each specific required immunization series (e.g., 4+ DTP, 2+ MMR, etc.). To improve accuracy, CDPH has requested schools to include these doses when reporting completion rates of specific immunizations since the 2016-2017 school year.

Due to rounding, figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

## Results

The number of kindergarteners in California whose immunization status was reported decreased from 555,735 in 2018-2019 to 554,250 in the 2019-2020 school year (Table 1). This is consistent with recent statewide declines in school enrollment, as the number of schools that reported increased marginally from 7,964 in 2018-2019 to 8,000 in 2019-2020, and the number of schools that did not report decreased from 236 to 133 (Tables 1 and 2). Private schools account for 8% (43,146 / 554,250) of all kindergarteners about whom data was reported in 2019-2020, 24% (1,891 / 8,000) of all schools that reported data on kindergarteners and 89% (118 / 133) of schools that did not report.

Figures 1-5 show trends for students in public and private schools reported as having: received all required immunizations; entered conditionally; PMEs; PBEs; and completed specific immunization series. Figures 6-8 display for recent school years the distribution of major reporting categories for students reported from: all schools; public schools; and private schools.

All required immunizations: Of 554,250 kindergarteners whose schools reported their status, 522,581 (94.3%) had received all required immunizations, a decrease from the previous school year of 0.5 percentage points (Tables 1 and 5) and an increase over the six school years since 2013-2014 of 4.1 percentage points (Figures 1 and 6). For counties reporting at least 25 students, the highest rates, at least 97.0%, are reported in Monterey, Inyo, and Del Norte (Tables 3-5).

In 2019-2020, 11 (19%) of 58 counties in California have rates of kindergarteners with all required vaccines that are below 90%, compared with nine (16%) in 2018-2019 (Tables 4 and 5, Figure 9). The rate in some of these counties is influenced by online or virtual schools that are based in the county but that may enroll children who reside in other counties (Box); many students in virtual schools qualify for exemptions from requirements under SB 277 (see Methods and below).

| % of Pupils Receiving All Required Immunizations | | | | For Schools Based in County, % of Pupils Reported as Enrolled in Virtual Schools* |
|---|---|---|---|---|
| County | All Schools Based in County | Classroom-Based Schools | Virtual Schools* | |
| El Dorado | 79.7% | 92.7% | 24.5% | 19.2% |
| Sutter | 85.3% | 96.1% | 33.0% | 17.1% |
| Glenn | 86.1% | 96.8% | 22.9% | 14.4% |
| Kern | 88.6% | 96.1% | 23.3% | 10.3% |

\* Virtual schools are based in the specified county but may enroll children who reside in other counties.

As in past years, a higher proportion of students in public compared to private schools were reported as having had all required immunizations (94.4% vs. 92.4%; difference of 2.0 percentage points) (Table 1, Figures 7 and 8). However, this gap is smaller by 0.1 percentage points than it was in 2018-2019, as there was a one-year decrease of 0.5 percentage points for students in public schools and 0.4 percentage points for those in private schools.

Specific immunization series: Completion rates for specific immunization series varied between 96.0% for Varicella vaccine and 97.4% for Hepatitis B vaccine (Tables 1 and 11, Figure 5).

2019-2020 is the first school year that two or more doses of Varicella vaccine have been required for kindergarteners in California. 96.0% were reported as having completed a two-dose series in 2019-2020, whereas 97.9% in 2018-2019 were reported as having received at least one dose of vaccine or having had a history of chickenpox disease. (Data from 2019-2020 on receipt of at least one dose of Varicella vaccine or from prior years on receipt of two doses are not available.) History of chickenpox disease, which as a result of widespread immunization is now infrequent and often more difficult to diagnose, has since 2019-2020 been requested to be reported as a permanent medical exemption to immunization.

Rates in 2019-2020 remained the same for Polio, MMR, and Hep B vaccines and increased 0.1 percentage points for DTP vaccine. Rates for receipt remain higher in public schools; for MMR, 96.7% of students at public schools and 94.7% at private schools are reported as having received two doses, a decrease from 2018-2019 respectively of 0.0 percentage points and 0.3 percentage points, and an increase compared to 2015-2016 respectively of 1.8 percentage points and 4.2 percentage points. In both 2019-2020 and 2018-2019, 17 (29%) counties reported fewer than 95% of their kindergarteners as having had two doses of MMR (Table 11, Figure 10), compared to 16 (28%) counties in 2017-2018, 14 (24%) counties in 2016-2017 and 31 (53%) counties in 2015-2016.

Conditional entrants: Over the last five school years, the proportion of students reported as conditional entrants has decreased from 6.9% in 2014-2015 to 1.7% in 2019-2020 (Table 1, Figures 2 and 6). Compared to the 2018-2019 school year, the proportion of conditional entrants

in 2019-2020 remained the same in all schools and public schools while decreasing in private schools by 0.6 percentage points (Table 1). Of the 1.7% (9,188) of all students reported as conditional entrants in 2019-2020, 0.2% (1,097) were reported as having had a temporary medical exemption, a 0.1 percentage point decrease from 2018-2019.

PMEs: The percentage of students with PMEs increased from 0.9% in 2018-2019 to 1.0% in 2019-2020 (Tables 1 and 7, Figure 3). In public schools, the number of students reported with PMEs increased from 3,805 (0.7%) to 4,179 (0.8%) (Figure 7), while for private schools, the number of students increased from 1,007 (2.4%) to 1,089 (2.5%) (Figure 8).

Other students lacking required immunizations: The proportion of kindergarteners reported to be lacking one or more required immunizations and to attend an independent study program and do not receive classroom-based instruction, attend a home-based private school, or receive services in an IEP (Tables 1, 8 and 9) increased from 1.5% (8,318) in 2018-2019 to 1.6% (8,986) in 2019-2020. Children reported as being enrolled in public independent study programs accounted for most students in this category (1.3% or 7,018) (Table 9), and for most of the increase compared to the previous year (0.10 of the 0.14 percentage point increase).  The percentage increase of enrollment in independent study is 10.9% (63 students) in Glenn County. Some of these students are enrolled in virtual schools and reside in other counties.

Overdue: The percentage of students reported as being overdue for one or more immunizations (Tables 1 and 3) increased from 1.1% in 2018-2019 to 1.5% in 2019-2020 (Table 1, Figure 6). In public schools the number of students reported as overdue increased from 5,448 (1.1%) to 7,215 (1.4%) (Figure 7). For private schools the number of students reported as overdue increased from 635 (1.5%) to 1,012 (2.3%) (Figure 8).

PBEs: With the option of PBEs no longer available to new entrants under SB 277, the percentage of kindergarteners with PBEs remains unchanged at 0.0% since 2017-2018, compared to 2.4% in 2015-2016 and 3.2% in 2013-2014 (Figures 4 and 6, Table 8).

Combined categories: Kindergarteners who are required to receive all mandated vaccines are reported in three categories: having received all required vaccines; conditional entrants; and being overdue for required doses. The kindergarteners who were reported in the sum of these three categories decreased by 0.2% percentage points from 97.6% in 2018-2019 to 97.4% in 2019-2020.

Conversely the sum of kindergarteners reported as not having to receive all required immunizations in elementary school because of PMEs; PBEs; or for other criteria specified in SB 277, increased by 0.2 percentage points from 2.4% in 2018-2019 to 2.6% in 2019-2020; the combined rate for public schools increased from 2.3% to 2.5% and for private schools increased from 2.8% to 2.9%. Over time the combined rate has been 3.3% in 2013-2014, 2.5% in 2015-2016, 1.5% in 2016-2017, and 2.6% in 2019-2020.

## Discussion

The numbers of kindergarteners (554,250) and public schools (6,109) whose status was reported in 2019-2020 remain at amongst the highest levels since the 2001-2002 school year, when Varicella vaccine became the most recent addition to the immunizations required for kindergarteners.

Reported immunization rates remain at high levels but have decreased over the last three school years. Compared to 2018-2019, the proportion of students reported to enter kindergarten in California in 2019-2020 after receiving all required immunizations decreased by 0.5 percentage points to 94.3%, following an increase by 5.2 percentage points to 95.6% between the two school years from 2014-2015 to 2016-2017.

The decrease in the combined rate reflects observance of the new requirement for a second dose of Varicella vaccine, for which 96.0% were reported as having completed in 2019-2020. In comparison, 97.9% in 2018-2019 were reported as having received the prior standard of at least one dose of vaccine or having had a history of chickenpox disease; in contrast to Varicella vaccine, rates for the other required vaccines were stable. The 0.5 percentage point decrease in the rate of all required vaccines is similar in magnitude to the 0.4 percentage point increase in kindergarteners reported as overdue for one or more required immunizations, suggesting that many overdue students had not received their second dose of Varicella vaccine by the beginning of the school year. CDPH will closely monitor these trends to see whether additional experience and support with the increased Varicella vaccine requirement will help schools reduce the number of overdue students.

The proportion of children reported in other categories of exemptions increased in 2019-2020, as 1.6% lacked required immunizations under other criteria introduced in SB 277.  Most of these children were reported as being enrolled in independent study programs, representing an increase of 0.1 percentage points from 2018-2019. Another 1.0% were reported as having PMEs, an increase of 0.1% from 2018-2019. In sum, 2.6% of entrants were reported as not having had required immunizations because of PMEs, PBEs, or other criteria related to SB 277, compared to 2.4% in 2018-2019. Over the recent period of multiple changes in policies and laws in California; the combined rate has been 3.3% in 2013-2014, 2.6% in 2015-2016, 1.5% in 2016-2017, and 2.6% in 2019-2020. Future assessments will continue to monitor these categories.

The proportion of conditional entrants in 2019-2020 remained unchanged since 2018-2019 after a decrease of 5.1 percentage points in the three school years between 2014-2015 and 2017-2018. The current reported rate of conditional entrants, 1.5%, remains the lowest reported since the 2001-2002 school year. Measures to support schools on the proper use of conditional admission criteria have been described in previous reports.

It is possible that children who in previous school years would have been inaccurately categorized as conditional entrants represent some of the 1.5% of entrants reported as overdue in 2019-2020. Continued efforts to educate schools and support immunization services might further reduce the number of children who in future years are categorized either as conditional entrants or overdue; in sum these categories account for 3.1% of kindergarteners reported in 2019-2020, compared to 2.8% reported in 2018-2019.

Children in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. In 2019-2020, 11 (19%) of 58 counties in California have had rates of kindergarteners with all required vaccines that are below 90% (Figure 9). 17 (29%) counties, compared to 14 (24%) in 2016-2017 and 31 (53%) in 2015-2016, report fewer than 95% of their kindergarteners as having had two doses of MMR (Table 11, Figure 10), an approximate threshold necessary to prevent the transmission of measles. In addition, recent changes to California's school immunization laws did not apply to earlier cohorts of children who are no longer of school age. Unimmunized older children and adults were amongst those who caught measles during recent outbreaks in California. For these individuals,

decisions that were made in previous decades to not immunize have had lingering consequences for themselves and their communities.

## Limitations

This report is subject to limitations that include:

- 133 California elementary schools, including 118 private schools and 15 public schools, did not report their immunization data; in the absence of reporting, CDPH does not know how many of them enrolled kindergarteners this year or the immunization status of their kindergarteners.
- As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- Nineteen schools, including at least two virtual schools, that registered with the California Department of Education as being public schools, and which appear to enroll both public and private students, reported 161 students as attending home-based private schools. In this report these students are classified as attending public schools. Any misclassification of enrollment between public and private schools, or between independent study and home-based private schools, has not affected the total of students in the category of <u>other students lacking immunization</u>, but has affected its subcategories.
- Part of the relative improvements in the completion rates of <u>specific immunization series</u> starting in the 2016-2017 school year may have been due to the inclusion in reporting of doses received by partially immunized children who had PBEs or PMEs to other required immunizations. In reporting to CDPH during prior school years, doses received by children with exemptions were not included in completion rates for any specific vaccine. This may have resulted in underestimates of completion rates for specific vaccines in prior years and overestimates of their increases between recent and prior years. The magnitude of the resultant increase to the rate of any immunization series in 2019-2020 resulting from this change in reporting could be no greater than 2.6%, the total of students reported in categories as not having to receive all required immunizations (PMEs or other criteria specified in SB 277). This reporting change should not have affected rates, or changes in rates, for the category of <u>having received all required vaccines</u>.
- The timing of immunization is often not included in the assessment criteria; if doses were given at inappropriate ages or intervals, the reported rates may overestimate levels of immunity.
- It is possible that some immunization records provided to schools have been incomplete. The presence of incomplete records would underestimate immunization coverage. Any improvements over time in completion of records since the time of reporting would increase estimates of coverage.
- Changes over time in the quality of reporting by schools are another potential explanation for changes in immunization rates.

*For further information, please contact CDPH Immunization Branch at SchoolAssessments@cdph.ca.gov.*

*For media inquiries, please contact CDPH Office of Public Affairs via e-mail cdphpress@cdph.ca.gov or phone 916-440-7259.*

**Figures**

Figure 1. Percentage of Kindergarten Students with All Required Immunizations, by School Type and School Year, 2012-2013 to 2019-2020

Figure 2. Percentage of Conditional Entrants into Kindergarten, by School Type and School Year, 2012-2013 to 2019-2020

Figure 3. Percentage of Kindergarten Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2012-2013 to 2019-2020

Figure 4. Percentage of Kindergarten Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2012-2013 to 2019-2020

Figure 5. Percentage of Kindergarten Students with Specific Required Immunizations by Series and School Year, 2012-2013 to 2019-2020

Figure 6. Percentage of All Kindergarten Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020

Figure 7. Percentage of Public School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 8. Percentage of Private School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 9. Map: Kindergarten Students with All Required Immunizations, by County, 2018-2019 and 2019-2020 School Years

Figure 10. Map: Kindergarten Students with Two or More Doses of MMR Vaccine, by County, 2018-2019 and 2019-2020 School Years

**Tables**

Table 1. Kindergarten Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years

Table 2. Number and Percentage of Schools Reporting in 2019-2020, by County and Type

Table 3. Total Enrollment and Admission Status in 2019-2020, by County

Table 4. Total Enrollment and Admission Status, 2019-2020 and 2018-2019, by County

Table 5. Number and Percentage of Students with All Required Immunizations in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 6. Number and Percentage of Conditional Entrants in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 7. Number and Percentage of Students with a Permanent Medical Exemption (PME) in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 8. Number and Percentage of Other Students Lacking Required Immunizations in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 9. Number and Percentage of Other Students Lacking Required Immunizations in 2019-2020, by Subgroup and County

Table 10. Number and Percentage of Students with Overdue Status in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 11. Number and Percentage of Students with Required Immunizations by Vaccine Series, by County



Figure 1. Percentage of Kindergarten Students with All Required Immunizations, by School Type and School Year, 2012-2013 to 2019-2020



Figure 2. Percentage of Conditional Entrants into Kindergarten, by School Type and School Year, 2012-2013 to 2019-2020



**Figure 3. Percentage of Kindergarten Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2012-2013 to 2019-2020**



**Figure 4. Percentage of Kindergarten Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2012-2013 to 2019-2020**



*One or more doses of varicella required through the 2018-2019 school year.  Two or more doses of varicella required for the 2019-20 school year and forward.

**Figure 5. Percentage of Kindergarten Students with Specific Required Immunizations by Series and School Year, 2012-2013 to 2019-2020.**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 6. Percentage of All Kindergarten Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020.** In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. Since the 2016-2017 school year, entrants have been subject to SB 277.  Starting from the 2019-20 school year and forward, the varicella requirement changed from one or more to two or more doses



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 7. Percentage of Public School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020**

_____



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 8. Percentage of Private School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



**Figure 9. Kindergarten Students with All Required Immunizations, by County, 2018-2019 and 2019-2020 School Years**
See pages 3 and 4 for additional information.



**Figure 10. Kindergarten Students with Two or More Doses of MMR Vaccine, by County, 2018-2019 and 2019-2020 School Years**

**Table 1: Kindergarten Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years**

| | 2019-2020 | | | 2018-2019 | | | 1-Year Percentage Point Change* | | |
|---|---|---|---|---|---|---|---|---|---|
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Kindergarten Students | 8,000 | 6,109 | 1,891 | 7,964 | 6,068 | 1,896 | | | |
| Number of Kindergarten Students | 554,250 | 511,104 | 43,146 | 555,735 | 512,908 | 42,827 | | | |
| All Required Immunizations | 94.3% | 94.4% | 92.4% | 94.8% | 95.0% | 92.9% | -0.5% | -0.5% | -0.4% |
| Conditional Entrants | 1.7% | 1.6% | 2.4% | 1.7% | 1.6% | 2.9% | -0.1% | 0.0% | -0.6% |
| Permanent Medical Exemptions | 1.0% | 0.8% | 2.5% | 0.9% | 0.7% | 2.4% | 0.1% | 0.1% | 0.2% |
| Personal Belief Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 1.6% | 1.7% | 0.3% | 1.5% | 1.6% | 0.4% | 0.1% | 0.1% | -0.1% |
| Overdue^ | 1.5% | 1.4% | 2.3% | 1.1% | 1.1% | 1.5% | 0.4% | 0.3% | 0.9% |
| 4+ DTP | 96.2% | 96.3% | 94.6% | 96.0% | 96.1% | 94.8% | 0.1% | 0.2% | -0.2% |
| 3+ Polio | 96.5% | 96.7% | 94.8% | 96.5% | 96.7% | 94.8% | 0.0% | 0.0% | 0.1% |
| 2+ MMR | 96.5% | 96.7% | 94.7% | 96.5% | 96.6% | 95.0% | 0.0% | 0.0% | -0.3% |
| 3+ Hep B | 97.4% | 97.5% | 96.1% | 97.4% | 97.5% | 96.3% | 0.0% | 0.0% | -0.2% |
| 2+ Var (or physician-documented disease)** | 96.0% | 96.2% | 94.4% | 97.9% | 98.0% | 96.5% | -1.9% | -1.8% | -2.2% |

* Differences between exact percentages may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

** 1+ doses of varicella vaccine was required through the 2018-2019 school year.  Starting in the 2019-2020 school year and forward, 2+ doses of varicella vaccine were required.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING,
BY COUNTY AND TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 8,133 | 8,000 | 98.4% | 6,124 | 6,109 | 99.8% | 2,009 | 1,891 | 94.1% |
| COUNTY | | | | | | | | | |
| ALAMEDA | 317 | 317 | 100.0% | 225 | 225 | 100.0% | 92 | 92 | 100.0% |
| ALPINE | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| AMADOR | 7 | 7 | 100.0% | 6 | 6 | 100.0% | 1 | 1 | 100.0% |
| BUTTE | 56 | 56 | 100.0% | 48 | 48 | 100.0% | 8 | 8 | 100.0% |
| CALAVERAS | 14 | 11 | 78.6% | 11 | 11 | 100.0% | 3 | 0 | 0.0% |
| COLUSA | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| CONTRA COSTA | 233 | 223 | 95.7% | 168 | 166 | 98.8% | 65 | 57 | 87.7% |
| DEL NORTE | 10 | 10 | 100.0% | 10 | 10 | 100.0% | 0 | 0 | 0.0% |
| EL DORADO | 46 | 44 | 95.7% | 40 | 40 | 100.0% | 6 | 6 | 100.0% |
| FRESNO | 226 | 223 | 98.7% | 202 | 202 | 100.0% | 24 | 24 | 100.0% |
| GLENN | 15 | 14 | 93.3% | 12 | 12 | 100.0% | 3 | 3 | 100.0% |
| HUMBOLDT | 58 | 58 | 100.0% | 52 | 52 | 100.0% | 6 | 6 | 100.0% |
| IMPERIAL | 46 | 45 | 97.8% | 38 | 38 | 100.0% | 8 | 7 | 87.5% |
| INYO | 6 | 6 | 100.0% | 6 | 6 | 100.0% | 0 | 0 | 0.0% |
| KERN | 185 | 182 | 98.4% | 162 | 162 | 100.0% | 23 | 23 | 100.0% |
| KINGS | 39 | 36 | 92.3% | 33 | 33 | 100.0% | 6 | 5 | 83.3% |
| LAKE | 18 | 15 | 83.3% | 15 | 14 | 93.3% | 3 | 2 | 66.7% |
| LASSEN | 12 | 12 | 100.0% | 12 | 12 | 100.0% | 0 | 0 | 0.0% |
| LOS ANGELES | 1,928 | 1,847 | 95.8% | 1,328 | 1,324 | 99.7% | 600 | 531 | 88.5% |
| MADERA | 43 | 38 | 88.4% | 40 | 38 | 95.0% | 3 | 2 | 66.7% |
| MARIN | 72 | 72 | 100.0% | 46 | 46 | 100.0% | 26 | 26 | 100.0% |
| MARIPOSA | 8 | 8 | 100.0% | 8 | 8 | 100.0% | 0 | 0 | 0.0% |
| MENDOCINO | 34 | 32 | 94.1% | 28 | 26 | 92.9% | 6 | 6 | 100.0% |
| MERCED | 68 | 64 | 94.1% | 55 | 55 | 100.0% | 13 | 9 | 69.2% |
| MODOC | 4 | 4 | 100.0% | 4 | 4 | 100.0% | 0 | 0 | 0.0% |
| MONO | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| MONTEREY | 96 | 96 | 100.0% | 83 | 83 | 100.0% | 13 | 13 | 100.0% |
| NAPA | 37 | 37 | 100.0% | 23 | 23 | 100.0% | 14 | 14 | 100.0% |
| NEVADA | 24 | 24 | 100.0% | 20 | 20 | 100.0% | 4 | 4 | 100.0% |

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING,
BY COUNTY AND TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 8,133 | 8,000 | 98.4% | 6,124 | 6,109 | 99.8% | 2,009 | 1,891 | 94.1% |
| COUNTY | | | | | | | | | |
| ORANGE | 615 | 609 | 99.0% | 413 | 413 | 100.0% | 202 | 202 | 100.0% |
| PLACER | 95 | 95 | 100.0% | 81 | 81 | 100.0% | 14 | 14 | 100.0% |
| PLUMAS | 8 | 8 | 100.0% | 5 | 5 | 100.0% | 3 | 3 | 100.0% |
| RIVERSIDE | 405 | 388 | 95.8% | 307 | 306 | 99.7% | 98 | 88 | 89.8% |
| SACRAMENTO | 304 | 304 | 100.0% | 241 | 241 | 100.0% | 63 | 63 | 100.0% |
| SAN BENITO | 20 | 20 | 100.0% | 16 | 16 | 100.0% | 4 | 4 | 100.0% |
| SAN BERNARDINO | 440 | 435 | 98.9% | 364 | 364 | 100.0% | 76 | 76 | 100.0% |
| SAN DIEGO | 614 | 607 | 98.9% | 479 | 479 | 100.0% | 135 | 135 | 100.0% |
| SAN FRANCISCO | 157 | 155 | 98.7% | 86 | 86 | 100.0% | 71 | 70 | 98.6% |
| SAN JOAQUIN | 183 | 180 | 98.4% | 162 | 162 | 100.0% | 21 | 21 | 100.0% |
| SAN LUIS OBISPO | 60 | 60 | 100.0% | 46 | 46 | 100.0% | 14 | 14 | 100.0% |
| SAN MATEO | 164 | 163 | 99.4% | 108 | 108 | 100.0% | 56 | 56 | 100.0% |
| SANTA BARBARA | 106 | 105 | 99.1% | 82 | 82 | 100.0% | 24 | 24 | 100.0% |
| SANTA CLARA | 384 | 384 | 100.0% | 262 | 262 | 100.0% | 122 | 122 | 100.0% |
| SANTA CRUZ | 63 | 61 | 96.8% | 46 | 46 | 100.0% | 17 | 17 | 100.0% |
| SHASTA | 59 | 58 | 98.3% | 50 | 50 | 100.0% | 9 | 9 | 100.0% |
| SIERRA | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| SISKIYOU | 27 | 27 | 100.0% | 24 | 24 | 100.0% | 3 | 3 | 100.0% |
| SOLANO | 83 | 73 | 88.0% | 61 | 61 | 100.0% | 22 | 12 | 54.5% |
| SONOMA | 131 | 122 | 93.1% | 109 | 106 | 97.2% | 22 | 19 | 86.4% |
| STANISLAUS | 127 | 127 | 100.0% | 112 | 112 | 100.0% | 15 | 15 | 100.0% |
| SUTTER | 33 | 29 | 87.9% | 30 | 30 | 100.0% | 3 | 3 | 100.0% |
| TEHAMA | 24 | 22 | 91.7% | 21 | 21 | 100.0% | 3 | 2 | 66.7% |
| TRINITY | 10 | 10 | 100.0% | 10 | 10 | 100.0% | 0 | 0 | 0.0% |
| TULARE | 126 | 121 | 96.0% | 113 | 113 | 100.0% | 13 | 10 | 76.9% |
| TUOLUMNE | 16 | 16 | 100.0% | 11 | 11 | 100.0% | 5 | 5 | 100.0% |
| VENTURA | 186 | 183 | 98.4% | 135 | 135 | 100.0% | 51 | 50 | 98.0% |
| VIRTUAL | . | 68 | 0.0% | . | 0 | 0.0% | . | 0 | 0.0% |
| YOLO | 48 | 47 | 97.9% | 36 | 36 | 100.0% | 12 | 12 | 100.0% |

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS,

BY COUNTY

| | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATIONS | | CONDITIONAL ENTRANTS | | STUDENTS WITH PME | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OVERDUE^ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 9,188 | 1.7% | 5,268 | 1.0% | 8,986 | 1.6% | 8,227 | 1.5% |
| COUNTY | | | | | | | | | | | |
| ALAMEDA | 21,622 | 20,855 | 96.5% | 237 | 1.1% | 141 | 0.7% | 36 | 0.2% | 353 | 1.6% |
| ALPINE | 9 | <20* | --* | <20* | --* | <20* | --* | <20* | --* | <20* | --* |
| AMADOR | 308 | 281 | 91.2% | 13 | 4.2% | 6 | 1.9% | 2 | 0.6% | 6 | 1.9% |
| BUTTE | 2,742 | 2,609 | 95.1% | 74 | 2.7% | 21 | 0.8% | 27 | 1.0% | 11 | 0.4% |
| CALAVERAS | 455 | 427 | 93.8% | 8 | 1.8% | 7 | 1.5% | 8 | 1.8% | 5 | 1.1% |
| COLUSA | 372 | 360 | 96.8% | 1 | 0.3% | 0 | 0.0% | 0 | 0.0% | 11 | 3.0% |
| CONTRA COSTA | 15,692 | 15,092 | 96.2% | 249 | 1.6% | 118 | 0.8% | 45 | 0.3% | 188 | 1.2% |
| DEL NORTE | 394 | 382 | 97.0% | 3 | 0.8% | 0 | 0.0% | 3 | 0.8% | 6 | 1.5% |
| EL DORADO | 2,909 | 2,318 | 79.7% | 65 | 2.2% | 125 | 4.3% | 392 | 13.5% | 9 | 0.3% |
| FRESNO | 18,461 | 17,802 | 96.4% | 187 | 1.0% | 55 | 0.3% | 294 | 1.6% | 123 | 0.7% |
| GLENN | 576 | 496 | 86.1% | 8 | 1.4% | 4 | 0.7% | 63 | 10.9% | 5 | 0.9% |
| HUMBOLDT | 1,715 | 1,510 | 88.0% | 46 | 2.7% | 96 | 5.6% | 12 | 0.7% | 51 | 3.0% |
| IMPERIAL | 3,117 | 2,982 | 95.7% | 79 | 2.5% | 6 | 0.2% | 12 | 0.4% | 38 | 1.2% |
| INYO | 271 | 263 | 97.0% | 7 | 2.6% | 1 | 0.4% | 0 | 0.0% | 0 | 0.0% |
| KERN | 18,327 | 16,240 | 88.6% | 251 | 1.4% | 128 | 0.7% | 1,462 | 8.0% | 246 | 1.3% |
| KINGS | 2,576 | 2,497 | 96.9% | 51 | 2.0% | 6 | 0.2% | 11 | 0.4% | 11 | 0.4% |
| LAKE | 796 | 723 | 90.8% | 25 | 3.1% | 6 | 0.8% | 6 | 0.8% | 36 | 4.5% |
| LASSEN | 350 | 322 | 92.0% | 19 | 5.4% | 5 | 1.4% | 3 | 0.9% | 1 | 0.3% |
| LOS ANGELES | 133,622 | 126,230 | 94.5% | 2,249 | 1.7% | 825 | 0.6% | 1,048 | 0.8% | 3,270 | 2.4% |
| MADERA | 2,727 | 2,622 | 96.1% | 40 | 1.5% | 7 | 0.3% | 21 | 0.8% | 37 | 1.4% |
| MARIN | 3,252 | 3,055 | 93.9% | 75 | 2.3% | 94 | 2.9% | 10 | 0.3% | 18 | 0.6% |
| MARIPOSA | 160 | 149 | 93.1% | 9 | 5.6% | 0 | 0.0% | 2 | 1.3% | 0 | 0.0% |
| MENDOCINO | 1,218 | 1,044 | 85.7% | 88 | 7.2% | 37 | 3.0% | 7 | 0.6% | 42 | 3.4% |
| MERCED | 5,321 | 5,143 | 96.7% | 83 | 1.6% | 6 | 0.1% | 33 | 0.6% | 56 | 1.1% |
| MODOC | 120 | 115 | 95.8% | 1 | 0.8% | 1 | 0.8% | 0 | 0.0% | 3 | 2.5% |
| MONO | 138 | 125 | 90.6% | 7 | 5.1% | 4 | 2.9% | 0 | 0.0% | 2 | 1.4% |
| MONTEREY | 6,733 | 6,537 | 97.1% | 95 | 1.4% | 56 | 0.8% | 4 | 0.1% | 41 | 0.6% |
| NAPA | 1,746 | 1,687 | 96.6% | 14 | 0.8% | 24 | 1.4% | 6 | 0.3% | 15 | 0.9% |
| NEVADA | 985 | 783 | 79.5% | 33 | 3.4% | 129 | 13.1% | 30 | 3.0% | 10 | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS,

BY COUNTY

| | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATIONS | | CONDITIONAL ENTRANTS | | STUDENTS WITH PME | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OVERDUE^ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 9,188 | 1.7% | 5,268 | 1.0% | 8,986 | 1.6% | 8,227 | 1.5% |
| COUNTY | | | | | | | | | | | |
| ORANGE | 41,381 | 39,527 | 95.5% | 622 | 1.5% | 457 | 1.1% | 338 | 0.8% | 437 | 1.1% |
| PLACER | 6,709 | 6,074 | 90.5% | 162 | 2.4% | 219 | 3.3% | 88 | 1.3% | 166 | 2.5% |
| PLUMAS | 208 | 192 | 92.3% | 8 | 3.8% | 3 | 1.4% | 1 | 0.5% | 4 | 1.9% |
| RIVERSIDE | 36,134 | 33,827 | 93.6% | 673 | 1.9% | 314 | 0.9% | 932 | 2.6% | 388 | 1.1% |
| SACRAMENTO | 21,495 | 20,057 | 93.3% | 464 | 2.2% | 342 | 1.6% | 407 | 1.9% | 225 | 1.0% |
| SAN BENITO | 1,099 | 1,058 | 96.3% | 14 | 1.3% | 6 | 0.5% | 1 | 0.1% | 20 | 1.8% |
| SAN BERNARDINO | 34,542 | 32,441 | 93.9% | 617 | 1.8% | 147 | 0.4% | 866 | 2.5% | 471 | 1.4% |
| SAN DIEGO | 45,956 | 42,717 | 93.0% | 697 | 1.5% | 658 | 1.4% | 1,633 | 3.6% | 251 | 0.5% |
| SAN FRANCISCO | 6,963 | 6,637 | 95.3% | 77 | 1.1% | 52 | 0.7% | 1 | 0.0% | 196 | 2.8% |
| SAN JOAQUIN | 12,320 | 11,710 | 95.0% | 214 | 1.7% | 48 | 0.4% | 176 | 1.4% | 172 | 1.4% |
| SAN LUIS OBISPO | 3,095 | 2,915 | 94.2% | 57 | 1.8% | 68 | 2.2% | 26 | 0.8% | 29 | 0.9% |
| SAN MATEO | 9,168 | 8,857 | 96.6% | 121 | 1.3% | 64 | 0.7% | 10 | 0.1% | 116 | 1.3% |
| SANTA BARBARA | 6,500 | 6,253 | 96.2% | 94 | 1.4% | 91 | 1.4% | 27 | 0.4% | 35 | 0.5% |
| SANTA CLARA | 24,963 | 24,068 | 96.4% | 313 | 1.3% | 187 | 0.7% | 57 | 0.2% | 338 | 1.4% |
| SANTA CRUZ | 3,415 | 3,049 | 89.3% | 74 | 2.2% | 94 | 2.8% | 158 | 4.6% | 40 | 1.2% |
| SHASTA | 2,525 | 2,259 | 89.5% | 82 | 3.2% | 68 | 2.7% | 72 | 2.9% | 44 | 1.7% |
| SIERRA | 25 | --* | ≥95% | --* | ≤5% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| SISKIYOU | 530 | 503 | 94.9% | 10 | 1.9% | 6 | 1.1% | 3 | 0.6% | 8 | 1.5% |
| SOLANO | 5,966 | 5,638 | 94.5% | 92 | 1.5% | 29 | 0.5% | 5 | 0.1% | 202 | 3.4% |
| SONOMA | 6,043 | 5,576 | 92.3% | 127 | 2.1% | 189 | 3.1% | 43 | 0.7% | 108 | 1.8% |
| STANISLAUS | 9,366 | 8,961 | 95.7% | 186 | 2.0% | 62 | 0.7% | 27 | 0.3% | 130 | 1.4% |
| SUTTER | 2,017 | 1,720 | 85.3% | 13 | 0.6% | 18 | 0.9% | 263 | 13.0% | 3 | 0.1% |
| TEHAMA | 1,073 | 1,004 | 93.6% | 23 | 2.1% | 7 | 0.7% | 13 | 1.2% | 26 | 2.4% |
| TRINITY | 138 | 120 | 87.0% | 6 | 4.3% | 7 | 5.1% | 1 | 0.7% | 4 | 2.9% |
| TULARE | 9,535 | 9,205 | 96.5% | 112 | 1.2% | 23 | 0.2% | 168 | 1.8% | 27 | 0.3% |
| TUOLUMNE | 584 | 527 | 90.2% | 21 | 3.6% | 21 | 3.6% | 8 | 1.4% | 7 | 1.2% |
| VENTURA | 11,466 | 10,951 | 95.5% | 198 | 1.7% | 125 | 1.1% | 69 | 0.6% | 123 | 1.1% |
| YOLO | 2,959 | 2,791 | 94.3% | 60 | 2.0% | 48 | 1.6% | 27 | 0.9% | 33 | 1.1% |
| YUBA | 1,361 | 1,263 | 92.8% | 33 | 2.4% | 6 | 0.4% | 29 | 2.1% | 30 | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| ALAMEDA | 2019-20 | 21,622 | 96.5% | 1.1% | 0.7% | 0.2% | 1.6% |
| | 2018-19 | 21,818 | 96.6% | 1.1% | 0.6% | 0.2% | 1.5% |
| ALPINE | 2019-20 | 9 | --* | --* | --* | --* | --* |
| | 2018-19 | 10 | --* | --* | --* | --* | --* |
| AMADOR | 2019-20 | 308 | 91.2% | 4.2% | 1.9% | 0.6% | 1.9% |
| | 2018-19 | 279 | 91.8% | 3.9% | 1.1% | 2.9% | 0.4% |
| BUTTE | 2019-20 | 2,742 | 95.1% | 2.7% | 0.8% | 1.0% | 0.4% |
| | 2018-19 | 2,822 | 94.2% | 2.6% | 1.2% | 1.6% | 0.4% |
| CALAVERAS | 2019-20 | 455 | 93.8% | 1.8% | 1.5% | 1.8% | 1.1% |
| | 2018-19 | 437 | 90.2% | 3.2% | 2.7% | 3.9% | 0.0% |
| COLUSA | 2019-20 | 372 | 96.8% | 0.3% | 0.0% | 0.0% | 3.0% |
| | 2018-19 | 360 | 97.5% | 2.5% | 0.0% | 0.0% | 0.0% |
| CONTRA COSTA | 2019-20 | 15,692 | 96.2% | 1.6% | 0.8% | 0.3% | 1.2% |
| | 2018-19 | 15,192 | 96.4% | 1.6% | 0.9% | 0.3% | 0.8% |
| DEL NORTE | 2019-20 | 394 | 97.0% | 0.8% | 0.0% | 0.8% | 1.5% |
| | 2018-19 | 382 | 94.2% | 1.8% | 1.0% | 2.1% | 0.8% |
| EL DORADO | 2019-20 | 2,909 | 79.7% | 2.2% | 4.3% | 13.5% | 0.3% |
| | 2018-19 | 2,453 | 87.8% | 3.2% | 3.8% | 5.1% | 0.1% |
| FRESNO | 2019-20 | 18,461 | 96.4% | 1.0% | 0.3% | 1.6% | 0.7% |
| | 2018-19 | 18,758 | 96.6% | 1.4% | 0.3% | 1.3% | 0.5% |
| GLENN | 2019-20 | 576 | 86.1% | 1.4% | 0.7% | 10.9% | 0.9% |
| | 2018-19 | 540 | 96.3% | 0.9% | 0.6% | 0.0% | 2.2% |
| HUMBOLDT | 2019-20 | 1,715 | 88.0% | 2.7% | 5.6% | 0.7% | 3.0% |
| | 2018-19 | 1,708 | 88.2% | 3.1% | 5.8% | 1.4% | 1.5% |
| IMPERIAL | 2019-20 | 3,117 | 95.7% | 2.5% | 0.2% | 0.4% | 1.2% |
| | 2018-19 | 3,134 | 97.3% | 1.9% | 0.2% | 0.3% | 0.4% |
| INYO | 2019-20 | 271 | 97.0% | 2.6% | 0.4% | 0.0% | 0.0% |
| | 2018-19 | 231 | 95.7% | 4.3% | 0.0% | 0.0% | 0.0% |
| KERN | 2019-20 | 18,327 | 88.6% | 1.4% | 0.7% | 8.0% | 1.3% |
| | 2018-19 | 18,110 | 91.1% | 2.6% | 0.3% | 5.5% | 0.5% |
| KINGS | 2019-20 | 2,576 | 96.9% | 2.0% | 0.2% | 0.4% | 0.4% |
| | 2018-19 | 2,686 | 97.5% | 1.7% | 0.2% | 0.1% | 0.5% |
| LAKE | 2019-20 | 796 | 90.8% | 3.1% | 0.8% | 0.8% | 4.5% |
| | 2018-19 | 848 | 92.3% | 5.1% | 1.4% | 0.1% | 1.1% |
| LASSEN | 2019-20 | 350 | 92.0% | 5.4% | 1.4% | 0.9% | 0.3% |
| | 2018-19 | 385 | 94.3% | 2.6% | 0.8% | 2.3% | 0.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020  AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| LOS ANGELES | 2019-20 | 133,622 | 94.5% | 1.7% | 0.6% | 0.8% | 2.4% |
| | 2018-19 | 136,039 | 94.5% | 1.7% | 0.6% | 1.3% | 1.9% |
| MADERA | 2019-20 | 2,727 | 96.1% | 1.5% | 0.3% | 0.8% | 1.4% |
| | 2018-19 | 2,762 | 95.5% | 1.3% | 0.4% | 1.3% | 1.4% |
| MARIN | 2019-20 | 3,252 | 93.9% | 2.3% | 2.9% | 0.3% | 0.6% |
| | 2018-19 | 3,170 | 94.3% | 2.7% | 2.6% | 0.2% | 0.3% |
| MARIPOSA | 2019-20 | 160 | 93.1% | 5.6% | 0.0% | 1.3% | 0.0% |
| | 2018-19 | 156 | 91.0% | 6.4% | 1.3% | 1.3% | 0.0% |
| MENDOCINO | 2019-20 | 1,218 | 85.7% | 7.2% | 3.0% | 0.6% | 3.4% |
| | 2018-19 | 1,204 | 85.0% | 2.2% | 4.2% | 0.5% | 8.1% |
| MERCED | 2019-20 | 5,321 | 96.7% | 1.6% | 0.1% | 0.6% | 1.1% |
| | 2018-19 | 5,240 | 97.5% | 1.6% | 0.2% | 0.3% | 0.4% |
| MODOC | 2019-20 | 120 | 95.8% | 0.8% | 0.8% | 0.0% | 2.5% |
| | 2018-19 | 111 | 99.1% | 0.0% | 0.0% | 0.0% | 0.9% |
| MONO | 2019-20 | 138 | 90.6% | 5.1% | 2.9% | 0.0% | 1.4% |
| | 2018-19 | 150 | 90.7% | 4.0% | 2.7% | 0.0% | 2.7% |
| MONTEREY | 2019-20 | 6,733 | 97.1% | 1.4% | 0.8% | 0.1% | 0.6% |
| | 2018-19 | 6,926 | 97.5% | 1.2% | 0.8% | 0.0% | 0.6% |
| NAPA | 2019-20 | 1,746 | 96.6% | 0.8% | 1.4% | 0.3% | 0.9% |
| | 2018-19 | 1,429 | 94.5% | 2.9% | 1.7% | 0.5% | 0.3% |
| NEVADA | 2019-20 | 985 | 79.5% | 3.4% | 13.1% | 3.0% | 1.0% |
| | 2018-19 | 990 | 80.3% | 4.3% | 10.6% | 4.6% | 0.1% |
| ORANGE | 2019-20 | 41,381 | 95.5% | 1.5% | 1.1% | 0.8% | 1.1% |
| | 2018-19 | 41,734 | 95.7% | 1.8% | 1.1% | 0.7% | 0.7% |
| PLACER | 2019-20 | 6,709 | 90.5% | 2.4% | 3.3% | 1.3% | 2.5% |
| | 2018-19 | 6,470 | 91.7% | 2.9% | 2.4% | 0.9% | 2.0% |
| PLUMAS | 2019-20 | 208 | 92.3% | 3.8% | 1.4% | 0.5% | 1.9% |
| | 2018-19 | 210 | 86.2% | 7.1% | 3.8% | 2.9% | 0.0% |
| RIVERSIDE | 2019-20 | 36,134 | 93.6% | 1.9% | 0.9% | 2.6% | 1.1% |
| | 2018-19 | 35,422 | 96.3% | 1.7% | 0.7% | 0.5% | 0.8% |
| SACRAMENTO | 2019-20 | 21,495 | 93.3% | 2.2% | 1.6% | 1.9% | 1.0% |
| | 2018-19 | 21,501 | 93.4% | 2.5% | 1.4% | 1.8% | 0.9% |
| SAN BENITO | 2019-20 | 1,099 | 96.3% | 1.3% | 0.5% | 0.1% | 1.8% |
| | 2018-19 | 1,052 | 97.0% | 1.3% | 0.2% | 0.0% | 1.5% |
| SAN BERNARDINO | 2019-20 | 34,542 | 93.9% | 1.8% | 0.4% | 2.5% | 1.4% |
| | 2018-19 | 33,920 | 95.1% | 1.9% | 0.4% | 1.6% | 0.8% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020  AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| SAN DIEGO | 2019-20 | 45,956 | 93.0% | 1.5% | 1.4% | 3.6% | 0.5% |
| | 2018-19 | 46,256 | 92.5% | 1.7% | 1.3% | 4.0% | 0.5% |
| SAN FRANCISCO | 2019-20 | 6,963 | 95.3% | 1.1% | 0.7% | 0.0% | 2.8% |
| | 2018-19 | 6,840 | 95.7% | 1.0% | 0.7% | 0.0% | 2.6% |
| SAN JOAQUIN | 2019-20 | 12,320 | 95.0% | 1.7% | 0.4% | 1.4% | 1.4% |
| | 2018-19 | 12,410 | 96.7% | 1.4% | 0.2% | 1.2% | 0.4% |
| SAN LUIS OBISPO | 2019-20 | 3,095 | 94.2% | 1.8% | 2.2% | 0.8% | 0.9% |
| | 2018-19 | 3,012 | 94.7% | 1.8% | 2.3% | 0.8% | 0.4% |
| SAN MATEO | 2019-20 | 9,168 | 96.6% | 1.3% | 0.7% | 0.1% | 1.3% |
| | 2018-19 | 9,275 | 96.6% | 1.1% | 0.5% | 0.0% | 1.7% |
| SANTA BARBARA | 2019-20 | 6,500 | 96.2% | 1.4% | 1.4% | 0.4% | 0.5% |
| | 2018-19 | 6,273 | 96.7% | 1.2% | 1.1% | 0.7% | 0.2% |
| SANTA CLARA | 2019-20 | 24,963 | 96.4% | 1.3% | 0.7% | 0.2% | 1.4% |
| | 2018-19 | 25,505 | 97.3% | 1.0% | 0.5% | 0.2% | 1.0% |
| SANTA CRUZ | 2019-20 | 3,415 | 89.3% | 2.2% | 2.8% | 4.6% | 1.2% |
| | 2018-19 | 3,579 | 90.9% | 1.8% | 2.7% | 4.0% | 0.6% |
| SHASTA | 2019-20 | 2,525 | 89.5% | 3.2% | 2.7% | 2.9% | 1.7% |
| | 2018-19 | 2,466 | 87.8% | 3.7% | 3.0% | 3.5% | 1.9% |
| SIERRA | 2019-20 | 25 | ≥95% | ≤5% | 0.0% | 0.0% | 0.0% |
| | 2018-19 | 36 | 97.2% | 0.0% | 0.0% | 2.8% | 0.0% |
| SISKIYOU | 2019-20 | 530 | 94.9% | 1.9% | 1.1% | 0.6% | 1.5% |
| | 2018-19 | 561 | 88.9% | 3.2% | 1.4% | 5.0% | 1.4% |
| SOLANO | 2019-20 | 5,966 | 94.5% | 1.5% | 0.5% | 0.1% | 3.4% |
| | 2018-19 | 5,933 | 97.5% | 1.7% | 0.4% | 0.2% | 0.2% |
| SONOMA | 2019-20 | 6,043 | 92.3% | 2.1% | 3.1% | 0.7% | 1.8% |
| | 2018-19 | 6,343 | 91.3% | 2.4% | 3.4% | 1.5% | 1.4% |
| STANISLAUS | 2019-20 | 9,366 | 95.7% | 2.0% | 0.7% | 0.3% | 1.4% |
| | 2018-19 | 9,346 | 95.9% | 1.7% | 0.7% | 1.1% | 0.6% |
| SUTTER | 2019-20 | 2,017 | 85.3% | 0.6% | 0.9% | 13.0% | 0.1% |
| | 2018-19 | 2,310 | 71.9% | 0.6% | 1.2% | 25.5% | 0.9% |
| TEHAMA | 2019-20 | 1,073 | 93.6% | 2.1% | 0.7% | 1.2% | 2.4% |
| | 2018-19 | 983 | 93.9% | 3.0% | 0.8% | 1.5% | 0.8% |
| TRINITY | 2019-20 | 138 | 87.0% | 4.3% | 5.1% | 0.7% | 2.9% |
| | 2018-19 | 124 | 91.1% | 3.2% | 3.2% | 0.8% | 1.6% |
| TULARE | 2019-20 | 9,535 | 96.5% | 1.2% | 0.2% | 1.8% | 0.3% |
| | 2018-19 | 9,105 | 98.1% | 1.1% | 0.2% | 0.4% | 0.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| TUOLUMNE | 2019-20 | 584 | 90.2% | 3.6% | 3.6% | 1.4% | 1.2% |
| | 2018-19 | 614 | 87.5% | 3.9% | 3.3% | 2.6% | 2.8% |
| VENTURA | 2019-20 | 11,466 | 95.5% | 1.7% | 1.1% | 0.6% | 1.1% |
| | 2018-19 | 11,814 | 96.1% | 1.5% | 1.2% | 0.7% | 0.5% |
| YOLO | 2019-20 | 2,959 | 94.3% | 2.0% | 1.6% | 0.9% | 1.1% |
| | 2018-19 | 2,907 | 95.6% | 2.9% | 1.2% | 0.2% | 0.1% |
| YUBA | 2019-20 | 1,361 | 92.8% | 2.4% | 0.4% | 2.1% | 2.2% |
| | 2018-19 | 1,404 | 92.5% | 2.1% | 0.4% | 1.6% | 3.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 5: NUMBER AND PERCENTAGE OF STUDENTS WITH ALL REQUIRED IMMUNIZATIONS IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | PERCENT | NUMBER WITH ALL REQUIRED IMMUNIZATIONS |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 555,735 | 526,923 | 94.8% | -0.5% | -4,342 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 20,855 | 96.5% | 21,818 | 21,078 | 96.6% | -0.2% | -223 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 281 | 91.2% | 279 | 256 | 91.8% | -0.5% | 25 |
| BUTTE | 2,742 | 2,609 | 95.1% | 2,822 | 2,657 | 94.2% | 1.0% | -48 |
| CALAVERAS | 455 | 427 | 93.8% | 437 | 394 | 90.2% | 3.7% | 33 |
| COLUSA | 372 | 360 | 96.8% | 360 | 351 | 97.5% | -0.7% | 9 |
| CONTRA COSTA | 15,692 | 15,092 | 96.2% | 15,192 | 14,644 | 96.4% | -0.2% | 448 |
| DEL NORTE | 394 | 382 | 97.0% | 382 | 360 | 94.2% | 2.7% | 22 |
| EL DORADO | 2,909 | 2,318 | 79.7% | 2,453 | 2,153 | 87.8% | -8.1% | 165 |
| FRESNO | 18,461 | 17,802 | 96.4% | 18,758 | 18,113 | 96.6% | -0.1% | -311 |
| GLENN | 576 | 496 | 86.1% | 540 | 520 | 96.3% | -10.2% | -24 |
| HUMBOLDT | 1,715 | 1,510 | 88.0% | 1,708 | 1,507 | 88.2% | -0.2% | 3 |
| IMPERIAL | 3,117 | 2,982 | 95.7% | 3,134 | 3,049 | 97.3% | -1.6% | -67 |
| INYO | 271 | 263 | 97.0% | 231 | 221 | 95.7% | 1.4% | 42 |
| KERN | 18,327 | 16,240 | 88.6% | 18,110 | 16,495 | 91.1% | -2.5% | -255 |
| KINGS | 2,576 | 2,497 | 96.9% | 2,686 | 2,620 | 97.5% | -0.6% | -123 |
| LAKE | 796 | 723 | 90.8% | 848 | 783 | 92.3% | -1.5% | -60 |
| LASSEN | 350 | 322 | 92.0% | 385 | 363 | 94.3% | -2.3% | -41 |
| LOS ANGELES | 133,622 | 126,230 | 94.5% | 136,039 | 128,618 | 94.5% | -0.1% | -2,388 |
| MADERA | 2,727 | 2,622 | 96.1% | 2,762 | 2,637 | 95.5% | 0.7% | -15 |
| MARIN | 3,252 | 3,055 | 93.9% | 3,170 | 2,989 | 94.3% | -0.3% | 66 |
| MARIPOSA | 160 | 149 | 93.1% | 156 | 142 | 91.0% | 2.1% | 7 |
| MENDOCINO | 1,218 | 1,044 | 85.7% | 1,204 | 1,024 | 85.0% | 0.7% | 20 |
| MERCED | 5,321 | 5,143 | 96.7% | 5,240 | 5,109 | 97.5% | -0.8% | 34 |
| MODOC | 120 | 115 | 95.8% | 111 | 110 | 99.1% | -3.3% | 5 |
| MONO | 138 | 125 | 90.6% | 150 | 136 | 90.7% | -0.1% | -11 |
| MONTEREY | 6,733 | 6,537 | 97.1% | 6,926 | 6,750 | 97.5% | -0.4% | -213 |
| NAPA | 1,746 | 1,687 | 96.6% | 1,429 | 1,350 | 94.5% | 2.1% | 337 |
| NEVADA | 985 | 783 | 79.5% | 990 | 795 | 80.3% | -0.8% | -12 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 5: NUMBER AND PERCENTAGE OF STUDENTS WITH ALL REQUIRED IMMUNIZATIONS IN 2019-2020 AND 2018-2019,

AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | PERCENT | NUMBER WITH ALL REQUIRED IMMUNIZATIONS |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 555,735 | 526,923 | 94.8% | -0.5% | -4,342 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 39,527 | 95.5% | 41,734 | 39,951 | 95.7% | -0.2% | -424 |
| PLACER | 6,709 | 6,074 | 90.5% | 6,470 | 5,936 | 91.7% | -1.2% | 138 |
| PLUMAS | 208 | 192 | 92.3% | 210 | 181 | 86.2% | 6.1% | 11 |
| RIVERSIDE | 36,134 | 33,827 | 93.6% | 35,422 | 34,104 | 96.3% | -2.7% | -277 |
| SACRAMENTO | 21,495 | 20,057 | 93.3% | 21,501 | 20,087 | 93.4% | -0.1% | -30 |
| SAN BENITO | 1,099 | 1,058 | 96.3% | 1,052 | 1,020 | 97.0% | -0.7% | 38 |
| SAN BERNARDINO | 34,542 | 32,441 | 93.9% | 33,920 | 32,266 | 95.1% | -1.2% | 175 |
| SAN DIEGO | 45,956 | 42,717 | 93.0% | 46,256 | 42,807 | 92.5% | 0.4% | -90 |
| SAN FRANCISCO | 6,963 | 6,637 | 95.3% | 6,840 | 6,547 | 95.7% | -0.4% | 90 |
| SAN JOAQUIN | 12,320 | 11,710 | 95.0% | 12,410 | 12,005 | 96.7% | -1.7% | -295 |
| SAN LUIS OBISPO | 3,095 | 2,915 | 94.2% | 3,012 | 2,852 | 94.7% | -0.5% | 63 |
| SAN MATEO | 9,168 | 8,857 | 96.6% | 9,275 | 8,958 | 96.6% | 0.0% | -101 |
| SANTA BARBARA | 6,500 | 6,253 | 96.2% | 6,273 | 6,069 | 96.7% | -0.5% | 184 |
| SANTA CLARA | 24,963 | 24,068 | 96.4% | 25,505 | 24,817 | 97.3% | -0.9% | -749 |
| SANTA CRUZ | 3,415 | 3,049 | 89.3% | 3,579 | 3,252 | 90.9% | -1.6% | -203 |
| SHASTA | 2,525 | 2,259 | 89.5% | 2,466 | 2,165 | 87.8% | 1.7% | 94 |
| SIERRA | 25 | --* | ≥95% | 36 | 35 | 97.2% | --* | --* |
| SISKIYOU | 530 | 503 | 94.9% | 561 | 499 | 88.9% | 6.0% | 4 |
| SOLANO | 5,966 | 5,638 | 94.5% | 5,933 | 5,786 | 97.5% | -3.0% | -148 |
| SONOMA | 6,043 | 5,576 | 92.3% | 6,343 | 5,793 | 91.3% | 0.9% | -217 |
| STANISLAUS | 9,366 | 8,961 | 95.7% | 9,346 | 8,959 | 95.9% | -0.2% | 2 |
| SUTTER | 2,017 | 1,720 | 85.3% | 2,310 | 1,660 | 71.9% | 13.4% | 60 |
| TEHAMA | 1,073 | 1,004 | 93.6% | 983 | 923 | 93.9% | -0.3% | 81 |
| TRINITY | 138 | 120 | 87.0% | 124 | 113 | 91.1% | -4.2% | 7 |
| TULARE | 9,535 | 9,205 | 96.5% | 9,105 | 8,936 | 98.1% | -1.6% | 269 |
| TUOLUMNE | 584 | 527 | 90.2% | 614 | 537 | 87.5% | 2.8% | -10 |
| VENTURA | 11,466 | 10,951 | 95.5% | 11,814 | 11,353 | 96.1% | -0.6% | -402 |
| YOLO | 2,959 | 2,791 | 94.3% | 2,907 | 2,779 | 95.6% | -1.3% | 12 |
| YUBA | 1,361 | 1,263 | 92.8% | 1,404 | 1,299 | 92.5% | 0.3% | -36 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 6: NUMBER AND PERCENTAGE OF CONDITIONAL ENTRANTS IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL | CONDITIONAL ENTRANTS | PERCENT | TOTAL | CONDITIONAL ENTRANTS | PERCENT | PERCENT | CONDITIONAL ENTRANTS |
| STATE TOTAL | 554,250 | 9,188 | 1.7% | 555,735 | 9,599 | 1.7% | -0.1% | -411 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 237 | 1.1% | 21,818 | 231 | 1.1% | 0.0% | 6 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 13 | 4.2% | 279 | 11 | 3.9% | 0.3% | 2 |
| BUTTE | 2,742 | 74 | 2.7% | 2,822 | 73 | 2.6% | 0.1% | 1 |
| CALAVERAS | 455 | 8 | 1.8% | 437 | 14 | 3.2% | -1.4% | -6 |
| COLUSA | 372 | 1 | 0.3% | 360 | 9 | 2.5% | -2.2% | -8 |
| CONTRA COSTA | 15,692 | 249 | 1.6% | 15,192 | 247 | 1.6% | 0.0% | 2 |
| DEL NORTE | 394 | 3 | 0.8% | 382 | 7 | 1.8% | -1.1% | -4 |
| EL DORADO | 2,909 | 65 | 2.2% | 2,453 | 78 | 3.2% | -0.9% | -13 |
| FRESNO | 18,461 | 187 | 1.0% | 18,758 | 256 | 1.4% | -0.4% | -69 |
| GLENN | 576 | 8 | 1.4% | 540 | 5 | 0.9% | 0.5% | 3 |
| HUMBOLDT | 1,715 | 46 | 2.7% | 1,708 | 53 | 3.1% | -0.4% | -7 |
| IMPERIAL | 3,117 | 79 | 2.5% | 3,134 | 58 | 1.9% | 0.7% | 21 |
| INYO | 271 | 7 | 2.6% | 231 | 10 | 4.3% | -1.7% | -3 |
| KERN | 18,327 | 251 | 1.4% | 18,110 | 474 | 2.6% | -1.2% | -223 |
| KINGS | 2,576 | 51 | 2.0% | 2,686 | 45 | 1.7% | 0.3% | 6 |
| LAKE | 796 | 25 | 3.1% | 848 | 43 | 5.1% | -1.9% | -18 |
| LASSEN | 350 | 19 | 5.4% | 385 | 10 | 2.6% | 2.8% | 9 |
| LOS ANGELES | 133,622 | 2,249 | 1.7% | 136,039 | 2,252 | 1.7% | 0.0% | -3 |
| MADERA | 2,727 | 40 | 1.5% | 2,762 | 36 | 1.3% | 0.2% | 4 |
| MARIN | 3,252 | 75 | 2.3% | 3,170 | 85 | 2.7% | -0.4% | -10 |
| MARIPOSA | 160 | 9 | 5.6% | 156 | 10 | 6.4% | -0.8% | -1 |
| MENDOCINO | 1,218 | 88 | 7.2% | 1,204 | 27 | 2.2% | 5.0% | 61 |
| MERCED | 5,321 | 83 | 1.6% | 5,240 | 83 | 1.6% | 0.0% | 0 |
| MODOC | 120 | 1 | 0.8% | 111 | 0 | 0.0% | 0.8% | 1 |
| MONO | 138 | 7 | 5.1% | 150 | 6 | 4.0% | 1.1% | 1 |
| MONTEREY | 6,733 | 95 | 1.4% | 6,926 | 81 | 1.2% | 0.2% | 14 |
| NAPA | 1,746 | 14 | 0.8% | 1,429 | 42 | 2.9% | -2.1% | -28 |
| NEVADA | 985 | 33 | 3.4% | 990 | 43 | 4.3% | -1.0% | -10 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 6: NUMBER AND PERCENTAGE OF CONDITIONAL ENTRANTS IN 2019-2020 AND 2018-2019,

AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL | CONDITIONAL ENTRANTS | PERCENT | TOTAL | CONDITIONAL ENTRANTS | PERCENT | PERCENT | CONDITIONAL ENTRANTS |
| STATE TOTAL | 554,250 | 9,188 | 1.7% | 555,735 | 9,599 | 1.7% | -0.1% | -411 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 622 | 1.5% | 41,734 | 741 | 1.8% | -0.3% | -119 |
| PLACER | 6,709 | 162 | 2.4% | 6,470 | 190 | 2.9% | -0.5% | -28 |
| PLUMAS | 208 | 8 | 3.8% | 210 | 15 | 7.1% | -3.3% | -7 |
| RIVERSIDE | 36,134 | 673 | 1.9% | 35,422 | 598 | 1.7% | 0.2% | 75 |
| SACRAMENTO | 21,495 | 464 | 2.2% | 21,501 | 527 | 2.5% | -0.3% | -63 |
| SAN BENITO | 1,099 | 14 | 1.3% | 1,052 | 14 | 1.3% | -0.1% | 0 |
| SAN BERNARDINO | 34,542 | 617 | 1.8% | 33,920 | 660 | 1.9% | -0.2% | -43 |
| SAN DIEGO | 45,956 | 697 | 1.5% | 46,256 | 770 | 1.7% | -0.1% | -73 |
| SAN FRANCISCO | 6,963 | 77 | 1.1% | 6,840 | 71 | 1.0% | 0.1% | 6 |
| SAN JOAQUIN | 12,320 | 214 | 1.7% | 12,410 | 176 | 1.4% | 0.3% | 38 |
| SAN LUIS OBISPO | 3,095 | 57 | 1.8% | 3,012 | 54 | 1.8% | 0.0% | 3 |
| SAN MATEO | 9,168 | 121 | 1.3% | 9,275 | 105 | 1.1% | 0.2% | 16 |
| SANTA BARBARA | 6,500 | 94 | 1.4% | 6,273 | 78 | 1.2% | 0.2% | 16 |
| SANTA CLARA | 24,963 | 313 | 1.3% | 25,505 | 258 | 1.0% | 0.2% | 55 |
| SANTA CRUZ | 3,415 | 74 | 2.2% | 3,579 | 66 | 1.8% | 0.3% | 8 |
| SHASTA | 2,525 | 82 | 3.2% | 2,466 | 91 | 3.7% | -0.4% | -9 |
| SIERRA | 25 | --* | ≤5% | 36 | 0 | 0.0% | --* | --* |
| SISKIYOU | 530 | 10 | 1.9% | 561 | 18 | 3.2% | -1.3% | -8 |
| SOLANO | 5,966 | 92 | 1.5% | 5,933 | 103 | 1.7% | -0.2% | -11 |
| SONOMA | 6,043 | 127 | 2.1% | 6,343 | 152 | 2.4% | -0.3% | -25 |
| STANISLAUS | 9,366 | 186 | 2.0% | 9,346 | 162 | 1.7% | 0.3% | 24 |
| SUTTER | 2,017 | 13 | 0.6% | 2,310 | 14 | 0.6% | 0.0% | -1 |
| TEHAMA | 1,073 | 23 | 2.1% | 983 | 29 | 3.0% | -0.8% | -6 |
| TRINITY | 138 | 6 | 4.3% | 124 | 4 | 3.2% | 1.1% | 2 |
| TULARE | 9,535 | 112 | 1.2% | 9,105 | 98 | 1.1% | 0.1% | 14 |
| TUOLUMNE | 584 | 21 | 3.6% | 614 | 24 | 3.9% | -0.3% | -3 |
| VENTURA | 11,466 | 198 | 1.7% | 11,814 | 179 | 1.5% | 0.2% | 19 |
| YOLO | 2,959 | 60 | 2.0% | 2,907 | 83 | 2.9% | -0.8% | -23 |
| YUBA | 1,361 | 33 | 2.4% | 1,404 | 30 | 2.1% | 0.3% | 3 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 7: NUMBER AND PERCENTAGE OF STUDENTS WITH A PERMANENT MEDICAL EXEMPTION (PME) IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | PME | PERCENT | TOTAL STUDENTS | PME | PERCENT | PERCENT | NUMBER PME |
| STATE TOTAL | 554,250 | 5,268 | 1.0% | 555,735 | 4,812 | 0.9% | 0.1% | 456 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 141 | 0.7% | 21,818 | 132 | 0.6% | 0.0% | 9 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 6 | 1.9% | 279 | 3 | 1.1% | 0.9% | 3 |
| BUTTE | 2,742 | 21 | 0.8% | 2,822 | 34 | 1.2% | -0.4% | -13 |
| CALAVERAS | 455 | 7 | 1.5% | 437 | 12 | 2.7% | -1.2% | -5 |
| COLUSA | 372 | 0 | 0.0% | 360 | 0 | 0.0% | 0.0% | 0 |
| CONTRA COSTA | 15,692 | 118 | 0.8% | 15,192 | 132 | 0.9% | -0.1% | -14 |
| DEL NORTE | 394 | 0 | 0.0% | 382 | 4 | 1.0% | -1.0% | -4 |
| EL DORADO | 2,909 | 125 | 4.3% | 2,453 | 93 | 3.8% | 0.5% | 32 |
| FRESNO | 18,461 | 55 | 0.3% | 18,758 | 52 | 0.3% | 0.0% | 3 |
| GLENN | 576 | 4 | 0.7% | 540 | 3 | 0.6% | 0.1% | 1 |
| HUMBOLDT | 1,715 | 96 | 5.6% | 1,708 | 99 | 5.8% | -0.2% | -3 |
| IMPERIAL | 3,117 | 6 | 0.2% | 3,134 | 6 | 0.2% | 0.0% | 0 |
| INYO | 271 | 1 | 0.4% | 231 | 0 | 0.0% | 0.4% | 1 |
| KERN | 18,327 | 128 | 0.7% | 18,110 | 57 | 0.3% | 0.4% | 71 |
| KINGS | 2,576 | 6 | 0.2% | 2,686 | 5 | 0.2% | 0.0% | 1 |
| LAKE | 796 | 6 | 0.8% | 848 | 12 | 1.4% | -0.7% | -6 |
| LASSEN | 350 | 5 | 1.4% | 385 | 3 | 0.8% | 0.6% | 2 |
| LOS ANGELES | 133,622 | 825 | 0.6% | 136,039 | 783 | 0.6% | 0.0% | 42 |
| MADERA | 2,727 | 7 | 0.3% | 2,762 | 12 | 0.4% | -0.2% | -5 |
| MARIN | 3,252 | 94 | 2.9% | 3,170 | 82 | 2.6% | 0.3% | 12 |
| MARIPOSA | 160 | 0 | 0.0% | 156 | 2 | 1.3% | -1.3% | -2 |
| MENDOCINO | 1,218 | 37 | 3.0% | 1,204 | 50 | 4.2% | -1.1% | -13 |
| MERCED | 5,321 | 6 | 0.1% | 5,240 | 8 | 0.2% | 0.0% | -2 |
| MODOC | 120 | 1 | 0.8% | 111 | 0 | 0.0% | 0.8% | 1 |
| MONO | 138 | 4 | 2.9% | 150 | 4 | 2.7% | 0.2% | 0 |
| MONTEREY | 6,733 | 56 | 0.8% | 6,926 | 52 | 0.8% | 0.1% | 4 |
| NAPA | 1,746 | 24 | 1.4% | 1,429 | 25 | 1.7% | -0.4% | -1 |
| NEVADA | 985 | 129 | 13.1% | 990 | 105 | 10.6% | 2.5% | 24 |

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 7: NUMBER AND PERCENTAGE OF STUDENTS WITH A PERMANENT MEDICAL EXEMPTION (PME) IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | PME | PERCENT | TOTAL STUDENTS | PME | PERCENT | PERCENT | NUMBER PME |
| STATE TOTAL | 554,250 | 5,268 | 1.0% | 555,735 | 4,812 | 0.9% | 0.1% | 456 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 457 | 1.1% | 41,734 | 456 | 1.1% | 0.0% | 1 |
| PLACER | 6,709 | 219 | 3.3% | 6,470 | 155 | 2.4% | 0.9% | 64 |
| PLUMAS | 208 | 3 | 1.4% | 210 | 8 | 3.8% | -2.4% | -5 |
| RIVERSIDE | 36,134 | 314 | 0.9% | 35,422 | 232 | 0.7% | 0.2% | 82 |
| SACRAMENTO | 21,495 | 342 | 1.6% | 21,501 | 309 | 1.4% | 0.2% | 33 |
| SAN BENITO | 1,099 | 6 | 0.5% | 1,052 | 2 | 0.2% | 0.4% | 4 |
| SAN BERNARDINO | 34,542 | 147 | 0.4% | 33,920 | 147 | 0.4% | 0.0% | 0 |
| SAN DIEGO | 45,956 | 658 | 1.4% | 46,256 | 599 | 1.3% | 0.1% | 59 |
| SAN FRANCISCO | 6,963 | 52 | 0.7% | 6,840 | 46 | 0.7% | 0.1% | 6 |
| SAN JOAQUIN | 12,320 | 48 | 0.4% | 12,410 | 26 | 0.2% | 0.2% | 22 |
| SAN LUIS OBISPO | 3,095 | 68 | 2.2% | 3,012 | 68 | 2.3% | -0.1% | 0 |
| SAN MATEO | 9,168 | 64 | 0.7% | 9,275 | 49 | 0.5% | 0.2% | 15 |
| SANTA BARBARA | 6,500 | 91 | 1.4% | 6,273 | 72 | 1.1% | 0.3% | 19 |
| SANTA CLARA | 24,963 | 187 | 0.7% | 25,505 | 129 | 0.5% | 0.2% | 58 |
| SANTA CRUZ | 3,415 | 94 | 2.8% | 3,579 | 97 | 2.7% | 0.0% | -3 |
| SHASTA | 2,525 | 68 | 2.7% | 2,466 | 75 | 3.0% | -0.3% | -7 |
| SIERRA | 25 | 0 | 0.0% | 36 | 0 | 0.0% | 0.0% | 0 |
| SISKIYOU | 530 | 6 | 1.1% | 561 | 8 | 1.4% | -0.3% | -2 |
| SOLANO | 5,966 | 29 | 0.5% | 5,933 | 22 | 0.4% | 0.1% | 7 |
| SONOMA | 6,043 | 189 | 3.1% | 6,343 | 213 | 3.4% | -0.2% | -24 |
| STANISLAUS | 9,366 | 62 | 0.7% | 9,346 | 66 | 0.7% | 0.0% | -4 |
| SUTTER | 2,017 | 18 | 0.9% | 2,310 | 28 | 1.2% | -0.3% | -10 |
| TEHAMA | 1,073 | 7 | 0.7% | 983 | 8 | 0.8% | -0.2% | -1 |
| TRINITY | 138 | 7 | 5.1% | 124 | 4 | 3.2% | 1.8% | 3 |
| TULARE | 9,535 | 23 | 0.2% | 9,105 | 22 | 0.2% | 0.0% | 1 |
| TUOLUMNE | 584 | 21 | 3.6% | 614 | 20 | 3.3% | 0.3% | 1 |
| VENTURA | 11,466 | 125 | 1.1% | 11,814 | 140 | 1.2% | -0.1% | -15 |
| YOLO | 2,959 | 48 | 1.6% | 2,907 | 35 | 1.2% | 0.4% | 13 |
| YUBA | 1,361 | 6 | 0.4% | 1,404 | 6 | 0.4% | 0.0% | 0 |

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 8: NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020 AND 2018-2019,

AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | PERCENT | OTHERS LACKING REQUIRED IMMUNIZATIONS† |
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 555,735 | 8,318 | 1.5% | 0.1% | 668 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 36 | 0.2% | 21,818 | 41 | 0.2% | 0.0% | -5 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 2 | 0.6% | 279 | 8 | 2.9% | -2.2% | -6 |
| BUTTE | 2,742 | 27 | 1.0% | 2,822 | 46 | 1.6% | -0.6% | -19 |
| CALAVERAS | 455 | 8 | 1.8% | 437 | 17 | 3.9% | -2.1% | -9 |
| COLUSA | 372 | 0 | 0.0% | 360 | 0 | 0.0% | 0.0% | 0 |
| CONTRA COSTA | 15,692 | 45 | 0.3% | 15,192 | 40 | 0.3% | 0.0% | 5 |
| DEL NORTE | 394 | 3 | 0.8% | 382 | 8 | 2.1% | -1.3% | -5 |
| EL DORADO | 2,909 | 392 | 13.5% | 2,453 | 126 | 5.1% | 8.3% | 266 |
| FRESNO | 18,461 | 294 | 1.6% | 18,758 | 237 | 1.3% | 0.3% | 57 |
| GLENN | 576 | 63 | 10.9% | 540 | 0 | 0.0% | 10.9% | 63 |
| HUMBOLDT | 1,715 | 12 | 0.7% | 1,708 | 24 | 1.4% | -0.7% | -12 |
| IMPERIAL | 3,117 | 12 | 0.4% | 3,134 | 10 | 0.3% | 0.1% | 2 |
| INYO | 271 | 0 | 0.0% | 231 | 0 | 0.0% | 0.0% | 0 |
| KERN | 18,327 | 1,462 | 8.0% | 18,110 | 996 | 5.5% | 2.5% | 466 |
| KINGS | 2,576 | 11 | 0.4% | 2,686 | 2 | 0.1% | 0.4% | 9 |
| LAKE | 796 | 6 | 0.8% | 848 | 1 | 0.1% | 0.6% | 5 |
| LASSEN | 350 | 3 | 0.9% | 385 | 9 | 2.3% | -1.5% | -6 |
| LOS ANGELES | 133,622 | 1,048 | 0.8% | 136,039 | 1,746 | 1.3% | -0.5% | -698 |
| MADERA | 2,727 | 21 | 0.8% | 2,762 | 37 | 1.3% | -0.6% | -16 |
| MARIN | 3,252 | 10 | 0.3% | 3,170 | 6 | 0.2% | 0.1% | 4 |
| MARIPOSA | 160 | 2 | 1.3% | 156 | 2 | 1.3% | 0.0% | 0 |
| MENDOCINO | 1,218 | 7 | 0.6% | 1,204 | 6 | 0.5% | 0.1% | 1 |
| MERCED | 5,321 | 33 | 0.6% | 5,240 | 18 | 0.3% | 0.3% | 15 |
| MODOC | 120 | 0 | 0.0% | 111 | 0 | 0.0% | 0.0% | 0 |
| MONO | 138 | 0 | 0.0% | 150 | 0 | 0.0% | 0.0% | 0 |
| MONTEREY | 6,733 | 4 | 0.1% | 6,926 | 3 | 0.0% | 0.0% | 1 |
| NAPA | 1,746 | 6 | 0.3% | 1,429 | 7 | 0.5% | -0.1% | -1 |
| NEVADA | 985 | 30 | 3.0% | 990 | 46 | 4.6% | -1.6% | -16 |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 8: NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020 AND 2018-2019,

AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | PERCENT | OTHERS LACKING REQUIRED IMMUNIZATIONS† |
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 555,735 | 8,318 | 1.5% | 0.1% | 668 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 338 | 0.8% | 41,734 | 310 | 0.7% | 0.1% | 28 |
| PLACER | 6,709 | 88 | 1.3% | 6,470 | 57 | 0.9% | 0.4% | 31 |
| PLUMAS | 208 | 1 | 0.5% | 210 | 6 | 2.9% | -2.4% | -5 |
| RIVERSIDE | 36,134 | 932 | 2.6% | 35,422 | 194 | 0.5% | 2.0% | 738 |
| SACRAMENTO | 21,495 | 407 | 1.9% | 21,501 | 395 | 1.8% | 0.1% | 12 |
| SAN BENITO | 1,099 | 1 | 0.1% | 1,052 | 0 | 0.0% | 0.1% | 1 |
| SAN BERNARDINO | 34,542 | 866 | 2.5% | 33,920 | 559 | 1.6% | 0.9% | 307 |
| SAN DIEGO | 45,956 | 1,633 | 3.6% | 46,256 | 1,843 | 4.0% | -0.4% | -210 |
| SAN FRANCISCO | 6,963 | 1 | 0.0% | 6,840 | 0 | 0.0% | 0.0% | 1 |
| SAN JOAQUIN | 12,320 | 176 | 1.4% | 12,410 | 154 | 1.2% | 0.2% | 22 |
| SAN LUIS OBISPO | 3,095 | 26 | 0.8% | 3,012 | 25 | 0.8% | 0.0% | 1 |
| SAN MATEO | 9,168 | 10 | 0.1% | 9,275 | 4 | 0.0% | 0.1% | 6 |
| SANTA BARBARA | 6,500 | 27 | 0.4% | 6,273 | 44 | 0.7% | -0.3% | -17 |
| SANTA CLARA | 24,963 | 57 | 0.2% | 25,505 | 45 | 0.2% | 0.1% | 12 |
| SANTA CRUZ | 3,415 | 158 | 4.6% | 3,579 | 144 | 4.0% | 0.6% | 14 |
| SHASTA | 2,525 | 72 | 2.9% | 2,466 | 87 | 3.5% | -0.7% | -15 |
| SIERRA | 25 | 0 | 0.0% | 36 | 1 | 2.8% | -2.8% | -1 |
| SISKIYOU | 530 | 3 | 0.6% | 561 | 28 | 5.0% | -4.4% | -25 |
| SOLANO | 5,966 | 5 | 0.1% | 5,933 | 12 | 0.2% | -0.1% | -7 |
| SONOMA | 6,043 | 43 | 0.7% | 6,343 | 98 | 1.5% | -0.8% | -55 |
| STANISLAUS | 9,366 | 27 | 0.3% | 9,346 | 106 | 1.1% | -0.8% | -79 |
| SUTTER | 2,017 | 263 | 13.0% | 2,310 | 588 | 25.5% | -12.4% | -325 |
| TEHAMA | 1,073 | 13 | 1.2% | 983 | 15 | 1.5% | -0.3% | -2 |
| TRINITY | 138 | 1 | 0.7% | 124 | 1 | 0.8% | -0.1% | 0 |
| TULARE | 9,535 | 168 | 1.8% | 9,105 | 35 | 0.4% | 1.4% | 133 |
| TUOLUMNE | 584 | 8 | 1.4% | 614 | 16 | 2.6% | -1.2% | -8 |
| VENTURA | 11,466 | 69 | 0.6% | 11,814 | 86 | 0.7% | -0.1% | -17 |
| YOLO | 2,959 | 27 | 0.9% | 2,907 | 7 | 0.2% | 0.7% | 20 |
| YUBA | 1,361 | 29 | 2.1% | 1,404 | 22 | 1.6% | 0.6% | 7 |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 9:  NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020
BY SUBGROUP AND COUNTY

| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OTHERS LACKING REQUIRED  IMMUNIZATIONS† | | | | | |
| | | | | INDEPENDENT STUDY | | IEP SERVICES | | HOME-BASED PRIVATE SCHOOL | |
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|---|---|
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 7,018 | 1.3% | 1,673 | 0.3% | 295 | 0.1% |
| COUNTY | | | | | | | | | |
| ALAMEDA | 21,622 | 36 | 0.2% | 0 | 0.0% | 34 | 0.2% | 2 | 0.0% |
| ALPINE | 9 | <20* | --* | <20* | --* | <20* | --* | --* | --* |
| AMADOR | 308 | 2 | 0.6% | 0 | 0.0% | 2 | 0.6% | 0 | 0.0% |
| BUTTE | 2,742 | 27 | 1.0% | 23 | 0.8% | 4 | 0.1% | 0 | 0.0% |
| CALAVERAS | 455 | 8 | 1.8% | 6 | 1.3% | 2 | 0.4% | 0 | 0.0% |
| COLUSA | 372 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| CONTRA COSTA | 15,692 | 45 | 0.3% | 15 | 0.1% | 30 | 0.2% | 0 | 0.0% |
| DEL NORTE | 394 | 3 | 0.8% | 3 | 0.8% | 0 | 0.0% | 0 | 0.0% |
| EL DORADO | 2,909 | 392 | 13.5% | 386 | 13.3% | 6 | 0.2% | 0 | 0.0% |
| FRESNO | 18,461 | 294 | 1.6% | 278 | 1.5% | 15 | 0.1% | 1 | 0.0% |
| GLENN | 576 | 63 | 10.9% | 63 | 10.9% | 0 | 0.0% | 0 | 0.0% |
| HUMBOLDT | 1,715 | 12 | 0.7% | 6 | 0.3% | 5 | 0.3% | 1 | 0.1% |
| IMPERIAL | 3,117 | 12 | 0.4% | 0 | 0.0% | 12 | 0.4% | 0 | 0.0% |
| INYO | 271 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| KERN | 18,327 | 1,462 | 8.0% | 1,390 | 7.6% | 70 | 0.4% | 2 | 0.0% |
| KINGS | 2,576 | 11 | 0.4% | 7 | 0.3% | 4 | 0.2% | 0 | 0.0% |
| LAKE | 796 | 6 | 0.8% | 4 | 0.5% | 2 | 0.3% | 0 | 0.0% |
| LASSEN | 350 | 3 | 0.9% | 3 | 0.9% | 0 | 0.0% | 0 | 0.0% |
| LOS ANGELES | 133,622 | 1,048 | 0.8% | 473 | 0.4% | 553 | 0.4% | 22 | 0.0% |
| MADERA | 2,727 | 21 | 0.8% | 19 | 0.7% | 2 | 0.1% | 0 | 0.0% |
| MARIN | 3,252 | 10 | 0.3% | 0 | 0.0% | 10 | 0.3% | 0 | 0.0% |
| MARIPOSA | 160 | 2 | 1.3% | 1 | 0.6% | 1 | 0.6% | 0 | 0.0% |
| MENDOCINO | 1,218 | 7 | 0.6% | 5 | 0.4% | 2 | 0.2% | 0 | 0.0% |
| MERCED | 5,321 | 33 | 0.6% | 0 | 0.0% | 33 | 0.6% | 0 | 0.0% |
| MODOC | 120 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| MONO | 138 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| MONTEREY | 6,733 | 4 | 0.1% | 0 | 0.0% | 4 | 0.1% | 0 | 0.0% |
| NAPA | 1,746 | 6 | 0.3% | 0 | 0.0% | 0 | 0.0% | 6 | 0.3% |
| NEVADA | 985 | 30 | 3.0% | 25 | 2.5% | 5 | 0.5% | 0 | 0.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or receiving IEP services or home-based private schools.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 9:  NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020
BY SUBGROUP AND COUNTY

| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OTHERS LACKING REQUIRED  IMMUNIZATIONS† | | | | | |
| | | | | INDEPENDENT STUDY | | IEP SERVICES | | HOME-BASED PRIVATE SCHOOL | |
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|---|---|
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 7,018 | 1.3% | 1,673 | 0.3% | 295 | 0.1% |
| COUNTY | | | | | | | | | |
| ORANGE | 41,381 | 338 | 0.8% | 130 | 0.3% | 192 | 0.5% | 16 | 0.0% |
| PLACER | 6,709 | 88 | 1.3% | 55 | 0.8% | 33 | 0.5% | 0 | 0.0% |
| PLUMAS | 208 | 1 | 0.5% | 0 | 0.0% | 1 | 0.5% | 0 | 0.0% |
| RIVERSIDE | 36,134 | 932 | 2.6% | 843 | 2.3% | 64 | 0.2% | 25 | 0.1% |
| SACRAMENTO | 21,495 | 407 | 1.9% | 257 | 1.2% | 103 | 0.5% | 47 | 0.2% |
| SAN BENITO | 1,099 | 1 | 0.1% | 1 | 0.1% | 0 | 0.0% | 0 | 0.0% |
| SAN BERNARDINO | 34,542 | 866 | 2.5% | 747 | 2.2% | 104 | 0.3% | 15 | 0.0% |
| SAN DIEGO | 45,956 | 1,633 | 3.6% | 1,489 | 3.2% | 114 | 0.2% | 30 | 0.1% |
| SAN FRANCISCO | 6,963 | 1 | 0.0% | 0 | 0.0% | 1 | 0.0% | 0 | 0.0% |
| SAN JOAQUIN | 12,320 | 176 | 1.4% | 48 | 0.4% | 63 | 0.5% | 65 | 0.5% |
| SAN LUIS OBISPO | 3,095 | 26 | 0.8% | 2 | 0.1% | 24 | 0.8% | 0 | 0.0% |
| SAN MATEO | 9,168 | 10 | 0.1% | 8 | 0.1% | 2 | 0.0% | 0 | 0.0% |
| SANTA BARBARA | 6,500 | 27 | 0.4% | 26 | 0.4% | 1 | 0.0% | 0 | 0.0% |
| SANTA CLARA | 24,963 | 57 | 0.2% | 0 | 0.0% | 57 | 0.2% | 0 | 0.0% |
| SANTA CRUZ | 3,415 | 158 | 4.6% | 141 | 4.1% | 17 | 0.5% | 0 | 0.0% |
| SHASTA | 2,525 | 72 | 2.9% | 58 | 2.3% | 11 | 0.4% | 3 | 0.1% |
| SIERRA | 25 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| SISKIYOU | 530 | 3 | 0.6% | 3 | 0.6% | 0 | 0.0% | 0 | 0.0% |
| SOLANO | 5,966 | 5 | 0.1% | 5 | 0.1% | 0 | 0.0% | 0 | 0.0% |
| SONOMA | 6,043 | 43 | 0.7% | 20 | 0.3% | 22 | 0.4% | 1 | 0.0% |
| STANISLAUS | 9,366 | 27 | 0.3% | 10 | 0.1% | 14 | 0.1% | 3 | 0.0% |
| SUTTER | 2,017 | 263 | 13.0% | 219 | 10.9% | 7 | 0.3% | 37 | 1.8% |
| TEHAMA | 1,073 | 13 | 1.2% | 10 | 0.9% | 3 | 0.3% | 0 | 0.0% |
| TRINITY | 138 | 1 | 0.7% | 0 | 0.0% | 1 | 0.7% | 0 | 0.0% |
| TULARE | 9,535 | 168 | 1.8% | 160 | 1.7% | 8 | 0.1% | 0 | 0.0% |
| TUOLUMNE | 584 | 8 | 1.4% | 3 | 0.5% | 2 | 0.3% | 3 | 0.5% |
| VENTURA | 11,466 | 69 | 0.6% | 36 | 0.3% | 19 | 0.2% | 14 | 0.1% |
| YOLO | 2,959 | 27 | 0.9% | 24 | 0.8% | 3 | 0.1% | 0 | 0.0% |
| YUBA | 1,361 | 29 | 2.1% | 16 | 1.2% | 11 | 0.8% | 2 | 0.1% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or receiving IEP services or home-based private schools.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 10: NUMBER AND PERCENTAGE OF STUDENTS WITH OVERDUE STATUS^ IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OVERDUE^ | PERCENT | TOTAL STUDENTS | OVERDUE^ | PERCENT | PERCENT | OVERDUE^ |
| STATE TOTAL | 554,250 | 8,227 | 1.5% | 555,735 | 6,083 | 1.1% | 0.4% | 2,144 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 353 | 1.6% | 21,818 | 336 | 1.5% | 0.1% | 17 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 6 | 1.9% | 279 | 1 | 0.4% | 1.6% | 5 |
| BUTTE | 2,742 | 11 | 0.4% | 2,822 | 12 | 0.4% | 0.0% | -1 |
| CALAVERAS | 455 | 5 | 1.1% | 437 | 0 | 0.0% | 1.1% | 5 |
| COLUSA | 372 | 11 | 3.0% | 360 | 0 | 0.0% | 3.0% | 11 |
| CONTRA COSTA | 15,692 | 188 | 1.2% | 15,192 | 129 | 0.8% | 0.3% | 59 |
| DEL NORTE | 394 | 6 | 1.5% | 382 | 3 | 0.8% | 0.7% | 3 |
| EL DORADO | 2,909 | 9 | 0.3% | 2,453 | 3 | 0.1% | 0.2% | 6 |
| FRESNO | 18,461 | 123 | 0.7% | 18,758 | 100 | 0.5% | 0.1% | 23 |
| GLENN | 576 | 5 | 0.9% | 540 | 12 | 2.2% | -1.4% | -7 |
| HUMBOLDT | 1,715 | 51 | 3.0% | 1,708 | 25 | 1.5% | 1.5% | 26 |
| IMPERIAL | 3,117 | 38 | 1.2% | 3,134 | 11 | 0.4% | 0.9% | 27 |
| INYO | 271 | 0 | 0.0% | 231 | 0 | 0.0% | 0.0% | 0 |
| KERN | 18,327 | 246 | 1.3% | 18,110 | 88 | 0.5% | 0.9% | 158 |
| KINGS | 2,576 | 11 | 0.4% | 2,686 | 14 | 0.5% | -0.1% | -3 |
| LAKE | 796 | 36 | 4.5% | 848 | 9 | 1.1% | 3.5% | 27 |
| LASSEN | 350 | 1 | 0.3% | 385 | 0 | 0.0% | 0.3% | 1 |
| LOS ANGELES | 133,622 | 3,270 | 2.4% | 136,039 | 2,640 | 1.9% | 0.5% | 630 |
| MADERA | 2,727 | 37 | 1.4% | 2,762 | 40 | 1.4% | -0.1% | -3 |
| MARIN | 3,252 | 18 | 0.6% | 3,170 | 8 | 0.3% | 0.3% | 10 |
| MARIPOSA | 160 | 0 | 0.0% | 156 | 0 | 0.0% | 0.0% | 0 |
| MENDOCINO | 1,218 | 42 | 3.4% | 1,204 | 97 | 8.1% | -4.6% | -55 |
| MERCED | 5,321 | 56 | 1.1% | 5,240 | 22 | 0.4% | 0.6% | 34 |
| MODOC | 120 | 3 | 2.5% | 111 | 1 | 0.9% | 1.6% | 2 |
| MONO | 138 | 2 | 1.4% | 150 | 4 | 2.7% | -1.2% | -2 |
| MONTEREY | 6,733 | 41 | 0.6% | 6,926 | 40 | 0.6% | 0.0% | 1 |
| NAPA | 1,746 | 15 | 0.9% | 1,429 | 5 | 0.3% | 0.5% | 10 |
| NEVADA | 985 | 10 | 1.0% | 990 | 1 | 0.1% | 0.9% | 9 |

^ Overdue for one or more immunizations.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 10: NUMBER AND PERCENTAGE OF STUDENTS WITH OVERDUE STATUS^ IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OVERDUE^ | PERCENT | TOTAL STUDENTS | OVERDUE^ | PERCENT | PERCENT | OVERDUE^ |
| STATE TOTAL | 554,250 | 8,227 | 1.5% | 555,735 | 6,083 | 1.1% | 0.4% | 2,144 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 437 | 1.1% | 41,734 | 276 | 0.7% | 0.4% | 161 |
| PLACER | 6,709 | 166 | 2.5% | 6,470 | 132 | 2.0% | 0.4% | 34 |
| PLUMAS | 208 | 4 | 1.9% | 210 | 0 | 0.0% | 1.9% | 4 |
| RIVERSIDE | 36,134 | 388 | 1.1% | 35,422 | 294 | 0.8% | 0.2% | 94 |
| SACRAMENTO | 21,495 | 225 | 1.0% | 21,501 | 183 | 0.9% | 0.2% | 42 |
| SAN BENITO | 1,099 | 20 | 1.8% | 1,052 | 16 | 1.5% | 0.3% | 4 |
| SAN BERNARDINO | 34,542 | 471 | 1.4% | 33,920 | 288 | 0.8% | 0.5% | 183 |
| SAN DIEGO | 45,956 | 251 | 0.5% | 46,256 | 237 | 0.5% | 0.0% | 14 |
| SAN FRANCISCO | 6,963 | 196 | 2.8% | 6,840 | 176 | 2.6% | 0.2% | 20 |
| SAN JOAQUIN | 12,320 | 172 | 1.4% | 12,410 | 49 | 0.4% | 1.0% | 123 |
| SAN LUIS OBISPO | 3,095 | 29 | 0.9% | 3,012 | 13 | 0.4% | 0.5% | 16 |
| SAN MATEO | 9,168 | 116 | 1.3% | 9,275 | 159 | 1.7% | -0.4% | -43 |
| SANTA BARBARA | 6,500 | 35 | 0.5% | 6,273 | 10 | 0.2% | 0.4% | 25 |
| SANTA CLARA | 24,963 | 338 | 1.4% | 25,505 | 256 | 1.0% | 0.4% | 82 |
| SANTA CRUZ | 3,415 | 40 | 1.2% | 3,579 | 20 | 0.6% | 0.6% | 20 |
| SHASTA | 2,525 | 44 | 1.7% | 2,466 | 48 | 1.9% | -0.2% | -4 |
| SIERRA | 25 | 0 | 0.0% | 36 | 0 | 0.0% | 0.0% | 0 |
| SISKIYOU | 530 | 8 | 1.5% | 561 | 8 | 1.4% | 0.1% | 0 |
| SOLANO | 5,966 | 202 | 3.4% | 5,933 | 10 | 0.2% | 3.2% | 192 |
| SONOMA | 6,043 | 108 | 1.8% | 6,343 | 87 | 1.4% | 0.4% | 21 |
| STANISLAUS | 9,366 | 130 | 1.4% | 9,346 | 53 | 0.6% | 0.8% | 77 |
| SUTTER | 2,017 | 3 | 0.1% | 2,310 | 20 | 0.9% | -0.7% | -17 |
| TEHAMA | 1,073 | 26 | 2.4% | 983 | 8 | 0.8% | 1.6% | 18 |
| TRINITY | 138 | 4 | 2.9% | 124 | 2 | 1.6% | 1.3% | 2 |
| TULARE | 9,535 | 27 | 0.3% | 9,105 | 14 | 0.2% | 0.1% | 13 |
| TUOLUMNE | 584 | 7 | 1.2% | 614 | 17 | 2.8% | -1.6% | -10 |
| VENTURA | 11,466 | 123 | 1.1% | 11,814 | 56 | 0.5% | 0.6% | 67 |
| YOLO | 2,959 | 33 | 1.1% | 2,907 | 3 | 0.1% | 1.0% | 30 |
| YUBA | 1,361 | 30 | 2.2% | 1,404 | 47 | 3.3% | -1.1% | -17 |

^ Overdue for one or more immunizations.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 11: NUMBER AND PERCENTAGE OF STUDENTS WITH REQUIRED IMMUNIZATIONS BY VACCINE SERIES,
BY COUNTY

| | TOTAL STUDENTS | DTP 4+ | | POLIO 3+ | | MMR 2 | | HEP B 3+ | | VAR 2+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 532,988 | 96.2% | 535,112 | 96.5% | 534,929 | 96.5% | 539,760 | 97.4% | 532,349 | 96.0% |
| COUNTY | | | | | | | | | | | |
| ALAMEDA | 21,622 | 21,208 | 98.1% | 21,285 | 98.4% | 21,301 | 98.5% | 21,342 | 98.7% | 21,127 | 97.7% |
| ALPINE | 9 | <20* | --* | <20* | --* | <20* | --* | <20* | --* | <20* | --* |
| AMADOR | 308 | 289 | 93.8% | 293 | 95.1% | 291 | 94.5% | 292 | 94.8% | 287 | 93.2% |
| BUTTE | 2,742 | 2,646 | 96.5% | 2,665 | 97.2% | 2,674 | 97.5% | 2,683 | 97.8% | 2,666 | 97.2% |
| CALAVERAS | 455 | 434 | 95.4% | 434 | 95.4% | 435 | 95.6% | 441 | 96.9% | 432 | 94.9% |
| COLUSA | 372 | 369 | 99.2% | 370 | 99.5% | 369 | 99.2% | 371 | 99.7% | 363 | 97.6% |
| CONTRA COSTA | 15,692 | 15,303 | 97.5% | 15,346 | 97.8% | 15,370 | 97.9% | 15,464 | 98.5% | 15,294 | 97.5% |
| DEL NORTE | 394 | 386 | 98.0% | 390 | 99.0% | 388 | 98.5% | 389 | 98.7% | 387 | 98.2% |
| EL DORADO | 2,909 | 2,397 | 82.4% | 2,422 | 83.3% | 2,404 | 82.6% | 2,518 | 86.6% | 2,377 | 81.7% |
| FRESNO | 18,461 | 17,963 | 97.3% | 18,034 | 97.7% | 18,071 | 97.9% | 18,163 | 98.4% | 18,039 | 97.7% |
| GLENN | 576 | 506 | 87.8% | 510 | 88.5% | 510 | 88.5% | 523 | 90.8% | 507 | 88.0% |
| HUMBOLDT | 1,715 | 1,581 | 92.2% | 1,578 | 92.0% | 1,583 | 92.3% | 1,582 | 92.2% | 1,570 | 91.5% |
| IMPERIAL | 3,117 | 3,050 | 97.9% | 3,079 | 98.8% | 3,056 | 98.0% | 3,096 | 99.3% | 3,051 | 97.9% |
| INYO | 271 | 265 | 97.8% | 267 | 98.5% | 268 | 98.9% | 268 | 98.9% | 267 | 98.5% |
| KERN | 18,327 | 17,149 | 93.6% | 16,754 | 91.4% | 16,726 | 91.3% | 17,223 | 94.0% | 16,632 | 90.8% |
| KINGS | 2,576 | 2,520 | 97.8% | 2,548 | 98.9% | 2,552 | 99.1% | 2,561 | 99.4% | 2,542 | 98.7% |
| LAKE | 796 | 738 | 92.7% | 754 | 94.7% | 759 | 95.4% | 770 | 96.7% | 757 | 95.1% |
| LASSEN | 350 | 329 | 94.0% | 337 | 96.3% | 337 | 96.3% | 337 | 96.3% | 332 | 94.9% |
| LOS ANGELES | 133,622 | 129,305 | 96.8% | 129,772 | 97.1% | 129,649 | 97.0% | 131,279 | 98.2% | 128,836 | 96.4% |
| MADERA | 2,727 | 2,652 | 97.2% | 2,663 | 97.7% | 2,673 | 98.0% | 2,675 | 98.1% | 2,668 | 97.8% |
| MARIN | 3,252 | 3,123 | 96.0% | 3,140 | 96.6% | 3,152 | 96.9% | 3,147 | 96.8% | 3,116 | 95.8% |
| MARIPOSA | 160 | 152 | 95.0% | 153 | 95.6% | 153 | 95.6% | 156 | 97.5% | 153 | 95.6% |
| MENDOCINO | 1,218 | 1,081 | 88.8% | 1,095 | 89.9% | 1,092 | 89.7% | 1,092 | 89.7% | 1,080 | 88.7% |
| MERCED | 5,321 | 5,191 | 97.6% | 5,254 | 98.7% | 5,250 | 98.7% | 5,275 | 99.1% | 5,225 | 98.2% |
| MODOC | 120 | 116 | 96.7% | 116 | 96.7% | 117 | 97.5% | 119 | 99.2% | 116 | 96.7% |
| MONO | 138 | 127 | 92.0% | 125 | 90.6% | 128 | 92.8% | 127 | 92.0% | 128 | 92.8% |
| MONTEREY | 6,733 | 6,613 | 98.2% | 6,626 | 98.4% | 6,641 | 98.6% | 6,654 | 98.8% | 6,611 | 98.2% |
| NAPA | 1,746 | 1,716 | 98.3% | 1,716 | 98.3% | 1,711 | 98.0% | 1,707 | 97.8% | 1,709 | 97.9% |
| NEVADA | 985 | 822 | 83.5% | 819 | 83.1% | 820 | 83.2% | 823 | 83.6% | 803 | 81.5% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 11: NUMBER AND PERCENTAGE OF STUDENTS WITH REQUIRED IMMUNIZATIONS BY VACCINE SERIES, BY COUNTY

| | TOTAL STUDENTS | DTP 4+ | | POLIO 3+ | | MMR 2 | | HEP B 3+ | | VAR 2+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 532,988 | 96.2% | 535,112 | 96.5% | 534,929 | 96.5% | 539,760 | 97.4% | 532,349 | 96.0% |
| COUNTY | | | | | | | | | | | |
| ORANGE | 41,381 | 40,222 | 97.2% | 40,341 | 97.5% | 40,303 | 97.4% | 40,613 | 98.1% | 40,171 | 97.1% |
| PLACER | 6,709 | 6,301 | 93.9% | 6,337 | 94.5% | 6,283 | 93.7% | 6,375 | 95.0% | 6,260 | 93.3% |
| PLUMAS | 208 | 200 | 96.2% | 198 | 95.2% | 201 | 96.6% | 201 | 96.6% | 195 | 93.8% |
| RIVERSIDE | 36,134 | 34,370 | 95.1% | 34,591 | 95.7% | 34,624 | 95.8% | 34,737 | 96.1% | 34,448 | 95.3% |
| SACRAMENTO | 21,495 | 20,421 | 95.0% | 20,622 | 95.9% | 20,602 | 95.8% | 20,752 | 96.5% | 20,522 | 95.5% |
| SAN BENITO | 1,099 | 1,075 | 97.8% | 1,075 | 97.8% | 1,070 | 97.4% | 1,085 | 98.7% | 1,076 | 97.9% |
| SAN BERNARDINO | 34,542 | 32,895 | 95.2% | 33,177 | 96.0% | 33,221 | 96.2% | 33,668 | 97.5% | 33,179 | 96.1% |
| SAN DIEGO | 45,956 | 43,421 | 94.5% | 43,594 | 94.9% | 43,556 | 94.8% | 43,887 | 95.5% | 43,376 | 94.4% |
| SAN FRANCISCO | 6,963 | 6,778 | 97.3% | 6,805 | 97.7% | 6,793 | 97.6% | 6,814 | 97.9% | 6,748 | 96.9% |
| SAN JOAQUIN | 12,320 | 11,890 | 96.5% | 12,008 | 97.5% | 12,008 | 97.5% | 12,132 | 98.5% | 11,941 | 96.9% |
| SAN LUIS OBISPO | 3,095 | 2,968 | 95.9% | 2,979 | 96.3% | 2,978 | 96.2% | 3,007 | 97.2% | 2,961 | 95.7% |
| SAN MATEO | 9,168 | 8,973 | 97.9% | 8,995 | 98.1% | 8,996 | 98.1% | 9,038 | 98.6% | 8,930 | 97.4% |
| SANTA BARBARA | 6,500 | 6,341 | 97.6% | 6,369 | 98.0% | 6,364 | 97.9% | 6,384 | 98.2% | 6,333 | 97.4% |
| SANTA CLARA | 24,963 | 24,494 | 98.1% | 24,578 | 98.5% | 24,503 | 98.2% | 24,661 | 98.8% | 24,372 | 97.6% |
| SANTA CRUZ | 3,415 | 3,157 | 92.4% | 3,155 | 92.4% | 3,161 | 92.6% | 3,178 | 93.1% | 3,179 | 93.1% |
| SHASTA | 2,525 | 2,350 | 93.1% | 2,356 | 93.3% | 2,368 | 93.8% | 2,405 | 95.2% | 2,345 | 92.9% |
| SIERRA | 25 | --* | ≥95% | --* | ≥95% | --* | ≥95% | --* | ≥95% | --* | ≥95% |
| SISKIYOU | 530 | 515 | 97.2% | 516 | 97.4% | 517 | 97.5% | 518 | 97.7% | 517 | 97.5% |
| SOLANO | 5,966 | 5,807 | 97.3% | 5,848 | 98.0% | 5,850 | 98.1% | 5,868 | 98.4% | 5,820 | 97.6% |
| SONOMA | 6,043 | 5,720 | 94.7% | 5,728 | 94.8% | 5,723 | 94.7% | 5,758 | 95.3% | 5,699 | 94.3% |
| STANISLAUS | 9,366 | 9,054 | 96.7% | 9,151 | 97.7% | 9,162 | 97.8% | 9,199 | 98.2% | 9,143 | 97.6% |
| SUTTER | 2,017 | 1,748 | 86.7% | 1,760 | 87.3% | 1,772 | 87.9% | 1,812 | 89.8% | 1,786 | 88.5% |
| TEHAMA | 1,073 | 1,024 | 95.4% | 1,039 | 96.8% | 1,037 | 96.6% | 1,051 | 97.9% | 1,026 | 95.6% |
| TRINITY | 138 | 123 | 89.1% | 121 | 87.7% | 126 | 91.3% | 127 | 92.0% | 127 | 92.0% |
| TULARE | 9,535 | 9,281 | 97.3% | 9,332 | 97.9% | 9,337 | 97.9% | 9,385 | 98.4% | 9,317 | 97.7% |
| TUOLUMNE | 584 | 541 | 92.6% | 548 | 93.8% | 547 | 93.7% | 555 | 95.0% | 546 | 93.5% |
| VENTURA | 11,466 | 11,115 | 96.9% | 11,157 | 97.3% | 11,156 | 97.3% | 11,238 | 98.0% | 11,084 | 96.7% |
| YOLO | 2,959 | 2,845 | 96.1% | 2,849 | 96.3% | 2,858 | 96.6% | 2,886 | 97.5% | 2,842 | 96.0% |
| YUBA | 1,361 | 1,296 | 95.2% | 1,306 | 96.0% | 1,301 | 95.6% | 1,317 | 96.8% | 1,299 | 95.4% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

# Exhibit 10

Date of Hearing:   June 20, 2019

ASSEMBLY COMMITTEE ON HEALTH
Jim Wood, Chair
SB 276 (Pan) – As Amended June 17, 2019

**SENATE VOTE**: 24-10

**SUBJECT**:  Immunizations: medical exemptions.

**SUMMARY:** Requires the Department Public Health (DPH) to annually review immunization reports from all schools and institutions to identify medical exemptions subject to review. Requires a clinically trained DPH staff member to review exemptions from schools or institutions with an immunization rate of less than 95% or physicians and surgeons who submit five or more medical exemptions in a calendar year. Permits DPH to deny or revoke a medical exemption determined to be inappropriate or invalid, as specified. Establishes an appeals process for medical exemptions that are denied or revoked and creates an independent review panel made up of three physicians for purposes of appeals. Requires DPH to create a standardized statewide form for the purpose of obtaining a medical exemption or medical exemptions for immunization requirements. Requires the form to include specific information, including the name; California medical license of the physician issuing the medical exemption; and, certification that the physician has conducted a physical examination and evaluation of the child consistent with the standard care. States that medical exemptions granted prior to January 1, 2021 that are founfd to be fraudulent or inconsistent, as specified, may be revoked or denied. Specifically, **this bill**:

1) Requires DPH, by January 1, 2021, to develop and make available for use by licensed physicians and surgeons an electronic, standardized, and statewide medical exemption certification form that will be transmitted directly using the existing California Immunization Registry (CAIR).

2) Requires medical exemption certification forms to be printed, signed, and submitted directly to the governing authority of the school or institution or to the governing authority of the school or institution through CAIR, when applicable.

3) Requires, commencing January 1, 2021, the standardized form to be the only documentation of a medical exemption that the governing authority can accept, except for those medical exemptions authorized prior to the adoption of the standardized form under this bill.

4) Requires the standardized form, at a minimum, to require all of the following information:

   a) The name, California medical license number, and business address and telephone number of the physician and surgeon who issued the medical exemption, and of the primary care physician (PCP) of the child, if different from the physician and surgeon who issued the medical exemption;

   b) The name of the child for whom the exemption is sought and the name and address of the child's parent or guardian, and the name and address of the child's school or institution;

c) A statement certifying that the issuing physician and surgeon has conducted a physical examination and evaluation of the child consistent with the relevant standard of care, and complied with all the requirements of this bill;

d) Whether the issuing physician and surgeon is the child's PCP. Requires that if the issuing physician and surgeon is not the child's PCP and has not been treating the child for at least one year, the issuing physician must attest that the PCP has been contacted and advised of the submission of the medical exemption form;

e) A description of the medical basis for which the exemption for each individual immunization is sought. Requires each specific immunization to be listed separately and space to be provided on the form for the inclusion of descriptive information for each immunization for which the exemption is sought;

f) Whether the medical exemption is permanent or temporary, including the date upon which a temporary medical exemption will expire. Prohibits a temporary exemption from exceeding one year;

g) An authorization for DPH to contact the issuing physician for purposes of this bill and for the release of records related to the medical exemption to DPH, the Medical Board of California (MBC) and the Osteopathic Medical Board of California (OMB); and,

h) A certification by the issuing physician and surgeon, under penalty of perjury, that the statements and information contained in the form are true, accurate, and complete.

5) Prohibits a physician and surgeon from charging for either of the following:

a) Filling out a medical exemption form; or,

b) An examination related to the renewal of a temporary medical exemption.

6) Requires, commencing January 1, 2021, if a parent or guardian requests a licensed physician and surgeon to submit a medical exemption for the parent's or guardian's child, the physician and surgeon to inform the parent or guardian of the requirements of this bill. Provides that if a parent or guardian consents, the physician and surgeon must examine the child and submit a completed medical exemption certification form to DPH. Allows a medical exemption form to be submitted to DPH at any time.

7) Requires DPH, by January 1, 2021, to create a standardized system to monitor immunization levels in schools and institutions as defined in existing law, and to monitor patterns of unusually high exemption form submissions by a particular physician and surgeon or a medical practice.

8) Permits DPH to review any medical exemption granted by a physician and surgeon before January 1, 2021. States the following for medical exemptions that were authorized prior to the adoption of the standardized form under this bill (prior to January 1, 2021):

a) A parent or guardian must submit by January 1, 2021, a copy of the medical exemption to DPH for inclusion in CAIR in order for the medical exemption to remain valid;

b) If the local health officer (LHO) determines that a medical exemption granted prior to January 1, 2021, and submitted to DPH is fraudulent or inconsistent with applicable Centers for Disease Control and Prevention (CDC), federal Advisory Committee on Immunization Practices (ACIP), or American Academy of Pediatrics (AAP) criteria for appropriate medical exemptions, the LHO may provide the information to the State Public Health Officer (SPHO) who may revoke the exemption upon the request of the LHO; and,

c) Requires DPH to annually review immunization reports from all schools and institutions in order to identify medical exemptions granted prior to January 1, 2021, for inconsistencies with CDC, ACIP, and AAP guidelines.

9) Requires a clinically trained immunization DPH staff member to review all medical exemptions from either of the following:

a) Schools or institutions with an immunization rate of less than 95%; and,

b) Physicians and surgeons who have submitted five or more medical exemptions in a calendar year.

10) Requires DPH to identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. Permits DPH to contact the PCP or issuing physician and surgeon to request additional information to support the medical exemption.

11) Permits DPH, based on the medical discretion of the clinically trained immunization staff member, to accept a medical exemption that is based on other contraindications or precautions, including the consideration of family medical history if the issuing physician and surgeon provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

12) Requires any medical exemption that DPH's reviewing immunization staff member determines to be inappropriate or otherwise invalid, under the review specified in 10) and 11) above, to also be reviewed by the SPHO or a physician and surgeon designee of the SPHO. Permits, under this review, the SPHO or physician and surgeon designee to deny or revoke a medical exemption, as applicable.

13) Requires DPH to notify the issuing physician and surgeon, the school or institution, and the LHO with jurisdiction over the school or institution of a denial or revocation of a medical exemption that is subject to review.

14) Requires a child to comply with the conditional admission schedule for immunization and continued attendance requirements specified in regulations in the case of a medical exemption that is denied, revoked, or pending appeal.

15) Prohibits DPH from accepting a medical exemption form from a physician and surgeon if it determines that a physician and surgeon poses a risk to the public's health in one or more communities until the physician and surgeon demonstrates to DPH that the risk no longer exists, but in no event will a physician be barred from submitting their forms for less than two years.

16) Prohibits DPH from accepting medical exemption forms from a physician and surgeon with a pending accusation with the MBC or OMB relating to immunization standards of care until the accusation is resolved in favor of the physician and surgeon.

17) Requires DPH to notify the MBC and OMB, as appropriate, of the following:

   a) Physicians and surgeons that have issued medical exemption forms that have been denied or revoked under this bill; or,

   b) Physicians and surgeons who qualify under 15) above.

18) Permits a DPH clinically trained immunization staff member to review any exemption in CAIR as necessary to protect public health.

19) Requires DPH, MBC, and OMB to enter into a memorandum of understanding or similar agreement to ensure compliance with this bill.

20) Requires DPH and the independent review panel specified in 23) below, to comply with all applicable state and federal privacy and confidentiality laws and permits disclosure only in accordance with existing state and federal privacy and confidentiality laws.

21) Permits DPH, if it determines that contracts are required to implement this bill, to award these contracts on a single-source or sole-source basis and exempt from the public contract requirements, as specified. Permits DPH to implement and administer the provisions of this bill through provider bulletins or similar instructions without taking regulatory action.

22) Permits a parent or guardian to appeal the denial or revocation of a medical exemption to the California Health and Human Services (CHHS) Secretary. Permits parents and guardians to provide necessary information to the independent review panel for the appeal.

23) Requires the Secretary of CHHS to appoint an independent expert review panel, consisting of three licensed physicians and surgeons who are PCP or immunization experts, to review appeals. Requires CHHS to establish requirements, including conflict-of-interest standards, as specified, that a physician and surgeon is required to meet in order to qualify for an appointment to the panel.

24) Requires the independent expert review panel to evaluate appeals consistent with the CDC and ACIP guidelines and the relevant standard of care, as applicable.

25) Requires the independent expert review panel to submit its findings and recommendations to the secretary. Requires the CHHS Secretary's final decision to be consistent with the findings of the independent expert review panel, and is not subject to further administrative review.

26) Requires the existing report filed by the governing authority of each school or institution of new entrants to be filed annually.

27) Makes other technical and conforming changes.

28) Finds and declares the importance of vaccines.

**EXISTING LAW**:

1) Establishes DPH to, among other functions, examine the causes of communicable diseases occurring or likely to occur in this state and as the entity mainly responsible for the prevention of communicable diseases.

2) Authorizes the SPHO, as the director of DPH, broad authority to detect, monitor, and prevent the spread of communicable disease in the state, including the ability to:

   a) Require the reporting of communicable diseases that DPH identifies, on timelines and in a manner determined by the DPH;

   b) Adopt and enforce regulations requiring strict or modified isolation, or quarantine, for any of the contagious, infectious, or communicable diseases, if in the opinion of DPH, the action is necessary for the protection of the public health;

   c) Take measures as are necessary to ascertain the nature of the disease and prevent its spread; and, allows DPH to take possession or control of the body of any living person, or the corpse of any deceased person, as specified;

   d) Quarantine, isolate, inspect, and disinfect persons, animals, houses, rooms, other property, places, cities, or localities, whenever in its judgment the action is necessary to protect or preserve the public health; and,

   e) Destroy such objects as bedding, carpets, household goods, furnishings, materials, clothing, or animals, when ordinary means of disinfection are considered unsafe, and when the property is in its judgment, an imminent menace to the public health.

3) Requires the SPHO to be a licensed physician and surgeon who has demonstrated medical, public health, and management experience.

4) Requires a LHO knowing or having reason to believe that any case of reportable diseases, or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, to take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases.

5) Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against the following diseases, as specified:

   a) Diphtheria;
   b) Haemophilus influenzae type b (Hib);
   c) Measles;
   d) Mumps;
   e) Pertussis;
   f) Poliomyelitis;
   g) Rubella;

    h) Tetanus;
    i) Hepatitis b (except after 7th grade); and,
    j) Chickenpox.

6) Requires the governing authority of each school or institution to require documentary proof of each entrant's immunization status.

7) Requires the governing authority to record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by DPH.

8) Requires the immunization record of each new entrant admitted conditionally to be reviewed periodically by the governing authority to ensure that they have been fully immunized against appropriate communicable diseases. Requires immunizations received after entry to be added to the pupil's immunization record.

9) Prohibits any further admittance to school for a pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of DPH unless the pupil has obtained an authorized medical exemption. Permits admittance to a school or institution for a pupil that has become up to date with required immunizations.

10) Requires the governing authority to file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with DPH and the local health department at times and on forms prescribed by DPH.

11) Requires the governing authority to cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. Permits the governing board of any school district to use funds, property, and personnel of the district for that purpose. Permits the governing authority of any school or other institution to permit any licensed physician or any qualified registered nurse to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

12) Permits DPH to add to the list of required immunizations any other disease deemed appropriate, taking into consideration the recommendations of the CDC, ACIP, and the AAP Committee on Infectious Diseases.

13) Waives the above immunization requirements if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances including, but not limited to, family medical history, for which the physician does not recommend immunization.

14) Permits a child for whom the requirement has been waived, if there is good cause to believe that a child has been exposed to one of the specified communicable diseases and the child's proof of immunization status does not show proof of immunization against that disease, to be temporarily excluded from the school or institution until the LHO is satisfied that the child is no longer at risk of developing or transmitting the disease.

15) Establishes the MBC, under the Medical Practice Act, and the OMB, under the Osteopathic Act, which, among other authorities, is the entity that conducts investigations of complaints against physicians and surgeon, including those relating to immunization practice standards of care.

**FISCAL EFFECT**: According to the Senate Appropriations Committee, up to $9.4 million in fiscal year (FY) 2019-20; $9.97 million in FY 2020-21; $10.8 million in FY 2021-22; $10.2 million in FY 2022-23, and $10.15 million in FY 2023-24. All costs to be borne by General Fund for DPH workload and staff to promulgate regulations, prepare appeals, and review exemption requests. In addition, staff anticipates possible contract costs, and ongoing operations costs, for the development and maintenance of a database and its security.

**COMMENTS**:

1) **PURPOSE OF THIS BILL**. According to the author, since the start of 2019, 1,044 measles cases have been reported across 28 states, far surpassing last year's number of cases. This is the greatest number of cases since 1992 and since 2000 when measles was declared eliminated. The author states that SB 277 (Pan and Allen), Chapter 35, Statutes of 2015, eliminated all non-medical exemptions for immunizations required for school entry. While SB 277 was successful in raising immunization rates, the number of medical exemptions issued more than tripled since the law went into effect. According to the author, many of the exemptions are clustered in the same schools, creating concentrated pockets of unvaccinated individuals. At almost 60 schools in the state, more than 10% of kindergarteners had medical exemptions. The rise in medical exemptions is associated with an increase in physicians issuing exemptions for children without medically-justified contraindications. While the vast majority of physicians uphold standards of care, a small number of unethical physicians have monetized their license by selling medical exemptions for profit. Currently, California law requires no state-level oversight or standardization of exemptions. As a result, medical exemptions often contain incomplete information and may be issued for reasons other than medically-justified contraindications. The author concludes that this bill will restore integrity to California's immunization exemption process.

2) **BACKGROUND**. According to the CDC, diseases that used to be common in the U.S. and around the world, including polio, measles, diphtheria, pertussis (whooping cough), rubella (German measles), mumps, tetanus, rotavirus and Hib can now be prevented by vaccination. Due to vaccines, one of the most terrible diseases in history – smallpox – no longer exists outside the laboratory because of vaccines. Over the years vaccines have prevented countless cases of diseases and saved millions of lives. Vaccines work by utilizing the body's own immune system to protect against dangerous pathogens to build immunity to that disease. Immunity means that the body has an existing defense system specific to a disease that protects a person from getting sick if they come into contact with that disease. According to the World Health Organization, vaccines have been estimated to have saved at least 10 million lives between 2010 and 2015 alone.

For the vast majority of individuals, vaccines have been shown to be safe and effective. This is a key component to why vaccinating as much of the population as possible is crucial for the operability of vaccines in fighting infectious disease. Herd immunity, also referred to as community immunity, is when a largely vaccinated population (95% of a community for the most contagious of diseases) can actually suppress a disease to the point of eradication,

which greatly protects the most vulnerable population who cannot receive vaccines because of age or medical condition that renders vaccines unsafe for that individual. For example, newborn babies are immune to many diseases because they have antibodies they got from their mothers. However, this immunity goes away during the first year of life. If an unvaccinated child is exposed to a disease germ, the child's body may not be strong enough to fight the disease. Before vaccines, many children died from diseases that vaccines now prevent, such as whooping cough, measles, and polio. Those same germs exist today, but because babies are protected by vaccines, we do not see these diseases nearly as often.

a) **Current Public Health Threats**. Although vaccines have been an incredible success in protecting communities from some of the most dangerous communicable diseases, in recent years there has been an uptick in the number of measles cases across the U.S., including in California. Highly contagious viruses, like the measles, can be contracted by individuals traveling to regions where it has not been eliminated and bring it back to the U.S. When this occurs, vulnerable, unvaccinated individuals are at risk of contracting the disease. Measles is one of the most contagious communicable diseases, nine out of 10 susceptible individuals that come into contact with the measles will develop the disease. The last large outbreak of the measles in California was in 2014-2015 in the Disneyland outbreak. According to DPH, at least 131 California residents contracted the measles either at Disneyland or from contact with an individual who contracted the disease at Disneyland in December 2014 according to DPH. Those infected included approximately 45% unvaccinated individuals and approximately 43% individuals with unknown vaccination records, according to a Morbidity and Mortality Weekly Report published by the CDC. Since 2015, according to the data from the CDC, there has been a steady increase in identified measles cases nationwide. To date in 2019, the CDC has reported 1,022 new cases of the measles. In California, there have been 51 cases of the measles across the state. It is worthwhile to note that 40 of these cases were in adults. This is likely because adults born prior to the 1989 recommendation of a second dose of the measles vaccine (MMR), have less immunity and are left susceptible to the disease. Nevertheless, the contagiousness of the measles leaves infants and children that are not vaccinated at great risk for contracting the disease which can lead to hospitalization and even death. In the pre-vaccine era, according to the CDC, nearly all children contracted the measles before they were 15 years old and an estimated 48,000 children were hospitalized and 400 to 500 children died from this disease annually. That is the detriment communities face if community immunity is insufficient.

b) **Immunization Requirements**. All 50 states in the U.S. have enacted laws or regulations that require children to receive certain vaccines before they enter certain childcare facilities and/or school. Exceptions to these laws vary by state, and can include medical, religious, and/or philosophical objections. In California, where vaccine laws are some of the strictest in the nation, personal belief exemptions (PBEs) based on religious or philosophical objections are no longer permitted since the passage of SB 277. Two other states, West Virginia and Mississippi, have also passed laws to ban PBEs. Medical exemptions from a licensed physician, however, continue to be accepted in schools.

Current state law mandates immunization of school-aged children against 10 specific diseases as specified in 4) under existing law above. Each of the 10 diseases were added to California code through legislative action, after careful consideration of the public health risks of these diseases, costs to the state and health system, communicability, and

rates of transmission. All of the diseases for which California requires school vaccinations are serious conditions that pose very real health risks to children. Most of the diseases can be spread by contact with other infected children. Tetanus does not spread from student to student, but because it is such a serious potentially fatal disease, and it is easily preventable by vaccine, it is a required vaccination for school enrollment in children.

c) **California Immunization Status Report 2018-2019.** California schools are required to annually submit to DPH a report of the immunization status of their students. According to the 2018-2019 Kindergarten Immunization Assessment report published by the DPH Immunization Branch, 94.8% of all children entering kindergarten for the 2018-2019 school year were up to date and on time with all of the required immunizations. This is a 0.3% decrease in the immunization rate from the previous year. However, approximately 20% of schools and institutions have been identified to have immunization rates under 95%. These include day care centers (2,031/9,212 institutions), kindergartens (1,548/6,758 schools) and middle schools (331/3,362 schools) that have an immunization rate less of than 95%.

Although schools or institutions are required to report the immunization status of their students to DPH at least annually, in 2018-2019, there were approximately 1,000 schools and institutions that did not comply with this requirement.

In 2018 a group of researchers published two peer-reviewed articles (one in the journal *Pediatrics* and the other in the *Journal of Research and Practice*) detailing the experiences of LHOs and immunization staff in addressing medical exemptions after the passage of SB 277. One of the major concerns raised by these groups identified by the studies was the lack of a centralized review of medical exemptions. The LHOs and immunization staff interviewed (representing 35/61 local health departments) identified that the medical exemptions their jurisdictions received being accepted were, from their perspectives, problematic and not always consistent with trusted guidelines for immunization practices, including the CDC, ACIP, and AAP guidelines referenced in this bill.

d) **MBC Investigation.** Following the implementation of SB 277, there was, as reported above, an increase in medical exemptions in California. According to the MBC, since the passage of SB 277, there have been 173 confirmed complaints against 66 physicians regarding suspect medical exemptions according to the MBC. Additionally, there are 104 pending complaints among 52 physicians. The MBC has taken action against one physician. However, the MBC states that the investigations into complaints related to immunization standard of care, have been dismissed because of insufficient evidence, since patients that received the medical exemptions do not provide authorization of their medical exemption that are necessary to support the MBC's accusation.

e) **Best Practice Guidelines for Administering Vaccines.** The CDC, in coordination with the recommendations from ACIP, publishes the best practice guidelines for immunization schedules and for medical exemption decisions, including guidance on appropriate contraindications or precautions to administering vaccines. The ACIP is a committee of medical and public health experts that develop public health and safety-based recommendations on the public use of vaccines and related biological products. The ACIP includes 15 voting members responsible for making vaccine recommendations.

The Secretary of the U.S. Department of Health and Human Services (DHHS) selects these members following an application and nomination process. Fourteen of the members have expertise in vaccinology, immunology, pediatrics, internal medicine, nursing, family medicine, virology, public health, infectious diseases, and/or preventive medicine; one member is a consumer representative who provides perspectives on the social and community aspects of vaccination. In addition to the 15 voting members, ACIP includes eight ex officio members who represent other federal agencies with responsibility for immunization programs in the United States, and 30 non-voting representatives of liaison organizations that bring related immunization expertise. Professional organizations work with ACIP to develop the annual childhood and adult schedules. These organizations include the AAP, the American Academy of Family Physicians, the American College of Obstetricians and Gynecologists, and the American College of Physicians. The 2019 Recommended Immunization Schedules for Persons Aged zero through 18 Years state: "children under six are recommended to receive vaccines for: hepatitis b; rotavirus; diphtheria, tetanus, and pertussis (DTaP); Hib; pneumococcal; polio; influenza; MMR; varicella; hepatitis a; and meningococcal."

f) **Public Vaccine Safety Concerns:** Safety studies, both throughout the Federal Drug Administration (FDA) drug trials process, and in ongoing studies show that vaccines are safe for the vast majority of the population. In California, 95.1% of all school-aged children have their full course of vaccination completed according to the CDC recommended schedule. As with all drugs, vaccines do not come without any side effects. The mild, acute reactions to vaccines include injection site redness, soreness, and a fever. These reactions have not been found to lead to any long term detriment. More severe reactions, such as encephalopathy and severe allergic reactions are considered valid contraindications of vaccines under CDC/ACIP/AAP guidelines. In addition to the antigen, or microbe specific to the disease a vaccine protects against, vaccines also include a number of other ingredients. The vaccine ingredient that causes much of the concerns or vaccine hesitancy are the adjuvants.

According to the FDA, for over 70 years, adjuvants have been components of non-live vaccines that stimulate the body to protect again the antigen being injected as part of the vaccine. Alum, or aluminum salts are the most commonly used adjuvants in the U.S. for vaccines, and illicit a defense immune response against the antigen (disease microbe). The use of adjuvants allows less antigen to be used in the vaccine and also allows vaccines to be safe and effective for immunocompromised individuals. This is why in the CDC/ACIP/AAP best practice guidelines, only live vaccines such as MMR and Varicella, are contraindicated for individuals without sufficient immunocompetence. The National Institutes for Health branch National Institute of Allergy and Infectious Disease, in 2018, refined and published their research goals for a Strategic Plan for Research on Vaccine Adjuvants, which include improving the efficacy and understanding of long-term safety of existing and novel adjuvants used in vaccines.

g) **Federal Vaccine Injury Programs.**

i) **Vaccine Adverse Event Reporting System (VAERS).** The CDC and FDA run VAERS, a national surveillance program to detect possible safety issues with U.S. vaccines by collecting information related to adverse events and side effects that occur after vaccination. VAERS was created in 1990 as part of the National

Childhood Vaccine Injury Act. The major goals of this reporting system are to monitor vaccine reactions and to apply that knowledge to assess the safety of vaccines while monitoring public health emergencies relating to vaccines. Anyone may submit their adverse reactions to this program.

ii) **The National Vaccine Injury Compensation Program (NVICP).** NVICP was established in the 1980s after lawsuits against vaccine companies and health care providers threatened to cause vaccine shortages and reduce U.S. vaccination rates. A consequence of vaccine shortages could have been a resurgence of vaccine preventable diseases. NVCIP is a no-fault alternative to the traditional legal system for resolving vaccine injury petitions and is paid for by vaccine manufacturers through a $0.75 per dose tax.

NVICP permits any individual who received a covered vaccine and believes they were injured as a result, to file a petition. Parents, legal guardians and legal representatives are permitted to file on behalf of children, disabled adults, and individuals who are deceased.

To get compensation, an individual must file a petition with the U.S. Court of Federal Claims. DHHS medical staff reviews the petition, determines if it meets the medical criteria for compensation and makes a preliminary recommendation. The U.S. Department of Justice develops a report that includes the medical recommendation and legal analysis and submits it to the Court. The report is presented to a court-appointed special master, who decides whether the petitioner should be compensated, often after holding a hearing in which both parties can present evidence. If compensation is awarded, the special master determines the amount and type of compensation. The Court then orders DHHS to award compensation. Even if the petition is dismissed, if certain requirements are met, the Court can order DHHS to pay attorneys' fees and costs. The special master's decision may be appealed and petitioners who reject the decision of the court (or withdraw their petitions within certain timelines) may file a claim in civil court against the vaccine company and/or the health care provider who administered the vaccine. This process takes about two to three years to complete.

According to a NVICP compensation report updated on June 1, 2019, from 2006 to 2017 over 3.4 billion doses of covered vaccines were distributed in the U.S. For petitions filed in this time period, 6,314 petitions were adjudicated by the Court, and of those 4,328 were compensated. This means for every 1 million doses of vaccine that were distributed, approximately 1 individual was compensated. Since 1988, over 20,728 petitions have been filed with the NVICP. Over that 30-year time period, 17,923 petitions have been adjudicated, with 6,597 of those determined to be compensable, while 11,326 were dismissed. Total compensation paid over the life of the program is approximately $4.1 billion.

**3) Major Provisions of this Bill:**

a) **Standardized Medical Exemption Form.** This bill requires DPH to develop a standardized form for medical exemptions. This form must include the following information:

i)  *Physician Information.* Name and California medical license number, business address and telephone number, of the PCP and the physician issuing the medical exemption;

ii)  *Child Information.* Name of the child, and the name and address of the child's parents or guardians;

iii)  *Physical examination and evaluation.* A statement certifying that the issuing physician physically examined and evaluated the child according to standards of care;

iv)  *PCP.* Whether the issuing physician is the child's PCP. If the physician issuing the medical exemption has not been treating the child for at least one year, then the issuing physician must attest that the PCP has been contacted and advised of the submission of the medical exemption;

v)  *Medical reason.* A description of the medical reason for which the medical exemption is sought. The form must have space for each specific, required immunization;

vi)  *Permanent or temporary.* Whether the medical exemption is permanent or temporary. For temporary medical exemptions, the form must also include the duration, specified to be up to one year, of the exemption;

vii) *Authorization.* An authorization for the release of medical records related to the medical exemption to the DPH, the MBC, and OMB;

viii) *Penalty of Perjury.* The physician issuing the form must certify under penalty of law that the information included on the form is accurate; and,

ix)  *Form fee.* The physician is prohibited from charging a fee for filling out the medical exemption and for follow up examinations regarding temporary exemptions.

b)  **Review of Medical Exemptions Obtained On or After January 1, 2021**.

i)  This bill requires DPH to annually review immunization reports from all schools and institutions and identify those that are subject to review. A clinically trained immunization staff from DPH shall review all medical exemptions from CAIR under either of the following circumstances:

  (1) Schools or institutions which are found to have an immunization rate of less than 95%; or,

  (2) Physicians and surgeons who have submitted five or more medical exemptions annually.

ii)  There are two criteria established for the review, as follows:

(1) DPH will identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. DPH may contact the PCP or issuing physician to request additional information to support the medical exemption.

(2) DPH, based on the medical discretion of the clinically trained immunization staff member, may accept a medical exemption that is based on other contraindications or precautions, including consideration of family medical history, if the issuing physician provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

If a medical exemption is determined under either of the above circumstances as inappropriate or invalid, the SPHO or physician designee will also review these exemptions to determine whether to deny or revoke a medical exemption.

c) **Notification.** If a medical exemption is denied or revoked, DPH must notify the issuing physician, school or institution and the LHO where the school is located of this denial or revocation;

d) **Conditional Admission.** Consistent with existing regulations, if a medical exemption is denied or revoked, a child must comply with the conditional admission schedule for immunizations and continued attendance requirements specified in existing regulations;

e) **Prohibition on issuing medical exemptions for two years.** This bill prohibits DPH from accepting medical exemptions from physicians under one or both of the following circumstances:

   i) If DPH determines that a physician poses a risk to the public's health in one or more communities until the physician demonstrates to DPH that the risk no longer exist, but in no event should DPH accept medical exemptions from this physician and surgeon for at least two years; and,

   ii) If there is a pending accusation against a physician with the MBC or OMB relating to immunization standards of care until the accusation is resolved in favor of the physician.

f) **Appeals.** This bill permits a medical exemption denied or revoked, as specified, to be appealed by a parent or guardian to the Secretary CHHS. Allows parents or guardians to provide necessary information to the independent expert review panel for purposes of the appeal. The appeals process is as follows:

   i) The CHHS Secretary is required to appoint an independent panel of experts to hear the appeal. The panel must consist of three clinically licensed physicians that are PCPs or immunization experts. CHHS must establish requirements, including conflict of interest standards that the three panelist must meet in order to qualify for an appointment to the panel;

    **ii)** The independent review panel is required to evaluate appeals consistent with CDC/ACIP guidelines and the relevant standard of care as applicable;

    **iii)** The independent expert review panel will submit its findings and recommendations to the CHHS Secretary; and,

    **iv)** The CHHS Secretary's final decision will be consistent with the findings of the independent expert review panel and is not subject to further administrative review.

  **g) Medical exemptions issued before January 1, 2021**. This bill requires parents and guardians with medical exemptions issued prior to the creation of the standardized medical exemption certification form to submit their existing medical exemptions to DPH to be included in CAIR. This bill does not require DPH to review medical exemptions obtained prior to January 1, 2021, however, it does permit review of these medical exemptions.

  **h) Public Health.** This bill permits DPH to review any exemption in CAIR as necessary to protect public health.

**4) SUPPORT**. According to one of the sponsors of this bill, the California Medical Association (CMA), high levels of immunization are necessary to, through a process called "community immunity," protect those who are unable to be immunized against vaccine-preventable illness. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary. CMA states that since the passage of SB 277, the use of medical exemptions has more than tripled, putting many communities below the required protective immunization level.

The AAP, a cosponsor of this bill, states that this bill would create a partnership between state public health, schools and doctors to help keep children safe at school and to protect vulnerable community members, including babies too young to be immunized and people who are immunocompromised, from the risks associated with contracting these diseases. It would also protect the community at large from outbreaks of vaccine-preventable disease.

**5) OPPOSITION**. According to the National Vaccine Information Center (NVIC), it is inappropriate for DPH, a state agency, to be given legal authority to hijack the private patient physician relationship by being placed in the position to reject doctor issued medical vaccine exemptions. Confining vaccine exemptions to narrow and incomplete CDC guidelines hurts children. NVIC states that forcing physicians to violate their professional judgment and their conscience is a form of state-sponsored tyranny that should not be part of public health law in any state.

Advocates for Physicians' Rights (APR), another organization opposed to this bill states that the CDC guidelines generally do not recognize family health history of allergic reactions or side effects as a valid reason upon which to base a medical exemption (and the only time they do recognize such is for altered immuno-incompetence in relation to MMR and Varicella). APR concludes that this runs counter to long-accepted medical standards of care, which recognize family history as a strong predictor of medical outcomes, and will negate physicians' clinical judgment regarding statistically-likely harm to members of a family that share the same gene pool.

6) **PREVIOUS LEGISLATION**.

a) SB 277 eliminated the personal belief exemption from the requirement that children receive vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school or day care center.

b) SB 2109 (Pan), Chapter 821, Statutes of 2012, requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian.

c) AB 2064 (V. Manuel Pérez) of 2012, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group in an amount not less than the actual cost of acquiring the vaccine plus the cost of administration of the vaccine. AB 2064 was held in the Assembly Appropriations Committee on the suspense file.

d) SB 614 (Kehoe), Chapter 123, Statutes of 2011, allowed a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance for the 2011-12 school year, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

e) AB 354 (Arambula), Chapter 434, Statutes of 2010, allows DPH to update vaccination requirements for children entering schools and child care facilities and adds the American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Required children entering grades 7 through 12 receive a TDaP booster prior to admittance to school.

f) AB 1201 (V. Manuel Pérez) of 2009, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group the entire cost of acquiring and administering the vaccine, and prohibits a health plan or insurer from requiring cost-sharing for immunizations. AB 1202 was held on the Assembly Appropriations Committee suspense file.

g) SB 1179 (Aanestad) of 2008, would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. SB 1179 died in the Senate Health Committee.

h) AB 2580 (Arambula) of 2008, would have required pupils entering the seventh grade to be fully immunized against pertussis by receiving any necessary adolescent booster immunization. AB 2580 was held on the Senate Appropriations Committee suspense file.

i) SB 676 (Ridley-Thomas) of 2007, would have required pupils entering the seventh grade to be fully immunized against pertussis. SB 676 was held on suspense in Assembly Appropriations Committee.

**j)** SB 533 (Yee) of 2007, would have added pneumococcus to the list of diseases that pupils are required to be immunized against before entry into any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, except for children who are 24 months of age or older. SB 533 was vetoed by the Governor.

**k)** SB 574 (Wolk), Chapter 329, Statutes of 2005, authorized the creation of an immunization information system, a system that is currently known as the California Immunization Registry that is overseen by DPH.

**7) PROPOSED AMENDMENTS**. The Committee recommends the following amendments:

**a)** Clarify that if the issuing physician is not the child's PCP, the issuing physician must also provide an explanation on why the issuing physician and not the PCP is filling out the medical exemption form.

**b)** Require the form to include how long the physician has been treating the child.

**c)** Clarify attendance requirements for students whose medical exemptions are revoked or whose medical exemption is pending appeal.

**d)** Clarify the limitation on charging for examination related to temporary medical exemption.

**e)** Clarify the requirement for DPH to notify the MBC or OMB when a physician submits five or more medical exemptions forms in a school year that are revoked.

**f)** Delete the authorization for the LHO to determine if a medical exemption granted prior to January 1, 2021 is fraudulent or inconsistent with CDC criteria, as specified, and instead require DPH to review medical forms submitted prior to January 1, 2021 if: the school or institution has 95% overall immunization rate, or the physician has submitted five or more medical exemptions in a calendar year.

**g)** Require DPH to clearly establish and communicate the process for the review of medical exemptions conducted under this bill.

**h)** Require DPH to review school or institutions that do not submit immunization reports or medical exemption forms to DPH.

**i)** Require DPH to also notify the parent or guardian if a medical exemption is revoked.

**j)** Require the DHHS to establish process and guidelines for the appeal process.

**k)** Clarify that the physicians who serve on the independent expert review panel have relevant knowledge, training or experience relating to primary care or immunization.

**l)** Makes other, technical and conforming changes.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California Medical Association (cosponsor)
American Academy of Pediatrics, California (cosponsor)
Vaccinate California (cosponsor)
AIDS Healthcare Foundation
American College of Physicians - California Chapter
California Academy of Eye Physicians & Surgeons
California Academy of Family Physicians
California Academy of Pain Medicine
California Academy of Preventive Medicine
California Association of Hospitals and Health Systems
California Chapter American College of Cardiology
California Children's Hospital Association
California Hospital Association
California Life Sciences Association
California Medical Association
California Optometric Association
California Orthopedic Association
California School Nurses Organization
California Society for Allergy, Asthma and Immunology
California Society of Health System Pharmacists
California Society of Physical Medicine and Rehabilitation
California State Association of Counties
California State PTA
Children Now
Children's Defense Fund-California
Children's Specialty Care Coalition
County Health Executives Association of California
County of Los Angeles Board Of Supervisors
County of Marin
County of Santa Clara
Donate Life California
Health Officers Association of California
Infectious Disease Association of California
Kaiser Permanente
LA Care Health Plan
March of Dimes
Parent's For Choice
Sonoma County Health Action Committee for Healthcare Improvement
Sutter Health
Vaccinate California

**Opposition**

A Voice For Choice Advocacy
Advocates For Physicians' Rights

Alliance For Natural Health USA
Amy's Chocolate
Animal Wellness & Veterinary Pain Management, Inc.
Association of American Physicians And Surgeons
Autism International Association, Inc
Breathe Bodyworks Holistic Healing Network
California Health Coalition Advocacy
California Right To Life Committee, Inc.
Californians for Trusted Healthcare
Children's Health Coalition
Concerned Physicians Opposed to SB 276
Drjockers.Com
Eagle Forum of California
Educate.Advocate
Families For Early Autism Treatment
Matrix Mothers
Moms Across America
National Health Freedom Action
National Vaccine Information Center
Orange County Health Choice
Parentalrights.Org
Parents United 4 Kids
Physicians Association For Anthroposophical Medicine
Physicians for Informed Consent
Progressives for Choice
Raphael Medicine & Therapies Pc
SCV For Parental Rights
U Turn For Christ
Vaccine-Injury Awareness League
West Coast Elite Dance
West Virginians For Health Freedom
Numerous Individuals

**Analysis Prepared by**: Marissa Kraynak, Ph.D. / HEALTH / (916) 319-2097

# Exhibit 11

**Kindergarten Immunization Assessment, 2020-2021 and 2021-2022**
**First Grade Immunization Assessment, 2021-2022**

## Executive summary

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Schools in California are required to report student immunization status to the California Department of Public Health (CDPH) every year. This report summarizes California student immunization rates reported at kindergarten in the 2020-2021 and 2021-2022 school years and at first grade in 2021-2022.

Events potentially affecting immunization and reporting during this period included:

- The Coronavirus 2019 (COVID-19) pandemic has disrupted routine primary health care and education.
- Beginning January 1, 2021 Senate Bills (SB) 276 and SB 714 have required that all new medical exemptions to requirements for school entry be issued through a statewide database accessed at the California Immunization Registry Medical Exemption (CAIR-ME) website.

Reported immunization rates in 2021-2022 decreased slightly from before the pandemic. The proportion of kindergarten students reported to have received all required immunizations was 94.3% in 2019-2020 and 94.0% in 2021-2022. An interim rate for kindergarten students in 2020-2021, when immunization or reporting might have been affected by delayed immunization and widespread school closures, was 92.8%. The rate for this cohort during first grade in 2021-2022 was 96.0%. The rate of kindergarteners reported as having received 2 doses of Measles, Mumps and Rubella (MMR) in 2021-2022 was 96.3%, with 16 (28%) of California counties reporting MMR rates below 95%. The rate of kindergarteners reported with permanent medical exemptions decreased from 1.0% in 2019-2020 to 0.3% in 2021-2022, the lowest level since 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

---

### Introduction

All schools with kindergartens in California are required to report annually on student compliance per California Health and Safety Code Sections 120325-120375. This report summarizes the 2020-2021 and 2021-2022 school year data for kindergarteners. In 2021-2022, an additional reporting requirement was added for first grade students to follow immunization trends during the COVID-19 pandemic, associated with delayed primary healthcare, lengthy school closures, shifts from in-person to virtual and hybrid learning, and, in concert with smaller birth cohorts, a decreased kindergarten student enrollment of 10% between 2019-2020 and 2021–2022 per California Department of Education data.

California laws over the past decade have modified:

- Medical exemptions to required immunization: Starting January 1, 2021, Senate Bills SB 276 and SB 714 have required that all new medical exemptions for school and child care entry be issued through CAIR-ME, an electronic, statewide database. Medical exemptions can only be issued by physicians and surgeons licensed with the Medical Board or Osteopathic Medical Board of California and must meet criteria for appropriate exemptions from the Centers for Disease Control and Prevention, Advisory Committee on Immunization Practices and American Academy of Pediatrics.
- Personal beliefs exemptions (PBEs): PBEs have not been permitted since 2016 per SB 277.
- Required doses: Since 2019, students entering kindergarten are required to receive two rather than one dose of Varicella (chickenpox) vaccine due to changes in the California Code of Regulations.

**Methods**

California schools registered with the California Department of Education reported to CDPH data on enrolled kindergarteners during the winter of the 2020-2021 and 2021-2022 school years. In 2021-2022, schools reporting kindergarten enrollment were also required to report the immunization status of first grade students to monitor their vulnerability to vaccine-preventable diseases during the pandemic.

Based on their immunization status, students were classified by school staff into the following categories:

- Received <u>all required immunizations</u>, including the following doses:
    - 5 or more of Diphtheria, Tetanus and Pertussis (DTP) vaccine (4 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['4+DTP'];
    - 4 or more of Polio vaccine (3 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['3+ Polio'];
    - 2 or more of Measles-containing and Mumps-containing vaccines received on or after the first birthday, and 1 or more of Rubella vaccine, typically combined as Measles, Mumps and Rubella (MMR) vaccine: ['2+ MMR'].
    - 3 or more of Hepatitis B (Hep B) vaccine: ['3+ Hep B'], and
    - 2 or more of Varicella (Var): ['2+ Var']. From 2000-2019, the requirement was for 1 or more doses of Varicella vaccine or a history documented by a physician of having had chickenpox disease. History of disease is currently reported as a permanent medical exemption.
- <u>Conditional entrants</u> who had:
    - Not received all required doses but were not overdue for required doses, or
    - A temporary medical exemption to one or more required immunizations.
  Conditional entrants are required to receive additional doses after entry.
- Have a <u>permanent medical exemption</u> (PME) to one or more required immunizations.
- <u>Other students lacking immunizations</u>. Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
    - A home-based private school or
    - A public independent study program and do not receive classroom-based instruction.
    - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.
  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Children <u>overdue</u> for one or more required immunizations and subject to exclusion from school until the overdue requirements have been met.

Under SB 277, since the 2016-2017 school year <u>personal beliefs exemptions</u> (PBEs) have no longer been an option for children entering kindergarten.

Starting in 2016-2017 school year, any immunizations received by children with PBEs or PMEs for different immunizations are reported in the completion rates of each specific required immunization series (e.g., 4+ DTP, 2+ MMR, etc.).

Due to rounding, figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

**Results**

In 2021-2022, 7,824 schools reported immunization status for 503,722 kindergarten students, and 7,598 schools reported on 431,819 first grade students (Table 1 and 2). Compared to 2019-2020, the number of kindergarten schools that reported in 2021-2022 decreased by 2% and number of reported kindergarteners decreased by 9%. Between 2019-2020 and 2021-2022, the number of private schools reporting kindergarten education decreased 10% from 1,891 to 1,693 schools, while the number of public schools with kindergarten increased slightly from 6,109 to 6,131. Similar to previous years, public schools accounted for 78% of all schools reporting kindergarten education and 92% of all reported kindergarten students in 2021-2022. Among nonreporting schools, 87% (161/185) were private schools.

All required immunizations: Among the 503,722 reported kindergarten students in 2021-2022, 94.0% had received all required immunizations, a decrease of 0.3 percentage points from 2019-2020 (Table 1 and Figure 1); these findings were similar for the subset of public schools.

The interim rate for kindergarten students in 2020-2021 was 92.8%, while the rate for this cohort during first grade in 2021-2022 was 96.0% (Table 2).

Specific immunization series: Completion rates for specific immunization series among kindergarteners in 2021-2022 ranged from 95.7% for DTP to 97.3% for Hep B (Table 1 and Figure 2).  Compared to 2019-2020, in 2021-2022 rates for DTP vaccine decreased from 96.2% to 95.7%, varicella vaccine remained unchanged at 96.0%, polio vaccine decreased from 96.5% to 96.2% and Hep B vaccine decreased from 97.4% to 97.3%.

MMR rates among kindergarteners decreased 0.2 percentage points from 96.5% in 2019-2020 to 96.3% in 2021-2022, including 96.4% in public schools and 95.5% in private schools.

As with the trend for all required vaccines, the rates reported for each specific vaccine were lower during the first pandemic reporting year of 2020-2021 and similar in 2021-2022 compared to 2019-2020.

PMEs:  The number of kindergarteners reported with permanent medical exemptions was 5,268 (1.0%) in 2019-2020 and 1,366 (0.3%) in 2021-2022 (Table 1, Figures 3 and 4). Among first grade students in 2021-2022, 1,675 students (0.4%) were reported with PMEs, compared to 2,865 (0.6%) of kindergarten students in 2020-2021 (Table 2). Both public and private schools reported fewer PMEs in 2021-2022 than previous years.

Conditional entrants: The proportion of kindergarteners reported as conditional entrants decreased from 1.7% in 2019-2020 to 1.3% in 2021-2022 (Table 1, Figure 4), while 0.6% of first grade students were reported as conditional entrants in 2021-2022 (Table 2). 1,097 kindergarteners in 2019-2020 were reported with temporary medical exemptions (0.2% of all students and 12% of conditional entrants), compared to 430 (0.1% of all students and 6% of conditional entrants) in 2021-2022. Among first grade students in 2021-2022, 225 students were reported with temporary medical exemptions (0.1% of all students and 9% of conditional entrants).

For the sum of permanent and temporary medical exemptions during kindergarten, 6,365 (1.1%) were reported in 2019-2020 and 1,796 (0.4%) in 2021-2022.

Overdue: The rates of kindergarteners reported as overdue were 1.5% in 2019-2020, 4.0% in 2020-2021 and 2.3% in 2021-2022 (Table 1 and Figure 4), while 1.3% of first-grade students were reported as overdue in 2021-2022 (Table 2). Between 2019-2020 and 2021-2022, the proportion of overdue kindergarteners increased from 1.4% to 2.2% in public schools and from 2.3% to 3.3% in private schools.

Other students lacking required immunizations: Kindergarteners who were reported as lacking one or more required immunizations who attend a public independent study program and do not receive classroom-based

instruction, attend a home-based private school, or receive IEP services increased from 1.6% in 2019-2020 to 2.1% in 2021-2022 (Table 1 and Figure 4).

County-level immunization rates: Immunization rates varied widely, being lower in some northern and central counties in California (Tables 3 and 4, Figures 5 and 6). In 2021-2022, 13 (22%) of 58 counties reported kindergartens with all required immunizations below 90%, compared to 11 (19%) counties in 2019-2020. In most counties, rates for all required immunizations in first grade students during 2021-2022 were higher than rates in kindergarten students during 2020-2021.

As in prior school years, counties with a higher proportion of kindergarten enrollment in online or virtual schools had lower immunization rates.  El Dorado, Glenn, Kern, and Sutter counties reported more than 5% of kindergarten students being enrolled in virtual schools in 2021-2022 and rates of all required vaccines between 78 - 88%.  In these counties, there were large differences in all required immunization rates between students in classroom-based schools versus virtual schools (Box).

| % Of Kindergarteners with All Required Immunizations in 2021-2022 | | | For Schools Based in County, % of Pupils Reported as Enrolled in Virtual Schools* |
|---|---|---|---|
| **County** | All Schools Based in County | Classroom-Based Schools | Virtual Schools* | |
| Sutter | 77.5% | 96.1% | 35.0% | 30.4% |
| El Dorado | 78.2% | 92.7% | 18.2% | 19.4% |
| Glenn | 85.1% | 96.7% | 23.3% | 15.7% |
| Kern | 88.2% | 93.9% | 21.0% | 7.9% |

*Virtual schools are based in the specified county but may enroll children who reside in other counties.

MMR rates for kindergarteners by county ranged from 79.9% to 99.3% in 2021-2022, with 16 (28%) counties reporting MMR rates lower than 95%, including 5 counties with rates lower than 90%. This is similar to the rates in 2018-2019 and 2019-2020, in which 17 (29%) counties reported fewer than 95% of their kindergarteners as having had at least two MMR doses. For first-grade students in 2021-2022, MMR rates by county ranged from 83.8% to 100%, with 12 (21%) counties with MMR rates lower than 95%.

---

**Discussion**

Despite the demands and disruptions from the pandemic, California schools continue to provide valuable information on the immunity of their students, with public schools reporting immunization status of 97% (449,496/462,172) of kindergarteners counted in CDE enrollment data in 2020-2021 and 98% (461,506/469,928) in 2021-2022. Private school reporting was lower at 91% (36,042/39,392) in 2020-2021 and 94% (42,216/45,037) in 2021-2022.

The rate of all required immunizations reported for kindergarten students was similar at 94.3% in 2019-2020 and 94.0% in 2021-2022. An interim lower rate of 92.8% for kindergarteners during the initial school year of the pandemic in 2020-2021 was followed by a rate of 96.0% during first grade in 2021-2022. As data on first graders had not been collected previously, it is unclear whether the pace of catch-up during first grade in 2021-2022 was unusual.  Immunization rates for most individual required vaccines have also decreased slightly during the pandemic.  School reporting during the pandemic, especially during 2020-2021, may have been

hampered by closures, shortages or turnover of staff at schools, and delayed care or recordkeeping at clinical sites.

Over the last decade, the rate of all required immunizations rose from 91.0% in 2011-2012 to 95.6% in 2015-2016, and then decreased to 94.0% in 2021-2022. During this period, reasons for increasing immunization rates might have included: public health departments working with schools to improve the application of conditional admission schedules, personal beliefs exemptions no longer being permitted per SB 277 and CDE school audits incorporating immunization compliance review. In contrast, during this period increases were also reported in kindergarteners with medical exemptions or lacking immunizations while in educational programs that are individualized or based outside of the classroom. Since implementation of SB 276 and SB 714, which require medical exemptions to align with national standards and be subject to review by CDPH, the rates of PMEs have decreased from a record high of 1.0% kindergarteners in 2019-2020 to 0.3% of kindergarteners and 0.4% of first graders in 2021-2022.

National trends and rates for kindergarteners during the 2020-2021 school year reported to CDC were similar to California (CA), whether for MMR (93.9% US vs. 95.1% CA), DTaP (93.6% vs 94.7%) or Varicella (93.6% vs. 94.8%). In 2021-2022, 16 (28%) of California counties had reported MMR rates in kindergarten students below 95%, an approximate threshold necessary to prevent the transmission of measles. Regional differences in immunization rates for school-required vaccines reflect trends for COVID-19 vaccines in California.

Children in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. Efforts to monitor, support, and increase immunizations should continue as in-person learning and social activities resume; efforts to protect school communities with required vaccines and COVID-19 vaccines can be complementary and synergistic.

**Limitations**

This report is subject to limitations that include:

- o Submission of student immunization records to school staff and reporting by school staff of immunization data to CDPH might have been reduced during the pandemic. Incomplete immunization records might have resulted in underestimates of immunization rates.
- o CDPH does not know how many of the schools that did not report had enrolled kindergarteners or the immunization status of their kindergarten students. In 2020-2021, 342 California elementary schools, including 297 private schools and 45 public schools, did not report. In 2021-2022, 185 California elementary schools, including 161 private schools and 24 public schools, did not report. Underreporting could have biased the reported immunization rates in either direction.
- o As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in underestimates of their enrollment.
- o The timing of immunization is often not included in the assessment criteria; if doses were given at inappropriate ages or intervals, reported rates may overestimate levels of immunity.

**Figures**

Figure 1. Percentage of Students with All Required Immunizations by School Year, Left:  Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year, First Grade, 2021-2022 School Year

Figure 2. Percentage of Students with Specific Required Immunizations by Series and School Year, Left: Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year, First Grade, 2021-2022 School Year

Figure 3. Percentage of Students with Permanent Medical Exemptions (PME) by School Year, Left:  Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year, First Grade, 2021-2022 School Year

Figure 4. Percentage of All Kindergarten and First Grade Students by Reported Admission Status by School Year, Top: Kindergarten, 2014-2015 to 2021-2022 School Years:  Bottom: Kindergarten, 2020-21 School Year and First Grade, 2021-2022 School Year.

Figure 5. Map: Kindergarten and First Grade Students with All Required Immunizations, by County, Kindergarten, 2019-2020 to 2021-2022 School Years and First Grade, 2021-2022 School Year

Figure 6. Map: Kindergarten and First Grade Students with Two or More Doses of MMR Vaccine, by County, Kindergarten, 2019-2020 to 2021-2022 School Years and First Grade, 2021-2022 School Year

**Tables**

Table 1. Kindergarten Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years

Table 2.  Immunization Assessment Summary of Kindergarten in 2020-2021 and Subsequent 1st Grade in 2021-2022

Table 3.  Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, by County

Table 4.  Total Enrollment and Specific Required Immunizations by Series, Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, by County

**Figure 1.  Percentage of Students with All Required Immunizations by School Year**

**Left:  Kindergarteners in the 2014-2015 to 2021-2022 School Years**

**Right:  Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure 2.  Percentage of Students with Specific Required Immunizations by Series and School Year**
**Left:  Kindergarteners in the 2014-2015 to 2021-2022 School Years**
**Right:  Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure 3. Percentage of Students with Permanent Medical Exemptions (PME) by School Year**
**Left: Kindergarteners in the 2014-2015 to 2021-2022 School Years**
**Right: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.

9 of 24

**Figure 4. Percentage of All Kindergarten and First Grade Students by Reported Admission Status by School Year**

**Top: Kindergarteners in the 2014-2015 to 2021-2022 School Years**

**Bottom: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**

In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. Since the 2016-2017 school year, entrants have been subject to SB 277. In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.



^ Other children lacking required immunizations under criteria specified in SB 277.

*Immunization and data collection potentially affected by the COVID-19 pandemic.

10 of 24

**Figure 5. Kindergarten and First Grade Students with All Required Immunizations, by County**

Kindergarteners in the 2019-2020 to 2021-2022 School Years

First Graders in the 2021-2022 School Year



Legend: ≤ 89.9%    90.0 – 94.9%    95.0 – 100%    Did Not Report

Kindergarten
**2019-2020 School Year**

Statewide Percentage: 94.3%

Kindergarten
**2020-2021 School Year***

Statewide Percentage: 92.8%

Kindergarten
**2021-2022 School Year***

Statewide Percentage: 94.0%

First Grade
**2021-2022 School Year***

Statewide Percentage: 96.0%

*Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure 6. Kindergarten and First Grade Students with 2 or More Doses of MMR Vaccine, by County**

Kindergarteners in the 2019-2020 to 2021-2022 School Years

First Graders in the 2021-2022 School Year



*Immunization and data collection potentially affected by the COVID-19 pandemic.

12 of 24

**Table 1: Kindergarten Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years**

| | Kindergarten | | | | | | | | | Kindergarten: 2021-22 and 2019-20 | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2021-2022 | | | 2020-2021 | | | 2019-2020 | | | 2-Year Percentage Point Change** | | |
| | All | Public | Private | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Kindergarten* | 7,824 | 6,131 | 1,693 | 7,749 | 6,070 | 1,679 | 8,000 | 6,109 | 1,891 | -2% | 0% | -10% |
| Number of Kindergarten Students | 503,722 | 461,506 | 42,216 | 485,538 | 449,496 | 36,042 | 554,250 | 511,104 | 43,146 | -9% | -10% | -2% |
| All Required Immunizations | 94.0% | 94.1% | 93.1% | 92.8% | 92.9% | 92.6% | 94.3% | 94.4% | 92.4% | -0.3% | -0.4% | 0.7% |
| Conditional Entrants | 1.3% | 1.3% | 1.8% | 0.8% | 0.8% | 1.7% | 1.7% | 1.6% | 2.4% | -0.3% | -0.3% | -0.6% |
| Permanent Medical Exemptions | 0.3% | 0.2% | 1.0% | 0.6% | 0.5% | 1.9% | 1.0% | 0.8% | 2.5% | -0.7% | -0.6% | -1.6% |
| Personal Beliefs Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 2.1% | 2.2% | 0.9% | 1.7% | 1.8% | 0.9% | 1.6% | 1.7% | 0.3% | 0.5% | 0.5% | 0.5% |
| Overdue^ | 2.3% | 2.2% | 3.3% | 4.0% | 4.1% | 2.8% | 1.5% | 1.4% | 2.3% | 0.8% | 0.8% | 1.0% |
| 4+ DTP | 95.7% | 95.7% | 95.3% | 94.7% | 94.7% | 94.6% | 96.2% | 96.3% | 94.6% | -0.5% | -0.6% | 0.7% |
| 3+ Polio | 96.2% | 96.3% | 95.6% | 95.2% | 95.3% | 94.9% | 96.5% | 96.7% | 94.8% | -0.3% | -0.4% | 0.8% |
| 2+ MMR | 96.3% | 96.4% | 95.5% | 95.1% | 95.1% | 94.7% | 96.5% | 96.7% | 94.7% | -0.2% | -0.3% | 0.8% |
| 3+ Hep B | 97.3% | 97.4% | 97.1% | 97.0% | 97.1% | 96.3% | 97.4% | 97.5% | 96.1% | 0.0% | -0.1% | 1.0% |
| 2+ Var (or physician-documented disease)^^ | 96.0% | 96.1% | 95.3% | 94.8% | 94.8% | 94.6% | 96.0% | 96.2% | 94.4% | 0.0% | -0.1% | 0.9% |

* Number of schools reporting kindergarten students.

** Differences between exact percentages; may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

^^ In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.

**Table 2.  Immunization Assessment Summary of Kindergarten in 2020-2021 and Subsequent 1st Grade in 2021-2022**

| | 1st Grade | | | Kindergarten | | | 1st Grade 2021-22 and Kindergarten 2020-21 | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2021-2022 | | | 2020-2021 | | | 1-Year Percentage Point Change** | | |
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Students* | 7,598 | 6,064 | 1,534 | 7,749 | 6,070 | 1,679 | -2% | 0% | -9% |
| Number of Students | 431,819 | 398,465 | 33,354 | 485,538 | 449,496 | 36,042 | -11% | -11% | -7% |
| All Required Immunizations | 96.0% | 96.1% | 94.9% | 92.8% | 92.9% | 92.6% | 3.2% | 3.3% | 2.3% |
| Conditional Entrants | 0.6% | 0.6% | 0.8% | 0.8% | 0.8% | 1.7% | -0.3% | -0.2% | -0.9% |
| Permanent Medical Exemptions | 0.4% | 0.3% | 1.3% | 0.6% | 0.5% | 1.9% | -0.2% | -0.2% | -0.7% |
| Personal Beliefs Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 1.7% | 1.7% | 1.2% | 1.7% | 1.8% | 0.9% | 0.0% | -0.1% | 0.3% |
| Overdue^ | 1.3% | 1.3% | 1.8% | 4.0% | 4.1% | 2.8% | -2.7% | -2.8% | -1.0% |
| 4+ DTP | 97.1% | 97.2% | 96.4% | 94.7% | 94.7% | 94.6% | 2.5% | 2.5% | 1.7% |
| 3+ Polio | 97.4% | 97.5% | 96.4% | 95.2% | 95.3% | 94.9% | 2.1% | 2.2% | 1.6% |
| 2+ MMR | 97.5% | 97.6% | 96.5% | 95.1% | 95.1% | 94.7% | 2.4% | 2.5% | 1.8% |
| 3+ Hep B | 98.0% | 98.0% | 97.1% | 97.0% | 97.1% | 96.3% | 0.9% | 0.9% | 0.7% |
| 2+ Var (or physician-documented disease)^^ | 97.2% | 97.3% | 96.3% | 94.8% | 94.8% | 94.6% | 2.4% | 2.4% | 1.7% |

* Number of schools reporting kindergarten students during the 2020-2021 school year and first grade students during the 2021-2022 school year.

** Differences between exact percentages; may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private  schools or receiving IEP services.

^ Overdue for one or more required immunizations.

^^ In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| ALAMEDA | 2021-22 | 1st Grade | 16,710 | 96.8% | 0.4% | 0.3% | 0.2% | 2.3% |
| | | Kindergarten | 19,422 | 95.1% | 0.7% | 0.4% | 0.3% | 3.6% |
| | 2020-21 | Kindergarten | 19,752 | 90.3% | 0.6% | 0.3% | 0.7% | 8.2% |
| | 2019-20 | Kindergarten | 21,622 | 96.5% | 1.1% | 0.7% | 0.2% | 1.6% |
| ALPINE | 2021-22 | 1st Grade | --** | --* | --* | --* | --* | --* |
| | | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2020-21 | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2019-20 | Kindergarten | 9 | --* | --* | --* | --* | --* |
| AMADOR | 2021-22 | 1st Grade | 350 | 93.7% | 0.6% | 0.0% | 0.6% | 5.1% |
| | | Kindergarten | 355 | 91.0% | 0.3% | 0.0% | 1.4% | 7.3% |
| | 2020-21 | Kindergarten | 367 | 93.2% | 1.4% | 1.9% | 0.3% | 3.3% |
| | 2019-20 | Kindergarten | 308 | 91.2% | 4.2% | 1.9% | 0.6% | 1.9% |
| BUTTE | 2021-22 | 1st Grade | 2,248 | 97.1% | 0.6% | 0.4% | 1.2% | 0.7% |
| | | Kindergarten | 2,590 | 94.2% | 2.0% | 0.2% | 2.0% | 1.6% |
| | 2020-21 | Kindergarten | 2,470 | 94.5% | 1.4% | 0.9% | 1.5% | 1.7% |
| | 2019-20 | Kindergarten | 2,742 | 95.1% | 2.7% | 0.8% | 1.0% | 0.4% |
| CALAVERAS | 2021-22 | 1st Grade | 407 | 93.9% | 0.0% | 0.7% | 3.7% | 1.7% |
| | | Kindergarten | 417 | 92.8% | 1.2% | 0.0% | 4.1% | 1.9% |
| | 2020-21 | Kindergarten | 362 | 90.9% | 1.7% | 0.6% | 5.5% | 1.4% |
| | 2019-20 | Kindergarten | 455 | 93.8% | 1.8% | 1.5% | 1.8% | 1.1% |
| COLUSA | 2021-22 | 1st Grade | 322 | ≥99.0% | ≤1.0% | 0.0% | 0.0% | 0.9% |
| | | Kindergarten | 392 | 98.0% | 1.0% | 0.3% | 0.5% | 0.3% |
| | 2020-21 | Kindergarten | 346 | 94.5% | 0.0% | 0.0% | 0.0% | 5.5% |
| | 2019-20 | Kindergarten | 372 | 96.8% | 0.3% | 0.0% | 0.0% | 3.0% |
| CONTRA COSTA | 2021-22 | 1st Grade | 12,459 | 97.1% | 0.6% | 0.4% | 0.4% | 1.5% |
| | | Kindergarten | 14,248 | 95.1% | 1.0% | 0.2% | 0.8% | 2.9% |
| | 2020-21 | Kindergarten | 14,400 | 94.8% | 0.6% | 0.5% | 0.5% | 3.6% |
| | 2019-20 | Kindergarten | 15,692 | 96.2% | 1.6% | 0.8% | 0.3% | 1.2% |
| DEL NORTE | 2021-22 | 1st Grade | 282 | 94.7% | 0.4% | 1.8% | 1.8% | 1.4% |
| | | Kindergarten | 351 | 88.6% | 2.3% | 1.4% | 4.6% | 3.1% |
| | 2020-21 | Kindergarten | 282 | 93.3% | 0.7% | 2.5% | 2.1% | 1.4% |
| | 2019-20 | Kindergarten | 394 | 97.0% | 0.8% | 0.0% | 0.8% | 1.5% |
| EL DORADO | 2021-22 | 1st Grade | 2,213 | 85.9% | 0.5% | 2.2% | 10.6% | 0.8% |
| | | Kindergarten | 2,721 | 78.2% | 1.7% | 0.4% | 17.2% | 2.5% |
| | 2020-21 | Kindergarten | 2,373 | 82.0% | 1.8% | 2.9% | 11.6% | 1.7% |
| | 2019-20 | Kindergarten | 2,909 | 79.7% | 2.2% | 4.3% | 13.5% | 0.3% |
| FRESNO | 2021-22 | 1st Grade | 14,941 | 97.7% | 0.3% | 0.1% | 1.3% | 0.5% |
| | | Kindergarten | 16,906 | 95.6% | 0.9% | 0.1% | 2.0% | 1.5% |
| | 2020-21 | Kindergarten | 16,220 | 97.3% | 0.5% | 0.1% | 1.3% | 0.7% |
| | 2019-20 | Kindergarten | 18,461 | 96.4% | 1.0% | 0.3% | 1.6% | 0.7% |
| GLENN | 2021-22 | 1st Grade | 491 | 88.0% | 0.4% | 0.0% | 11.4% | 0.2% |
| | | Kindergarten | 572 | 85.1% | 0.5% | 0.0% | 13.1% | 1.2% |
| | 2020-21 | Kindergarten | 544 | 88.4% | 0.6% | 0.2% | 8.8% | 2.0% |
| | 2019-20 | Kindergarten | 576 | 86.1% | 1.4% | 0.7% | 10.9% | 0.9% |
| HUMBOLDT | 2021-22 | 1st Grade | 1,260 | 90.0% | 0.8% | 3.4% | 2.3% | 3.5% |
| | | Kindergarten | 1,526 | 85.5% | 2.5% | 3.7% | 3.0% | 5.4% |
| | 2020-21 | Kindergarten | 1,447 | 87.8% | 1.0% | 3.9% | 2.0% | 5.3% |
| | 2019-20 | Kindergarten | 1,715 | 88.0% | 2.7% | 5.6% | 0.7% | 3.0% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| IMPERIAL | 2021-22 | 1st Grade | 2,511 | 96.3% | 0.2% | 0.2% | 0.8% | 2.5% |
| | | Kindergarten | 2,754 | 95.2% | 1.1% | 0.8% | 1.0% | 1.9% |
| | 2020-21 | Kindergarten | 2,762 | 93.2% | 1.4% | 0.0% | 0.7% | 4.7% |
| | 2019-20 | Kindergarten | 3,117 | 95.7% | 2.5% | 0.2% | 0.4% | 1.2% |
| INYO | 2021-22 | 1st Grade | 207 | 94.7% | 1.0% | 0.0% | 0.0% | 4.3% |
| | | Kindergarten | 151 | 91.4% | 0.7% | 0.7% | 0.0% | 7.3% |
| | 2020-21 | Kindergarten | 187 | 96.3% | 0.5% | 0.0% | 0.5% | 2.7% |
| | 2019-20 | Kindergarten | 271 | 97.0% | 2.6% | 0.4% | 0.0% | 0.0% |
| KERN | 2021-22 | 1st Grade | 14,092 | 91.1% | 0.6% | 0.3% | 6.7% | 1.3% |
| | | Kindergarten | 16,369 | 88.2% | 1.8% | 0.6% | 6.7% | 2.7% |
| | 2020-21 | Kindergarten | 15,354 | 88.0% | 1.4% | 0.5% | 7.2% | 3.0% |
| | 2019-20 | Kindergarten | 18,327 | 88.6% | 1.4% | 0.7% | 8.0% | 1.3% |
| KINGS | 2021-22 | 1st Grade | 2,055 | 97.8% | 0.5% | 0.1% | 0.8% | 0.8% |
| | | Kindergarten | 2,458 | 96.1% | 1.7% | 0.1% | 1.1% | 0.9% |
| | 2020-21 | Kindergarten | 2,341 | 97.8% | 0.9% | 0.3% | 0.6% | 0.5% |
| | 2019-20 | Kindergarten | 2,576 | 96.9% | 2.0% | 0.2% | 0.4% | 0.4% |
| LAKE | 2021-22 | 1st Grade | 754 | 95.8% | 1.5% | 0.7% | 0.8% | 1.3% |
| | | Kindergarten | 886 | 93.9% | 3.4% | 0.0% | 1.0% | 1.7% |
| | 2020-21 | Kindergarten | 768 | 91.7% | 0.9% | 0.8% | 0.8% | 5.9% |
| | 2019-20 | Kindergarten | 796 | 90.8% | 3.1% | 0.8% | 0.8% | 4.5% |
| LASSEN | 2021-22 | 1st Grade | 309 | 92.6% | 1.3% | 1.0% | 1.3% | 3.9% |
| | | Kindergarten | 315 | 89.5% | 0.6% | 0.0% | 3.2% | 6.7% |
| | 2020-21 | Kindergarten | 335 | 92.2% | 1.8% | 1.2% | 1.5% | 3.3% |
| | 2019-20 | Kindergarten | 350 | 92.0% | 5.4% | 1.4% | 0.9% | 0.3% |
| LOS ANGELES | 2021-22 | 1st Grade | 95,509 | 96.6% | 0.5% | 0.3% | 0.8% | 1.8% |
| | | Kindergarten | 116,937 | 94.3% | 1.2% | 0.2% | 1.2% | 3.0% |
| | 2020-21 | Kindergarten | 114,141 | 91.6% | 0.7% | 0.4% | 1.1% | 6.2% |
| | 2019-20 | Kindergarten | 133,622 | 94.5% | 1.7% | 0.6% | 0.8% | 2.4% |
| MADERA | 2021-22 | 1st Grade | 2,328 | 97.9% | 0.2% | 0.0% | 0.6% | 1.3% |
| | | Kindergarten | 2,636 | 95.3% | 1.5% | 0.1% | 0.8% | 2.3% |
| | 2020-21 | Kindergarten | 2,586 | 96.8% | 0.4% | 0.2% | 0.8% | 1.9% |
| | 2019-20 | Kindergarten | 2,727 | 96.1% | 1.5% | 0.3% | 0.8% | 1.4% |
| MARIN | 2021-22 | 1st Grade | 2,643 | 97.7% | 0.7% | 1.3% | 0.1% | 0.3% |
| | | Kindergarten | 2,847 | 96.6% | 1.8% | 0.5% | 0.1% | 0.9% |
| | 2020-21 | Kindergarten | 2,832 | 96.3% | 0.7% | 2.0% | 0.1% | 0.9% |
| | 2019-20 | Kindergarten | 3,252 | 93.9% | 2.3% | 2.9% | 0.3% | 0.6% |
| MARIPOSA | 2021-22 | 1st Grade | 146 | 91.1% | 2.1% | 1.4% | 2.1% | 3.4% |
| | | Kindergarten | 171 | 91.8% | 4.1% | 0.6% | 0.0% | 3.5% |
| | 2020-21 | Kindergarten | 163 | 80.4% | 4.3% | 0.0% | 5.5% | 9.8% |
| | 2019-20 | Kindergarten | 160 | 93.1% | 5.6% | 0.0% | 1.3% | 0.0% |
| MENDOCINO | 2021-22 | 1st Grade | 976 | 93.0% | 1.0% | 0.9% | 1.0% | 4.0% |
| | | Kindergarten | 1,183 | 88.8% | 2.6% | 0.7% | 0.7% | 7.3% |
| | 2020-21 | Kindergarten | 1,084 | 87.3% | 4.5% | 2.7% | 0.6% | 5.0% |
| | 2019-20 | Kindergarten | 1,218 | 85.7% | 7.2% | 3.0% | 0.6% | 3.4% |
| MERCED | 2021-22 | 1st Grade | 4,161 | 97.2% | 0.6% | 0.1% | 0.9% | 1.1% |
| | | Kindergarten | 5,007 | 95.4% | 1.6% | 0.0% | 1.3% | 1.7% |
| | 2020-21 | Kindergarten | 4,566 | 94.4% | 1.1% | 0.1% | 0.6% | 3.8% |
| | 2019-20 | Kindergarten | 5,321 | 96.7% | 1.6% | 0.1% | 0.6% | 1.1% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| MODOC | 2021-22 | 1st Grade | 120 | 96.7% | 2.5% | 0.0% | 0.0% | 0.8% |
| | | Kindergarten | 102 | 94.1% | 2.0% | 0.0% | 0.0% | 3.9% |
| | 2020-21 | Kindergarten | 117 | 94.9% | 0.9% | 0.0% | 0.0% | 4.3% |
| | 2019-20 | Kindergarten | 120 | 95.8% | 0.8% | 0.8% | 0.0% | 2.5% |
| MONO | 2021-22 | 1st Grade | 116 | ≥99.0% | ≤1.0% | 0.0% | 0.0% | 0.0% |
| | | Kindergarten | 148 | 96.6% | 2.7% | 0.0% | 0.7% | 0.0% |
| | 2020-21 | Kindergarten | 124 | 96.8% | 0.8% | 0.0% | 0.0% | 2.4% |
| | 2019-20 | Kindergarten | 138 | 90.6% | 5.1% | 2.9% | 0.0% | 1.4% |
| MONTEREY | 2021-22 | 1st Grade | 5,150 | 98.4% | 0.5% | 0.2% | 0.1% | 0.9% |
| | | Kindergarten | 6,357 | 97.5% | 0.8% | 0.1% | 0.2% | 1.4% |
| | 2020-21 | Kindergarten | 6,220 | 97.4% | 0.8% | 0.4% | 0.2% | 1.2% |
| | 2019-20 | Kindergarten | 6,733 | 97.1% | 1.4% | 0.8% | 0.1% | 0.6% |
| NAPA | 2021-22 | 1st Grade | 1,449 | 96.8% | 0.4% | 0.6% | 1.7% | 0.6% |
| | | Kindergarten | 1,581 | 96.5% | 1.1% | 0.3% | 0.9% | 1.1% |
| | 2020-21 | Kindergarten | 1,596 | 95.7% | 1.1% | 0.9% | 1.7% | 0.6% |
| | 2019-20 | Kindergarten | 1,746 | 96.6% | 0.8% | 1.4% | 0.3% | 0.9% |
| NEVADA | 2021-22 | 1st Grade | 696 | 84.8% | 1.9% | 3.7% | 6.3% | 3.3% |
| | | Kindergarten | 927 | 82.4% | 4.2% | 2.7% | 7.9% | 2.8% |
| | 2020-21 | Kindergarten | 834 | 81.9% | 3.0% | 9.0% | 3.8% | 2.3% |
| | 2019-20 | Kindergarten | 985 | 79.5% | 3.4% | 13.1% | 3.0% | 1.0% |
| ORANGE | 2021-22 | 1st Grade | 32,231 | 97.5% | 0.5% | 0.4% | 0.8% | 0.8% |
| | | Kindergarten | 38,034 | 96.0% | 1.0% | 0.3% | 1.2% | 1.4% |
| | 2020-21 | Kindergarten | 36,305 | 94.7% | 0.9% | 0.8% | 0.8% | 2.8% |
| | 2019-20 | Kindergarten | 41,381 | 95.5% | 1.5% | 1.1% | 0.8% | 1.1% |
| PLACER | 2021-22 | 1st Grade | 5,261 | 94.6% | 1.1% | 1.7% | 1.6% | 1.0% |
| | | Kindergarten | 6,549 | 92.9% | 2.0% | 0.8% | 2.5% | 1.8% |
| | 2020-21 | Kindergarten | 5,628 | 92.7% | 1.8% | 2.2% | 0.7% | 2.6% |
| | 2019-20 | Kindergarten | 6,709 | 90.5% | 2.4% | 3.3% | 1.3% | 2.5% |
| PLUMAS | 2021-22 | 1st Grade | 155 | 93.5% | 1.9% | 1.3% | 1.9% | 1.3% |
| | | Kindergarten | 202 | 91.1% | 3.0% | 0.5% | 3.5% | 2.0% |
| | 2020-21 | Kindergarten | 191 | 91.1% | 0.5% | 1.6% | 5.8% | 1.0% |
| | 2019-20 | Kindergarten | 208 | 92.3% | 3.8% | 1.4% | 0.5% | 1.9% |
| RIVERSIDE | 2021-22 | 1st Grade | 29,235 | 96.0% | 0.5% | 0.3% | 2.1% | 1.0% |
| | | Kindergarten | 33,796 | 93.8% | 1.6% | 0.2% | 2.4% | 2.1% |
| | 2020-21 | Kindergarten | 31,555 | 92.2% | 0.7% | 0.5% | 2.8% | 3.8% |
| | 2019-20 | Kindergarten | 36,134 | 93.6% | 1.9% | 0.9% | 2.6% | 1.1% |
| SACRAMENTO | 2021-22 | 1st Grade | 18,030 | 95.0% | 1.1% | 0.8% | 1.5% | 1.7% |
| | | Kindergarten | 19,897 | 92.7% | 1.9% | 0.3% | 2.1% | 3.0% |
| | 2020-21 | Kindergarten | 19,509 | 91.5% | 1.1% | 0.9% | 2.0% | 4.5% |
| | 2019-20 | Kindergarten | 21,495 | 93.3% | 2.2% | 1.6% | 1.9% | 1.0% |
| SAN BENITO | 2021-22 | 1st Grade | 846 | 97.8% | 0.1% | 0.4% | 0.0% | 1.8% |
| | | Kindergarten | 983 | 97.0% | 0.5% | 0.2% | 0.1% | 2.1% |
| | 2020-21 | Kindergarten | 991 | 91.2% | 1.4% | 0.1% | 0.0% | 7.3% |
| | 2019-20 | Kindergarten | 1,099 | 96.3% | 1.3% | 0.5% | 0.1% | 1.8% |
| SAN BERNARDINO | 2021-22 | 1st Grade | 28,985 | 94.7% | 0.5% | 0.2% | 3.1% | 1.5% |
| | | Kindergarten | 32,198 | 92.1% | 1.5% | 0.2% | 3.8% | 2.4% |
| | 2020-21 | Kindergarten | 30,438 | 90.4% | 0.6% | 0.3% | 2.1% | 6.6% |
| | 2019-20 | Kindergarten | 34,542 | 93.9% | 1.8% | 0.4% | 2.5% | 1.4% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| SAN DIEGO | 2021-22 | 1st Grade | 36,235 | 95.3% | 0.7% | 0.3% | 3.1% | 0.6% |
| | | Kindergarten | 41,632 | 93.3% | 1.4% | 0.2% | 3.9% | 1.1% |
| | 2020-21 | Kindergarten | 40,748 | 93.9% | 1.0% | 0.7% | 3.3% | 1.1% |
| | 2019-20 | Kindergarten | 45,956 | 93.0% | 1.5% | 1.4% | 3.6% | 0.5% |
| SAN FRANCISCO | 2021-22 | 1st Grade | 5,519 | 95.6% | 0.2% | 0.2% | 0.1% | 3.9% |
| | | Kindergarten | 6,068 | 94.5% | 0.7% | 0.4% | 0.0% | 4.4% |
| | 2020-21 | Kindergarten | 6,325 | 92.0% | 0.3% | 0.5% | 0.1% | 7.1% |
| | 2019-20 | Kindergarten | 6,963 | 95.3% | 1.1% | 0.7% | 0.0% | 2.8% |
| SAN JOAQUIN | 2021-22 | 1st Grade | 10,750 | 96.7% | 0.5% | 0.1% | 2.0% | 0.8% |
| | | Kindergarten | 11,902 | 94.9% | 1.3% | 0.1% | 2.3% | 1.3% |
| | 2020-21 | Kindergarten | 10,791 | 95.1% | 1.1% | 0.3% | 1.8% | 1.7% |
| | 2019-20 | Kindergarten | 12,320 | 95.0% | 1.7% | 0.4% | 1.4% | 1.4% |
| SAN LUIS OBISPO | 2021-22 | 1st Grade | 2,451 | 97.1% | 0.5% | 0.8% | 0.7% | 0.9% |
| | | Kindergarten | 2,846 | 94.1% | 2.0% | 0.6% | 1.0% | 2.2% |
| | 2020-21 | Kindergarten | 2,466 | 95.2% | 1.3% | 0.9% | 0.8% | 1.9% |
| | 2019-20 | Kindergarten | 3,095 | 94.2% | 1.8% | 2.2% | 0.8% | 0.9% |
| SAN MATEO | 2021-22 | 1st Grade | 7,250 | 97.5% | 0.4% | 0.3% | 0.4% | 1.5% |
| | | Kindergarten | 8,028 | 96.4% | 0.6% | 0.2% | 0.6% | 2.3% |
| | 2020-21 | Kindergarten | 8,140 | 97.1% | 0.6% | 0.5% | 0.3% | 1.6% |
| | 2019-20 | Kindergarten | 9,168 | 96.6% | 1.3% | 0.7% | 0.1% | 1.3% |
| SANTA BARBARA | 2021-22 | 1st Grade | 5,232 | 97.2% | 0.6% | 0.5% | 1.2% | 0.4% |
| | | Kindergarten | 6,066 | 96.3% | 1.1% | 0.3% | 1.1% | 1.2% |
| | 2020-21 | Kindergarten | 5,473 | 95.5% | 0.7% | 0.6% | 0.9% | 2.3% |
| | 2019-20 | Kindergarten | 6,500 | 96.2% | 1.4% | 1.4% | 0.4% | 0.5% |
| SANTA CLARA | 2021-22 | 1st Grade | 19,070 | 97.6% | 0.3% | 0.4% | 0.4% | 1.2% |
| | | Kindergarten | 21,901 | 96.5% | 0.8% | 0.2% | 0.4% | 2.0% |
| | 2020-21 | Kindergarten | 21,759 | 96.0% | 0.6% | 0.3% | 0.4% | 2.6% |
| | 2019-20 | Kindergarten | 24,963 | 96.4% | 1.3% | 0.7% | 0.2% | 1.4% |
| SANTA CRUZ | 2021-22 | 1st Grade | 2,938 | 92.2% | 0.8% | 0.9% | 5.7% | 0.4% |
| | | Kindergarten | 3,307 | 91.1% | 2.0% | 0.3% | 5.9% | 0.8% |
| | 2020-21 | Kindergarten | 3,097 | 88.8% | 1.1% | 1.7% | 6.3% | 2.1% |
| | 2019-20 | Kindergarten | 3,415 | 89.3% | 2.2% | 2.8% | 4.6% | 1.2% |
| SHASTA | 2021-22 | 1st Grade | 1,959 | 93.0% | 0.7% | 1.6% | 3.3% | 1.4% |
| | | Kindergarten | 2,511 | 89.5% | 3.1% | 1.0% | 3.7% | 2.7% |
| | 2020-21 | Kindergarten | 2,189 | 88.6% | 2.1% | 2.5% | 3.6% | 3.2% |
| | 2019-20 | Kindergarten | 2,525 | 89.5% | 3.2% | 2.7% | 2.9% | 1.7% |
| SIERRA | 2021-22 | 1st Grade | 34 | ≥95.0% | ≤5.0% | 0.0% | 0.0% | 0.0% |
| | | Kindergarten | 32 | 96.9% | 0.0% | 0.0% | 0.0% | 3.1% |
| | 2020-21 | Kindergarten | 23 | ≥95.0% | ≤5.0% | 0.0% | 0.0% | 0.0% |
| | 2019-20 | Kindergarten | 25 | ≥95.0% | ≤5.0% | 0.0% | 0.0% | 0.0% |
| SISKIYOU | 2021-22 | 1st Grade | 383 | 88.8% | 2.6% | 0.3% | 6.8% | 1.6% |
| | | Kindergarten | 500 | 87.6% | 5.2% | 0.0% | 4.6% | 2.6% |
| | 2020-21 | Kindergarten | 463 | 89.0% | 1.5% | 0.4% | 6.7% | 2.4% |
| | 2019-20 | Kindergarten | 530 | 94.9% | 1.9% | 1.1% | 0.6% | 1.5% |
| SOLANO | 2021-22 | 1st Grade | 4,451 | 98.2% | 0.7% | 0.2% | 0.3% | 0.6% |
| | | Kindergarten | 5,236 | 96.5% | 1.9% | 0.1% | 0.5% | 1.0% |
| | 2020-21 | Kindergarten | 5,036 | 94.7% | 1.0% | 0.5% | 0.5% | 3.3% |
| | 2019-20 | Kindergarten | 5,966 | 94.5% | 1.5% | 0.5% | 0.1% | 3.4% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| SONOMA | 2021-22 | 1st Grade | 4,657 | 94.0% | 1.2% | 0.9% | 2.1% | 1.7% |
| | | Kindergarten | 5,931 | 92.6% | 1.6% | 0.4% | 2.6% | 2.7% |
| | 2020-21 | Kindergarten | 5,566 | 91.6% | 1.1% | 1.9% | 0.8% | 4.6% |
| | 2019-20 | Kindergarten | 6,043 | 92.3% | 2.1% | 3.1% | 0.7% | 1.8% |
| STANISLAUS | 2021-22 | 1st Grade | 7,858 | 96.1% | 0.8% | 0.2% | 1.5% | 1.4% |
| | | Kindergarten | 8,707 | 94.0% | 1.6% | 0.1% | 1.9% | 2.4% |
| | 2020-21 | Kindergarten | 8,619 | 94.5% | 1.1% | 0.5% | 0.4% | 3.6% |
| | 2019-20 | Kindergarten | 9,366 | 95.7% | 2.0% | 0.7% | 0.3% | 1.4% |
| SUTTER | 2021-22 | 1st Grade | 1,691 | 81.5% | 0.2% | 0.7% | 17.1% | 0.6% |
| | | Kindergarten | 2,222 | 77.5% | 1.5% | 0.2% | 19.7% | 1.0% |
| | 2020-21 | Kindergarten | 1,764 | 81.7% | 0.6% | 0.9% | 15.1% | 1.6% |
| | 2019-20 | Kindergarten | 2,017 | 85.3% | 0.6% | 0.9% | 13.0% | 0.1% |
| TEHAMA | 2021-22 | 1st Grade | 834 | 97.6% | 0.4% | 0.6% | 1.0% | 0.5% |
| | | Kindergarten | 962 | 94.6% | 2.0% | 0.1% | 1.0% | 2.3% |
| | 2020-21 | Kindergarten | 838 | 95.1% | 1.6% | 0.2% | 0.8% | 2.3% |
| | 2019-20 | Kindergarten | 1,073 | 93.6% | 2.1% | 0.7% | 1.2% | 2.4% |
| TRINITY | 2021-22 | 1st Grade | 115 | 88.7% | 0.9% | 4.3% | 1.7% | 4.3% |
| | | Kindergarten | 117 | 89.7% | 5.1% | 0.0% | 0.9% | 4.3% |
| | 2020-21 | Kindergarten | 134 | 85.8% | 3.0% | 4.5% | 1.5% | 5.2% |
| | 2019-20 | Kindergarten | 138 | 87.0% | 4.3% | 5.1% | 0.7% | 2.9% |
| TULARE | 2021-22 | 1st Grade | 7,322 | 97.8% | 0.3% | 0.2% | 1.2% | 0.5% |
| | | Kindergarten | 8,542 | 96.1% | 1.0% | 0.1% | 1.7% | 1.2% |
| | 2020-21 | Kindergarten | 8,344 | 96.6% | 0.4% | 0.2% | 1.3% | 1.4% |
| | 2019-20 | Kindergarten | 9,535 | 96.5% | 1.2% | 0.2% | 1.8% | 0.3% |
| TUOLUMNE | 2021-22 | 1st Grade | 469 | 89.1% | 4.7% | 1.3% | 3.2% | 1.7% |
| | | Kindergarten | 566 | 86.9% | 2.1% | 6.2% | 2.1% | 2.7% |
| | 2020-21 | Kindergarten | 474 | 81.9% | 8.6% | 2.3% | 3.6% | 3.6% |
| | 2019-20 | Kindergarten | 584 | 90.2% | 3.6% | 3.6% | 1.4% | 1.2% |
| VENTURA | 2021-22 | 1st Grade | 9,403 | 96.9% | 0.6% | 0.5% | 1.4% | 0.7% |
| | | Kindergarten | 10,540 | 95.1% | 1.4% | 0.2% | 1.6% | 1.7% |
| | 2020-21 | Kindergarten | 10,410 | 94.9% | 1.1% | 0.7% | 1.3% | 2.1% |
| | 2019-20 | Kindergarten | 11,466 | 95.5% | 1.7% | 1.1% | 0.6% | 1.1% |
| YOLO | 2021-22 | 1st Grade | 2,383 | 94.6% | 0.9% | 0.5% | 2.0% | 2.0% |
| | | Kindergarten | 2,746 | 94.1% | 0.9% | 0.3% | 2.4% | 2.3% |
| | 2020-21 | Kindergarten | 2,535 | 92.6% | 0.9% | 0.6% | 2.4% | 3.6% |
| | 2019-20 | Kindergarten | 2,959 | 94.3% | 2.0% | 1.6% | 0.9% | 1.1% |
| YUBA | 2021-22 | 1st Grade | 1,167 | 94.3% | 2.2% | 0.1% | 1.4% | 2.0% |
| | | Kindergarten | 1,372 | 90.3% | 4.7% | 0.3% | 2.3% | 2.3% |
| | 2020-21 | Kindergarten | 1,154 | 88.8% | 0.9% | 0.1% | 3.0% | 7.2% |
| | 2019-20 | Kindergarten | 1,361 | 92.8% | 2.4% | 0.4% | 2.1% | 2.2% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

** Schools did not report.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| ALAMEDA | 2021-22 | 1st Grade | 16,710 | 98.0% | 98.3% | 98.4% | 98.6% | 97.7% |
| | | Kindergarten | 19,422 | 96.7% | 97.2% | 97.2% | 97.8% | 96.6% |
| | 2020-21 | Kindergarten | 19,752 | 92.0% | 92.5% | 92.6% | 93.5% | 92.2% |
| | 2019-20 | Kindergarten | 21,622 | 98.1% | 98.4% | 98.5% | 98.7% | 97.7% |
| ALPINE | 2021-22 | 1st Grade | --** | --* | --* | --* | --* | --* |
| | | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2020-21 | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2019-20 | Kindergarten | 9 | --* | --* | --* | --* | --* |
| AMADOR | 2021-22 | 1st Grade | 350 | 94.6% | 95.7% | 96.3% | 96.6% | 95.4% |
| | | Kindergarten | 355 | 91.5% | 93.2% | 94.1% | 97.2% | 93.5% |
| | 2020-21 | Kindergarten | 367 | 94.6% | 94.8% | 94.6% | 96.7% | 94.3% |
| | 2019-20 | Kindergarten | 308 | 93.8% | 95.1% | 94.5% | 94.8% | 93.2% |
| BUTTE | 2021-22 | 1st Grade | 2,248 | 97.8% | 98.1% | 98.1% | 98.5% | 97.9% |
| | | Kindergarten | 2,590 | 95.9% | 96.9% | 97.9% | 97.8% | 97.2% |
| | 2020-21 | Kindergarten | 2,470 | 96.0% | 96.3% | 97.0% | 98.0% | 97.0% |
| | 2019-20 | Kindergarten | 2,742 | 96.5% | 97.2% | 97.5% | 97.8% | 97.2% |
| CALAVERAS | 2021-22 | 1st Grade | 407 | 95.1% | 95.8% | 95.8% | 97.1% | 95.3% |
| | | Kindergarten | 417 | 93.8% | 94.2% | 96.4% | 96.9% | 95.9% |
| | 2020-21 | Kindergarten | 362 | 92.8% | 93.4% | 92.8% | 95.6% | 92.3% |
| | 2019-20 | Kindergarten | 455 | 95.4% | 95.4% | 95.6% | 96.9% | 94.9% |
| COLUSA | 2021-22 | 1st Grade | 322 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 392 | 98.5% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 346 | 97.1% | 96.8% | 96.5% | 98.0% | 96.5% |
| | 2019-20 | Kindergarten | 372 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 97.6% |
| CONTRA COSTA | 2021-22 | 1st Grade | 12,459 | 98.0% | 98.4% | 98.5% | 98.7% | 98.1% |
| | | Kindergarten | 14,248 | 96.9% | 97.3% | 97.5% | 98.2% | 97.0% |
| | 2020-21 | Kindergarten | 14,400 | 96.2% | 96.7% | 96.4% | 98.2% | 96.3% |
| | 2019-20 | Kindergarten | 15,692 | 97.5% | 97.8% | 97.9% | 98.5% | 97.5% |
| DEL NORTE | 2021-22 | 1st Grade | 282 | 95.0% | 95.7% | 96.1% | 96.8% | 95.4% |
| | | Kindergarten | 351 | 94.0% | 95.4% | 95.2% | 97.2% | 90.3% |
| | 2020-21 | Kindergarten | 282 | 93.3% | 94.0% | 94.3% | 96.5% | 94.3% |
| | 2019-20 | Kindergarten | 394 | 98.0% | ≥99.0% | 98.5% | 98.7% | 98.2% |
| EL DORADO | 2021-22 | 1st Grade | 2,213 | 90.0% | 90.1% | 89.3% | 91.1% | 89.0% |
| | | Kindergarten | 2,721 | 83.9% | 84.0% | 83.6% | 87.0% | 82.7% |
| | 2020-21 | Kindergarten | 2,373 | 84.7% | 85.3% | 84.8% | 88.2% | 85.0% |
| | 2019-20 | Kindergarten | 2,909 | 82.4% | 83.3% | 82.6% | 86.6% | 81.7% |
| FRESNO | 2021-22 | 1st Grade | 14,941 | 98.6% | 98.8% | 98.8% | ≥99.0% | 98.7% |
| | | Kindergarten | 16,906 | 97.0% | 97.4% | 97.5% | 98.0% | 97.4% |
| | 2020-21 | Kindergarten | 16,220 | 97.9% | 98.3% | 98.3% | 98.8% | 98.2% |
| | 2019-20 | Kindergarten | 18,461 | 97.3% | 97.7% | 97.9% | 98.4% | 97.7% |
| GLENN | 2021-22 | 1st Grade | 491 | 89.0% | 88.8% | 89.4% | 90.0% | 88.4% |
| | | Kindergarten | 572 | 87.2% | 88.1% | 87.4% | 89.5% | 86.2% |
| | 2020-21 | Kindergarten | 544 | 89.9% | 89.9% | 90.6% | 92.3% | 89.7% |
| | 2019-20 | Kindergarten | 576 | 87.8% | 88.5% | 88.5% | 90.8% | 88.0% |
| HUMBOLDT | 2021-22 | 1st Grade | 1,260 | 93.1% | 93.3% | 93.7% | 94.0% | 93.8% |
| | | Kindergarten | 1,526 | 91.1% | 90.9% | 91.5% | 92.7% | 91.6% |
| | 2020-21 | Kindergarten | 1,447 | 92.7% | 92.5% | 92.6% | 93.8% | 92.0% |
| | 2019-20 | Kindergarten | 1,715 | 92.2% | 92.0% | 92.3% | 92.2% | 91.5% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| IMPERIAL | 2021-22 | 1st Grade | 2,511 | 98.1% | 98.0% | 98.5% | ≥99.0% | 98.6% |
| | | Kindergarten | 2,754 | 96.4% | 97.4% | 97.2% | ≥99.0% | 98.0% |
| | 2020-21 | Kindergarten | 2,762 | 95.4% | 97.1% | 94.8% | 98.3% | 96.1% |
| | 2019-20 | Kindergarten | 3,117 | 97.9% | 98.8% | 98.0% | ≥99.0% | 97.9% |
| INYO | 2021-22 | 1st Grade | 207 | 96.1% | 96.6% | 95.2% | ≥99.0% | 96.1% |
| | | Kindergarten | 151 | 94.7% | 94.0% | 95.4% | 98.0% | 94.7% |
| | 2020-21 | Kindergarten | 187 | 97.9% | 98.4% | 96.8% | 98.9% | 96.8% |
| | 2019-20 | Kindergarten | 271 | 97.8% | 98.5% | 98.9% | 98.9% | 98.5% |
| KERN | 2021-22 | 1st Grade | 14,092 | 92.7% | 93.2% | 93.5% | 95.1% | 92.9% |
| | | Kindergarten | 16,369 | 90.1% | 91.3% | 91.6% | 93.7% | 91.6% |
| | 2020-21 | Kindergarten | 15,354 | 89.9% | 91.0% | 90.9% | 94.1% | 90.4% |
| | 2019-20 | Kindergarten | 18,327 | 93.6% | 91.4% | 91.3% | 94.0% | 90.8% |
| KINGS | 2021-22 | 1st Grade | 2,055 | 98.5% | 98.7% | 98.7% | ≥99.0% | 98.3% |
| | | Kindergarten | 2,458 | 96.9% | 98.3% | 98.1% | 98.6% | 97.8% |
| | 2020-21 | Kindergarten | 2,341 | 98.4% | 98.5% | 98.6% | ≥99.0% | 98.6% |
| | 2019-20 | Kindergarten | 2,576 | 97.8% | 98.9% | ≥99.0% | ≥99.0% | 98.7% |
| LAKE | 2021-22 | 1st Grade | 754 | 96.9% | 97.1% | 97.9% | 98.1% | 97.3% |
| | | Kindergarten | 886 | 95.4% | 96.5% | 97.0% | 97.9% | 97.4% |
| | 2020-21 | Kindergarten | 768 | 93.6% | 95.2% | 95.6% | 96.6% | 95.2% |
| | 2019-20 | Kindergarten | 796 | 92.7% | 94.7% | 95.4% | 96.7% | 95.1% |
| LASSEN | 2021-22 | 1st Grade | 309 | 93.5% | 94.5% | 94.8% | 93.2% | 94.8% |
| | | Kindergarten | 315 | 89.8% | 90.5% | 89.8% | 91.1% | 89.8% |
| | 2020-21 | Kindergarten | 335 | 93.1% | 94.6% | 95.5% | 95.2% | 94.6% |
| | 2019-20 | Kindergarten | 350 | 94.0% | 96.3% | 96.3% | 96.3% | 94.9% |
| LOS ANGELES | 2021-22 | 1st Grade | 95,509 | 97.9% | 98.0% | 98.1% | 98.6% | 97.7% |
| | | Kindergarten | 116,937 | 96.3% | 96.6% | 96.7% | 98.0% | 96.3% |
| | 2020-21 | Kindergarten | 114,141 | 94.0% | 94.5% | 94.4% | 97.3% | 93.9% |
| | 2019-20 | Kindergarten | 133,622 | 96.8% | 97.1% | 97.0% | 98.2% | 96.4% |
| MADERA | 2021-22 | 1st Grade | 2,328 | 98.2% | 98.2% | 98.4% | 98.7% | 98.4% |
| | | Kindergarten | 2,636 | 96.7% | 97.3% | 97.5% | 97.8% | 97.7% |
| | 2020-21 | Kindergarten | 2,586 | 97.4% | 97.6% | 97.8% | 97.9% | 97.6% |
| | 2019-20 | Kindergarten | 2,727 | 97.2% | 97.7% | 98.0% | 98.1% | 97.8% |
| MARIN | 2021-22 | 1st Grade | 2,643 | 98.6% | 98.6% | 98.6% | 98.7% | 98.3% |
| | | Kindergarten | 2,847 | 98.5% | 98.6% | ≥99.0% | 98.5% | 98.3% |
| | 2020-21 | Kindergarten | 2,832 | 97.4% | 97.6% | 97.7% | 97.9% | 97.2% |
| | 2019-20 | Kindergarten | 3,252 | 96.0% | 96.6% | 96.9% | 96.8% | 95.8% |
| MARIPOSA | 2021-22 | 1st Grade | 146 | 92.5% | 95.2% | 95.9% | 95.9% | 93.8% |
| | | Kindergarten | 171 | 93.6% | 97.7% | 97.7% | 97.1% | 95.3% |
| | 2020-21 | Kindergarten | 163 | 87.1% | 89.0% | 90.2% | 92.0% | 89.0% |
| | 2019-20 | Kindergarten | 160 | 95.0% | 95.6% | 95.6% | 97.5% | 95.6% |
| MENDOCINO | 2021-22 | 1st Grade | 976 | 94.6% | 95.5% | 96.2% | 96.1% | 95.5% |
| | | Kindergarten | 1,183 | 92.1% | 93.7% | 93.7% | 94.3% | 92.6% |
| | 2020-21 | Kindergarten | 1,084 | 90.6% | 91.4% | 91.9% | 92.7% | 90.6% |
| | 2019-20 | Kindergarten | 1,218 | 88.8% | 89.9% | 89.7% | 89.7% | 88.7% |
| MERCED | 2021-22 | 1st Grade | 4,161 | 98.2% | 98.3% | 98.5% | ≥99.0% | 98.1% |
| | | Kindergarten | 5,007 | 96.7% | 97.4% | 97.4% | 98.4% | 97.2% |
| | 2020-21 | Kindergarten | 4,566 | 96.0% | 96.5% | 96.8% | 98.9% | 96.4% |
| | 2019-20 | Kindergarten | 5,321 | 97.6% | 98.7% | 98.7% | ≥99.0% | 98.2% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| MODOC | 2021-22 | 1st Grade | 120 | 96.7% | 98.3% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 102 | 94.1% | 98.0% | 98.0% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 117 | 97.4% | 96.6% | 96.6% | ≥99.0% | 96.6% |
| | 2019-20 | Kindergarten | 120 | 96.7% | 96.7% | 97.5% | ≥99.0% | 96.7% |
| MONO | 2021-22 | 1st Grade | 116 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 148 | 98.0% | 98.0% | ≥99.0% | 98.0% | 98.6% |
| | 2020-21 | Kindergarten | 124 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 97.6% |
| | 2019-20 | Kindergarten | 138 | 92.0% | 90.6% | 92.8% | 92.0% | 92.8% |
| MONTEREY | 2021-22 | 1st Grade | 5,150 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 6,357 | 98.6% | 98.7% | 98.8% | ≥99.0% | 98.5% |
| | 2020-21 | Kindergarten | 6,220 | 98.4% | 98.4% | 98.8% | ≥99.0% | 98.6% |
| | 2019-20 | Kindergarten | 6,733 | 98.2% | 98.4% | 98.6% | 98.8% | 98.2% |
| NAPA | 2021-22 | 1st Grade | 1,449 | ≥99.0% | 97.5% | ≥99.0% | 98.8% | 98.9% |
| | | Kindergarten | 1,581 | 98.5% | 98.0% | 98.8% | ≥99.0% | 98.7% |
| | 2020-21 | Kindergarten | 1,596 | 96.6% | 96.5% | 96.7% | 96.9% | 96.6% |
| | 2019-20 | Kindergarten | 1,746 | 98.3% | 98.3% | 98.0% | 97.8% | 97.9% |
| NEVADA | 2021-22 | 1st Grade | 696 | 86.5% | 87.1% | 87.1% | 87.9% | 86.6% |
| | | Kindergarten | 927 | 86.3% | 87.1% | 86.9% | 89.1% | 86.9% |
| | 2020-21 | Kindergarten | 834 | 84.8% | 84.9% | 85.4% | 87.9% | 85.0% |
| | 2019-20 | Kindergarten | 985 | 83.5% | 83.1% | 83.2% | 83.6% | 81.5% |
| ORANGE | 2021-22 | 1st Grade | 32,231 | 98.3% | 98.5% | 98.5% | 98.9% | 98.3% |
| | | Kindergarten | 38,034 | 97.3% | 97.8% | 97.7% | 98.7% | 97.4% |
| | 2020-21 | Kindergarten | 36,305 | 96.2% | 96.9% | 96.8% | 98.3% | 96.6% |
| | 2019-20 | Kindergarten | 41,381 | 97.2% | 97.5% | 97.4% | 98.1% | 97.1% |
| PLACER | 2021-22 | 1st Grade | 5,261 | 95.8% | 96.0% | 96.3% | 96.6% | 96.1% |
| | | Kindergarten | 6,549 | 94.5% | 95.1% | 95.4% | 96.0% | 95.1% |
| | 2020-21 | Kindergarten | 5,628 | 94.1% | 94.9% | 94.6% | 96.0% | 94.3% |
| | 2019-20 | Kindergarten | 6,709 | 93.9% | 94.5% | 93.7% | 95.0% | 93.3% |
| PLUMAS | 2021-22 | 1st Grade | 155 | 96.1% | 96.8% | 96.8% | 97.4% | 96.1% |
| | | Kindergarten | 202 | 96.0% | 95.5% | 96.0% | 96.5% | 93.6% |
| | 2020-21 | Kindergarten | 191 | 93.7% | 93.7% | 94.8% | 97.9% | 93.7% |
| | 2019-20 | Kindergarten | 208 | 96.2% | 95.2% | 96.6% | 96.6% | 93.8% |
| RIVERSIDE | 2021-22 | 1st Grade | 29,235 | 97.0% | 97.5% | 97.5% | 97.9% | 97.4% |
| | | Kindergarten | 33,796 | 95.3% | 96.2% | 96.4% | 97.4% | 96.3% |
| | 2020-21 | Kindergarten | 31,555 | 94.2% | 95.1% | 94.6% | 97.1% | 94.7% |
| | 2019-20 | Kindergarten | 36,134 | 95.1% | 95.7% | 95.8% | 96.1% | 95.3% |
| SACRAMENTO | 2021-22 | 1st Grade | 18,030 | 96.1% | 96.7% | 97.1% | 97.5% | 96.7% |
| | | Kindergarten | 19,897 | 94.3% | 95.5% | 95.8% | 96.5% | 95.6% |
| | 2020-21 | Kindergarten | 19,509 | 93.7% | 94.6% | 94.5% | 96.3% | 94.2% |
| | 2019-20 | Kindergarten | 21,495 | 95.0% | 95.9% | 95.8% | 96.5% | 95.5% |
| SAN BENITO | 2021-22 | 1st Grade | 846 | 98.1% | 98.6% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 983 | 98.0% | 98.3% | 98.9% | ≥99.0% | 98.8% |
| | 2020-21 | Kindergarten | 991 | 93.8% | 93.8% | 93.8% | 98.3% | 95.8% |
| | 2019-20 | Kindergarten | 1,099 | 97.8% | 97.8% | 97.4% | 98.7% | 97.9% |
| SAN BERNARDINO | 2021-22 | 1st Grade | 28,985 | 95.7% | 96.1% | 96.3% | 97.0% | 96.0% |
| | | Kindergarten | 32,198 | 93.9% | 94.8% | 94.9% | 96.1% | 94.8% |
| | 2020-21 | Kindergarten | 30,438 | 92.6% | 93.2% | 93.1% | 96.2% | 93.0% |
| | 2019-20 | Kindergarten | 34,542 | 95.2% | 96.0% | 96.2% | 97.5% | 96.1% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| SAN DIEGO | 2021-22 | 1st Grade | 36,235 | 96.3% | 96.5% | 96.6% | 97.1% | 96.3% |
| | | Kindergarten | 41,632 | 94.7% | 95.3% | 95.3% | 96.4% | 94.9% |
| | 2020-21 | Kindergarten | 40,748 | 95.2% | 95.6% | 95.4% | 96.7% | 95.2% |
| | 2019-20 | Kindergarten | 45,956 | 94.5% | 94.9% | 94.8% | 95.5% | 94.4% |
| SAN FRANCISCO | 2021-22 | 1st Grade | 5,519 | 96.6% | 96.9% | 97.3% | 97.4% | 97.8% |
| | | Kindergarten | 6,068 | 95.9% | 96.3% | 96.4% | 97.0% | 95.8% |
| | 2020-21 | Kindergarten | 6,325 | 94.2% | 94.9% | 95.1% | 95.5% | 94.8% |
| | 2019-20 | Kindergarten | 6,963 | 97.3% | 97.7% | 97.6% | 97.9% | 96.9% |
| SAN JOAQUIN | 2021-22 | 1st Grade | 10,750 | 97.3% | 97.8% | 97.8% | 98.4% | 97.8% |
| | | Kindergarten | 11,902 | 96.1% | 96.6% | 96.8% | 97.8% | 96.7% |
| | 2020-21 | Kindergarten | 10,791 | 96.3% | 97.3% | 97.0% | 98.4% | 96.8% |
| | 2019-20 | Kindergarten | 12,320 | 96.5% | 97.5% | 97.5% | 98.5% | 96.9% |
| SAN LUIS OBISPO | 2021-22 | 1st Grade | 2,451 | 98.0% | 97.9% | 98.3% | 98.8% | 98.2% |
| | | Kindergarten | 2,846 | 95.7% | 96.3% | 96.2% | 97.8% | 96.4% |
| | 2020-21 | Kindergarten | 2,466 | 96.8% | 96.8% | 96.9% | 98.3% | 96.6% |
| | 2019-20 | Kindergarten | 3,095 | 95.9% | 96.3% | 96.2% | 97.2% | 95.7% |
| SAN MATEO | 2021-22 | 1st Grade | 7,250 | 98.6% | 98.9% | 98.9% | 98.9% | 98.2% |
| | | Kindergarten | 8,028 | 97.8% | 98.4% | 98.2% | 98.7% | 97.5% |
| | 2020-21 | Kindergarten | 8,140 | 98.1% | 98.5% | 98.3% | ≥99.0% | 97.9% |
| | 2019-20 | Kindergarten | 9,168 | 97.9% | 98.1% | 98.1% | 98.6% | 97.4% |
| SANTA BARBARA | 2021-22 | 1st Grade | 5,232 | 98.2% | 98.4% | 98.5% | 98.6% | 98.0% |
| | | Kindergarten | 6,066 | 97.6% | 97.8% | 98.0% | 98.4% | 97.5% |
| | 2020-21 | Kindergarten | 5,473 | 96.7% | 97.4% | 97.0% | 98.1% | 96.7% |
| | 2019-20 | Kindergarten | 6,500 | 97.6% | 98.0% | 97.9% | 98.2% | 97.4% |
| SANTA CLARA | 2021-22 | 1st Grade | 19,070 | 98.5% | 98.7% | 98.7% | 98.9% | 98.3% |
| | | Kindergarten | 21,901 | 97.8% | 98.3% | 98.1% | 98.7% | 97.8% |
| | 2020-21 | Kindergarten | 21,759 | 97.3% | 97.7% | 97.6% | 98.6% | 97.1% |
| | 2019-20 | Kindergarten | 24,963 | 98.1% | 98.5% | 98.2% | 98.8% | 97.6% |
| SANTA CRUZ | 2021-22 | 1st Grade | 2,938 | 93.9% | 93.6% | 93.9% | 94.6% | 93.5% |
| | | Kindergarten | 3,307 | 93.5% | 93.3% | 94.1% | 94.6% | 93.5% |
| | 2020-21 | Kindergarten | 3,097 | 93.3% | 93.3% | 92.2% | 93.5% | 92.4% |
| | 2019-20 | Kindergarten | 3,415 | 92.4% | 92.4% | 92.6% | 93.1% | 93.1% |
| SHASTA | 2021-22 | 1st Grade | 1,959 | 94.2% | 94.6% | 94.8% | 95.5% | 94.8% |
| | | Kindergarten | 2,511 | 91.0% | 92.0% | 92.6% | 94.5% | 92.9% |
| | 2020-21 | Kindergarten | 2,189 | 91.2% | 92.3% | 91.9% | 94.7% | 92.1% |
| | 2019-20 | Kindergarten | 2,525 | 93.1% | 93.3% | 93.8% | 95.2% | 92.9% |
| SIERRA | 2021-22 | 1st Grade | 34 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 32 | ≥99.0% | ≥99.0% | 96.9% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 23 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | 2019-20 | Kindergarten | 25 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| SISKIYOU | 2021-22 | 1st Grade | 383 | 94.0% | 92.7% | 93.7% | 95.0% | 93.7% |
| | | Kindergarten | 500 | 92.4% | 93.0% | 93.0% | 93.8% | 93.8% |
| | 2020-21 | Kindergarten | 463 | 91.1% | 91.6% | 90.7% | 91.6% | 91.8% |
| | 2019-20 | Kindergarten | 530 | 97.2% | 97.4% | 97.5% | 97.7% | 97.5% |
| SOLANO | 2021-22 | 1st Grade | 4,451 | 98.8% | ≥99.0% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 5,236 | 97.6% | 98.2% | 98.3% | 98.7% | 98.0% |
| | 2020-21 | Kindergarten | 5,036 | 96.4% | 97.3% | 96.7% | 98.0% | 96.5% |
| | 2019-20 | Kindergarten | 5,966 | 97.3% | 98.0% | 98.1% | 98.4% | 97.6% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| SONOMA | 2021-22 | 1st Grade | 4,657 | 95.7% | 96.0% | 96.3% | 96.4% | 95.7% |
| | | Kindergarten | 5,931 | 94.4% | 94.7% | 95.0% | 95.8% | 94.6% |
| | 2020-21 | Kindergarten | 5,566 | 93.4% | 93.9% | 94.0% | 96.1% | 93.4% |
| | 2019-20 | Kindergarten | 6,043 | 94.7% | 94.8% | 94.7% | 95.3% | 94.3% |
| STANISLAUS | 2021-22 | 1st Grade | 7,858 | 97.0% | 97.5% | 97.7% | 98.3% | 97.5% |
| | | Kindergarten | 8,707 | 95.3% | 96.2% | 96.3% | 97.8% | 96.1% |
| | 2020-21 | Kindergarten | 8,619 | 95.5% | 96.6% | 96.2% | 98.1% | 95.7% |
| | 2019-20 | Kindergarten | 9,366 | 96.7% | 97.7% | 97.8% | 98.2% | 97.6% |
| SUTTER | 2021-22 | 1st Grade | 1,691 | 83.3% | 83.3% | 83.9% | 86.6% | 83.2% |
| | | Kindergarten | 2,222 | 79.2% | 80.0% | 79.9% | 84.4% | 79.7% |
| | 2020-21 | Kindergarten | 1,764 | 83.8% | 84.6% | 84.3% | 88.7% | 83.6% |
| | 2019-20 | Kindergarten | 2,017 | 86.7% | 87.3% | 87.9% | 89.8% | 88.5% |
| TEHAMA | 2021-22 | 1st Grade | 834 | 98.3% | 98.7% | 98.6% | 98.8% | 98.6% |
| | | Kindergarten | 962 | 96.0% | 96.7% | 97.2% | 98.2% | 96.4% |
| | 2020-21 | Kindergarten | 838 | 96.1% | 97.4% | 97.4% | 98.2% | 97.3% |
| | 2019-20 | Kindergarten | 1,073 | 95.4% | 96.7% | 96.6% | 97.9% | 95.6% |
| TRINITY | 2021-22 | 1st Grade | 115 | 91.3% | 89.6% | 90.4% | 93.9% | 89.6% |
| | | Kindergarten | 117 | 94.0% | 93.2% | 93.2% | 92.3% | 91.5% |
| | 2020-21 | Kindergarten | 134 | 89.6% | 89.6% | 89.6% | 90.3% | 90.3% |
| | 2019-20 | Kindergarten | 138 | 89.1% | 87.7% | 91.3% | 92.0% | 92.0% |
| TULARE | 2021-22 | 1st Grade | 7,322 | 98.9% | ≥99.0% | 98.9% | ≥99.0% | 98.7% |
| | | Kindergarten | 8,542 | 97.9% | 98.1% | 98.2% | 98.6% | 97.8% |
| | 2020-21 | Kindergarten | 8,344 | 97.5% | 97.7% | 97.8% | 98.7% | 97.7% |
| | 2019-20 | Kindergarten | 9,535 | 97.3% | 97.9% | 97.9% | 98.4% | 97.7% |
| TUOLUMNE | 2021-22 | 1st Grade | 469 | 91.7% | 94.2% | 93.0% | 94.2% | 92.8% |
| | | Kindergarten | 566 | 89.6% | 92.4% | 93.5% | 94.5% | 93.1% |
| | 2020-21 | Kindergarten | 474 | 89.0% | 90.1% | 91.8% | 92.8% | 90.5% |
| | 2019-20 | Kindergarten | 584 | 92.6% | 93.8% | 93.7% | 95.0% | 93.5% |
| VENTURA | 2021-22 | 1st Grade | 9,403 | 97.6% | 97.7% | 97.8% | 98.1% | 97.4% |
| | | Kindergarten | 10,540 | 96.6% | 97.1% | 97.1% | 98.0% | 96.8% |
| | 2020-21 | Kindergarten | 10,410 | 96.3% | 96.5% | 96.6% | 97.6% | 96.4% |
| | 2019-20 | Kindergarten | 11,466 | 96.9% | 97.3% | 97.3% | 98.0% | 96.7% |
| YOLO | 2021-22 | 1st Grade | 2,383 | 96.3% | 96.7% | 96.6% | 97.0% | 96.3% |
| | | Kindergarten | 2,746 | 95.4% | 96.2% | 95.8% | 96.8% | 95.5% |
| | 2020-21 | Kindergarten | 2,535 | 94.6% | 95.2% | 95.3% | 96.6% | 95.2% |
| | 2019-20 | Kindergarten | 2,959 | 96.1% | 96.3% | 96.6% | 97.5% | 96.0% |
| YUBA | 2021-22 | 1st Grade | 1,167 | 95.6% | 95.7% | 96.1% | 96.5% | 95.8% |
| | | Kindergarten | 1,372 | 92.7% | 93.7% | 93.2% | 95.0% | 93.4% |
| | 2020-21 | Kindergarten | 1,154 | 93.0% | 94.6% | 93.9% | 96.6% | 91.7% |
| | 2019-20 | Kindergarten | 1,361 | 95.2% | 96.0% | 95.6% | 96.8% | 95.4% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.
** Schools did not report.

# Exhibit 12

**2020-2021 and 2021-2022 Seventh Grade Immunization Assessment**

**Executive summary**

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Schools in California are required to report student immunization status to the California Department of Public Health (CDPH) every year. This report summarizes California student immunization rates reported at 7th grade in the 2020-2021 and 2021-2022 school years and at 8th grade in 2021-2022.

Events potentially affecting immunization and reporting during this period included:
- The Coronavirus 2019 (COVID-19) pandemic disrupted routine primary health care and education.
- Beginning January 1, 2021 Senate Bills (SB) 276 and SB 714 have required that all new medical exemptions to requirements for school entry be issued through a statewide database, the California Immunization Registry Medical Exemption (CAIR-ME) website.

Reported immunization rates for Tdap decreased slightly in 2021-2022 from 2019-2020, while Varicella rates remained similar. The proportion of 7th grade students reported to have received Tdap immunization was 97.3% in 2019-2020 and 95.9% in 2021-2022. An interim 7th grade Tdap rate in 2020-2021, during the height of the COVID-19 pandemic which likely affected immunization delivery and school reporting, was 88.6%. The Tdap rate for this cohort during 8th grade in 2021-2022 was 97.1%. Reported rate of Varicella immunizations among 7th graders was 97.1% in 2019-2020 and 97.2% in 2021-2022. The proportion of 7th graders reported with permanent medical exemptions decreased for Tdap from 0.4% in 2019-2020 to 0.1% in 2021-2022 and for Varicella from 0.9% in 2019-2020 to 0.4% in 2021-2022.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

**Introduction**

All schools with 7th grade students in California are required to report annually on student compliance per California Health and Safety Code Sections 120325-120375. This report summarizes the 2020-2021 and 2021-2022 school year data for 7th graders. In 2021-2022, an additional reporting requirement was added for 8th grade students to monitor immunization trends during the COVID-19 pandemic, associated with lengthy school closures, shifts from in-person to virtual and hybrid learning, and delays in routine health care. In addition, California Department of Education data show that 7th grade student enrollment decreased by 7% during the 2-year interval between 2019-2020 and 2021-2022.

California laws over the past decade have modified:
- Required doses: Since 2019, students entering 7th grade are required to receive two doses of Varicella (chickenpox) vaccine due to changes in the California Code of Regulations.
- Medical exemptions to required immunization: Starting January 1, 2021, Senate Bills (SB) 276 and SB 714 require that all new medical exemptions for school and child care entry be issued through CAIR-ME, an electronic, statewide database. Medical exemptions can only be issued

by physicians and surgeons licensed with the Medical Board or Osteopathic Medical Board of California and must meet criteria for appropriate exemptions from the Centers for Disease Control and Prevention, Advisory Committee on Immunization Practices, and American Academy of Pediatrics.

- <u>Personal beliefs exemptions (PBEs)</u>: PBEs have not been permitted since 2016 per <u>SB 277</u>.

## Methods

California schools registered with the California Department of Education reported to CDPH data on enrolled 7th grade students during the winter of the 2020-2021 and 2021-2022 school years. In 2021-2022, schools reporting 7th grade enrollment were also required to report the immunization status of 8th grade students to monitor their vulnerability to vaccine-preventable diseases during the pandemic.

Based on their immunization status, students were classified by school staff into the following categories:
- <u>Students immunized with required vaccines</u>:
  - o 1 or more doses of Tetanus, diphtheria and pertussis booster (Tdap) vaccine
  - o 2 or more doses of Varicella vaccine ['2+ Var'].
- <u>Conditional entrants</u> who had a temporary medical exemption (TME) to Tdap or Varicella vaccine or were not yet due for their second dose of Varicella vaccine.
- Students with a <u>permanent medical exemption</u> (PME) to either Tdap or Varicella vaccine. For Varicella vaccine, PMEs were further distinguished between
  - o Physician (MD/DO) verification of varicella disease
  - o Medical reasons other than varicella disease
- <u>Other students lacking required immunizations</u>: Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - o A home-based private school or
  - o An independent study program and do not receive classroom-based instruction.
  - o In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.

  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Students <u>overdue</u> for required immunizations and subject to exclusion from school until the overdue requirement has been met.

Under SB 277, <u>personal belief exemptions</u> (PBEs) have no longer been an option for 7th graders since the 2016-2017 school year.

Due to rounding, total figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

**Results**

In 2021-2022, 4,654 schools reported immunization status for 463,512 seventh grade students and 4,524 schools reported immunization status for 480,613 eighth grade students (Tables 1 and 2). Compared to 2019-2020, the number of schools with 7th grade that reported decreased by 2% in 2021-2022. The number of 7th grade students with reported immunization status decreased from 2019-2020 to 2021-2022 by 8.2%, compared to decreases in enrollment, per CDE data, of 7%. Between 2019-2020 and 2021-2022, the number of private schools reporting 7th graders decreased by 7%, while the number of public schools increased slightly by 0.9%. Similar to previous years, public schools accounted for 65% of all schools reporting 7th grade education and 92% of all reported 7th grade students in 2021-2022. Among nonreporting schools in 2021-2022, 78% (153 out of 195) were private schools.

Immunized with Tdap: Among 463,512 7th grade students reported in 2021-2022, 95.9% had received Tdap immunization, a decrease of 1.4% compared to 2019-2020 (Table 1 and Figure 1). As in prior years, a higher proportion of students in public compared to private schools were reported as being immunized with Tdap (96.1% public vs. 93.5% private).

The interim Tdap immunization rate for 7th grade students in 2020-2021 was 88.6% while the rate for this cohort in 8th grade in 2021-2022 increased to 97.1% (Table 2).

Immunized with Varicella vaccine: In 2021-2022, 97.2% of 7th grade students were reported as having received 2 doses of Varicella vaccine, a 0.1% decrease compared to 2019-2020 (Table 1 and Figure 2). A higher proportion of students in public compared to private schools were reported as being immunized with Varicella (97.4% public vs. 95.0% private).

The interim Varicella immunization rate for 7th grade students in 2020-2021 was 96.3% while the rate for this cohort in 8th grade in 2021-2022 was 97.7% (Table 2).

Permanent Medical Exemptions: Both public and private schools reported fewer PMEs in 2021-2022 than previous years (Table 1, Figures 3 and 4). The proportion of 7th grade students reported with PMEs for Tdap vaccine has decreased from a peak of 0.5% in 2018-2019 to 0.1% in 2021-2022.

The proportion of 7th graders with PMEs for Varicella decreased from 0.9% in 2019-2020 to 0.4% in 2021-2022. Among 1,687 PMEs for Varicella, 58% (980) reported physician verification of varicella disease and 42% (707) reported other medical reasons for exemption.

Among 8th grade students in 2021-2022, 769 students (0.2%) were reported with PMEs for Tdap and 2,157 students (0.4%) with PMEs for Varicella.

Conditional entrants: The proportion of 7th grade students in all schools reported as conditional entrants because of a temporary medical exemption for Tdap immunization decreased from 0.1% in 2019-2020 to <0.1% in 2021-2022 (Table 1, Figures 5 and 6).

For Varicella immunization, the proportion of 7th graders reported as conditional entrants decreased between 2019-2020 and 2021-2022 from 0.3% to 0.2% in all schools and in public schools, and 0.6% to 0.4% in private schools (Table 1, Figures 5 and 7). The majority were reported as students not yet due for their second dose of Varicella vaccine (856 out of 975 students in 2021-2022) as compared to having a temporary medical exemption (119 out of 975).

The proportion of 8th graders in 2021-2022 reported as conditional entrants was 0.1% for Varicella immunization and <0.1% for Tdap immunization.

<u>Other students lacking required immunizations</u>: Seventh graders reported as attending an independent study program without classroom-based instruction, attending home-based private school, or receiving services in an IEP and lacking immunizations have increased over the past 6 years. Students in this category lacking Tdap immunization increased from 1.5% in 2019-2020 to 2.2% in 2021-2022, including 2.2% for public schools and 2.5% for private schools. Seventh graders in this category reported as lacking two doses of Varicella vaccine increased from 1.0% in 2019-2020 to 1.3% in 2021-2022, including 1.2% in public schools and 2.2% in private schools. Similar to prior years, most students in this category were reported as being enrolled in independent study programs in 2021-2022 (6,620 out of 10,089 students lacking Tdap immunization and 4,095 out of 5,905 students lacking Varicella immunization).

The interim proportion of 7th graders in independent study without classroom-based instruction, home-based private school or receiving IEP services and lacking immunizations was 2.6% for Tdap and 1.2% for Varicella in 2020-2021, while the rates for this cohort in 8th grade in 2021-2022 were 1.6% for lacking Tdap and 1.1% for lacking Varicella.

<u>Overdue</u>: The percentage of 7th grade students reported as being overdue for Tdap immunization has been increasing over the past 7 years, including an increase in 1.1 percentage points from 0.7% in 2019-2020 to 1.8% in 2021-2022. Students reported as overdue for Tdap immunization increased in both public and private schools, 1.7% in public and 3.3% in private schools in 2021-2022. The proportion of 8th graders in 2021-2022 reported as overdue for Tdap immunization was 1.1%, decreased from 8.5% in the corresponding 7th grade cohort in 2020-2021.

Seventh grade students reported as being overdue for Varicella immunization increased from 0.7% in 2019-2020 to 0.9% to 2021-2022, including 0.8% in public schools and 1.7% in private schools. The proportion of 8th graders in 2021-2022 reported as overdue for Varicella immunization was 0.7%, decreased from 1.8% in the corresponding 7th grade cohort in 2020-2021.

<u>County-level immunization rates</u>: Immunization rates varied widely by county in California, including lower rates in some northern and central counties (Tables 3 and 4, Figures 8 and 9). In 2021-2022, 22 (38%) of 58 counties reported 7th grade Tdap immunization rates below 95%, compared to 12 (21%) counties in 2019-2020.

Counties with higher proportion of students enrolled in online or virtual schools had lower Tdap immunization rates, similar to prior years. Four counties, El Dorado, Glenn, Kern, and Sutter, reported more than 5% of seventh grade students enrolled in virtual schools and corresponding lower Tdap immunization rates among students in virtual schools versus classroom-based schools (Box).

| % of 7th graders with Tdap immunization in 2021-2022 | | | |
|---|---|---|---|
| **County** | All Schools Based in County | Classroom-Based Schools | Virtual Schools* | **For Schools Based in County, % of pupils reported as enrolled in virtual schools** |
| Sutter | 79.9% | 96.4% | 32.4% | 19.4% |
| El Dorado | 83.3% | 95.8% | 14.2% | 15.0% |
| Glenn | 89.4% | 98.0% | 16.0% | 10.6% |
| Kern | 91.8% | 98.1% | 10.5% | 6.8% |

*Virtual schools are based in the specified county but may enroll children who reside in other counties.

Varicella immunization rates below 95% were reported by 12 (21%) counties in 2021-2022, compared to 16 (28%) in 2019-2020.

In most counties, rates for Tdap and varicella immunization in 8th grade students in 2021-2022 were higher than rates in the corresponding 7th grade cohort in 2020-2021.

---

**Discussion**

In the midst of the COVID-19 pandemic, California schools continued to report essential immunization information about their students. Public schools reported the immunization status of 97% (447,943/460,703) of 7th graders counted in CDE public school enrollment data in 2020-2021 and 98% (428,603/435,773) in 2021-2022. Private school reporting was lower at 88% (32,770/37,079) in 2020-2021 and 92% (34,909/37,747) in 2021-2022 per CDE private school enrollment data.

The Tdap immunization rate among 7th graders was 95.9% in 2021-2022, below rates ranging from 96.6% to 98.4% during the 10 years before the pandemic. An interim lower rate of 88.6% for 7th graders in 2020-2021 was followed by a rate of 97.1% among 8th graders in 2021-2022. Data on 8th grade students have not been collected previously, thus it is unclear whether the pace of catch-up in 2021-2022 was unusual. Compared to 2019-2020, the proportion of 7th graders reported in 2021-2022 categorized as overdue for Tdap immunization more than doubled from 0.7% to 1.8%, which may reflect disruptions in immunization, attendance, or reporting capacity during the pandemic.

The Varicella immunization rate among 7th graders in 2021-2022 was 97.2%, similar to a rate of 97.1% in 2019-2020. An interim lower rate of 96.3% for 7th graders in 2020-2021 was followed by a rate of 97.7% among 8th graders in 2021-2022. In California during 2021-2022, varicella immunization rates were higher among 7th graders than kindergarteners in public schools (7th grade 97.4%; kindergarten 96.1%), but not private schools (7th grade 95.0%; kindergarten 95.3%).

The proportion of 7th grade students with PMEs has decreased after implementation of SB 276 and SB 714, which require medical exemptions to align with national standards and be subject to review by CDPH: PMEs for Tdap decreased from 0.4% in 2019-2020 to 0.1% in 2021-2022 and PMEs for Varicella decreased from 0.9% in 2019-2020 to 0.4% in 2021-2022. This trend is similar to decreasing PMEs reported among kindergarteners. By contrast, the proportion of students exempted from

immunization requirements per criteria in SB 277 has been increasing among 7th graders. Most of these 7th graders are reported as being in independent study programs (1.4% IEP of 2.2% lacking Tdap; 0.9% IEP of 1.3% lacking Varicella).

Adolescents in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. In 2021-2022, rates of immunization less than 95% were reported for Tdap in 22 (38%) counties in California and for Varicella vaccine in 12 (21%) counties. Regional differences in reported school-required immunization rates reflect trends for COVID-19 vaccines in California. Encouraging immunization throughout childhood and adolescence should continue as our school communities return to routine in-person learning. Ongoing efforts to protect school communities with required vaccines and COVID-19 vaccines can be complementary and synergistic.

## Limitations

This report is subject to limitations that include:
- Submission of student immunization records to school staff and reporting by school staff of immunization data to CDPH might have been reduced during the pandemic. Incomplete immunization records might have resulted in underestimates of immunization rates.
- CDPH does not know how many of the schools that did not report had enrolled 7th grade students or the immunization status of their students. In 2020-2021, 473 California schools, including 381 private schools and 92 public schools did not report. In 2021-2022, 195 California schools, including 153 private schools and 42 public schools did not report. Underreporting could have biased the reported immunization rates in either direction.
- As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- It is possible that medical exemption records provided to schools were incomplete or under review during initial implementation of SB 276 and SB 714 on January 1, 2021, when documentation of medical exemptions transitioned from paper-based records to CAIR-ME, an electronic, statewide database. The presence of incomplete records could have biased the reported medical exemption rates in either direction.

Download the 7th Grade Immunization Assessment Summary data workbook for more information (XLS)

---

**Figures**

1. Percentage of Students with 1+ Doses of Tdap Vaccine by School Year

2. Percentage of Students with 2+ Doses of Varicella Vaccine by School Year

3. Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Tdap Vaccine by School Year

4. Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Varicella Vaccine by School Year

5. Percentage of All 7th Grade Students by Reported Admission Status, Tdap and Varicella Vaccine, 2021-2022

6. Percentage of All 7th Grade Students with 1+ Doses of Tdap Vaccine, by Reported Admission Status, by School Year, 2014-2015 to 2021-2022

7. Percentage 7th Grade Students with 2+ Doses of Varicella Vaccine, by Reported Admission Status, by School Year, 2019-2020 to 2021-2022

8. Map: 7th Grade and 8th Grade Students with 1+ Doses of Tdap Vaccine, by County, 7th Grade, 2019-2020 to 2021-2022 School Years and 8th Grade 2021-2022 School Year

9. Map: 7th Grade and 8th Grade Students with 2+ Doses of Varicella Vaccine, by County, 7th Grade, 2019-2020 to 2021-2022 School Years and 8th Grade 2021-2022 School Year


**Tables**

1. 7th Grade Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years

2. Immunization Assessment Summary of 7th Grade in 2020-2021 and Subsequent 8th Grade in 2021-2022

3. Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, by County

4. Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, by County

**Figure 1. Top: Percentage of Students with 1+ Doses of Tdap Vaccine by School Year**
**Figure 2. Bottom: Percentage of Students with 2+ Doses of Varicella Vaccine by School Year**
**Left: 7th Graders in the 2017-2018 to 2021-2022 School Years**
**Right: 7th Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year**





*Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 3. Top: Percentage of All 7th Grade and 8ᵗʰ Grade Students with Permanent Medical Exemptions (PMEs) to Tdap Vaccine, by School Year**

**Figure 4. Bottom: Percentage of All 7th Grade and 8ᵗʰ Grade Students with Permanent Medical Exemptions (PMEs) to Varicella Vaccine by School Year, by School Year.**

**Left:  7ᵗʰ Graders in the 2017-2018 to 2021-2022 School Years**

**Right:  7ᵗʰ Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year**





*Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 5. Percentage of All 7th Grade Students by Reported Admission Status, Tdap and Varicella Vaccine, 2021-2022 School Year†**



† Immunization and data collection potentially affected by the COVID-19 Pandemic.

* Other children lacking required immunizations under criteria specified in SB 277

^ Conditional Entrants – TMEs <0.1%

**Figure 6. Percentage of 7th Grade Students with 1+ Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2014-2015 to 2021-2022**



*Other children lacking required immunizations under criteria specified in SB 277.

† Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 7. Percentage 7th Grade Students with 2+ Doses of Varicella Vaccine, by Reported Admission Status by School Year, 2019-20 to 2021-22**
**Top:  7th Graders in the 2019-2020 to 2021-2022 School Years**
**Bottom:  7th Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year**



† Immunization and data collection potentially affected by the COVID-19 Pandemic.

* Other children lacking required immunizations under criteria specified in SB 277

^ Conditional Entrants – TMEs <0.1%

**Figure 8. 7th and 8th Grade Students with 1+ Doses of Tdap Vaccine, by County**
**7th Graders in the 2019-2020 to 2021-2022 School Years**
**8th Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic

**Figure 9. 7th and 8th Grade Students with 2+ Doses of Varicella Vaccine, by County**
**7th Graders in the 2019-2020 to 2021-2022 School Years**
**8th Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic

**Table 1. 7th Grade Immunization Assessment Summary, 2019-20 through 2021-2022 School Years**

| | 7th Grade | | | | | | | | | 7th Grade: 2021-22 and 2019-20 | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2021-2022 | | | 2020-2021 | | | 2019-2020 | | | 2-Year Percentage Point Change | | |
| | All | Public | Private | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools | 4,654 | 3,038 | 1,616 | 4,454 | 2,925 | 1,529 | 4,750 | 3,012 | 1,738 | -2.0% | 0.9% | -7.0% |
| Number of Students | 463,512 | 428,603 | 34,909 | 480,713 | 447,943 | 32,770 | 505,017 | 468,248 | 36,769 | -8.2% | -8.5% | -5.1% |
| **Received Tdap\*** | 95.9% | 96.1% | 93.5% | 88.6% | 88.3% | 91.8% | 97.3% | 97.6% | 94.2% | -1.4% | -1.5% | -0.7% |
| Conditional Entrants for Tdap | 0.0% | 0.0% | 0.2% | 0.1% | 0.0% | 0.3% | 0.1% | 0.1% | 0.4% | 0.0% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.1% | 0.1% | 0.5% | 0.3% | 0.3% | 0.8% | 0.4% | 0.4% | 1.3% | -0.3% | -0.3% | -0.8% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap† | 2.2% | 2.2% | 2.5% | 2.6% | 2.6% | 2.4% | 1.5% | 1.5% | 1.8% | 0.7% | 0.7% | 0.7% |
| Overdue for Tdap Vaccine^ | 1.8% | 1.7% | 3.3% | 8.5% | 8.7% | 4.6% | 0.7% | 0.5% | 2.3% | 1.1% | 1.1% | 1.0% |
| **Received 2+ Varicella\*\*** | 97.2% | 97.4% | 95.0% | 96.3% | 96.4% | 94.7% | 97.1% | 97.3% | 94.7% | 0.2% | 0.2% | 0.3% |
| Conditional Entrants for Varicella | 0.2% | 0.2% | 0.4% | 0.2% | 0.1% | 0.5% | 0.3% | 0.3% | 0.6% | -0.1% | -0.1% | -0.2% |
| Permanent Medical Exemptions for Varicella | 0.4% | 0.3% | 0.7% | 0.6% | 0.6% | 1.2% | 0.9% | 0.8% | 1.8% | -0.5% | -0.5% | -1.0% |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Varicella† | 1.3% | 1.2% | 2.2% | 1.2% | 1.1% | 2.0% | 1.0% | 1.0% | 1.7% | 0.2% | 0.2% | 0.5% |
| Overdue for 2+ Varicella Vaccine^^ | 0.9% | 0.8% | 1.7% | 1.8% | 1.8% | 1.7% | 0.7% | 0.6% | 1.3% | 0.2% | 0.2% | 0.4% |

\* Received pertussis-containing immunization on or after 7th birthday.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

\*\* Received 2 doses of Varicella immunization.

^^ Overdue for 2 doses of Varicella immunization.

**Table 2.  Immunization Assessment Summary of 7th Grade in 2020-21 and Subsequent 8th Grade in 2021-2022**

| | 8th Grade | | | 7th Grade | | | 8th Grade 2021-22 and 7th Grade 2020-21 | | |
| | 2021-2022 | | | 2020-2021 | | | 1-Year Percentage Point Change | | |
| | All | Public | Private | All | Public | Private | All | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Number of Schools | 4,524 | 2,981 | 1,543 | 4,454 | 2,925 | 1,529 | 1.6% | 1.9% | 0.9% |
| Number of Students | 480,613 | 445,896 | 34,717 | 480,713 | 447,943 | 32,770 | 0.0% | -0.5% | 5.9% |
| **Received Tdap*** | 97.1% | 97.3% | 94.6% | 88.6% | 88.3% | 91.8% | 8.5% | 8.9% | 2.8% |
| Conditional Entrants for Tdap | 0.0% | 0.0% | 0.1% | 0.1% | 0.0% | 0.3% | 0.0% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.2% | 0.1% | 0.6% | 0.3% | 0.3% | 0.8% | -0.1% | -0.1% | -0.3% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap† | 1.6% | 1.6% | 2.5% | 2.6% | 2.6% | 2.4% | -1.0% | -1.0% | 0.0% |
| Overdue for Tdap Vaccine^ | 1.1% | 1.0% | 2.2% | 8.5% | 8.7% | 4.6% | -7.4% | -7.7% | -2.4% |
| **Received 2+ Varicella**** | 97.7% | 97.8% | 95.5% | 96.3% | 96.4% | 94.7% | 1.4% | 1.4% | 0.9% |
| Conditional Entrants for Varicella | 0.1% | 0.1% | 0.2% | 0.2% | 0.1% | 0.5% | -0.1% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Varicella | 0.4% | 0.4% | 0.9% | 0.6% | 0.6% | 1.2% | -0.1% | -0.1% | -0.3% |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Varicella† | 1.1% | 1.0% | 2.2% | 1.2% | 1.1% | 2.0% | -0.1% | -0.1% | 0.2% |
| Overdue for 2+ Varicella Vaccine^^ | 0.7% | 0.7% | 1.1% | 1.8% | 1.8% | 1.7% | -1.1% | -1.1% | -0.6% |

* Received pertussis-containing immunization on or after 7th birthday.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

** Received 2 doses of Varicella immunization.

^^ Overdue for 2 doses of Varicella immunization.

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| State Total | 2021-22 | 8 | 480,613 | 97.1% | 0.0% | 0.2% | 1.6% | 1.1% |
| | | 7 | 463,512 | 95.9% | 0.0% | 0.1% | 2.2% | 1.8% |
| | 2020-21 | 7 | 480,713 | 88.6% | 0.1% | 0.3% | 2.6% | 8.5% |
| | 2019-20 | 7 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| Alameda | 2021-22 | 8 | 17,728 | 97.7% | 0.0% | 0.1% | 0.6% | 1.6% |
| | | 7 | 17,351 | 95.9% | 0.0% | 0.0% | 0.8% | 3.2% |
| | 2020-21 | 7 | 18,393 | 89.8% | 0.1% | 0.2% | 1.1% | 8.7% |
| | 2019-20 | 7 | 18,849 | 98.0% | 0.1% | 0.3% | 0.2% | 1.5% |
| Alpine | 2021-22 | 8 | ---* | ---* | ---* | ---* | ---* | ---* |
| | | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2020-21 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2019-20 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| Amador | 2021-22 | 8 | 334 | 85.3% | 0.0% | 0.0% | 3.3% | 11.4% |
| | | 7 | 293 | 57.3% | 1.7% | 0.0% | 10.9% | 30.0% |
| | 2020-21 | 7 | 328 | 78.4% | 0.0% | 1.5% | 6.1% | 14.0% |
| | 2019-20 | 7 | 325 | 94.2% | 0.0% | 1.8% | 3.4% | 0.6% |
| Butte | 2021-22 | 8 | 2,214 | 96.9% | 0.0% | 0.4% | 2.3% | 0.5% |
| | | 7 | 2,208 | 96.2% | 0.0% | 0.1% | 2.6% | 1.0% |
| | 2020-21 | 7 | 2,172 | 92.7% | 0.0% | 0.6% | 3.0% | 3.7% |
| | 2019-20 | 7 | 2,396 | 97.3% | 0.2% | 0.6% | 1.3% | 0.6% |
| Calaveras | 2021-22 | 8 | 395 | 89.9% | 0.0% | 0.8% | 8.9% | 0.5% |
| | | 7 | 411 | 93.4% | 0.0% | 0.2% | 4.9% | 1.5% |
| | 2020-21 | 7 | 368 | 84.0% | 0.3% | 0.8% | 14.1% | 0.8% |
| | 2019-20 | 7 | 403 | 95.0% | 0.0% | 1.5% | 2.7% | 0.7% |
| Colusa | 2021-22 | 8 | 423 | 97.9% | 0.0% | 0.0% | 0.5% | 1.7% |
| | | 7 | 336 | 94.3% | 0.0% | 0.0% | 0.3% | 5.4% |
| | 2020-21 | 7 | 406 | 92.4% | 0.0% | 0.0% | 0.0% | 7.6% |
| | 2019-20 | 7 | 394 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| ContraCosta | 2021-22 | 8 | 13,513 | 98.6% | 0.0% | 0.1% | 0.5% | 0.8% |
| | | 7 | 13,353 | 96.1% | 0.1% | 0.1% | 0.7% | 3.1% |
| | 2020-21 | 7 | 14,209 | 90.8% | 0.0% | 0.2% | 1.0% | 8.1% |
| | 2019-20 | 7 | 14,765 | 98.3% | 0.0% | 0.3% | 0.5% | 0.8% |
| Del Norte | 2021-22 | 8 | 301 | 96.0% | 0.0% | 0.7% | 2.7% | 0.7% |
| | | 7 | 290 | 97.9% | 0.0% | 0.0% | 1.4% | 0.7% |
| | 2020-21 | 7 | 305 | 93.1% | 0.0% | 0.7% | 3.3% | 3.0% |
| | 2019-20 | 7 | 331 | 97.3% | 0.0% | 0.0% | 0.3% | 2.4% |
| El Dorado | 2021-22 | 8 | 2,336 | 88.4% | 0.0% | 0.4% | 10.1% | 1.0% |
| | | 7 | 2,253 | 83.3% | 0.1% | 0.4% | 12.8% | 3.4% |
| | 2020-21 | 7 | 2,161 | 86.2% | 0.3% | 0.6% | 11.5% | 1.4% |
| | 2019-20 | 7 | 2,644 | 88.8% | 0.7% | 1.5% | 8.9% | 0.2% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Fresno | 2021-22 | 8 | 15,770 | 98.7% | 0.0% | 0.1% | 1.1% | 0.1% |
| | | 7 | 15,423 | 98.1% | 0.0% | 0.0% | 1.4% | 0.4% |
| | 2020-21 | 7 | 16,082 | 96.9% | 0.0% | 0.1% | 1.2% | 1.7% |
| | 2019-20 | 7 | 15,839 | 98.3% | 0.0% | 0.1% | 1.3% | 0.2% |
| Glenn | 2021-22 | 8 | 494 | 91.5% | 0.0% | 0.2% | 7.3% | 1.0% |
| | | 7 | 472 | 89.4% | 0.0% | 0.0% | 9.5% | 1.1% |
| | 2020-21 | 7 | 484 | 87.2% | 0.0% | 0.0% | 9.5% | 3.3% |
| | 2019-20 | 7 | 442 | 94.3% | 0.0% | 0.0% | 5.0% | 0.7% |
| Humboldt | 2021-22 | 8 | 1,442 | 91.7% | 0.1% | 1.6% | 1.7% | 4.9% |
| | | 7 | 1,347 | 89.3% | 0.2% | 1.3% | 2.8% | 6.4% |
| | 2020-21 | 7 | 1,427 | 86.9% | 0.0% | 2.2% | 2.8% | 8.1% |
| | 2019-20 | 7 | 1,380 | 90.7% | 0.7% | 3.2% | 1.5% | 3.9% |
| Imperial | 2021-22 | 8 | 2,881 | 97.5% | 0.0% | 0.0% | 0.4% | 2.0% |
| | | 7 | 2,830 | 96.6% | 0.0% | 0.0% | 1.0% | 2.4% |
| | 2020-21 | 7 | 2,905 | 87.1% | 0.0% | 0.0% | 0.5% | 12.4% |
| | 2019-20 | 7 | 2,935 | 99.1% | 0.1% | 0.0% | 0.2% | 0.5% |
| Inyo | 2021-22 | 8 | 190 | 97.4% | 0.0% | 0.0% | 0.0% | 2.6% |
| | | 7 | 233 | 97.9% | 0.0% | 0.0% | 0.0% | 2.1% |
| | 2020-21 | 7 | 192 | 92.7% | 0.0% | 0.0% | 0.0% | 7.3% |
| | 2019-20 | 7 | 213 | 98.6% | 0.0% | 0.9% | 0.5% | 0.0% |
| Kern | 2021-22 | 8 | 15,738 | 93.7% | 0.0% | 0.2% | 5.4% | 0.6% |
| | | 7 | 15,067 | 91.8% | 0.0% | 0.3% | 6.9% | 0.9% |
| | 2020-21 | 7 | 15,505 | 87.2% | 0.0% | 0.2% | 6.6% | 6.0% |
| | 2019-20 | 7 | 15,219 | 94.0% | 0.0% | 0.2% | 5.2% | 0.5% |
| Kings | 2021-22 | 8 | 2,341 | 99.4% | 0.0% | 0.0% | 0.6% | 0.0% |
| | | 7 | 2,274 | 98.2% | 0.0% | 0.0% | 1.4% | 0.4% |
| | 2020-21 | 7 | 2,364 | 98.3% | 0.1% | 0.0% | 1.0% | 0.6% |
| | 2019-20 | 7 | 2,294 | 98.7% | 0.2% | 0.0% | 1.0% | 0.1% |
| Lake | 2021-22 | 8 | 579 | 96.0% | 0.2% | 0.2% | 1.9% | 1.7% |
| | | 7 | 768 | 95.8% | 0.0% | 0.3% | 2.7% | 1.2% |
| | 2020-21 | 7 | 755 | 86.4% | 0.1% | 0.5% | 2.5% | 10.5% |
| | 2019-20 | 7 | 736 | 95.4% | 0.1% | 1.1% | 2.2% | 1.2% |
| Lassen | 2021-22 | 8 | 300 | 94.3% | 0.0% | 2.7% | 2.7% | 0.3% |
| | | 7 | 275 | 92.4% | 0.0% | 0.7% | 4.0% | 2.9% |
| | 2020-21 | 7 | 299 | 88.6% | 0.0% | 2.7% | 3.7% | 5.0% |
| | 2019-20 | 7 | 288 | 95.1% | 0.0% | 3.8% | 1.0% | 0.0% |
| Los Angeles | 2021-22 | 8 | 112,288 | 97.0% | 0.0% | 0.1% | 1.2% | 1.7% |
| | | 7 | 106,833 | 95.6% | 0.0% | 0.1% | 1.7% | 2.5% |
| | 2020-21 | 7 | 109,967 | 85.1% | 0.0% | 0.3% | 2.0% | 12.5% |
| | 2019-20 | 7 | 119,392 | 98.0% | 0.1% | 0.3% | 0.9% | 0.7% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Madera | 2021-22 | 8 | 2,491 | 98.3% | 0.0% | 0.0% | 0.6% | 1.0% |
| | | 7 | 2,295 | 98.1% | 0.0% | 0.0% | 0.5% | 1.4% |
| | 2020-21 | 7 | 2,556 | 94.5% | 0.0% | 0.1% | 0.7% | 4.7% |
| | 2019-20 | 7 | 2,014 | 96.9% | 0.0% | 0.2% | 1.1% | 1.7% |
| Marin | 2021-22 | 8 | 3,016 | 99.2% | 0.0% | 0.3% | 0.1% | 0.4% |
| | | 7 | 2,885 | 98.7% | 0.1% | 0.2% | 0.1% | 0.8% |
| | 2020-21 | 7 | 3,075 | 96.9% | 0.1% | 0.4% | 0.4% | 2.2% |
| | 2019-20 | 7 | 3,245 | 97.7% | 0.4% | 1.3% | 0.3% | 0.4% |
| Mariposa | 2021-22 | 8 | 165 | 95.2% | 0.0% | 0.6% | 1.8% | 2.4% |
| | | 7 | 142 | 93.7% | 0.0% | 1.4% | 1.4% | 3.5% |
| | 2020-21 | 7 | 154 | 84.4% | 0.0% | 0.6% | 7.8% | 7.1% |
| | 2019-20 | 7 | 130 | 98.5% | 0.0% | 0.8% | 0.8% | 0.0% |
| Mendocino | 2021-22 | 8 | 971 | 86.2% | 0.0% | 0.4% | 2.2% | 11.2% |
| | | 7 | 1,030 | 85.9% | 0.0% | 0.1% | 2.4% | 11.6% |
| | 2020-21 | 7 | 1,003 | 79.7% | 0.2% | 0.6% | 4.5% | 15.1% |
| | 2019-20 | 7 | 1,039 | 95.0% | 0.5% | 1.1% | 1.6% | 1.8% |
| Merced | 2021-22 | 8 | 4,463 | 97.2% | 0.0% | 0.2% | 1.6% | 1.0% |
| | | 7 | 4,483 | 95.6% | 0.0% | 0.0% | 2.1% | 2.3% |
| | 2020-21 | 7 | 4,453 | 86.2% | 0.0% | 0.1% | 2.4% | 11.3% |
| | 2019-20 | 7 | 4,597 | 98.5% | 0.0% | 0.1% | 0.9% | 0.5% |
| Modoc | 2021-22 | 8 | 118 | 94.9% | 0.0% | 0.0% | 0.0% | 5.1% |
| | | 7 | 102 | 90.2% | 0.0% | 0.0% | 3.9% | 5.9% |
| | 2020-21 | 7 | 123 | 99.2% | 0.0% | 0.0% | 0.0% | 0.8% |
| | 2019-20 | 7 | 102 | 96.1% | 0.0% | 1.0% | 0.0% | 2.9% |
| Mono | 2021-22 | 8 | 111 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | | 7 | 100 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 109 | 88.1% | 0.0% | 0.0% | 0.0% | 11.9% |
| | 2019-20 | 7 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| Monterey | 2021-22 | 8 | 6,044 | 98.9% | 0.1% | 0.1% | 0.4% | 0.6% |
| | | 7 | 5,799 | 98.6% | 0.0% | 0.1% | 0.4% | 0.9% |
| | 2020-21 | 7 | 6,042 | 95.1% | 0.1% | 0.2% | 0.5% | 4.1% |
| | 2019-20 | 7 | 6,397 | 99.2% | 0.0% | 0.4% | 0.2% | 0.3% |
| Napa | 2021-22 | 8 | 1,606 | 97.8% | 0.0% | 0.1% | 1.2% | 0.9% |
| | | 7 | 1,641 | 97.4% | 0.0% | 0.1% | 1.3% | 1.2% |
| | 2020-21 | 7 | 1,591 | 97.3% | 0.0% | 0.3% | 1.9% | 0.5% |
| | 2019-20 | 7 | 1,682 | 98.5% | 0.0% | 0.3% | 0.9% | 0.4% |
| Nevada | 2021-22 | 8 | 833 | 90.2% | 0.0% | 2.3% | 6.0% | 1.6% |
| | | 7 | 843 | 90.2% | 0.2% | 0.5% | 7.2% | 1.9% |
| | 2020-21 | 7 | 806 | 82.5% | 0.0% | 5.5% | 6.1% | 6.0% |
| | 2019-20 | 7 | 842 | 89.2% | 0.7% | 5.5% | 4.3% | 0.4% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Orange | 2021-22 | 8 | 38,554 | 98.1% | 0.0% | 0.2% | 1.1% | 0.6% |
| | | 7 | 36,105 | 97.3% | 0.0% | 0.1% | 1.5% | 1.0% |
| | 2020-21 | 7 | 38,419 | 94.2% | 0.1% | 0.3% | 1.6% | 3.8% |
| | 2019-20 | 7 | 39,699 | 97.9% | 0.1% | 0.5% | 1.0% | 0.5% |
| Placer | 2021-22 | 8 | 5,220 | 96.2% | 0.0% | 0.8% | 2.4% | 0.7% |
| | | 7 | 5,778 | 95.9% | 0.0% | 0.2% | 2.6% | 1.3% |
| | 2020-21 | 7 | 5,618 | 94.7% | 0.1% | 1.1% | 1.2% | 2.9% |
| | 2019-20 | 7 | 5,990 | 95.9% | 0.1% | 1.4% | 2.0% | 0.6% |
| Plumas | 2021-22 | 8 | 175 | 97.1% | 0.0% | 0.6% | 2.3% | 0.0% |
| | | 7 | 171 | 94.2% | 0.0% | 0.0% | 4.7% | 1.2% |
| | 2020-21 | 7 | 174 | 87.4% | 0.6% | 1.7% | 9.8% | 0.6% |
| | 2019-20 | 7 | 197 | 98.0% | 0.0% | 1.0% | 1.0% | 0.0% |
| Riverside | 2021-22 | 8 | 33,475 | 97.6% | 0.0% | 0.1% | 1.6% | 0.6% |
| | | 7 | 32,331 | 96.5% | 0.0% | 0.1% | 2.2% | 1.2% |
| | 2020-21 | 7 | 33,652 | 80.5% | 0.0% | 0.2% | 5.7% | 13.6% |
| | 2019-20 | 7 | 35,413 | 97.6% | 0.0% | 0.3% | 1.5% | 0.5% |
| Sacramento | 2021-22 | 8 | 19,002 | 97.1% | 0.0% | 0.2% | 1.8% | 1.0% |
| | | 7 | 18,232 | 95.6% | 0.0% | 0.2% | 2.6% | 1.6% |
| | 2020-21 | 7 | 19,321 | 89.3% | 0.3% | 0.2% | 3.0% | 7.2% |
| | 2019-20 | 7 | 19,967 | 96.9% | 0.1% | 0.6% | 2.1% | 0.4% |
| San Benito | 2021-22 | 8 | 893 | 98.3% | 0.0% | 0.2% | 0.2% | 1.2% |
| | | 7 | 834 | 97.2% | 0.0% | 0.4% | 0.6% | 1.8% |
| | 2020-21 | 7 | 900 | 78.2% | 0.0% | 0.6% | 0.2% | 21.0% |
| | 2019-20 | 7 | 955 | 99.7% | 0.0% | 0.2% | 0.1% | 0.0% |
| San Bernardino | 2021-22 | 8 | 31,290 | 96.8% | 0.0% | 0.1% | 1.7% | 1.4% |
| | | 7 | 30,777 | 96.0% | 0.0% | 0.1% | 2.0% | 1.9% |
| | 2020-21 | 7 | 30,092 | 79.4% | 0.0% | 0.3% | 3.4% | 16.9% |
| | 2019-20 | 7 | 32,605 | 96.6% | 0.0% | 0.2% | 2.4% | 0.8% |
| San Diego | 2021-22 | 8 | 38,574 | 96.5% | 0.0% | 0.2% | 2.8% | 0.5% |
| | | 7 | 37,579 | 95.3% | 0.0% | 0.1% | 3.6% | 1.0% |
| | 2020-21 | 7 | 38,918 | 93.1% | 0.1% | 0.3% | 3.4% | 3.0% |
| | 2019-20 | 7 | 41,159 | 96.2% | 0.1% | 0.7% | 2.8% | 0.2% |
| San Francisco | 2021-22 | 8 | 5,509 | 95.0% | 0.0% | 0.1% | 0.5% | 4.4% |
| | | 7 | 5,440 | 92.7% | 0.0% | 0.1% | 0.8% | 6.4% |
| | 2020-21 | 7 | 5,621 | 90.4% | 0.0% | 0.1% | 1.3% | 8.2% |
| | 2019-20 | 7 | 6,118 | 96.7% | 0.1% | 0.3% | 0.5% | 2.4% |
| San Joaquin | 2021-22 | 8 | 11,920 | 97.2% | 0.0% | 0.1% | 2.3% | 0.4% |
| | | 7 | 11,433 | 96.7% | 0.0% | 0.1% | 2.7% | 0.5% |
| | 2020-21 | 7 | 11,807 | 93.7% | 0.0% | 0.1% | 2.8% | 3.3% |
| | 2019-20 | 7 | 12,155 | 97.6% | 0.0% | 0.2% | 1.6% | 0.5% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| San Luis Obispo | 2021-22 | 8 | 2,676 | 98.2% | 0.0% | 0.3% | 1.0% | 0.4% |
| | | 7 | 2,570 | 98.1% | 0.0% | 0.2% | 1.0% | 0.7% |
| | 2020-21 | 7 | 2,661 | 92.0% | 0.1% | 0.5% | 3.5% | 3.9% |
| | 2019-20 | 7 | 3,151 | 97.3% | 0.0% | 1.0% | 1.0% | 0.7% |
| San Mateo | 2021-22 | 8 | 7,555 | 98.3% | 0.0% | 0.1% | 0.6% | 1.0% |
| | | 7 | 7,486 | 97.6% | 0.0% | 0.1% | 0.7% | 1.5% |
| | 2020-21 | 7 | 8,047 | 94.5% | 0.0% | 0.1% | 0.4% | 4.9% |
| | 2019-20 | 7 | 8,234 | 97.8% | 0.1% | 0.3% | 0.5% | 1.3% |
| Santa Barbara | 2021-22 | 8 | 5,608 | 97.7% | 0.1% | 0.3% | 1.0% | 0.9% |
| | | 7 | 5,298 | 98.0% | 0.0% | 0.2% | 0.8% | 1.0% |
| | 2020-21 | 7 | 5,582 | 94.1% | 0.1% | 0.4% | 0.8% | 4.6% |
| | 2019-20 | 7 | 5,670 | 98.1% | 0.1% | 0.9% | 0.7% | 0.2% |
| Santa Clara | 2021-22 | 8 | 21,781 | 98.4% | 0.0% | 0.1% | 0.6% | 0.9% |
| | | 7 | 20,367 | 97.9% | 0.0% | 0.0% | 0.8% | 1.3% |
| | 2020-21 | 7 | 22,414 | 92.8% | 0.1% | 0.2% | 1.1% | 5.9% |
| | 2019-20 | 7 | 22,852 | 98.7% | 0.1% | 0.3% | 0.3% | 0.6% |
| Santa Cruz | 2021-22 | 8 | 3,211 | 96.2% | 0.1% | 0.3% | 3.1% | 0.3% |
| | | 7 | 3,224 | 96.2% | 0.0% | 0.2% | 3.1% | 0.6% |
| | 2020-21 | 7 | 3,278 | 86.7% | 0.1% | 1.0% | 7.7% | 4.5% |
| | 2019-20 | 7 | 3,539 | 91.5% | 0.0% | 1.5% | 6.3% | 0.7% |
| Shasta | 2021-22 | 8 | 2,164 | 94.2% | 0.1% | 0.7% | 4.0% | 0.9% |
| | | 7 | 1,984 | 92.3% | 0.2% | 0.4% | 4.8% | 2.4% |
| | 2020-21 | 7 | 2,080 | 90.7% | 0.1% | 1.2% | 6.8% | 1.2% |
| | 2019-20 | 7 | 2,130 | 93.3% | 0.4% | 1.7% | 3.5% | 1.0% |
| Sierra | 2021-22 | 8 | 37 | 97.3% | 0.0% | 0.0% | 0.0% | 2.7% |
| | | 7 | 40 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 33 | 97.0% | 0.0% | 0.0% | 3.0% | 0.0% |
| | 2019-20 | 7 | 28 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Siskiyou | 2021-22 | 8 | 448 | 97.5% | 0.0% | 0.2% | 2.2% | 0.0% |
| | | 7 | 446 | 93.0% | 0.0% | 0.2% | 4.9% | 1.8% |
| | 2020-21 | 7 | 467 | 93.4% | 0.0% | 0.6% | 4.9% | 1.1% |
| | 2019-20 | 7 | 499 | 96.8% | 0.2% | 0.6% | 1.6% | 0.8% |
| Solano | 2021-22 | 8 | 4,534 | 99.6% | 0.0% | 0.0% | 0.2% | 0.2% |
| | | 7 | 4,359 | 98.6% | 0.0% | 0.0% | 0.7% | 0.7% |
| | 2020-21 | 7 | 4,610 | 94.3% | 0.2% | 0.2% | 0.6% | 4.7% |
| | 2019-20 | 7 | 5,130 | 98.8% | 0.0% | 0.4% | 0.1% | 0.6% |
| Sonoma | 2021-22 | 8 | 5,288 | 96.2% | 0.0% | 0.3% | 1.7% | 1.7% |
| | | 7 | 5,234 | 94.4% | 0.0% | 0.2% | 3.1% | 2.3% |
| | 2020-21 | 7 | 5,452 | 82.8% | 0.1% | 0.6% | 1.9% | 14.7% |
| | 2019-20 | 7 | 5,422 | 95.9% | 0.2% | 1.4% | 1.6% | 0.9% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, By County

| | School Year | Grade | Total Students Number | Entrants with Tdap Vaccine Percent | Conditional Entrants Percent | Entrants with PME Percent | Others Lacking Tdap Vaccine† Percent | Overdue for Tdap Vaccine^ Percent |
|---|---|---|---|---|---|---|---|---|
| Stanislaus | 2021-22 | 8 | 8,576 | 96.7% | 0.0% | 0.1% | 1.8% | 1.5% |
| | | 7 | 8,150 | 94.7% | 0.0% | 0.1% | 2.5% | 2.7% |
| | 2020-21 | 7 | 8,565 | 84.8% | 0.0% | 0.2% | 1.8% | 13.1% |
| | 2019-20 | 7 | 8,837 | 97.6% | 0.0% | 0.4% | 0.3% | 1.6% |
| Sutter | 2021-22 | 8 | 1,819 | 83.8% | 0.0% | 0.5% | 14.8% | 0.8% |
| | | 7 | 1,703 | 79.9% | 0.0% | 0.4% | 18.7% | 1.1% |
| | 2020-21 | 7 | 1,899 | 74.1% | 0.0% | 0.3% | 17.8% | 7.8% |
| | 2019-20 | 7 | 1,927 | 82.8% | 0.0% | 0.4% | 16.7% | 0.2% |
| Tehama | 2021-22 | 8 | 899 | 96.3% | 0.0% | 0.4% | 0.9% | 2.3% |
| | | 7 | 798 | 93.5% | 0.0% | 0.0% | 1.5% | 5.0% |
| | 2020-21 | 7 | 659 | 95.8% | 0.0% | 0.6% | 1.4% | 2.3% |
| | 2019-20 | 7 | 870 | 98.0% | 0.0% | 0.7% | 0.2% | 1.0% |
| Trinity | 2021-22 | 8 | 112 | 92.9% | 0.0% | 3.6% | 0.0% | 3.6% |
| | | 7 | 100 | 93.0% | 0.0% | 0.0% | 0.0% | 7.0% |
| | 2020-21 | 7 | 103 | 93.2% | 0.0% | 2.9% | 1.9% | 1.9% |
| | 2019-20 | 7 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| Tulare | 2021-22 | 8 | 7,676 | 98.7% | 0.0% | 0.1% | 0.9% | 0.3% |
| | | 7 | 7,529 | 98.1% | 0.0% | 0.0% | 1.3% | 0.6% |
| | 2020-21 | 7 | 7,663 | 92.0% | 0.0% | 0.1% | 1.8% | 6.1% |
| | 2019-20 | 7 | 8,232 | 98.2% | 0.0% | 0.6% | 0.9% | 0.2% |
| Tuolumne | 2021-22 | 8 | 489 | 94.1% | 0.2% | 0.2% | 3.3% | 2.2% |
| | | 7 | 466 | 91.2% | 0.0% | 0.0% | 4.3% | 4.5% |
| | 2020-21 | 7 | 398 | 95.0% | 0.3% | 0.3% | 2.0% | 2.5% |
| | 2019-20 | 7 | 481 | 93.8% | 0.2% | 1.5% | 3.3% | 1.2% |
| Ventura | 2021-22 | 8 | 10,546 | 96.9% | 0.0% | 0.2% | 2.3% | 0.6% |
| | | 7 | 10,229 | 96.1% | 0.0% | 0.2% | 2.6% | 1.1% |
| | 2020-21 | 7 | 10,512 | 91.8% | 0.0% | 0.4% | 1.8% | 6.0% |
| | 2019-20 | 7 | 11,004 | 97.0% | 0.0% | 0.8% | 1.2% | 0.8% |
| Yolo | 2021-22 | 8 | 2,389 | 95.1% | 0.1% | 0.2% | 1.5% | 3.1% |
| | | 7 | 2,405 | 92.4% | 0.0% | 0.3% | 2.8% | 4.5% |
| | 2020-21 | 7 | 2,429 | 89.3% | 0.0% | 0.4% | 2.1% | 8.2% |
| | 2019-20 | 7 | 2,416 | 96.9% | 0.1% | 0.7% | 0.6% | 1.7% |
| Yuba | 2021-22 | 8 | 1,108 | 95.0% | 0.2% | 0.0% | 2.9% | 1.9% |
| | | 7 | 1,107 | 95.0% | 0.1% | 0.0% | 2.3% | 2.6% |
| | 2020-21 | 7 | 1,105 | 77.1% | 0.2% | 0.3% | 4.8% | 17.6% |
| | 2019-20 | 7 | 1,194 | 96.9% | 0.0% | 0.2% | 1.6% | 1.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 20 children in 7th grade and did not report

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| State Total | 2021-22 | 8 | 480,613 | 97.7% | 0.1% | 0.4% | 1.1% | 0.7% |
| | | 7 | 463,512 | 97.2% | 0.2% | 0.4% | 1.3% | 0.9% |
| | 2020-21 | 7 | 480,713 | 96.3% | 0.2% | 0.6% | 1.2% | 1.8% |
| | 2019-20 | 7 | 505,017 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| Alameda | 2021-22 | 8 | 17,728 | 97.8% | 0.1% | 0.4% | 0.4% | 1.3% |
| | | 7 | 17,351 | 97.5% | 0.1% | 0.4% | 0.5% | 1.5% |
| | 2020-21 | 7 | 18,393 | 96.5% | 0.2% | 0.6% | 0.3% | 2.4% |
| | 2019-20 | 7 | 18,849 | 97.1% | 0.3% | 0.7% | 0.1% | 1.8% |
| Alpine | 2021-22 | 8 | ---* | ---* | ---* | ---* | ---* | ---* |
| | | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2020-21 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2019-20 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| Amador | 2021-22 | 8 | 334 | 94.0% | 0.0% | 0.0% | 1.2% | 4.8% |
| | | 7 | 293 | 89.1% | 0.0% | 0.0% | 2.0% | 8.9% |
| | 2020-21 | 7 | 328 | 92.7% | 0.6% | 1.5% | 1.5% | 3.7% |
| | 2019-20 | 7 | 325 | 92.3% | 1.8% | 2.2% | 3.7% | 0.0% |
| Butte | 2021-22 | 8 | 2,214 | 97.6% | 0.0% | 0.5% | 1.6% | 0.3% |
| | | 7 | 2,208 | 97.7% | 0.2% | 0.3% | 1.3% | 0.4% |
| | 2020-21 | 7 | 2,172 | 97.2% | 0.1% | 0.9% | 1.1% | 0.7% |
| | 2019-20 | 7 | 2,396 | 97.1% | 0.5% | 1.0% | 0.7% | 0.8% |
| Calaveras | 2021-22 | 8 | 395 | 96.2% | 0.0% | 0.8% | 2.3% | 0.8% |
| | | 7 | 411 | 97.3% | 0.0% | 0.2% | 1.9% | 0.5% |
| | 2020-21 | 7 | 368 | 94.6% | 0.5% | 0.8% | 3.3% | 0.8% |
| | 2019-20 | 7 | 403 | 97.0% | 0.0% | 1.5% | 1.0% | 0.5% |
| Colusa | 2021-22 | 8 | 423 | 97.9% | 0.0% | 0.0% | 0.2% | 1.9% |
| | | 7 | 336 | 98.8% | 0.0% | 0.3% | 0.0% | 0.9% |
| | 2020-21 | 7 | 406 | 96.3% | 0.2% | 0.5% | 0.0% | 3.0% |
| | 2019-20 | 7 | 394 | 96.7% | 0.0% | 0.8% | 0.0% | 2.5% |
| Contra Costa | 2021-22 | 8 | 13,513 | 98.0% | 0.1% | 0.4% | 0.4% | 1.0% |
| | | 7 | 13,353 | 97.5% | 0.5% | 0.5% | 0.4% | 1.1% |
| | 2020-21 | 7 | 14,209 | 96.9% | 0.1% | 0.6% | 0.5% | 1.9% |
| | 2019-20 | 7 | 14,765 | 97.9% | 0.3% | 0.9% | 0.4% | 0.5% |
| Del Norte | 2021-22 | 8 | 301 | 95.7% | 0.0% | 2.7% | 1.3% | 0.3% |
| | | 7 | 290 | 98.3% | 0.3% | 0.3% | 0.7% | 0.3% |
| | 2020-21 | 7 | 305 | 95.7% | 0.0% | 2.0% | 1.0% | 1.3% |
| | 2019-20 | 7 | 331 | 97.6% | 0.3% | 0.0% | 0.3% | 1.8% |
| El Dorado | 2021-22 | 8 | 2,336 | 91.6% | 0.1% | 0.6% | 6.9% | 0.8% |
| | | 7 | 2,253 | 91.1% | 0.3% | 0.4% | 6.7% | 1.5% |
| | 2020-21 | 7 | 2,161 | 89.6% | 0.6% | 0.9% | 8.0% | 1.0% |
| | 2019-20 | 7 | 2,644 | 91.7% | 0.8% | 1.6% | 5.4% | 0.5% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Fresno | 2021-22 | 8 | 15,770 | 98.9% | 0.0% | 0.2% | 0.8% | 0.1% |
| | | 7 | 15,423 | 98.7% | 0.1% | 0.2% | 0.9% | 0.2% |
| | 2020-21 | 7 | 16,082 | 98.6% | 0.1% | 0.3% | 0.8% | 0.2% |
| | 2019-20 | 7 | 15,839 | 98.5% | 0.2% | 0.4% | 0.7% | 0.2% |
| Glenn | 2021-22 | 8 | 494 | 93.3% | 0.4% | 0.2% | 5.9% | 0.2% |
| | | 7 | 472 | 93.2% | 0.0% | 0.0% | 6.4% | 0.4% |
| | 2020-21 | 7 | 484 | 93.4% | 0.0% | 0.0% | 5.8% | 0.8% |
| | 2019-20 | 7 | 442 | 94.8% | 0.2% | 0.5% | 3.8% | 0.7% |
| Humboldt | 2021-22 | 8 | 1,442 | 92.6% | 0.5% | 2.1% | 1.3% | 3.4% |
| | | 7 | 1,347 | 92.4% | 0.5% | 1.7% | 1.7% | 3.7% |
| | 2020-21 | 7 | 1,427 | 90.9% | 1.1% | 2.5% | 2.3% | 3.2% |
| | 2019-20 | 7 | 1,380 | 92.5% | 1.7% | 3.4% | 0.7% | 1.7% |
| Imperial | 2021-22 | 8 | 2,881 | 96.8% | 0.2% | 0.0% | 0.3% | 2.7% |
| | | 7 | 2,830 | 95.4% | 0.4% | 0.1% | 0.2% | 3.9% |
| | 2020-21 | 7 | 2,905 | 94.5% | 1.6% | 0.5% | 0.4% | 2.9% |
| | 2019-20 | 7 | 2,935 | 98.2% | 0.5% | 0.3% | 0.1% | 0.9% |
| Inyo | 2021-22 | 8 | 190 | 98.9% | 0.0% | 0.0% | 0.0% | 1.1% |
| | | 7 | 233 | 97.9% | 0.9% | 0.0% | 0.0% | 1.3% |
| | 2020-21 | 7 | 192 | 99.5% | 0.0% | 0.0% | 0.0% | 0.5% |
| | 2019-20 | 7 | 213 | 97.2% | 0.5% | 1.9% | 0.5% | 0.0% |
| Kern | 2021-22 | 8 | 15,738 | 96.1% | 0.0% | 0.2% | 3.3% | 0.3% |
| | | 7 | 15,067 | 95.4% | 0.0% | 0.3% | 3.9% | 0.4% |
| | 2020-21 | 7 | 15,505 | 95.4% | 0.1% | 0.3% | 3.7% | 0.6% |
| | 2019-20 | 7 | 15,219 | 95.4% | 0.2% | 0.4% | 3.5% | 0.5% |
| Kings | 2021-22 | 8 | 2,341 | 99.4% | 0.0% | 0.3% | 0.3% | 0.1% |
| | | 7 | 2,274 | 99.1% | 0.1% | 0.1% | 0.6% | 0.1% |
| | 2020-21 | 7 | 2,364 | 99.4% | 0.1% | 0.0% | 0.4% | 0.1% |
| | 2019-20 | 7 | 2,294 | 99.4% | 0.2% | 0.0% | 0.3% | 0.1% |
| Lake | 2021-22 | 8 | 579 | 97.4% | 0.0% | 0.2% | 0.7% | 1.7% |
| | | 7 | 768 | 97.0% | 0.3% | 0.3% | 2.1% | 0.4% |
| | 2020-21 | 7 | 755 | 96.3% | 0.7% | 0.8% | 0.5% | 1.7% |
| | 2019-20 | 7 | 736 | 94.8% | 0.7% | 2.2% | 1.0% | 1.4% |
| Lassen | 2021-22 | 8 | 300 | 96.0% | 0.0% | 2.3% | 1.7% | 0.0% |
| | | 7 | 275 | 93.1% | 0.0% | 0.7% | 3.3% | 2.9% |
| | 2020-21 | 7 | 299 | 94.3% | 0.3% | 2.3% | 2.0% | 1.0% |
| | 2019-20 | 7 | 288 | 95.1% | 0.0% | 4.2% | 0.7% | 0.0% |
| Los Angeles | 2021-22 | 8 | 112,288 | 97.7% | 0.1% | 0.4% | 0.7% | 1.1% |
| | | 7 | 106,833 | 97.3% | 0.2% | 0.3% | 0.9% | 1.3% |
| | 2020-21 | 7 | 109,967 | 95.8% | 0.1% | 0.4% | 0.8% | 2.9% |
| | 2019-20 | 7 | 119,392 | 97.4% | 0.3% | 0.7% | 0.7% | 0.9% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Madera | 2021-22 | 8 | 2,491 | 98.6% | 0.0% | 0.0% | 0.5% | 0.8% |
| | | 7 | 2,295 | 98.1% | 0.0% | 0.1% | 0.4% | 1.4% |
| | 2020-21 | 7 | 2,556 | 96.9% | 0.2% | 0.2% | 0.6% | 2.2% |
| | 2019-20 | 7 | 2,014 | 97.4% | 0.1% | 0.3% | 0.7% | 1.4% |
| Marin | 2021-22 | 8 | 3,016 | 98.1% | 0.2% | 1.2% | 0.1% | 0.4% |
| | | 7 | 2,885 | 98.1% | 0.5% | 0.9% | 0.1% | 0.4% |
| | 2020-21 | 7 | 3,075 | 97.3% | 0.1% | 1.6% | 0.2% | 0.7% |
| | 2019-20 | 7 | 3,245 | 94.9% | 1.1% | 3.3% | 0.3% | 0.4% |
| Mariposa | 2021-22 | 8 | 165 | 92.1% | 0.6% | 2.4% | 1.8% | 3.0% |
| | | 7 | 142 | 92.3% | 1.4% | 2.1% | 0.7% | 3.5% |
| | 2020-21 | 7 | 154 | 89.0% | 0.6% | 1.3% | 3.9% | 5.2% |
| | 2019-20 | 7 | 130 | 94.6% | 3.1% | 1.5% | 0.8% | 0.0% |
| Mendocino | 2021-22 | 8 | 971 | 86.9% | 0.1% | 0.8% | 2.0% | 10.2% |
| | | 7 | 1,030 | 86.7% | 0.2% | 0.2% | 1.2% | 11.7% |
| | 2020-21 | 7 | 1,003 | 91.6% | 0.6% | 0.8% | 2.6% | 4.4% |
| | 2019-20 | 7 | 1,039 | 94.1% | 1.1% | 1.6% | 1.3% | 1.9% |
| Merced | 2021-22 | 8 | 4,463 | 98.7% | 0.2% | 0.3% | 0.6% | 0.3% |
| | | 7 | 4,483 | 98.4% | 0.1% | 0.0% | 1.1% | 0.4% |
| | 2020-21 | 7 | 4,453 | 97.2% | 0.0% | 0.2% | 0.7% | 1.8% |
| | 2019-20 | 7 | 4,597 | 99.1% | 0.3% | 0.2% | 0.2% | 0.2% |
| Modoc | 2021-22 | 8 | 118 | 96.6% | 0.0% | 0.0% | 0.0% | 3.4% |
| | | 7 | 102 | 96.1% | 0.0% | 0.0% | 2.0% | 2.0% |
| | 2020-21 | 7 | 123 | 99.2% | 0.0% | 0.0% | 0.0% | 0.8% |
| | 2019-20 | 7 | 102 | 96.1% | 1.0% | 1.0% | 0.0% | 2.0% |
| Mono | 2021-22 | 8 | 111 | 98.2% | 0.0% | 1.8% | 0.0% | 0.0% |
| | | 7 | 100 | 97.0% | 1.0% | 2.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 109 | 97.2% | 0.0% | 0.0% | 0.0% | 2.8% |
| | 2019-20 | 7 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| Monterey | 2021-22 | 8 | 6,044 | 99.1% | 0.0% | 0.4% | 0.1% | 0.3% |
| | | 7 | 5,799 | 98.8% | 0.1% | 0.5% | 0.2% | 0.4% |
| | 2020-21 | 7 | 6,042 | 98.8% | 0.1% | 0.6% | 0.1% | 0.3% |
| | 2019-20 | 7 | 6,397 | 98.6% | 0.3% | 0.7% | 0.1% | 0.4% |
| Napa | 2021-22 | 8 | 1,606 | 97.8% | 0.1% | 0.3% | 1.2% | 0.7% |
| | | 7 | 1,641 | 97.5% | 0.3% | 0.2% | 1.3% | 0.6% |
| | 2020-21 | 7 | 1,591 | 97.3% | 0.1% | 0.6% | 1.9% | 0.1% |
| | 2019-20 | 7 | 1,682 | 97.3% | 0.2% | 1.2% | 1.0% | 0.3% |
| Nevada | 2021-22 | 8 | 833 | 91.8% | 0.5% | 2.8% | 4.3% | 0.6% |
| | | 7 | 843 | 90.3% | 1.3% | 1.2% | 5.8% | 1.4% |
| | 2020-21 | 7 | 806 | 87.3% | 0.5% | 6.7% | 4.0% | 1.5% |
| | 2019-20 | 7 | 842 | 88.6% | 1.5% | 6.3% | 3.0% | 0.6% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Orange | 2021-22 | 8 | 38,554 | 98.2% | 0.2% | 0.6% | 0.6% | 0.3% |
| | | 7 | 36,105 | 98.1% | 0.2% | 0.5% | 0.7% | 0.5% |
| | 2020-21 | 7 | 38,419 | 97.4% | 0.2% | 0.8% | 0.6% | 1.0% |
| | 2019-20 | 7 | 39,699 | 97.5% | 0.5% | 1.0% | 0.7% | 0.3% |
| Placer | 2021-22 | 8 | 5,220 | 96.6% | 0.1% | 1.4% | 1.5% | 0.5% |
| | | 7 | 5,778 | 97.1% | 0.3% | 0.7% | 1.3% | 0.6% |
| | 2020-21 | 7 | 5,618 | 96.2% | 0.6% | 1.8% | 0.6% | 0.9% |
| | 2019-20 | 7 | 5,990 | 95.0% | 0.6% | 1.8% | 1.7% | 0.9% |
| Plumas | 2021-22 | 8 | 175 | 97.1% | 0.0% | 1.7% | 1.1% | 0.0% |
| | | 7 | 171 | 98.2% | 0.6% | 0.0% | 1.2% | 0.0% |
| | 2020-21 | 7 | 174 | 94.3% | 2.3% | 2.9% | 0.6% | 0.0% |
| | 2019-20 | 7 | 197 | 96.4% | 1.5% | 2.0% | 0.0% | 0.0% |
| Riverside | 2021-22 | 8 | 33,475 | 98.2% | 0.1% | 0.3% | 1.1% | 0.4% |
| | | 7 | 32,331 | 97.6% | 0.1% | 0.2% | 1.6% | 0.6% |
| | 2020-21 | 7 | 33,652 | 96.1% | 0.1% | 0.5% | 1.6% | 1.8% |
| | 2019-20 | 7 | 35,413 | 97.3% | 0.2% | 0.6% | 0.9% | 0.9% |
| Sacramento | 2021-22 | 8 | 19,002 | 97.8% | 0.2% | 0.4% | 0.9% | 0.8% |
| | | 7 | 18,232 | 97.1% | 0.3% | 0.4% | 1.1% | 1.0% |
| | 2020-21 | 7 | 19,321 | 94.8% | 0.2% | 0.7% | 1.4% | 2.9% |
| | 2019-20 | 7 | 19,967 | 96.5% | 0.4% | 1.1% | 1.6% | 0.3% |
| San Benito | 2021-22 | 8 | 893 | 98.4% | 0.1% | 0.2% | 0.1% | 1.1% |
| | | 7 | 834 | 98.9% | 0.0% | 0.4% | 0.4% | 0.4% |
| | 2020-21 | 7 | 900 | 97.8% | 0.0% | 0.9% | 0.2% | 1.1% |
| | 2019-20 | 7 | 955 | 99.5% | 0.1% | 0.3% | 0.1% | 0.0% |
| San Bernardino | 2021-22 | 8 | 31,290 | 98.2% | 0.1% | 0.2% | 1.0% | 0.5% |
| | | 7 | 30,777 | 97.3% | 0.2% | 0.2% | 1.6% | 0.6% |
| | 2020-21 | 7 | 30,092 | 96.1% | 0.1% | 0.3% | 1.4% | 2.1% |
| | 2019-20 | 7 | 32,605 | 97.0% | 0.2% | 0.3% | 1.8% | 0.7% |
| San Diego | 2021-22 | 8 | 38,574 | 96.9% | 0.1% | 0.6% | 2.0% | 0.3% |
| | | 7 | 37,579 | 96.5% | 0.3% | 0.4% | 2.4% | 0.3% |
| | 2020-21 | 7 | 38,918 | 95.9% | 0.3% | 0.7% | 2.0% | 1.2% |
| | 2019-20 | 7 | 41,159 | 96.4% | 0.4% | 1.2% | 1.9% | 0.2% |
| San Francisco | 2021-22 | 8 | 5,509 | 95.6% | 0.2% | 0.4% | 0.1% | 3.6% |
| | | 7 | 5,440 | 94.0% | 0.4% | 0.4% | 0.2% | 4.9% |
| | 2020-21 | 7 | 5,621 | 94.8% | 0.1% | 0.6% | 0.5% | 4.1% |
| | 2019-20 | 7 | 6,118 | 96.6% | 0.4% | 0.9% | 0.2% | 1.9% |
| San Joaquin | 2021-22 | 8 | 11,920 | 97.9% | 0.0% | 0.3% | 1.6% | 0.2% |
| | | 7 | 11,433 | 97.8% | 0.0% | 0.3% | 1.5% | 0.4% |
| | 2020-21 | 7 | 11,807 | 97.6% | 0.0% | 0.4% | 1.2% | 0.8% |
| | 2019-20 | 7 | 12,155 | 97.7% | 0.1% | 0.4% | 1.1% | 0.8% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| San Luis Obispo | 2021-22 | 8 | 2,676 | 98.8% | 0.0% | 0.3% | 0.5% | 0.4% |
| | | 7 | 2,570 | 98.4% | 0.3% | 0.3% | 0.5% | 0.4% |
| | 2020-21 | 7 | 2,661 | 97.6% | 0.2% | 0.5% | 0.5% | 1.3% |
| | 2019-20 | 7 | 3,151 | 96.7% | 0.3% | 1.6% | 0.5% | 0.9% |
| San Mateo | 2021-22 | 8 | 7,555 | 98.2% | 0.1% | 0.6% | 0.3% | 0.8% |
| | | 7 | 7,486 | 97.3% | 0.2% | 0.6% | 0.4% | 1.5% |
| | 2020-21 | 7 | 8,047 | 97.4% | 0.2% | 0.6% | 0.2% | 1.7% |
| | 2019-20 | 7 | 8,234 | 98.0% | 0.4% | 1.0% | 0.2% | 0.4% |
| Santa Barbara | 2021-22 | 8 | 5,608 | 97.4% | 0.1% | 0.8% | 1.3% | 0.5% |
| | | 7 | 5,298 | 97.9% | 0.2% | 0.3% | 0.9% | 0.7% |
| | 2020-21 | 7 | 5,582 | 97.6% | 0.2% | 0.8% | 0.4% | 0.9% |
| | 2019-20 | 7 | 5,670 | 97.4% | 0.5% | 1.2% | 0.5% | 0.4% |
| Santa Clara | 2021-22 | 8 | 21,781 | 98.2% | 0.0% | 1.0% | 0.5% | 0.3% |
| | | 7 | 20,367 | 98.1% | 0.1% | 0.6% | 0.6% | 0.6% |
| | 2020-21 | 7 | 22,414 | 97.0% | 0.1% | 1.1% | 0.6% | 1.3% |
| | 2019-20 | 7 | 22,852 | 97.7% | 0.3% | 1.4% | 0.3% | 0.4% |
| Santa Cruz | 2021-22 | 8 | 3,211 | 96.1% | 0.1% | 1.0% | 2.4% | 0.4% |
| | | 7 | 3,224 | 96.9% | 0.1% | 0.7% | 1.8% | 0.4% |
| | 2020-21 | 7 | 3,278 | 93.8% | 0.3% | 1.7% | 3.1% | 1.0% |
| | 2019-20 | 7 | 3,539 | 93.9% | 0.5% | 2.5% | 2.9% | 0.3% |
| Shasta | 2021-22 | 8 | 2,164 | 95.1% | 0.1% | 0.7% | 2.9% | 1.2% |
| | | 7 | 1,984 | 94.4% | 0.4% | 0.6% | 3.4% | 1.3% |
| | 2020-21 | 7 | 2,080 | 92.1% | 0.6% | 1.4% | 5.0% | 0.9% |
| | 2019-20 | 7 | 2,130 | 92.8% | 1.0% | 2.2% | 2.6% | 1.5% |
| Sierra | 2021-22 | 8 | 37 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | | 7 | 40 | 95.0% | 0.0% | 0.0% | 0.0% | 5.0% |
| | 2020-21 | 7 | 33 | 97.0% | 0.0% | 0.0% | 3.0% | 0.0% |
| | 2019-20 | 7 | 28 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Siskiyou | 2021-22 | 8 | 448 | 97.1% | 0.0% | 0.2% | 2.2% | 0.4% |
| | | 7 | 446 | 95.7% | 0.7% | 0.4% | 2.9% | 0.2% |
| | 2020-21 | 7 | 467 | 92.7% | 0.4% | 0.9% | 4.7% | 1.3% |
| | 2019-20 | 7 | 499 | 94.6% | 1.6% | 1.0% | 1.6% | 1.2% |
| Solano | 2021-22 | 8 | 4,534 | 99.5% | 0.0% | 0.1% | 0.2% | 0.2% |
| | | 7 | 4,359 | 98.9% | 0.3% | 0.0% | 0.5% | 0.3% |
| | 2020-21 | 7 | 4,610 | 98.4% | 0.2% | 0.3% | 0.3% | 0.8% |
| | 2019-20 | 7 | 5,130 | 97.8% | 0.2% | 0.4% | 0.0% | 1.5% |
| Sonoma | 2021-22 | 8 | 5,288 | 96.9% | 0.0% | 0.6% | 1.3% | 1.2% |
| | | 7 | 5,234 | 95.7% | 0.2% | 0.6% | 1.9% | 1.7% |
| | 2020-21 | 7 | 5,452 | 94.6% | 0.3% | 1.1% | 0.9% | 3.1% |
| | 2019-20 | 7 | 5,422 | 95.3% | 0.8% | 2.0% | 1.0% | 0.9% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Stanislaus | 2021-22 | 8 | 8,576 | 98.3% | 0.1% | 0.2% | 0.9% | 0.6% |
| | | 7 | 8,150 | 98.1% | 0.1% | 0.2% | 0.8% | 0.7% |
| | 2020-21 | 7 | 8,565 | 97.5% | 0.2% | 0.4% | 0.4% | 1.5% |
| | 2019-20 | 7 | 8,837 | 97.2% | 0.4% | 0.8% | 0.4% | 1.3% |
| Sutter | 2021-22 | 8 | 1,819 | 87.7% | 0.2% | 0.7% | 10.7% | 0.8% |
| | | 7 | 1,703 | 86.0% | 0.1% | 0.3% | 12.9% | 0.7% |
| | 2020-21 | 7 | 1,899 | 88.3% | 0.0% | 0.3% | 11.0% | 0.4% |
| | 2019-20 | 7 | 1,927 | 88.0% | 0.2% | 0.5% | 11.2% | 0.2% |
| Tehama | 2021-22 | 8 | 899 | 97.9% | 0.0% | 0.6% | 0.3% | 1.2% |
| | | 7 | 798 | 97.5% | 0.3% | 0.1% | 0.9% | 1.3% |
| | 2020-21 | 7 | 659 | 97.3% | 0.3% | 0.9% | 0.8% | 0.8% |
| | 2019-20 | 7 | 870 | 97.8% | 0.3% | 1.4% | 0.2% | 0.2% |
| Trinity | 2021-22 | 8 | 112 | 92.0% | 0.0% | 3.6% | 0.0% | 4.5% |
| | | 7 | 100 | 94.0% | 0.0% | 0.0% | 0.0% | 6.0% |
| | 2020-21 | 7 | 103 | 95.1% | 0.0% | 3.9% | 1.0% | 0.0% |
| | 2019-20 | 7 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| Tulare | 2021-22 | 8 | 7,676 | 99.2% | 0.1% | 0.1% | 0.4% | 0.1% |
| | | 7 | 7,529 | 99.0% | 0.1% | 0.1% | 0.5% | 0.3% |
| | 2020-21 | 7 | 7,663 | 97.8% | 0.1% | 0.1% | 0.8% | 1.3% |
| | 2019-20 | 7 | 8,232 | 99.1% | 0.2% | 0.2% | 0.5% | 0.1% |
| Tuolumne | 2021-22 | 8 | 489 | 95.7% | 0.8% | 0.4% | 2.2% | 0.8% |
| | | 7 | 466 | 94.8% | 0.6% | 0.2% | 3.0% | 1.3% |
| | 2020-21 | 7 | 398 | 95.7% | 1.8% | 0.3% | 1.3% | 1.0% |
| | 2019-20 | 7 | 481 | 94.0% | 1.0% | 1.7% | 2.1% | 1.2% |
| Ventura | 2021-22 | 8 | 10,546 | 97.1% | 0.1% | 0.4% | 2.0% | 0.5% |
| | | 7 | 10,229 | 97.2% | 0.1% | 0.4% | 1.9% | 0.4% |
| | 2020-21 | 7 | 10,512 | 96.8% | 0.2% | 0.6% | 1.4% | 1.0% |
| | 2019-20 | 7 | 11,004 | 96.6% | 0.5% | 1.1% | 1.0% | 0.8% |
| Yolo | 2021-22 | 8 | 2,389 | 97.0% | 0.1% | 0.5% | 1.5% | 0.9% |
| | | 7 | 2,405 | 95.3% | 0.1% | 0.3% | 2.7% | 1.6% |
| | 2020-21 | 7 | 2,429 | 95.6% | 0.2% | 0.6% | 1.9% | 1.8% |
| | 2019-20 | 7 | 2,416 | 96.0% | 0.4% | 1.7% | 0.6% | 1.2% |
| Yuba | 2021-22 | 8 | 1,108 | 97.3% | 0.2% | 0.1% | 1.3% | 1.2% |
| | | 7 | 1,107 | 98.0% | 0.1% | 0.2% | 0.7% | 1.0% |
| | 2020-21 | 7 | 1,105 | 93.6% | 0.3% | 0.3% | 3.2% | 2.7% |
| | 2019-20 | 7 | 1,194 | 97.1% | 0.2% | 0.2% | 0.4% | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 20 children in 7th grade and did not report

# Exhibit 13

ADVOCATES FOR FAITH & FREEDOM
Mariah R. Gondeiro (SBN 323683)
mgondeiro@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:  (951) 304-7583

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SARA ROYCE**; **SARAH CLARK**; **TIFFANY BROWN**; and **KRISTI CARAWAY**;<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA**, in his official capacity as attorney general of California;<br><br>Defendant. | Case No.: **23CV2012 H    BLM**<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION

1.     This action challenges the constitutionality of Senate Bill (SB) 277 under the Free Exercise Clause.

2.     Plaintiffs have religious beliefs that forbid them from vaccinating their children, and their decision to adhere to their religious convictions has required significant sacrifices. California's compulsory vaccination law requires all students to receive numerous vaccines to enter public or private school. Cal. Health & Saf. Code §§ 120325-120375. Plaintiffs' children are unable to enjoy the benefits of a

public and private education that their secular peers enjoy because of California's compulsory vaccination requirements.

3. California law allows students to object to the required school vaccines for secular reasons, but SB 277 removed the ability for students to object to the compulsory vaccines on religious grounds. Students can still enter public or private school if they are homeless, enrolled in an individualized education program ("IEP"), or have a medical objection.

4. California also allows children to participate in camps, visit a public library, or participate in extra-curricular activities – all without proof of vaccination. California has no compelling, much less rational, justification for eliminating religious exemptions when religiously exempt students pose no greater risk than secularly exempt students.

5. Indeed, California is only one of a few states that denies religious students the benefits of a private and public education. Most recently, a court held Mississippi's law violated the Free Exercise Clause because it disallowed religious exemptions to school-mandated vaccinations.

6. SB 277 also deprives Plaintiffs of their rights under the First Amendment to the United States Constitution. Accordingly, Plaintiffs seek a declaratory judgment and an injunction, prohibiting California from implementing a law that does not provide the option for a religious exemption.

**PARTIES - PLAINTIFF**

**Sara Royce**

7. Plaintiff Sara Royce ("Mrs. Royce") resides in Pala, California. She is the mother of three children, one of whom is school age.

8. Mrs. Royce and her husband prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that they must not. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Royce believes vaccinating her

children would cause her and her family to be complicit in abortion. None of Mrs. Royce's children are vaccinated.

9. Mrs. Royce desires to enroll her elementary aged child in public or private school in California. However, because her child has received no vaccines, her child is unable to enroll in public or private school and interact with her friends, whom she is permitted to attend church with and interact with frequently outside of church.

**Sarah Clark**

10. Plaintiff Sarah Clark ("Mrs. Clark") resides in Temecula, California. She is the mother of two school-aged children, one in fifth grade and one in sixth grade.

11. Mrs. Clark's children were vaccinated as newborns and again in 2018-2019. After praying for an extended period, Mrs. Clark believes that the Lord told her to no longer vaccinate her children. Mrs. Clark believes that the body is a temple of the Holy Spirit (1 Corinthians 6:19-20) and that she must honor the Lord with the things she puts into her body. Mrs. Clark believes that vaccines violate the bible because they are a foreign substance and are harmful to the body. Mrs. Clark's children have not received any more vaccinations.

12. Mrs. Clark would like her children to attend public school, but the school will not accept Mrs. Clark's children without the necessary vaccinations. Receiving the required vaccinations would be violative of the Clark family's religious beliefs. The only option available to the Clark family is homeschooling. This has been a great sacrifice for the Clarks, as Mrs. Clark has had to forego professional opportunities to homeschool her children.

**Tiffany Brown**

13. Tiffany Brown ("Mrs. Brown") is a resident of Hollister, California. She has three daughters – 18, 14, and 8 years old.

14. Mrs. Brown vaccinated her children in their early years, but after her

children started to experience severe reactions following vaccination, Mrs. Brown began to research and pray about whether she should continue vaccinating her children.

15.     During her research, Mrs. Brown discovered that many vaccines contain aborted fetal cells. Mrs. Brown arrived at the firm religious conviction that she must not continue vaccinating her children, as to do so would cause her and her family to be complicit in abortion. Mrs. Brown's youngest daughter, G.B., has not received any vaccines.

16.     Because of their religious beliefs concerning vaccination, Mrs. Brown's daughters are not allowed to attend public school. Mrs. Brown was forced to homeschool her children and forego professional opportunities.

**Kristi Caraway**

17.     Kristi Caraway ("Mrs. Caraway") is a resident of Lake Elsinore, California. She has ten biological children.

18.     Mrs. Caraway vaccinated her eldest three children. Her third child, J.C., developed injuries following vaccination, specifically the HepB and MMR vaccines. J.C. was non-verbal until age six and was diagnosed with autism in 2018. Due to his injuries, J.C. has a medical exemption to the vaccine requirement.

19.     Following J.C.'s injuries, Mrs. Caraway and her husband began to research vaccines. They discovered that many vaccines contain aborted fetal cells. The Caraways made the decision to stop vaccinating their children. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Caraway believes vaccinating her children would cause her and her family to be complicit in abortion in violation of their religious beliefs.

20.     Mrs. Caraway did not vaccinate her six youngest children. Accordingly, they are not permitted to attend public or private school. Mrs. Caraway's youngest six children are homeschooled through a charter program. Mrs. Caraway desires to send her children to public school.

**PARTIES - DEFENDANT**

21. Defendant ROB BONTA is the Attorney General of California. He is sued in his official capacity. His authority is delegated to him by Article V, section 13 of the California Constitution and is authorized to enforce SB 277.

**JURISDICTION AND VENUE**

22. This civil rights action raises federal questions under the United States Constitution, specifically the First Amendment, and under federal law, particularly 42 U.S.C. § 1983.

23. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

24. This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

25. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**STATEMENT OF FACTS**

**A.    History of Childhood Vaccination Requirements in California**

26. In 1961, California began to add required vaccines for public and private school entry. The California Legislature first enacted a single dose of polio vaccination for school attendance.

27. In 1977, the Legislature added single doses of diphtheria, pertussis, tetanus, and measles vaccines to the school vaccination schedule.

28. In 1979, the Legislature added single doses of mumps and rubella vaccines to the list.

29.    In 1992, the Legislature added a haemophilus influenzae type b.

30.    In 1995 and 1997, the Legislature added a vaccine for hepatitis B.

31.    In 1999, the Legislature added vaccination for varicella (chicken pox) to the required list of vaccines.

32.    The Legislature added a tetanus, diphtheria, and pertussis booster as a requirement for advancement to the seventh grade in 2010.

33.    In 2015, as a response to the measles outbreak, the California Legislature enacted SB 277, which eliminated the personal belief exemption ("PBE"). At the time, only approximately 2.5% of students had PBEs.

34.    Until SB 277, each of the required vaccinations for school entry were subject to a PBE.

35.    Despite eliminating the PBE, SB 277 still provides exemptions to the vaccination requirements, including medical exemptions, Cal. Health & Safety Code § 120370(a), exemptions for "home-based private school or …an independent study program[,]" *id.* § 120335(f), and exemptions for students who qualify for an IEP, *id.* § 120335(h).

36.    California also allows immigrant and homeless children to attend public and private schools without proof of vaccination.

37.    SB 277 broadened medical exemptions under § 120370(a) to give physicians discretion to write medical exemptions beyond the narrow Center for Disease Control (CDC) guidelines.

38.    When former Governor Brown signed SB 277, he acknowledged that "[t]he Legislature, after considerable debate, specifically amended SB 277, to exempt a child from immunizations whenever the child's physician concludes that there are circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization…."

39.    Notably, when considering SB 277, the Senate Judiciary committee highlighted that repealing the PBE "effectively repeals any possible religious

exemptions" and may conflict with the Free Exercise Clause. *See* Senate Judiciary Committee Hearing on SB 277 at *16 (April 28, 2015).

40.    However, the committee minimized any free exercise concerns by noting that the bill was a neutral law of general applicability. *Id.* The committee further rationalized that to "give effect to the religious exception, which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children who have no such religious conviction." *Id.* at 17.

41.    Numerous religious adherents testified about how SB 277 would impact them and their families, but Governor Brown still signed the bill over their objections and in contradiction to his prior conduct. For instance, in 2012, he directed the California Department of Public Health to allow for religious exemptions under AB 2109.

42.    Several legislators, including the author of SB 277, Richard Pan, have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines.

43.    For instance, on social media, Richard Pan stated that people who "opt out of vaccines should be opted out of American society." He even equated these individuals to drunk drivers.

44.    Maral Farsi, who serves as the Deputy Director of Legislative and Inter-Governmental Affairs, has stated that anti-vaxxer parents are "oxygen thieves who don't care about children."

45.    These statements diminish the sincerely held religious beliefs of parents across California.

46.    Since 2021, after the development of the COVID-19 vaccine, information related to the efficacy of vaccines and religious objections to the development of vaccines became more widely known and understood.

47.    More members of the public are now aware that several childhood

vaccines were derived from aborted fetal cells. Even if a vaccine is not directly associated with aborted fetal cells, they are still made by manufacturers who profit from the use of aborted fetal cells.

48.     This knowledge has prompted many parents to object to their children receiving the mandatory vaccines for public and private schools, including Plaintiffs.

49.     In 2022, the Legislature and Gavin Newsom have made attempts to add COVID-19 to the list of required vaccines for school entrance even though the virus poses a small risk to schoolchildren.

**B.     SB 277 Is Not Congruent with California's Interest in Slowing the Spread of Disease**

50.     California vaccination rates are high—higher than the national average for each disease listed on the CDC schedule.[1]

51.     Additionally, just prior to SB 277's passage, childhood vaccination rates were on the rise in California. Vaccine rates increased 0.2% for Kindergarteners and 1.2% for seventh graders between the 2013/14 and 2014/15 school years, while PBEs were declining.[2]

52.     In 2015-2016, the year before SB 277 went into effect, California's seventh grade students were vaccinated at an overall rate of 97.8%. The percentage of students with PBEs this same year was 1.66%, while the percentage of students

_____

[1] *See* American Academy of Pediatrics, *Child Vaccination Across America*, available at: https://downloads.aap.org/AAP/Vaccine/index.html (accessed September 28, 2023).

[2] *See* California Department of Public Health Immunization Branch, *2014-2015 Kindergarten Immunization Assessment Results* at *1; *See* California Department of Public Health Immunization Branch, *2014-2015 7th Grade Immunization Assessment Results* at *1-2 both available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

with medical exemptions was 0.14%.[3] For entering kindergarten students in the 2015-2016 school year, 92.9% had received all required vaccines. The percentage of kindergarten students with PBEs this same year was 2.38%, while the percentage of kindergarten students with medical exemptions was 0.17%.[4]

53.     Herd immunity thresholds for required vaccinations against contagious diseases range from 80% to 95%.[5] If immunity is above the "herd immunity" threshold for a group of people, then an infectious disease might cause a few cases, but it will quickly stop spreading because enough people are protected.

54.     California cannot demonstrate that religiously exempt students pose a greater risk than secularly exempt students. The exempt unvaccinated children under SB 277 are still free to sweat in weekend sports leagues together, participate in public extracurricular activities, and sit through hours of services at churches and synagogues.

55.     California also mandates vaccines that are not necessary. For instance, chickenpox is a mild disease and complications in children are rare. Chickenpox vaccination also increases the risk of shingles in adults, which is a more dangerous disease and comes with a higher risk of complications.

---

[3] See California Department of Public Health Immunization Branch, *2015-2016 7th Grade Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

[4] See California Department of Public Health Immunization Branch, *2015-2016 Kindergarten Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

[5] See Carrie MacMillan, *Herd Immunity: Will We Ever Get There?*, Yale Medicine, May 21, 2021, https://www.yalemedicine.org/news/herd-immunity.

56.     Forty-five states and the District of Columbia currently offer religious exemptions from compulsory school vaccination laws.[6] California is one of only five states that does not offer a religious exemption from compulsory school vaccination laws.

## FIRST CAUSE OF ACTION

### Violation of the Free Exercise Clause of the

### First Amendment to the United States Constitution

### (42 U.S.C. § 1983)

57.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 56, as if fully set forth herein.

58.     The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."

59.     Plaintiffs' sincerely held religious beliefs prohibit them from vaccinating their minor children. SB 277 burdens Plaintiffs because it forces them to forego their religious beliefs to receive a public or private education.

60.     The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn*., 485 U. S. 439, 450 (1988). "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

---

[6] *See* National Conference of State Legislatures, *States With Religious and Philosophical Exemptions From School Immunization Requirements*, last updated August 3, 2023, https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements

61. The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.

62. Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original).

63. Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2023) (internal citations omitted).

64. The State has taken the additional step to single out religious adherents for worse treatment by publicly announcing that religious exemptions are categorically excluded from consideration. The Health Department's website states that it will consider medical exemptions, but not religious exemptions ("Starting in 2016, exemptions for religious or other personal beliefs are no longer an option for the vaccines that are currently required for entry into school or childcare in California.").[7]

65. SB 277 is a demonstration of hostility towards religion, as evidenced by the comments of legislators diminishing the sincerely held religious beliefs of parents.

66. Furthermore, a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted

_____

[7] *See* California Department of Public Health, *Personal Belief Exemptions FAQs*, last updated August 24, 2023, https://eziz.org/assets/docs/shotsforschool/PBEFAQs.pdf.

interests in a similar way." *Id.* at 1877 (internal citations omitted).

67.    A student with an exemption for secular reasons poses a similar contagion hazard as a student with a hypothetical religious exemption.

68.    Further, California does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.

69.    Additionally, California's secular exemption system provides for individualized discretionary review. The Supreme Court recently reaffirmed that a policy that provides a "mechanism for individualized exemptions" is not generally applicable. *Id.*

70.    In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason." *Id.* at 1872.

71.    Here, the California Department of Public Health's secular exemption process provides medical exemptions on an individualized basis, and the Department maintains the right to rescind exemptions in whole or in part based upon their discretionary review. Simultaneously, SB 277 requires the State to refuse to extend the possibility for an exemption to those with religious objections.

72.    These practices are not generally applicable, and they must therefore survive strict scrutiny.

73.    SB 277 fails strict scrutiny because it is not narrowly tailored to meet any compelling government interest.

74.    As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to attorneys' fees under 42 U.S.C. § 1988.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.   A declaratory judgement that SB 277, as reflected in California Health and Safety Code §§ 120335 and 120370, is unconstitutional;

2.   Temporary, preliminary, and permanent injunctive relief enjoining California Health and Safety Code §§ 120335 and 120370;

3.   For costs, attorneys' fees and interest, as allowed by law; and

4.   For such other relief the Court determines is proper.

Respectfully submitted,

DATED:  October 31, 2023        ADVOCATES FOR FAITH & FREEDOM

By: _/s/Mariah Gondeiro_____
    Mariah Gondeiro, Esq.



COMPLAINT

# Exhibit 14

ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Bethany Onishenko (*Pro Hac Vice*)
bonishenko@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:  (951) 304-7583

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SARA ROYCE**; **SARAH CLARK**; **TIFFANY BROWN**; and **KRISTI CARAWAY**; <br><br> Plaintiffs, <br><br> v. <br><br> **TOMÁS ARAGÓN**, in his official capacity as the State Public Health Officer; <br><br> Defendant. | Case No.:  3:23-cv-02012-H-BLM <br><br> **THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     This action challenges the constitutionality of Senate Bill (SB) 277 under the Free Exercise Clause.

2.     Plaintiffs have religious beliefs that forbid them from vaccinating their children, and their decision to adhere to their religious convictions has required significant sacrifices. California's compulsory vaccination law requires all students

1

to receive numerous vaccines to enter public or private school. Cal. Health & Saf. Code §§ 120325-120375. Plaintiffs' children are unable to enjoy the benefits of a public and private education that their secular peers enjoy because of California's compulsory vaccination requirements.

3.    California law allows students to object to the required school vaccines for secular reasons, but SB 277 removed the ability for students to object to the compulsory vaccines on religious grounds. Students can still enter public or private school if they are homeless, enrolled in an individualized education program ("IEP"), or have a medical objection.

4.    California also allows children to participate in camps, visit a public library, or participate in extra-curricular activities – all without proof of vaccination. California has no compelling, much less rational, justification for eliminating religious exemptions when religiously exempt students pose no greater risk than secularly exempt students.

5.    Indeed, California is only one of a few states that denies religious students the benefits of a private and public education. Most recently, a court held Mississippi's law violated the Free Exercise Clause because it disallowed religious exemptions to school-mandated vaccinations.

6.    SB 277 also deprives Plaintiffs of their rights under the First Amendment to the United States Constitution. Accordingly, Plaintiffs seek a declaratory judgment and an injunction, prohibiting California from implementing a law that does not provide the option for a religious exemption.

**PARTIES - PLAINTIFF**

**Sara Royce**

7.    Plaintiff Sara Royce ("Mrs. Royce") resides in Pala, California. She is the mother of three children, one of whom is school age.

8.    Mrs. Royce and her husband prayed extensively and consulted the Bible when deciding whether to vaccinate their children, and they arrived at the firm

THIRD AMENDED COMPLAINT

religious conviction that they must not. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Royce believes vaccinating her children would cause her and her family to be complicit in abortion. None of Mrs. Royce's children are vaccinated.

9. Mrs. Royce desires to enroll her elementary aged child in public or private school in California. However, because her child has received no vaccines, her child is unable to enroll in public or private school and interact with her friends, whom she is permitted to attend church with and interact with frequently outside of church.

**Sarah Clark**

10. Plaintiff Sarah Clark ("Mrs. Clark") resides in Temecula, California. She is the mother of two school-aged children, one in fifth grade and one in sixth grade.

11. Mrs. Clark's children were vaccinated as newborns and again in 2018-2019. After praying for an extended period, Mrs. Clark believes that the Lord told her to no longer vaccinate her children. Mrs. Clark believes that the body is a temple of the Holy Spirit (1 Corinthians 6:19-20) and that she must honor the Lord with the things she puts into her body. Mrs. Clark believes that vaccines violate the bible because they are a foreign substance and are harmful to the body. Mrs. Clark's children have not received any more vaccinations.

12. Mrs. Clark would like her children to attend public school, but the school will not accept Mrs. Clark's children without the necessary vaccinations. Receiving the required vaccinations would be violative of the Clark family's religious beliefs. The only option available to the Clark family is homeschooling. This has been a great sacrifice for the Clarks, as Mrs. Clark has had to forego professional opportunities to homeschool her children.

**Tiffany Brown**

13.     Tiffany Brown ("Mrs. Brown") is a resident of Hollister, California. She has three daughters – 18, 14, and 8 years old.

14.     Mrs. Brown vaccinated her children in their early years, but after her children started to experience severe reactions following vaccination, Mrs. Brown began to research and pray about whether she should continue vaccinating her children.

15.      During her research, Mrs. Brown discovered that many vaccines contain aborted fetal cells. Mrs. Brown arrived at the firm religious conviction that she must not continue vaccinating her children, as to do so would cause her and her family to be complicit in abortion. Mrs. Brown's youngest daughter, G.B., has not received any vaccines.

16.     Because of their religious beliefs concerning vaccination, Mrs. Brown's daughters are not allowed to attend public school. Mrs. Brown was forced to homeschool her children and forgo professional opportunities.

**Kristi Caraway**



17.     Kristi Caraway ("Mrs. Caraway") is a resident of Lake Elsinore, California. She has ten biological children.

18.     Mrs. Caraway vaccinated her eldest three children. Her third child, J.C., developed injuries following vaccination, specifically the HepB and MMR vaccines. J.C. was non-verbal until age six and was diagnosed with autism in 2018. Due to his injuries, J.C. has a medical exemption to the vaccine requirement.

19.     Following J.C.'s injuries, Mrs. Caraway and her husband began to research vaccines. They discovered that many vaccines contain aborted fetal cells. The Caraways made the decision to stop vaccinating their children. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Caraway believes vaccinating her children would cause her and her family to be complicit in abortion in violation of their religious beliefs.

---
4

20.    Mrs. Caraway did not vaccinate her six youngest children. Accordingly, they are not permitted to attend public or private school. Mrs. Caraway's youngest six children are homeschooled through a charter program. Mrs. Caraway desires to send her children to public school.

## PARTIES - DEFENDANT

21.    Defendant Tomás Aragón is made party to this Action in his official capacity as the State Public Health Officer. He is sued in his official capacity. Under California law, he is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of SB 277 for school-aged children.

## JURISDICTION AND VENUE

22.    This civil rights action raises federal questions under the United States Constitution, specifically the First Amendment, and under federal law, particularly 42 U.S.C. § 1983.

23.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

24.    This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

25.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**STATEMENT OF FACTS**

**A.   History of Childhood Vaccination Requirements in California**

26.   In 1961, California began to add required vaccines for public and private school entry. The California Legislature first enacted a single dose of polio vaccination for school attendance.

27.   In 1977, the Legislature added single doses of diphtheria, pertussis, tetanus, and measles vaccines to the school vaccination schedule.

28.   In 1979, the Legislature added single doses of mumps and rubella vaccines to the list.

29.   In 1992, the Legislature added a haemophilus influenzae type b.

30.   In 1995 and 1997, the Legislature added a vaccine for hepatitis B.

31.   In 1999, the Legislature added vaccination for varicella (chicken pox) to the required list of vaccines.

32.   The Legislature added a tetanus, diphtheria, and pertussis booster as a requirement for advancement to the seventh grade in 2010.

33.   The vaccination schedule has drastically changed since its implementation in 1961, which required only a single dose of the polio vaccination. Today, California requires sixteen total doses from five vaccinations prior to school attendance.

34.   Prior to Kindergarten enrollment, students must receive five doses of the DTap/Tdap vaccine, which is a combination vaccine protecting against Diptheria, Tetanus, and Pertussis. Students must also receive four doses of the polio vaccine, three doses of the hepatitis b vaccine, two doses of the combination measles, mumps, and rubella ("MMR") vaccine, and two doses of the varicella (or chickenpox) vaccine before they enroll in kindergarten. Students must receive an

additional dose of the Dtap/Tdap vaccine and an additional two doses of the Varicella vaccine prior to advancing to the seventh grade.[1]

**B.    SB 277 Removed The Personal Belief Exemption To Vaccination, Yet California Still Provides Other Categorial Vaccination Exemptions**

35.    In 2015, as a response to the measles outbreak, the California Legislature enacted SB 277, which eliminated the personal belief exemptions ("PBE"). At the time, only approximately 2.5% of students had PBEs.

36.    Plaintiffs presume that the stated goal of SB 277 was to prevent the transmission of disease. Meanwhile, Cal. Health & Safety Code § 120325(a) stated that when enacting Chapter 1 (entitled Educational and Child Care Facility Immunization Requirements) of Division 105 (Communicable Disease Prevention and Control) it was "the intent of the Legislature to provide: A means for the eventual achievement of total immunization of appropriate age groups against" the list of ten child diseases for which immunizations are required for school attendance. Interestingly, Cal. Health & Safety Code § 120325(c) also states that it is the intent of the legislature to provide "[e]xemptions from immunization for medical reasons."

37.    Indeed, the intent of the legislature in passing SB 277 is revealed in its legislative history. In the Senate Committee on Health's comment section, it states the following: "Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary to preserve herd immunity and prevent future outbreaks." The legislative history further touts the effectiveness of vaccines in preventing disease, further demonstrating that the intent was to prevent the transmission of disease.

---

[1] California Department of Public Health, *California Immunization Requirements for K–12th Grade*, updated May 2024, at 1, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/Immunization/IMM-231.pdf.

THIRD AMENDED COMPLAINT

38.     The legislative history also indicates that the California Senate justified continuing to provide medical exemptions on the speculative belief that less students would request medical exemptions than religious exemptions. In the Senate Floor's Analysis posted on June 25, 2015, they note that even though the percentage of conditional entrants increased for the 2014-15 school year, "[t]he percentage of students with permanent medical exemptions stayed the same at .19 percent…."

39.     Until SB 277, each of the required vaccinations for school entry were subject to a PBE.

40.     With the removal of the PBE, students cannot object to individual vaccinations. Rather, students must receive all vaccinations on the K-12 immunization schedule.

41.     Despite eliminating the PBE, SB 277 still provides exemptions to the vaccination requirements, including medical exemptions, Cal. Health & Safety Code § 120370(a), exemptions for "home-based private school or …an independent study program[,]" *id.* § 120335(f), and exemptions for students who qualify for an IEP, *id.* § 120335(h).

42.     Medical exemptions under Cal. Health & Safety Code § 120370(a) are not temporary in nature. An exemption is provided for the entire duration that the student has his or her medical condition. There is no basis to suggest that a student who has a medical contraindication to the school-mandated vaccines will overcome that condition and be medically cleared to the vaccines during the school year.

43.     Independent studies referenced in Cal. Health & Safety Code § 120335(f) can be organized in the following ways pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code: school-within-a-school; countywide home-based independent study offered by the county superintendent of schools; district or county alternative in a communication location; school-based independent study offered part-time and full-time; countywide home-based independent study offered by the county superintendent of

schools; district dropout prevention centers at selected community sites; district dropout prevention centers at selected community sites; curricular enrichment options offered to high school students with special abilities and interests, scheduling problems, or individual needs that cannot be met in the regular program; alternative school-based independent study, on-or off-site; and some combination of the above.

44.     Cal. Health & Safety Code § 120335(g) also provided a seven year exemption to those students previously granted a PBE: "A pupil who, prior to January 1, 2016, submitted a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization shall be allowed enrollment to any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span."

45.     Under Cal. Health & Safety Code § 120335(g),  "grade span" means each of the following: (A) Birth to preschool; (B) Kindergarten and grades 1 to 6, inclusive, including transitional kindergarten; and (C) Grades 7 to 12, inclusive. Effectively, the legislature decided to create a "grandfather" clause granting a continuation of the PBEs to students despite the purported health risks created by PBEs.

46.     Under Cal. Health & Safety Code § 120335(h) also specifies an exemption for every pupil who qualifies for an IEP: "This section does not prohibit a pupil who qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by his or her individualized education program."

47.     Cal. Ed. Code § 48216(b) effectively provides a two-week exemption for any pupil that has not been properly immunized: "The governing board of the district shall notify the parent or guardian of the pupil that they have two weeks to

9

supply evidence either that the pupil has been properly immunized, or that the pupil is exempted from the immunization requirement pursuant to Section 120365 or 120370 of the Health and Safety Code."

48.    Cal. Code Regs. tit. 17, § 6035(d)(1) provides an exemption for 30 school days to pupils transferring from another state: "For a pupil transferring into a school in California from another school in the United States at kindergarten through 12th grade whose immunization record, as specified in section 6065 or 6070, has not been received by the new school at the time of admission, the governing authority of the school may admit the pupil for up to 30 school days."

49.    As described below, California also allows an exemption with an unspecified duration to foster youth, homeless children, migrant students, military families, and children to attend public and private schools without proof of vaccination.

50.    Section 48853(f)(8)(B) of the Education Code provides that when a foster child is transferred to a new school, that school "shall immediately enroll the foster child even if the foster child…is unable to produce…records normally required for enrollment, such as…proof of immunization history..."

51.    Similarly, Section 48852.7(c)(3) of the Education Code requires the school to immediately "enroll the homeless child even if the child…is unable to produce…records normally required for enrollment…including, but not limited to, records or other proof of immunization history…"

52.    Furthermore, the exemption for a "homeless child" includes foreign migrant children as well. Cal. Educ. Code § 48852.7(f)(1) states that a "homeless child … has the same meaning as in Section 11434a(2) of Title 42 of the United States Code." That federal statute includes (iv) "migratory children (as such term is defined in section 6399 of Title 20) who qualify as homeless for the purposes of this part because the children are living in circumstances described in clauses (i) through

(iii)." 42 U.S.C.A. § 11434a(2)(B)(iv). A migratory child includes children of parent who is a "migratory agricultural worker or migratory fisher." 20 U.S.C.A. § 6399.

53.    These sections do not require proof of residency or citizenship, allowing undocumented and unvaccinated migrant students to enroll in school.

54.    Section 48204.6(c)(3) of the Education Code provides the same exemption for military families and children.

55.    Notably, Education Code §§ 48853(f)(8)(B), 48852.7(c)(3), and 48204.6(c)(3) do not require students to provide proof of vaccination within a certain time period.

56.    Many schools have allowed foster children, homeless children, and migrant students to enroll in school unvaccinated for the entire duration of the school year, as allowed by state law.

57.    The state does not require the school districts to disenroll students if they do not provide proof of vaccination within thirty days. There are circumstances when school districts, including schools in the Inland Empire of California, spend the entire school year trying to ensure students are compliant.

58.    Indeed, there are circumstances where school districts can take more than an entire school year to confirm compliance. The state is primarily concerned that schools make a good faith effort to ensure compliance.

59.    SB 277 broadened medical exemptions under § 120370(a) to give physicians discretion to write medical exemptions beyond the narrow Center for Disease Control (CDC) guidelines.

60.    When former Governor Brown signed SB 277, he acknowledged that "[t]he Legislature, after considerable debate, specifically amended SB 277, to exempt a child from immunizations whenever the child's physician concludes that there are circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization…."

61. Notably, when considering SB 277, the Senate Judiciary committee highlighted that repealing the PBE "effectively repeals any possible religious exemptions" and may conflict with the Free Exercise Clause. See Senate Judiciary Committee Hearing on SB 277 at *16 (April 28, 2015).

62. Several civil rights groups, such as the ACLU-CA, noted that removing religious exemptions raises constitutional concerns.

63. However, the committee minimized any free exercise concerns by noting that the bill was a neutral law of general applicability. *Id*. The committee further rationalized that to "give effect to the religious exception, which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children who have no such religious conviction." *Id*. at 17.

64. Numerous religious adherents testified about how SB 277 would impact them and their families, but Governor Brown still signed the bill over their objections and in contradiction to his prior conduct. For instance, in 2012, he directed the California Department of Public Health to allow for religious exemptions under AB 2109.

65. The legislators' treatment and consideration of the religious adherents' concerns were neither tolerant nor respectful of their religious beliefs.

66. Several legislators, including the author of SB 277, Richard Pan, have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines.

67. For instance, on social media, Richard Pan stated that people who "opt out of vaccines should be opted out of American society." He even equated these individuals to drunk drivers.

68. Maral Farsi, who serves as the Deputy Director of Legislative and Inter-Governmental Affairs, has stated that anti-vaxxer parents are "oxygen thieves who don't care about children."

69.     These statements diminish the sincerely held religious beliefs of parents across California.

70.     The state targeted religion because it expressly eliminated religious exemptions.

71.     Even though the California Legislature stated it enacted SB 277 to achieve total immunization of appropriate age groups, the evidence still demonstrates a targeting of religion because exempt students pose the same risk, if not a greater risk, than students with religious exemptions.

72.     Although SB 277 removed all PBEs, hostility towards religion is still demonstrated because PBEs are still subject to First Amendment protection. Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others, nor do they have to be part of an established religion. They just must be sincere.

## C.     California's Mandatory School Vaccinations Contain Harmful And Morally Objectional Ingredients

73.     Since 2021, after the development of the COVID-19 vaccine, information related to the efficacy of vaccines and religious objections to the development of vaccines became more widely known and understood.

74.     It is now more generally understood that many vaccinations contain harmful and morally objectionable ingredients, including known neurotoxins, aborted fetal cells and tissue, and heavy metals. This knowledge has prompted many parents, including Plaintiffs, to object to their children receiving one, some, or all the mandatory vaccines required for public and private school admission.

75.     Included in the package of a vaccine is a manufacturer insert which provides information about the product and its use from the manufacturer. Inserts provide healthcare providers and patients with information about the intended use for a medication as well as ingredients, warnings, and much more.

ADVOCATES
FOR FAITH & FREEDOM

76.     According to the Center for Disease Control ("CDC"), vaccine ingredients fall into several categories. In addition to weakened or killed disease antigens (such as weakened, killed, or parts of viruses or bacteria), vaccines contain other ingredients, known as excipients.

77.     The CDC has created a vaccine excipient table for easy reference, which summarizes the excipients in various vaccinations. A true and correct copy is attached hereto as Exhibit A.

78.     According to the excipient table (Ex. A), some excipients are added to a vaccine for a specific purpose. These include:

- **Preservatives,** which prevent contamination. For example, thimerosal is a common preservative used in vaccinations, which is a mercury-based preservative. Mercury is a known neurotoxin.

- **Adjuvants**, which help stimulate a stronger immune response. For example, aluminum salts are a common adjuvant. Aluminum is a known neurotoxin.

- **Stabilizers**, which keep the vaccine potent during transportation and storage. These include sugars and gelatin.

79.     Other ingredients were utilized during the manufacturing process and later removed from the vaccine. These include:

- **Cell culture materials,** which are used to grow the vaccine antigens. Common cell culture materials include egg proteins and various culture media.

- **Inactivating ingredients**, which are used to kill viruses and inactive toxins. A common inactivating ingredient used in vaccines is formaldehyde.

- **Antibiotics**, which are used to prevent contamination by bacteria.

80.     The vaccine excipient table reflects that two human cell lines (MRC-5 and WI-38) are used to grow the weakened virus strains utilized in many

THIRD AMENDED COMPLAINT

vaccinations. *See* Ex. A at 2-4. The MRC-5 and WI-38 cell lines have their origins in cells derived from the lung tissue of aborted fetuses.

81.    Although these human cell lines could have been produced using cells taken from other sources, they were not. In many cases, there is no other choice than either to make use of a tainted vaccine or to forgo vaccination altogether.

82.    For example, the vaccine "MMR (MMR-II)," a widely used vaccine for measles, mumps, and rubella, uses the WI-38 cell line. *See* Ex. A at 3. The chicken pox vaccine "Varivax," uses both MRC-5 and WI-38. *See* Ex. A at 4.

83.    The above referenced CDC vaccine excipient list (populated from manufacturer vaccine inserts) shows that DNA from MRC-5 cells is transferred to the patient/recipient, as all ingredients included on the excipient list are "contained in the final formulation of each vaccine." *See* Ex. A at 1.

84.    Many individuals' religiously object to vaccinations based on the use of aborted fetal tissue in certain vaccinations.

85.    Additionally, many vaccinations contain harmful and known neurotoxins and heavy metals.

86.    For example, aluminum is the most commonly used vaccine adjuvant. Aluminum adjuvants are used in vaccines such as hepatitis A, hepatitis B, diphtheria-tetanus-containing vaccines, Haemophilus influenzae type b, and pneumococcal vaccines. Vaccine adjuvants are not used in the live, viral vaccines, such as measles, mumps, rubella, varicella and rotavirus.

87.    Studies clearly show that aluminum adjuvants have a potential to induce serious immunological disorders in humans. In particular, aluminum in adjuvant form carries a risk for autoimmunity, long-term brain inflammation and associated neurological complications and may thus have profound and widespread

THIRD AMENDED COMPLAINT

adverse health consequences.[2] Furthermore, the slow accumulation of aluminum from receiving multiple vaccines containing aluminum adjuvants causes neurodevelopmental defects, as well as neurodegeneration in adults.[3]

88.     Thimerosal is commonly used vaccine preservative. Thimerosal is a mercury-containing organic compound.

89.     Over 89 peer-reviewed published articles link autism, mercury and thimerosal.[4] The science continues to accumulate that mercury and thimerosal are potent drivers of the autism epidemic.

90.     The Food and Drug Administration ("FDA") has begun to address the issue of thimerosal as a preservative in vaccines. However, according to the CDC, the following vaccines still contain thimerosal, Td (Tetanus), Menomune (Meningococcal), as well as many flu vaccines. *See* Ex. A.

91.     Other known neurotoxins contained in the various mandated vaccinations include polysorbate 80, polyethylene glycol, and formaldehyde.

92.     Many people have a sincerely held religious belief that God created the human body as a temple and that the body should not be intentionally injected with viruses, neurotoxins, heavy metals, and other harmful ingredients.

---

[2] Tomljenovic L, Shaw CA. Aluminum vaccine adjuvants: are they safe? Curr Med Chem. 2011;18(17):2630-7. doi: 10.2174/092986711795933740. PMID: 21568886.

[3] Blaylock RL. Additive aluminum as a cause of induced immunoexcitotoxicity resulting in neurodevelopmental and neurodegenerative disorders: A biochemical, pathophysiological, and pharmacological analysis. Surg Neurol Int. 2024 May 24;15:171. doi: 10.25259/SNI_296_2024. PMID: 38840623; PMCID: PMC11152537.

[4] Children's Health Defense. *Peer-Reviewed, Published Research Showing Adverse Effects of Mercury*, available at https://childrenshealthdefense.org/wp-content/uploads/autism-mercury-abstracts-2.27.20.pdf

1

2

**D.    California's Mandatory School Vaccinations Have Known and Stated Risks**

93.    Each vaccine on the school immunization schedule can cause significant adverse reactions, which additionally result in religious objection.

*Varicella Vaccine*

94.    For example, the chickenpox vaccination manufacturer insert states that the vaccine can cause adverse reactions including: anaphylaxis/anaphylactic shock, angioneurotic edema, facial edema, peripheral edema, necrotizing retinitis (in immunocompromised individuals), aplastic anemia, thrombocytopenia (including idiopathic thrombocytopenic purpura (ITP)), varicella (vaccine strain), encephalitis, cerebrovascular accident (stroke), transverse myelitis, impetigo, Guillain-Barre syndrome, bell's palsy, ataxia, non-febrile seizures, aseptic meningitis, meningitis, dizziness, paresthesia, pharyngitis, pneumonia/pneumonitis, Stevens-Johnson syndrome, erythema multiforme, henoch-schönlein purpura, cellulitis, and herpes zoster (shingles).[5]

*Hepatitis B Vaccine*

95.    Some of the severe, manufacturer-listed adverse reactions to the Hep B vaccine include shingles, meningitis, anaphlaxysis, multiple sclerosis, paralysis, seizures, tachycardia, dyspepsia, alopecia (baldness), angioedema, encephalopathy, bell's palsy, and Guillain-Barré syndrome, among many other reactions.[6]

---

[5] VARIVAX® Varicella Virus Vaccine Live Manufacturer Insert, https://www.fda.gov/media/76008/download

[6] ENGERIX-B [Hepatitis B Vaccine (Recombinant)] Manufacturer Insert, https://www.fda.gov/media/119403/download; RECOMBIVAX HB® Hepatitis B Vaccine (Recombinant) Manufacturer Insert, https://www.fda.gov/files/vaccines%2C%20blood%20%26%20biologics/published/package-insert-recombivax-hb.pdf

17

THIRD AMENDED COMPLAINT

1

2

3      ***DTap/TDAP Vaccine***

4          96.    For the DTap vaccine, the manufacturer lists sudden infant death

5      syndrome ("SIDs") as a potential adverse reaction, among others.[7]

6          97.    For the TDAP vaccine, two manufacturers make this vaccination. The

7      manufacturer listed adverse reactions on the TDAP vaccine Adacel include

8      anaphylactic reaction, Guillain-Barre syndrome, facial palsy, syncope (fainting),

9      myelitis, and myocarditis, among others. [8]

10         98.    The manufacturer-listed adverse reactions on the TDAP vaccine



11     Boostrix include encephalitis (brain inflammation), loss of consciousness,

12     exanthem, henoch-schönlein purpura, lymphadenitis, lymphadenopathy, allergic

13     reactions, anaphylactic and anaphylactoid reactions, myocarditis, syncope (fainting),

14     and facial palsy, among others.[9]

15     ***Polio Vaccine***

16         99.    The polio vaccination manufacturer inserts states that "deaths have

17     occurred in temporal association after vaccination of infants with [the inactivated

18     poliovirus vaccine]." Additionally, the insert states that Guillain-Barré Syndrome

19     "has been temporally related to administration of another inactivated poliovirus

20     vaccine." Other listed adverse reactions include Lymphadenopathy (abnormal

21     lymph nodes), Type I hypersensitivity including allergic reaction, anaphylactic

22     _____

23

24     [7] INFANRIX (Diphtheria and Tetanus Toxoids and Acellular Pertussis Vaccine
       Adsorbed) Manufacturer Insert, https://www.fda.gov/media/75157/download

25     [8] Adacel (Tetanus Toxoid, Reduced Diphtheria Toxoid and Acellular Pertussis
       Vaccine Adsorbed) Manufacturer Insert,
26     https://www.fda.gov/media/119862/download.

27     [9] BOOSTRIX (Tetanus Toxoid, Reduced Diphtheria Toxoid and Acellular Pertussis
       Vaccine, Adsorbed) Manufacturer Insert,
28     https://www.fda.gov/media/124002/download.

reaction, and anaphylactic shock. Arthralgia (joint pain), Myalgia (muscle pain), Convulsion, Febrile convulsion, Headache, Paresthesia (burning, pricking sensation in your limbs, arms, and skin), Somnolence (drowsiness), Syncope (fainting), Rash, and Urticaria (hives).[10]

### *MMR vaccine*

100.   The manufacturer-listed adverse reactions to the MMR vaccine include: Panniculitis, Atypical Measles, Fever, Syncope (Fainting), Headache, Dizziness, Malaise (Discomfort), Irritability, Vasculitis, Pancreatitis, Diarrhea, Vomiting, Parotitis, Encephalitis, Encephalopathy, Measles inclusion body encephalitis (MIBE), Subacute sclerosing panencephalitis (SSPE), Nausea, Thrombocytopenia, Purpura, Lymphadenopathy, Leukocytosis, Anaphylaxis, Anaphylactoid reactions, Angioedema, Peripheral or facial edema, Bronchial spasm, Arthritis, Arthralgia, Myalgia, Urticaria (Hives), Erythema multiforme, Measles-like rash, Papillitis, Orchitis, Epididymitis, Papillitis, Optic neuritis, Retinitis, Otitis media, Nerve deafness, Pruritus, Ataxia, Polyneuritis, Polyneuropathy, Ocular palsies, Paresthesia, Pneumonitis, Sore throat, Cough, Guillain-Barré Syndrome (GBS), Acute disseminated encephalomyelitis (ADEM), Transverse myelitis, Febrile convulsions, Afebrile convulsions or seizures, Pneumonia, Stevens-Johnson syndrome, Rhinitis (stuffy/runny nose), Acute hemorrhagic edema of infancy, Henoch-Schönlein purpura, Conjunctivitis (pink eye), Injection site reactions (pain, erythema, swelling and vesiculation).[11]

---

[10] Sanofi Pasteur 059 IPOL (Poliovirus) Manufacturer Insert, https://www.fda.gov/media/75695/download?attachment.

[11] M-M-R® II (Measles, Mumps, and Rubella Virus Vaccine Live) Manufacturer Insert, https://www.fda.gov/media/75191/download.

### E.    California's Mandatory School Vaccinations Lack Critical Safety Studies

101.    Even more alarming is the fact that the vaccines required for school admissions lack critical safety information and studies. California's mandatory school vaccinations are not subject to the safety rigors undergone by other pharmaceuticals in the FDA approval process. These vaccinations undergo no large-scale, double-blind, placebo-controlled studies.

102.    Each vaccine on California's mandatory vaccination schedule has been tested in clinical trials against another vaccine (or vaccine-like compound) that has a similar scope of side effects. Not even one vaccine was tested against a true placebo, a neutral compound with no significant side effects.

103.    The clinical trials' designers use this technique to cover up the high rate of adverse events expected with each new vaccine. Thus, a new vaccine can be declared "safe" and its side effects proclaimed "normal," as the recorded side effects do not substantially exceed those of the other vaccine.

104.    The use of this intentionally flawed trial methodology means that every vaccine on the US childhood schedule received FDA approval without a true measurement of the actual magnitude of its adverse events.

105.    Additionally, most vaccine research focuses on the effects of a single vaccine, or the effects of vaccines routinely given in combination at a single visit. No research has been done on the overall schedule and the cumulative effects of vaccinations. The schedule is not re-evaluated when a new vaccine comes on the market or is added to the schedule. Factors like the age of a child at vaccination, the effects of multiple vaccinations on the body over a period of time, or the frequency and order in which vaccines are received have not been rigorously studied.

106.    This lack of scientific evidence makes it impossible to quantify the overall benefit (positive or negative) of the childhood vaccination program.

107.    Notably, under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to 300aa-34, vaccine manufacturers cannot be liable in a civil

action for damages arising from a vaccine-related injury or death. Vaccine manufacturers do not have liability for adverse reactions caused by their products.

108.    Instead, the federal government is liable for vaccine injuries and death through the National Vaccine Injury Compensation Program. 42 U.S.C. §§ § 300aa–10 to § 300aa–19.

109.    As of Fiscal Year 2023, over $5 billion dollars has been paid by the federal government (through your taxes) to victims of vaccine adverse reactions[12], meaning adverse reactions are known and occurring, despite being severely underreported.

## F.    SB 277 Is Not Congruent with California's Interest in Slowing the Spread of Disease and Increasing Herd Immunity

110.    California vaccination rates are high – higher than the national average for each disease listed on the CDC schedule.[13]

111.    Additionally, just prior to SB 277's passage, childhood vaccination rates were on the rise in California. Although PBEs were increasing from 2000 through 2012, vaccine rates increased 0.2% for Kindergarteners and 1.2% for seventh graders between the 2013/14 and 2014/15 school years, while PBEs were declining.[14]

---

[12] Health Resources and Services Administration, *Vaccine Injury Compensation Program Data and Statistics,* July 1, 2023, https://www.hrsa.gov/sites/default/files/hrsa/vicp/vicp-stats.pdf.

[13] *See* American Academy of Pediatrics, *Child Vaccination Across America*, available at: https://downloads.aap.org/AAP/Vaccine/index.html (accessed September 28, 2023).

[14] *See* California Department of Public Health Immunization Branch, *2014-2015 Kindergarten Immunization Assessment Results* at *1; *See* California Department of Public Health Immunization Branch, *2014-2015 7th Grade Immunization Assessment Results* at *1-2 both available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

112.    In 2015-2016, the year before SB 277 went into effect, California's seventh grade students were vaccinated at an overall rate of 97.8%. The percentage of students with PBEs this same year was 1.66%, while the percentage of students with medical exemptions was 0.14%.[15] For entering kindergarten students in the 2015-2016 school year, 92.9% had received all required vaccines. The percentage of kindergarten students with PBEs this same year was 2.38%, while the percentage of kindergarten students with medical exemptions was 0.17%.[16]

113.    Given that religious exemptions declined the year prior to when SB 277 went into effect, there is no evidence to suggest that religious exemptions would increase or increase more than medical exemptions.

114.    Indeed, since 2016, medical exemptions in California have increased rapidly.

115.    Vaccination rates for entering kindergarten students during the 2020-21 school year was 94%. The overwhelming majority of counties have vaccination rates above 90%.

116.    The social benefit attributed to vaccines is largely based on the notion of herd immunity. Herd immunity means that enough people in a group or area have achieved immunity (protection) against a virus or other infectious agent to make it very difficult for the infection to spread.

------

[15] *See* California Department of Public Health Immunization Branch, *2015-2016 7th Grade Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

[16] *See* California Department of Public Health Immunization Branch, *2015-2016 Kindergarten Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

ADVOCATES
FOR FAITH & FREEDOM

117.   The herd immunity threshold range for most diseases, excluding measles, is 80% to 90%. If immunity is above the herd immunity threshold for a group of people, then an infectious disease might cause a few cases, but it will quickly stop spreading because enough people are protected.

118.   There is no evidence to suggest that students with PBEs who would be granted full access to traditional classroom settings pose a greater risk to students enrolled in a home-based private school or independent study program without classroom instruction.

119.   The evidence to date demonstrates that the overwhelming majority of students in public school are vaccinated. Allowing religious exemptions to the required vaccines would not drop the compliance rate below the herd immunity threshold.

120.   From an epidemiological standpoint, pooling unvaccinated students in a home-based private school or independent study program creates an equal, if not greater, risk of transmission than the small number of unvaccinated students pooled together with a majority of vaccinated students in public schools.

121.   Students enrolled in independent study programs are still free to participate in sports and extra-curricular activities with other students who attend their local school districts. Students sitting in a classroom setting pose no greater risk than students shouting, singing, or chanting in their local sports league or extra-curricular activity.

122.   Students enrolled in an independent study program or home-based private school are still able to gather and congregate with other students in the park, store, or church – settings that pose an equal risk as classroom settings.

123.   SB 277 is further irrational considering that many of the required vaccinations do not contribute to herd immunity, and those vaccinated against certain diseases, such as Measles, can still develop infections or can shed the virus to others after vaccination.

THIRD AMENDED COMPLAINT

124.   For example, according to the CDC, "Some people who get two doses of MMR vaccine may still get measles, mumps, or rubella if they are exposed to the viruses that cause these diseases…..About 3 out of 100 people who get two doses of MMR vaccine will get measles if exposed to the virus….Two doses of MMR vaccine are 88% (range 32% to 95%) effective at preventing mumps. Mumps outbreaks can still occur in highly vaccinated U.S. communities, particularly in settings where people have close, prolonged contact, such as universities and close-knit communities."[17]

125.   Vaccinated individuals may also still contract and transmit the chickenpox. The CDC labels this "breakthrough chickenpox." According to the CDC, "some people who have been vaccinated against chickenpox can still get the disease…. But some vaccinated people who get chickenpox may have disease similar to unvaccinated people."[18]

126.   The DTap vaccination is a combination vaccine, used to protected against Diptheria, Tetanus, and Pertussis (whopping cough). Regarding pertussis, the manufacturer insert for the DTap vaccination admits that the vaccinations "role in either the pathogenesis of, or immunity to, pertussis has not been clearly defined."[19] If the role of immunity to Pertussis is not clearly defined, the manufacturer cannot know that the DTAP shot will provide protection to the patient.

---

[17] Center for Disease Control, *Measles, Mumps, and Rubella (MMR) Vaccination: What Everyone Should Know*, last updated January 26, 2021, https://www.cdc.gov/vaccines/vpd/mmr/public/index.html.

[18] Center for Disease Control, *Chickenpox Symptoms and Complications*, last updated May 10, 2024, https://www.cdc.gov/chickenpox/signs-symptoms/?CDC_AAref_Val=https://www.cdc.gov/chickenpox/about/symptoms.html.

[19] DAPTACEL (Diphtheria and Tetanus Toxoids and Acellular Pertussis Vaccine Adsorbed) Manufacturer Insert, https://www.fda.gov/media/74035/download.

ADVOCATES
FOR FAITH & FREEDOM

127.   Notably, cutting-edge science indicates that the pertussis vaccine does not confer herd immunity.[20] A 2014 study concluded that even if a vaccinated individual does not come down with pertussis, the vaccinated can carry the bacterium and infect others for weeks after exposure (possibly even longer than the unvaccinated).[21] The study found that the current pertussis vaccine does not prevent infection or transmission of the bacterium, and therefore does not confer herd immunity.

128.   Regarding Diphtheria, the DTap vaccine works against the toxin, not the bacterium, and therefore does not prevent infection and transmission. There is no solid evidence for herd protection from Diphtheria.[22]

129.   Tetanus is similarly not person to person transmissible. Rather, the bacterium penetrates the human body through a wound and is not excreted from the body in a way that might normally lead to the infection of another person. The tetanus vaccine is not a barrier to infection with the bacterium and hence does not confer herd immunity.[23]

130.   The Hep B vaccination also does not substantially contribute to herd immunity. Unlike classic childhood diseases such as chickenpox, measles, or pertussis, transmission of hepatitis B does not occur in ordinary daily encounters. Rather, transmission occurs through sexual contact, the use of dirty hypodermic

---

[20] Warfel, Jason M et al. "Acellular pertussis vaccines protect against disease but fail to prevent infection and transmission in a nonhuman primate model." *Proceedings of the National Academy of Sciences of the United States of America* vol. 111,2 (2014): 787-92. doi:10.1073/pnas.1314688110

[21] Id.

[22] *See* Anonymous, Turtles All the Way Down: Vaccine Science and Myth, in HERD IMMUNITY, pgs. 327-334 (2022).

[23] *Id.* at pgs. 318-319.

THIRD AMENDED COMPLAINT

ADVOCATES
FOR FAITH & FREEDOM

1   needles (in medical procedures or narcotic drug injections), or a carrier mother

2   giving birth.[24]

3       131.   The prevalence of hepatitis B chronic carriers in Western countries is

4   around 1% of the population or less. The 1% or less of children who are at risk of

5   contracting the virus – that is, they live with chronic carriers – provide their family

6   and contacts with herd protection. The vaccine protects them from infection and thus

7   reduces the risk of viral spread. [25]

8       132.   However, for the remaining 99% of children, who are not members of

9   any risk group, any herd immunity provided by Hep B vaccine is irrelevant. These

10   children already possess better herd protection than the vaccine can provide: They

11   belong to a family with no carriers. The risk of hepatitis B infection for these children

12   is close to zero.[26]

13       133.   Additionally, many of the mandated vaccinations shed. According

14   to the CDC, vaccine shedding is the release or discharge of any of the vaccine

15   components in or outside of the body.[27] This most likely occurs when a vaccine

16   contains a live weakened version of the virus.

17       134.   The following mandated vaccinations contain live viruses: Measles,

18   Mumps, Rubella (MMR) and Chickenpox (Varicella). This is why the CDC advises

19   against vaccinations that could shed onto immunocompromised individuals.[28]

---

[24] *Id.* at pgs. 337-342.

[25] Id.

[26] Id.

[27] Center for Disease Control, *Myths and Facts About Covid-19 Vaccines*, https://www.cdc.gov/covid/vaccines/myths-facts.html?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html.

[28] Center for Disease Control, *Who Should NOT Get Vaccinated with these Vaccines?*, last updated April 2, 2020, https://www.cdc.gov/vaccines/vpd/should-not-vacc.html.

ADVOCATES FOR FAITH & FREEDOM

135.  For the MMR vaccine, studies have identified a potential shedding period of two weeks for vaccinated patients.[29] Additionally, a measles vaccine-type virus has been found in the throat of a child after vaccination, "showing that subcutaneous injection of an attenuated measles strain can result in respiratory excretion of the virus."[30] Accordingly, disease outbreaks can be causes by wild or vaccine strains.

136.  While the polio vaccine is not a live virus vaccine, the CDC states that individuals who receive the inactivated polio vaccine ("IPV") can "excrete virus in stools following exposure to wild or vaccine poliovirus."[31] The CDC further admits that "[t]he duration of [vaccine] immunity is not known with certainty…"[32]

137.  The World Health Organization further asserts that the polio vaccination is incapable of producing substantial herd immunity. A WHO official document states that the vaccine "induces only very low-level immunity to poliovirus inside the gut. As a result, it […] only marginally reduces the spread of wild poliovirus. In a person immunized with IPV, wild virus can still multiply inside the intestines and be shed in the stool. Because of this, IPV could not possibly be used to eradicate polio."[33]

---

[29] Rota, P A et al. "Detection of measles virus RNA in urine specimens from vaccine recipients." *Journal of clinical microbiology* vol. 33,9 (1995): 2485-8. doi:10.1128/jcm.33.9.2485-2488.1995.

[30] Morfin, Florence et al. "Detection of measles vaccine in the throat of a vaccinated child." *Vaccine* vol. 20,11-12 (2002): 1541-3. doi:10.1016/s0264-410x(01)00495-9.

[31] Center for Disease Control, *Chapter 18: Poliomyelitis*, https://www.cdc.gov/pinkbook/hcp/table-of-contents/chapter-18-poliomyelitis.html?CDC_AAref_Val=https://www.cdc.gov/vaccines/pubs/pinkbook/polio.html.

[32] Id.

[33] World Health Organization, *POLIO: The beginning of the end*, p. 20, May 1997, https://cdn.who.int/media/docs/default-source/biologicals/vaccine-quality/polio-the-beginning-of-the-end85aa6ead-a400-45ed-bd21-9508be9d0b6f.pdf?sfvrsn=c3220f24_1&download=true.

138.   Of California's 5 mandated injections (17 total doses), only two confer any herd immunity benefit: MMR and Varicella (Chickenpox). Three vaccinations, Polio, DTap, and Hep B, have no impact on herd immunity.

139.   While research shows that the MMR vaccination and Varicella vaccination contribute to herd immunity, the CDC admits that vaccinated individuals can still contract and transmit measles, mumps, rubella, or the chickenpox if they are exposed to the viruses. The CDC further admits that mumps outbreaks in particular can still occur in highly vaccinated U.S. communities. Additionally, the MMR vaccine is known to shed for up to two weeks after vaccination.

140.   Nevertheless, the students who receive these vaccines are allowed to go home and congregate with unvaccinated family members or family members who no longer have immunity or have waning immunity.

141.   A significant number of individuals are also anergic to vaccines, meaning they can never mount antibodies no matter how protected they are by vaccines. Thus, there is no evidence to suggest that a ban on religious exemptions is justified considering a significant number of non-immune students are congregating with each other, including those who are anergic and those who no longer have immunity.

142.   Moreover, these exempt unvaccinated children, as well as foster youth, homeless students, migrants, and military families are still free to gather in other congregate settings like sports leagues, public extracurricular activities, and hours of services at churches and synagogues. These settings pose the same risk of transmission as classroom settings.

143.   The rolling admission of foster youth, homeless students, migrants, and military families pose a similar risk of spreading disease. The moment an unvaccinated student steps foot on campus, he or she presents the same health and safety risks as an unvaccinated religious student. There is no evidence to suggest

THIRD AMENDED COMPLAINT

that an unvaccinated student is immune from contracting or spreading disease for ten days or thirty days.

144.   Indeed, if anything, children living in homeless circumstances or shelters are more likely to be exposed to the kinds of conditions that would spread disease than children living in stable homes.

145.   California has one of the highest rates of children in foster care than any other state.

146.   Homelessness and immigration have steadily increased in California over the past decade. The average rate of students experiencing homelessness in California is around 4%, with some regions like Monterey and Santa Barbara experiencing rates above 10%. Scientific studies have shown that migrant students and students experiencing homelessness or living in foster homes are at increased risk of spreading disease due to a multitude of factors, including lack of access to hygiene and healthcare facilities.

147.   Thus, migrant children, homeless children, and children living in foster homes are a greater contagion hazard than unvaccinated students with religious exemptions.

148.   Forty-five states and the District of Columbia currently offer religious exemptions from compulsory school vaccination laws.[34] California is one of only five states that does not offer a religious exemption from compulsory school vaccination laws.

_____

[34] *See* National Conference of State Legislatures, *States With Religious and Philosophical Exemptions From School Immunization Requirements*, last updated August 3, 2023, https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements

THIRD AMENDED COMPLAINT

# FIRST CAUSE OF ACTION

## Violation of the Free Exercise Clause of the

## First Amendment to the United States Constitution

## (42 U.S.C. § 1983)

149.   Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 148, as if fully set forth herein.

150.   The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."

151.   Plaintiffs' sincerely held religious beliefs prohibit them from vaccinating their minor children. SB 277 burdens Plaintiffs because it forces them to forego their religious beliefs to receive a public or private education.



152.   The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U. S. 439, 450 (1988). "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

153.   The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.

154.   Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct.  1294, 1296 (2021) (emphasis in original).

155.   Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious

nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2023) (internal citations omitted).

156.   The State has taken the additional step to single out religious adherents for worse treatment by officially announcing that religious exemptions are categorically excluded from consideration. The Health Department's website states that it will consider medical exemptions, but not religious exemptions ("Starting in 2016, exemptions for religious or other personal beliefs are no longer an option for the vaccines that are currently required for entry into school or childcare in California.").[35]

157.   SB 277 is a demonstration of hostility towards religion, as evidenced by the comments of legislators diminishing the sincerely held religious beliefs of parents.

158.   Furthermore, a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877 (internal citations omitted).

159.   A student with an exemption for secular reasons poses a similar contagion hazard as a student with a hypothetical religious exemption.

160.   California does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.

161.   California's secular exemption system provides for individualized discretionary review. The Supreme Court recently reaffirmed that a policy that provides a "mechanism for individualized exemptions" is not generally applicable. *Id.*

---

[35] *See* California Department of Public Health, *Personal Belief Exemptions FAQs*, last updated August 24, 2023, https://eziz.org/assets/docs/shotsforschool/PBEFAQs.pdf.

ADVOCATES
FOR FAITH & FREEDOM

162.   California's secular exemption also allows for exemptions to individual vaccinations. Religious objectors are not permitted to individually object to any vaccination. Rather, religious objectors must receive all vaccinations on California's K-12 immunization schedule prior to school admission.

163.   In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason." *Id*. at 1872.

164.   Here, the California Department of Public Health's secular exemption process provides medical exemptions on an individualized basis, and the Department maintains the right to rescind exemptions in whole or in part based upon their discretionary review. Simultaneously, SB 277 requires the State to refuse to extend the possibility for an exemption to those with religious objections.

165.   Furthermore, the legislative scheme provides for numerous secular exemptions as articulated above in paragraphs 41 to 60, but excludes religious exemptions despite the fact that the granting of a religiously-based exemption as to one or more of the vaccinations would cause no greater risk of the spread of the listed childhood diseases than would the secular based exemptions.

166.   The scientific evidence surrounding vaccinations show that the State of California has no compelling government interest in mandating vaccinations without the opportunity for religious exemption. All of California's mandatory student vaccinations cause clinically significant adverse reactions. Additionally, many vaccinations contain harmful and morally objectionable ingredients, do not contribute to herd immunity, and lack critical safety studies.

167.   These practices are not generally applicable, and they must therefore survive strict scrutiny.

168.   SB 277 fails strict scrutiny because it is not narrowly tailored to meet any compelling government interest. SB 277 mandates vaccines that are not

1   necessary and are injurious to students. And the state cannot show that exempt

2   students pose a greater risk than students with religious exemptions.

3      169.   SB 277 is not narrowly tailored because students cannot object to

4   vaccinations individually. Rather, the State takes an all or nothing approach,

5   requiring students to receive all vaccines on the K-12 immunization schedule

6   without exception.

7      170.   SB 277 is not narrowly tailored because it could allow for exemptions

8   from those diseases that are not transmissible like tetanus.

9      171.   SB 277 is not narrowly tailored because California Code of Regulations

10  § 6060(b) already provides the local health officer authority to exclude students from

11  school: "Whenever the governing authority has good cause to believe that a pupil

12  who is not completely immunized against a particular communicable disease may

13  have been exposed to that disease, the governing authority shall immediately inform

14  the local health officer. The local health officer shall determine whether the pupil is

15  at risk of developing or transmitting the disease and, if so, may require the exclusion

16  of the pupil from that school or pre-kindergarten facility until the completion of the

17  incubation period or, if infection is suspected or occurs, until completion of the

18  period in which the disease is communicable." Therefore, just like any student with

19  a medical exemption, authorities can remove a student with a religious exemption to

20  satisfy the governmental interests.

21     172.   Even if rational basis applies to SB 277, it fails considering the lack of

22  adequate safety studies, the known adverse reactions cause by vaccination, the

23  harmful ingredients contained in vaccinations, and the State's all or nothing

24  vaccination approach, which does not allow religious objectors to object to

25  vaccinations collectively or individually despite known risks and despite the fact that

26  some may have religious objections only to particular vaccines due to individualized

27  factors.

28



ADVOCATES
FOR FAITH & FREEDOM

---

33

173.   As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to attorneys' fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.   A declaratory judgment that SB 277 is unconstitutional;

2.   A declaratory judgment that SB 277's prohibition of allowing religiously based exemptions as to individual vaccinations is unconstitutional.

3.   Temporary, preliminary, and permanent injunctive relief enjoining California Health and Safety Code §§ 120335, 120370 and any other state law or regulation prohibiting a religiously based objection to the state's vaccination mandate as referenced herein;

4.   For costs, attorneys' fees, and interest, as allowed by law; and

5.   For such other relief the Court determines is proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury**.**

Respectfully submitted,

DATED:  December 20, 2024       ADVOCATES FOR FAITH & FREEDOM

By: /s/ Robert H. Tyler
        Robert H. Tyler, Esq.

THIRD AMENDED COMPLAINT

EXHIBIT "A"

# Vaccine Excipient Summary

## Excipients Included in U.S. Vaccines, by Vaccine

In addition to weakened or killed disease antigens (such as weakened, killed, or parts of viruses or bacteria), vaccines contain very small amounts of other ingredients – excipients.

Some excipients are added to a vaccine for a specific purpose. These include:

- **Preservatives**, to prevent contamination. For example, thimerosal.
- **Adjuvants**, to help stimulate a stronger immune response. For example, aluminum salts.
- **Stabilizers**, to keep the vaccine potent during transportation and storage. For example, sugars or gelatin.

Others are residual trace amounts of materials that were used during the manufacturing process and removed. These can include:

- **Cell culture materials**, used to grow the vaccine antigens. For example, egg protein, various culture media.
- **Inactivating ingredients**, used to kill viruses or inactivate toxins. For example, formaldehyde.
- **Antibiotics**, used to prevent contamination by bacteria. For example, neomycin.

The following table lists substances, other than active ingredients (i.e., antigens), shown in the manufacturers' package insert (PI) as being contained in the final formulation of each vaccine. **Substances used in the manufacture of a vaccine but not listed as contained in the final product (e.g., culture media) can be found in each PI, but are not shown on this table.** Each PI, which can be found on the FDA's website (see below) contains a description of that vaccine's manufacturing process, including the amount and purpose of each substance. In most PIs, this information is found in Section 11: "Description." Please refer to the PI for a complete list of ingredients or excipients. A table listing vaccine excipients and media by excipient is published by the Institute for Vaccine Safety at Johns Hopkins University, and can be found at http://www.vaccinesafety.edu/components-Excipients.htm.

**B**

## Appendix B

### Vaccine Excipient Table

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Adenovirus | 10/2019 | monosodium glutamate, sucrose, D-mannose, D-fructose, dextrose, human serum albumin, potassium phosphate, plasdone C, anhydrous lactose, microcrystalline cellulose, polacrilin potassium, magnesium stearate, cellulose acetate phthalate, alcohol, acetone, castor oil, FD&C Yellow #6 aluminum lake dye |
| Anthrax (Biothrax) | 11/2015 | aluminum hydroxide, sodium chloride, benzethonium chloride, formaldehyde |
| BCG (Tice) | 02/2009 | glycerin, asparagine, citric acid, potassium phosphate, magnesium sulfate, iron ammonium citrate, lactose |
| Cholera (Vaxchora) | 06/2016 | ascorbic acid, hydrolyzed casein, sodium chloride, sucrose, dried lactose, sodium bicarbonate, sodium carbonate |
| Dengue (Dengvaxia) | 06/2019 | sodium chloride, essential amino acids (including L-phenylalanine), non-essential amino acids, L-arginine hydrochloride, sucrose, D-trehalose dihydrate, D-sorbitol, trometamol, urea |
| DT (Sanofi) | 06/2018 | aluminum phosphate, isotonic sodium chloride, formaldehyde |
| DTaP (Daptacel) | 01/2021[b] | aluminum phosphate, formaldehyde, glutaraldehyde, 2-phenoxyethanol |
| DTaP (Infanrix) | 01/2021[b] | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 (Tween 80) |
| DTaP-IPV (Kinrix) | 01/2021[b] | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 (Tween 80), neomycin sulfate, polymyxin B |
| DTaP-IPV (Quadracel) | 02/2021 | formaldehyde, aluminum phosphate, 2-phenoxyethanol, polysorbate 80, glutaraldehyde, neomycin,  polymyxin B sulfate, bovine serum albumin |
| DTaP-HepB-IPV (Pediarix) | 01/2021[b] | formaldehyde, aluminum hydroxide, aluminum phosphate, sodium chloride, polysorbate 80 (Tween 80), neomycin sulfate, polymyxin B, yeast protein |
| DTaP-IPV/Hib (Pentacel) | 12/2019 | aluminum phosphate, polysorbate 80, sucrose, formaldehyde, glutaraldehyde, bovine serum albumin, 2-phenoxyethanol, neomycin, polymyxin B sulfate |
| DTaP-IPV-Hib-HepB (Vaxelis) | 10/2020 | polysorbate 80, formaldehyde, glutaraldehyde, bovine serum albumin, neomycin, streptomycin sulfate, polymyxin B sulfate, ammonium thiocyanate, yeast protein, aluminum |
| Ebola Zaire (ERVEBO) | 01/2021[b] | Tromethamine, rice-derived recombinant human serum albumin, host cell DNA, benzonase, rice protein |
| Hib (ActHIB) | 05/2019 | sodium chloride, formaldehyde, sucrose |
| Hib (Hiberix) | 04/2018 | formaldehyde, sodium chloride, lactose |
| Hib (PedvaxHIB) | 01/2021[b] | amorphous aluminum hydroxyphosphate sulfate, sodium chloride |
| Hep A (Havrix) | 01/2021[b] | MRC-5 cellular proteins, formalin, aluminum hydroxide, amino acid supplement, phosphate-buffered saline solution, polysorbate 20, neomycin sulfate, aminoglycoside antibiotic |
| Hep A (Vaqta) | 01/2021[b] | amorphous aluminum hydroxyphosphate sulfate, non-viral protein, DNA, bovine albumin, formaldehyde, neomycin, sodium borate, sodium chloride, other process chemical residuals |
| Hep B (Engerix-B) | 01/2021[b] | aluminum hydroxide, yeast protein, sodium chloride, disodium phosphate dihydrate, sodium dihydrogen phosphate dihydrate |
| Hep B (Recombivax) | 12/2018 | formaldehyde, potassium aluminum sulfate, amorphous aluminum hydroxyphosphate sulfate, yeast protein |
| Hep B (Heplisav-B) | 05/2020 | yeast protein, yeast DNA, deoxycholate, phosphorothioate linked oligodeoxynucleotide, sodium phosphate, dibasic dodecahydrate, sodium chloride, monobasic dehydrate, polysorbate 80 |
| Hep A/Hep B (Twinrix) | 01/2021[b] | MRC-5 cellular proteins, formalin, aluminum phosphate, aluminum hydroxide, amino acids, sodium chloride, phosphate buffer, polysorbate 20, neomycin sulfate, yeast protein |
| HPV (Gardasil 9) | 08/2020 | amorphous aluminum hydroxyphosphate sulfate, sodium chloride, L-histidine, polysorbate 80, sodium borate, yeast protein |

**B**

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Influenza (Afluria) Quadrivalent[c] | 03/2021 | sodium chloride, monobasic sodium phosphate, dibasic sodium phosphate, monobasic potassium phosphate, potassium chloride, calcium chloride, sodium taurodeoxycholate, ovalbumin, sucrose, neomycin sulfate, polymyxin B, beta-propiolactone, hydrocortisone, thimerosal (multi-dose vials) |
| Influenza (Fluad) Quadrivalent[c] | 03/2021 | squalene, polysorbate 80, sorbitan trioleate, sodium citrate dihydrate, citric acid monohydrate, neomycin, kanamycin, hydrocortisone, egg protein, formaldehyde |
| Influenza (Fluarix) Quadrivalent[c] | 2021 | octoxynol-10 (TRITON X-100), α-tocopheryl hydrogen succinate, polysorbate 80 (Tween 80), hydrocortisone, gentamicin sulfate, ovalbumin, formaldehyde, sodium deoxycholate, sodium phosphate-buffered isotonic sodium chloride |
| Influenza (Flublok) Quadrivalent[c] | 03/2021 | sodium chloride, monobasic sodium phosphate, dibasic sodium phosphate, polysorbate 20 (Tween 20),  baculovirus and *Spodoptera frugiperda* cell proteins, baculovirus and cellular DNA, Triton X-100 |
| Influenza (Flucelvax) Quadrivalent[c] | 10/2021[b] | Madin Darby Canine Kidney (MDCK) cell protein, phosphate buffered saline, protein other than HA, MDCK cell DNA, polysorbate 80, cetyltrimethlyammonium bromide, and β-propiolactone, thimerosal (multi-dose vials) |
| Influenza (Flulaval) Quadrivalent[c] | 2021 | ovalbumin, formaldehyde, sodium deoxycholate, α-tocopheryl hydrogen succinate, polysorbate 80, phosphate-buffered saline solution |
| Influenza (Fluzone) Quadrivalent[c] | 2021 | formaldehyde, egg protein, octylphenol ethoxylate (Triton X-100), sodium phosphate-buffered isotonic sodium chloride solution, thimerosal (multi-dose vials) |
| Influenza (Fluzone) High Dose[c] | 07/2021 | egg protein, octylphenol ethoxylate (Triton X-100), sodium phosphate-buffered isotonic sodium chloride solution, formaldehyde |
| Influenza (FluMist) Quadrivalent[c] | 08/2021 | monosodium glutamate, hydrolyzed porcine gelatin, arginine, sucrose, dibasic potassium phosphate, monobasic potassium phosphate, ovalbumin, gentamicin sulfate, ethylenediaminetetraacetic acid (EDTA) |
| IPV (Ipol) | 01/2021[b] | calf bovine serum albumin, 2-phenoxyethanol, formaldehyde, neomycin, streptomycin, polymyxin B, M-199 medium |
| Japanese Encephalitis (Ixiaro) | 09/2018 | aluminum hydroxide, protamine sulfate, formaldehyde, bovine serum albumin, host cell DNA, sodium metabisulphite, host cell protein |
| MenACWY (Menactra) | 04/2018 | sodium phosphate buffered isotonic sodium chloride solution, formaldehyde, diphtheria toxoid protein carrier |
| MenACWY (MenQuadfi) | 01/2021[b] | sodium chloride, sodium acetate, formaldehyde |
| MenACWY (Menveo) | 07/2020 | formaldehyde, $CRM_{197}$ protein |
| MenB (Bexsero) | 01/2021[b] | aluminum hydroxide, sodium chloride, histidine, sucrose, kanamycin |
| MenB (Trumenba) | 2018 | polysorbate 80, aluminum phosphate, histidine buffered saline |
| MMR (MMR-II) | 12/2020 | sorbitol, sucrose, hydrolyzed gelatin, recombinant human albumin, neomycin, fetal bovine serum, WI-38 human diploid lung fibroblasts |
| MMRV (ProQuad) (Frozen: Recombinant Albumin) | 01/2021[b] | MRC-5 cells including DNA and protein, sucrose, hydrolyzed gelatin, sodium chloride, sorbitol, monosodium L-glutamate, sodium phosphate dibasic, recombinant human albumin, sodium bicarbonate, potassium phosphate monobasic, potassium chloride, potassium phosphate dibasic, neomycin, bovine calf serum, other buffer and media ingredients |
| PCV13 (Prevnar 13) | 08/2017 | $CRM_{197}$ carrier protein, polysorbate 80, succinate buffer, aluminum phosphate |
| PPSV-23 (Pneumovax) | 09/2020 | isotonic saline solution, phenol |
| Rabies (Imovax) | 10/2019 | human albumin, neomycin sulfate, phenol red, beta-propiolactone |
| Rabies (RabAvert) | 2018 | chicken protein, polygeline (processed bovine gelatin), human serum albumin, potassium glutamate, sodium EDTA, ovalbumin, neomycin, chlortetracycline, amphotericin B |
| Rotavirus (RotaTeq) | 01/2021[b] | sucrose, sodium citrate, sodium phosphate monobasic monohydrate, sodium hydroxide, polysorbate 80, cell culture media, fetal bovine serum |

# Appendix B

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Rotavirus (Rotarix) | 01/2021[b] | dextran, Dulbecco's Modified Eagle Medium (sodium chloride, potassium chloride, magnesium sulfate, ferric (III) nitrate, sodium phosphate, sodium pyruvate, D-glucose, concentrated vitamin solution, L-cystine, L-tyrosine, amino acids, L-glutamine, calcium chloride, sodium hydrogenocarbonate, and phenol red), sorbitol, sucrose, calcium carbonate, sterile water, xanthan [Porcine circovirus type 1 (PCV1) is present in Rotarix. PCV-1 is not known to cause disease in humans.] |
| Smallpox (Vaccinia) (ACAM2000) | 03/2018 | HEPES, 2% human serum albumin, 0.5 - 0.7% sodium chloride USP, 5% Mannitol USP, neomycin, polymyxin B, 50% Glycerin USP, 0.25% phenol USP |
| Td (Tenivac) | 11/2019 | aluminum phosphate, formaldehyde, sodium chloride |
| Td (TDVAX) | 09/2018 | aluminum phosphate, formaldehyde, thimerosal |
| Tdap (Adacel) | 12/2020 | aluminum phosphate, formaldehyde, 2-phenoxyethanol, glutaraldehyde |
| Tdap (Boostrix) | 09/2020 | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 |
| Typhoid (Typhim Vi) | 03/2020 | formaldehyde, phenol, polydimethylsiloxane, disodium phosphate, monosodium phosphate, sodium chloride |
| Typhoid (Vivotif Ty21a) | 9/2013 | sucrose, ascorbic acid, amino acids, lactose, magnesium stearate, gelatin |
| Varicella (Varivax) Frozen | 01/2021[b] | sucrose, hydrolyzed gelatin, sodium chloride, monosodium L-glutamate, sodium phosphate dibasic, potassium phosphate monobasic, potassium chloride, MRC-5 human diploid cells including DNA & protein, sodium phosphate monobasic, EDTA, neomycin, fetal bovine serum |
| Yellow Fever (YF-Vax) | 2/2019 | sorbitol, gelatin, sodium chloride |
| Zoster (Shingles) (Shingrix) | 01/2021[b] | sucrose, sodium chloride, dioleoyl phosphatidylcholine (DOPC), 3-O-desacl-4'monophosphoryl lipid A (MPL), QS-21 (a saponin purified from plant extract *Quillaja saponaria* Molina), potassium dihydrogen phosphate, cholesterol, sodium dihydrogen phosphate dihydrate, disodium phosphate anhydrous, dipotassium phosphate, polysorbate 80, host cell protein and DNA |

**Abbreviations:** DT = diphtheria and tetanus toxoids; DTaP = diphtheria and tetanus toxoids and acellular pertussis; Hep A = Hepatitis A; Hep B = Hepatitis B; Hib = *Haemophilus influenzae* type b; HPV = human papillomavirus; IPV = inactivated poliovirus; LAIV = live, attenuated influenza vaccine; MenACWY = quadrivalent meningococcal conjugate vaccine; MenB = serogroup B meningococcal vaccine; MMR = measles, mumps, and rubella; MMRV = measles, mumps, rubella, varicella; PCV13 = pneumococcal conjugate vaccine; PPSV23= pneumococcal polysaccharide vaccine; Td = tetanus and diphtheria toxoids; Tdap = tetanus toxoid, reduced diphtheria toxoid, and acellular pertussis.

[a]All information was extracted from manufacturers' package inserts. The date shown in the Date column of the table is the edition date of the PI in use in January 2021 by month and year. In some cases, only a year was printed on the PI. If in doubt about whether a PI has been updated since this table was prepared, check the FDA's website at:

http://www.fda.gov/BiologicsBloodVaccines/Vaccines/ApprovedProducts/ucm093833.htm

[b]The PI was not dated and this is the date the PI was reviewed for this table.

[c]All influenza vaccine in this table are 2021-22 northern hemisphere formulation.                    November 2021

**B**

# Exhibit 15

NAME AND ADDRESS OF ATTORNEY

ADVOCATES FOR FAITH & FREEDOM
Robert Tyler (SBN 179572)
btyler@faith-freedom.com
Julianne Fleischer (SBN 337006)

PHONE: (951) 600-2733

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIAL JUDGE Hon. Marilyn L. Huff | COURT REPORTER |

| | | |
|---|---|---|
| SARA ROYCE; SARAH CLARK; TIFFANY BROWN; and KRISTI CARAWAY | ) ) ) ) ) | CIVIL NO. 23-cv-2012-H-BLM |
| (Appellant/Appellee)        Plaintiff | ) ) | |
| vs | ) ) ) | |
| TOMÁS ARAGÓN, in his official capacity as the State Public Health Officer, | ) ) ) ) | NOTICE OF APPEAL        (Civil) |
| (Appellant/Appellee)        Defendant | | |

Notice is hereby given that Sara Royce, Sarah Clark, Tiffany Brown, and Kristi Caraway

☒    Plaintiff _____ Defendant above named, hereby appeals to the United States Court

of Appeals for the:      (check appropriate box)

☒    Ninth Circuit                                    Federal Circuit

from the:                (check appropriate box)

☒    Final Judgment                              Order (describe)

entered in this proceeding on the ____17____ day of ____March____ 20 _25_____.
Transcripts required              Yes                    No.
Date civil complaint filed:                10/31/23              .

Date: 4/16/25

_Julianne Fleischer_
Signature

::ODMA\PCDOCS\WORDPERFECT\17861\1 May 5, 1999 (10:03am)



# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sara Royce; Sarah Clark; Kristi Caraway; Tiffany Brown | Civil Action No.   23-cv-2012-H-BLM |
| **Plaintiff,** | |
| **V.** | |
| See Attachment | **JUDGMENT IN A CIVIL CASE** |
| **Defendant.** | |

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

For the foregoing reasons, the Court grants Defendant's motion to dismiss and dismisses Plaintiffs' third amended complaint. Further, because the deficiencies in the operative complaint identified above cannot be cured by amendment of the complaint, the Court dismisses Plaintiff's third amended complaint with prejudice and without leave to amend. See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011) (explaining that leave to amend is only "warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint"). This case is hereby closed.

| | |
|---|---|
| **Date:**  ___3/17/25___ | **CLERK OF COURT** |
| | **JOHN MORRILL, Clerk of Court** |
| | By:  s/  M.Williams |
| | M.Williams, Deputy |

# United States District Court

### SOUTHERN DISTRICT OF CALIFORNIA

(ATTACHMENT)

**Civil Action No.**  23-cv-2012-H-BLM

Defendant(s): Rob Bonta, in his official capacity as attorney general of California; Tomas Aragon, in his official capacity as the State Public Health Officer.

# Exhibit 16

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 263 of 341    Page
                                    ID #:819
    Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 1 of 20

**THE NICOL LAW FIRM**
Jonathon D. Nicol, State Bar No. 238944
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: 816-514-1178
Facsimile: 816-327-2752
Email: jdn@nicolfirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY DOESCHER, STEVE DOESCHER, DANIELLE JONES, KAMRON JONES, RENEE PATTERSON, and DR. SEAN PATTERSON, individually and on behalf of their minor children, | Case No.: |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | **JURY DEMANDED** |
| v. | **[42 U.S.C. § 1983]** |
| TOMÁS ARAGÓN, in his official capacity as Department of Public Health Director and as the State Public Health Officer; ROB BONTA, in his official capacity as Attorney General of California. | |
| Defendants. | |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 264 of 341   Page
ID #:820
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 2 of 20

## COMPLAINT

Is it within California's authority to require families with sincere religious convictions to vaccinate their children for school enrollment, while at the same time granting secular families an exemption from school vaccination mandates on medical grounds? Such a policy violates the United States Constitution; therefore, Plaintiffs request declaratory and injunctive relief. Plaintiffs allege as follows:

## INTRODUCTION

1.      This action challenges the constitutionality of Senate Bill (SB) 277[1] under the Free Exercise Clause.

2.      SB 277 eliminated the option for parents to object to vaccinations required to attend public or private school on personal grounds, including based on their religious convictions. Unvaccinated children can still attend public or private schools for secular reasons, if they are from foster families, homeless, from military families, enrolled with an individualized education program ("IEP"), or possess a medical exemption. Children in California are also allowed to participate in extracurricular activities, camps, attend religious services and visit museums and landmarks all without vaccination proof. The absence of a rational, let alone compelling, justification for removing religious exemptions to school-required vaccinations raises constitutional questions, especially when religiously exempt students do not pose a greater risk than secularly exempt students.

3.      California stands out as one of a handful of states denying religious students the benefits of private or public school education. A recent decision by a United States District Court found that Mississippi's compulsory-vaccination law (a law similar to California's) violated the Free Exercise Clause by excluding religious exemptions.[2] The Wyoming Supreme Court, in an effort to construe a school vaccination mandate to be

---

[1] Codified at Cal. Health & Saf. Code §§ 120325-120375.

[2] *Bosarge et al. v. Edney et al.*, United States District Court for the Southern District of Mississippi, Case No. 1:22-cv-00233-HSO-BWR.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

constitutional, modified it to include a religious exemption, acknowledging the legislature's lack of authority to infringe on religious exercise.[3]

4.      Plaintiffs hold unwavering sincere religious beliefs that prohibit them from vaccinating themselves or their children, and this commitment has come at a considerable cost. California's mandate, requiring various vaccines for students entering public or private schools (Cal. Health & Saf. Code §§ 120325-120375), places Plaintiffs' children at a disadvantage, depriving them of educational access enjoyed by their secular counterparts.

5.      SB 277 encroaches upon and deprives Plaintiffs' First Amendment rights under the United States Constitution.  Consequently, Plaintiffs seek a declaratory judgment and an injunction to prevent the Defendants from enforcing a law that lacks provisions for religious accommodation.

## JURISDICTION AND VENUE

6.      This is a federal question action under 42 U.S.C. § 1983.

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343(a), this being an action arising under, and for the violations of, federal laws.  This action arises under the First and Fourteenth Amendments to the United States Constitution.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district

9.      This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure.  This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

---

[3] *In re LePage*, 18 P.3d 1177 (Wyo. 2001).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 266 of 341   Page
ID #:822
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 4 of 20

## **PARTIES**

**A.    Plaintiffs**

**Amy and Steve Doescher**

10.    Plaintiffs Amy Doescher and Steve Doescher are citizens of California and reside in Placerville.

11.    The Doeschers are parents of one school-aged child:  A.D. (16-years-old).

12.    A.D. attends a charter school under independent study guidelines.

13.    A.D. is exempt from SB 277 and attends the charter school two days a week in person.

14.    At the same time, A.D. is not permitted to attend school outside of the independent study framework in person more than two days a week because of not being fully vaccinated.

15.    The Doeschers attend District Church in El Dorado Hills, California.

16.    Both of the Doeschers have gone on medical mission trips.

17.    The Doeschers tithe monthly.

18.    Steve Doescher leads a junior high ministry youth group at Church of the Foothills in Cameron Park, California.

19.    A.D. has received some vaccinations earlier in life, but the Doeschers do not plan to vaccinate her further.

20.    The Doeschers prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that vaccinations violate their creed.

21.    The Doeschers wish for A.D. to attend public or private school in California free from religious discrimination.

22.    Ironically, Steve Doescher, who is a teacher at John Adams Academy in El Dorado Hills, California, submitted a religious exemption to vaccination requirements request for himself through his employer that was granted without issue.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 267 of 341   Page
ID #:823
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 5 of 20

**Danielle and Kamron Jones**

23.     Plaintiffs Danielle and Kamron Jones are citizens of California and reside in Napa.

24.     The Joneses are parents to four school-aged children:  K.J. (14-years-old); A.J. (11-years-old); J.J. (10-years-old); and H.J. (7-years-old).

25.     Of these four children, K.J. is partially vaccinated, and the other three children are not vaccinated.

26.     As a result, the Joneses homeschool their children.

27.     About 15 years ago, the Joneses started their own church due to God's calling.

28.     After starting their church, the pastor of The Rock Worship Center suggested that the two churches merge, which they did.

29.     Soon after merging, the pastor of The Rock Worship Center retired, and the Joneses took over as lead pastors.

30.     The Joneses have been lead pastors for ten years.

31.     The Joneses tithe every month.

32.     The Joneses seek the Holy Spirit regarding all aspects of health for their family, and trust in His leading when making decisions regarding what will be placed in their children's bodies.

33.     The Joneses prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that vaccinations violate their creed.

34.     The Joneses wish for K.J. to attend public high school free from religious discrimination, and for all of their other kids to do so when they are old enough.

**Renee Patterson and Dr. Sean Patterson**

35.     Plaintiffs Dr. Sean and Renee Patterson are citizens of California and reside in El Dorado Hills.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 268 of 341   Page
ID #:824
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 6 of 20

36.     The Pattersons are parents to three school-aged children:  K.P. (17-years-old); C.P. (15-years-old); and K.P. (12-years-old).

37.     The Pattersons' religious beliefs about vaccination date to 1999, after hearing a man preach about vaccines being antithetical to the Bible and the Book of Revelation. That sermon referenced blood pressed from grapes, likened the human cardiovascular system to rivers, and pronounced that vaccines were evil.

38.     In 2003 and 2004 in Sacramento, California, the Pattersons and their fellow church members protested legislation seeking to discriminate against religious rights in the vaccine context .  This protest arose from God telling Dr. Patterson that this is *his* fight.

39.     The Pattersons prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that they must not vaccinate.

40.     The Pattersons' children are not vaccinated with no plans for future vaccinations.

41.     The Pattersons wish for all of their children to attend public or private school in California free from religious discrimination.

42.     The Pattersons have been disheartened by watching their kids be excluded from the schools that are funded by their tax dollars.  Their children have lost friendships, been spoken to inappropriately, and treated unfairly.

## B.     Defendants

43.     Defendant Tomás Aragón is made party to this Action in his official capacity as the Department of Public Health Director and as the State Public Health Officer.  Under California law, Dr. Aragón is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of SB 277 for school-aged children.

44.     Defendant Rob Bonta is made party to this Action in his official capacity as the Attorney General of California.  Under California law, Attorney General Bonta is the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 269 of 341    Page
ID #:825
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 7 of 20

state's chief legal officer and is responsible for enforcing, and does enforce, the mandatory immunization requirements of SB 277 for school-aged children. Attorney General Bonta is charged with implementing and enforcing, and does implement and enforce, SB 277 through, among other things, threatening to bring criminal charges against anyone who violates SB 277.

## FACTUAL ALLEGATIONS

### General Background of Compulsory Childhood Vaccination in California

45. In 1960, the California Legislature began to institute certain vaccination requirements for school-age children and included a religious exemption.

46. The possibility for an exemption, however, was limited, requiring those seeking a religious exemption to vaccinations to be a bona fide member of a "recognized denomination" whose religious teachings required "reliance on prayer or spiritual means for healing" (*e.g.*, Christian Scientists).

47. California started to require vaccines for public and private school entry in 1961, including a single dose of polio vaccination for school attendance.

48. That same year, California enacted a personal belief exemption ("PBE"), a provision allowing parents to exempt their children from school vaccine requirements if the requirements contradict parental beliefs – including those considered religious or spiritual beliefs.

49. Throughout the 1970s and 1990s, the California Legislature added to the required school vaccination schedule that children be immunized against diphtheria, pertussis (whooping cough), tetanus, measles, mumps, rubella, haemophilus influenzae type-b, hepatitis B, and varicella (chicken pox). All of these requirements allowed for a PBE, which included a parent exempting their child if they had sincerely held religious beliefs against vaccinations. In 2010, the California Legislature added a tetanus, diphtheria, and pertussis booster as a requirement for advancement to the seventh grade in public and private schools. A PBE was also allowed for this booster.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 270 of 341    Page
                                    ID #:826
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 8 of 20

50.     In 2012, AB 2109 was passed requiring PBEs to be signed by a doctor.  In his signing statement, then Governor Brown directed the California Department of Public Health to allow for religious exemptions to vaccination as an alternative to a parent being required to get a doctor's signature on the PBE form.

51.     In 2014, PBEs were held by a mere 2.5% of students, and only 0.7% of students were completely unvaccinated.  Most were partially vaccinated.

### SB 277:  Removal of California's PBE and Its Religious Exemption

52.     In 2015, the California Legislature passed SB 277, which abolished the PBE, thereby removing parents' ability to decline school-required vaccinations based on their sincerely held religious beliefs.

53.     Nonetheless, SB 277 includes several exemptions to school vaccination requirements, including:

    a.  Medical exemptions (Cal. Health & Safety Code § 120370(a));

    b.  Exemptions for "home-based private school or…an independent study program[,]" (*Id*. at § 120335(f)); and

    c.  Exemptions for students who qualify for an IEP (*Id*. at § 120335(h)).

54.     California also allows several categories of children to attend public and private schools without proof of immunity:

    a.  <u>Foster Care Children</u>:  Section 48850(f)(8)(B) of the Education Code was amended this year to provide that when foster care children are transferred to a new school, the school "shall immediately enroll the foster child even if the foster child…is unable to produce…records normally required for enrollment, such as…proof of immunization history…"

    b.  <u>Homeless Children</u>:  Section 48852.7(c)(3) of the Education Code provides that to "ensure that the homeless child has the benefit of matriculating with his or her peers in accordance with the established feeder patterns of school districts…[t]he new school shall immediately enroll the homeless child even if the child…is unable to produce…records normally required for

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

enrollment…including, but not limited to, records or other proof of immunization history…"

    c.  <u>Military Families</u>: Section 48204.6(c)(3) of the Education Code provides that to "ensure that the pupil who is a child of a military family has the benefit of matriculating with his or her peers in accordance with the established feeder patterns of school districts…[t]he new school shall immediately enroll the pupil who is a child of a military family even if the child…is unable to produce…records normally required for enrollment…including, but not limited to, records or other proof of immunization history…"

55.    Strikingly, when deliberating SB 277, the California State Senate's Judiciary committee admitted that repealing the PBE "effectively repeals any possible religious exemptions" and might conflict with the Free Exercise Clause.[4]

56.    The mass vaccination of California parents, with the COVID-19 vaccine, since 2021, has translated into more parents becoming aware of and submitting religious exemptions for vaccines in response to workplace vaccine mandates, under the 1964 Civil Rights Act.  This has created a dichotomy where they are able to continue with work without being vaccinated due to their sincerely held religious beliefs, but their children are not afforded the same exemption to attend public or private school in California.

57.    California has school vaccination rates that are higher than the national average for each disease required for school entrance.[5]  Research confirms that herd immunity is achieved against contagious diseases when vaccinations rates reach 80% to

---

[4]  See Senate Judiciary Committee Hearing, April 27, 2015, at page 16, available at: https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160SB277# (accessed November 13, 2023).

[5] *See* American Academy of Pediatrics, *Child Vaccination Across America*, available at: https://downloads.aap.org/AAP/Vaccine/index.html (accessed November 13, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

95%.[6]   If the small group of devoted vaccination objectors could exercise religious exemptions to school-required vaccinations, infection rates would not rise with any statistical significance.  Thus, there can be no overriding governmental interest that justifies the infringement on religious belief.

58.    California is unable to establish that students with religious exemptions to vaccinations present a higher risk compared to those with secular exemptions.

59.    California is one of only five states that does not offer a religious exemption from compulsory school-vaccination laws.[7]

60.    In 2001, in the matter *In re LePage*, 18 P.3d 1177 (Wyo. 2001), the Supreme Court of Wyoming held that the state Department of Health was not authorized to inquire about the sincerity of a mother's religious beliefs when determining whether her daughter was exempt from a public school immunization requirement.  The Supreme Court of Wyoming held that the Department of Health is required to grant an exemption upon the submission of a written objection and does not allow the Department of Health to make an inquiry into the sincerity of the requestor's religious beliefs.  In reversing the lower court, the court balanced a valid state interest in protecting schoolchildren from disease with the relatively low number of requests for exemption and its confidence in parents to make decisions in the best interest of their children's physical and spiritual health.

61.    Arkansas previously had a limited religious exemption to school-required vaccinations similar to that allowed in California in 1960.  In *Boone v. Boozman*, 217 F. Supp. 2d 938 (E.D. Ark. 2002), a mother who possessed religious objections unrecognized

---

[6] See Carrie MacMillan, *Herd Immunity: Will We Ever Get There?*, Yale Medicine, May 21, 2021, available at:  https://www.yalemedicine.org/news/herd-immunity (accessed November 13, 2023).

[7] *See* National Conference of State Legislatures, *States With Religious and Philosophical Exemptions From School Immunization Requirements*, last updated August 3, 2023, available at:  https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements (accessed November 13, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 273 of 341    Page
ID #:829
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 11 of 20

by the Arkansas statute challenged the limited religious exemption on First Amendment grounds. *Boone*, *supra*, 217 F. Supp. 2d at 951. The court held that the limitation of the statutory exemption to a "recognized church or religious denomination" violated the Free Exercise Clause. *Id*. Arkansas soon thereafter enacted a comprehensive religious exemption for school-required vaccinations, which remains the law today.

62. More recently, in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the U.S. Supreme Court went even further than *Boone*'s rationale and ruled that a law is not neutral and generally applicable, and thus invokes strict scrutiny, if it treats "*any* comparable secular activity more favorably than religious exercise." *Id*. at 1296 (emphasis in original). *See, e.g., Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (lack of general applicability alone triggered strict scrutiny review); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018) (non-neutrality alone invoked strict scrutiny).

63. In *Tandon*, California regulations intended to slow the spread of COVID-19 limited religious gatherings, but treated comparable secular activities – such as getting haircuts and retail shopping – more favorably. *Id*. at 1297. *Tandon* is controlling precedent, and one of the primary bases of Plaintiffs' case.

64. The Supreme Court employed similar reasoning in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S. Ct. 63 (2020), holding that a New York regulation that prohibited religious gatherings but permitted similar secular conduct violated the First Amendment where the secular and religious activities in question presented comparable contagion risks. *Id*. at 67.

65. Most recently, in *Bosarge et al. v. Edney et al.*, United States District Court for the Southern District of Mississippi, Case No. 1:22-cv-00233-HSO-BWR, the plaintiffs contended that Mississippi's mandatory vaccine statute requiring students to be vaccinated in order to attend public and private Mississippi schools violated their rights under the Free Exercise Clause. The plaintiffs' minor children were unvaccinated due to their parents' religious beliefs. The plaintiffs claimed that due to Mississippi's compulsory vaccination

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 274 of 341    Page
ID #:830
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 12 of 20

law, their children had not been allowed to enroll at public or private schools in the State of Mississippi.

66.    The *Bosarge* court granted both summary judgment and a permanent injunction in favor of the plaintiffs:

> "Because Mississippi affords a discretionary medical exemption process by statute, it must similarly afford a religious accommodation process. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021).  For these reasons, and those set forth in the Court's preliminary injunction order (Dkt. 77), [Mississippi's compulsory vaccination law] is DECLARED unconstitutional as applied to Plaintiffs, who have sincerely held religious beliefs about vaccination."  (Dkt. 87.)

The *Bosarge* court permanently enjoined the defendants from enforcing Mississippi's compulsory vaccination law unless they provided an option for requesting a religious exemption.  (Dkt. 87.)

67.    While California forbids even *submitting* a religious exemption for school-required vaccinations at school enrollment, California has granted tens of thousands of medical exemptions over the past several decades.  California employers, colleges, and universities also have granted thousands of religious exemptions during this same time period.  At no time have any of these exemptions caused a disease outbreak.  This is similar to deeming shopping to be a "necessity" but simultaneously prohibiting church attendance.

## FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT FREE EXERCISE RIGHTS WITH RESPECT TO
## PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS

68.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

69.    The First Amendment of the U.S. Constitution provides that:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

thereof." The Fourteenth Amendment applied the First Amendment to the states. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

70.     Parents have the right to "direct the religious upbringing of their children" and "when the interests of parenthood are combined with a free exercise claim […] more than merely a 'reasonable relation to some purpose within the competency of the State' is required to sustain the validity of the State's requirement under the First Amendment." *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972).

71.     The Supreme Court has repeatedly recognized that "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990).

72.     "In applying the Free Exercise Clause, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs." *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 n.9, (1987). The "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).

73.     Courts should not inquire into the validity or plausibility of a person's beliefs; instead, the task is to determine whether "the beliefs professed [] are sincerely held and whether they are, in [a believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

74.     Plaintiffs' sincerely held religious beliefs, which prohibit them from vaccinating their minor children, have been unconstitutionally burdened by California. SB 277 unconstitutionally burdens Plaintiffs because it forces them to forego their religious beliefs for their children to receive a public or private education.

75.     California has pitted Plaintiffs' consciences and creeds against educating their children, the latter which is also, incidentally, a fundamental right under the California Constitution. Nevertheless, Plaintiffs' children cannot obtain a formal education and everything that comes with it (socialization, network effects, etc.) without violating their religious convictions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 276 of 341   Page
ID #:832
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 14 of 20

76.     Further, A.D., and other independent study students exempt from SB 277, can attend charter schools in person two days a week unvaccinated, yet are not permitted to attend school outside of the independent study framework in person more than two days a week because of not being fully vaccinated.

77.     Diseases do not know what day of the week it is.

78.     The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U. S. 439, 450 (1988). "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

79.     However, California families with secular, medical motivations for declining compulsory immunization can be exempted from the same requirements.  Children who are homeless, or who come from foster or military families, can also be exempted from the same requirements.

80.     California has made an unconstitutional value judgment that secular motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.

81.     While California may have a general healthcare interest in promoting childhood immunization, the First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.  The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly.  It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (*or abstention from*) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. ___ (2022); 2022 WL 2295034; 2022 U.S. LEXIS 3218 (emphasis added).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 277 of 341    Page
ID #:833
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 15 of 20

82.    A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice." *Id*. at *27.  A policy can fail this test if it "discriminate[s] on its face," or if a religious exercise is otherwise its "object." *Id*.

83.    For multiple reasons, California's SB 277 is neither neutral nor generally applicable.  Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296.  *See also Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-01781-PHX-SPL, at *16 (D. Ariz. Nov. 5, 2021) (concluding that a college's COVID-19 vaccine policy was not generally applicable, triggering strict scrutiny under the First Amendment, because "Plaintiffs presented evidence . . . that Defendant has made at least one exception" to the policy).

84.    Whether two activities are comparable for purposes of the Free Exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Id*.  Here, with regard to regulating the conduct of its secular and religious citizens, the government holds the same interest in preventing disease.  Further, the secular and religious activities at issue are not only comparable, but they are also exactly the same (seeking exemption from compulsory vaccination).

85.    Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton, supra,* 141 S. Ct. at 1877 (citations omitted).  California's elevation of secular objections above religious objections is not the result of random happenstance, but rather of deliberate exclusion.  The California Legislature intentionally erased a pre-existing personal belief exemption for school-required vaccinations, thereby removing a religious exemption option, and in close temporal proximity enacted a medical exemption to SB 277.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 278 of 341   Page
ID #:834
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 16 of 20

86.     Even if California could show that it did not target religious conduct for intentional exclusion (it cannot), its mandatory immunization regulations invoke heightened scrutiny because the statute fails the general-applicability test.

87.     A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*. While California may have a general healthcare interest in promoting childhood vaccination, its interest is not so extraordinary as to prohibit an exemption for secular reasons, which poses a similar contagion hazard as a hypothetical religious exemption. Further, California does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.  Nor does California require that adult faculty, staff members, or school visitors provide proof of immunization.  Indeed, the plaintiffs include a schoolteacher, from the same household as one of his unvaccinated children – who was able to obtain a work religious exemption – while the state simultaneously denies his children the fundamental right to an education at that same school.

88.     California's vaccination laws fail the general applicability test on additional, alternative grounds because the medical exemption system provides for individualized discretionary review.  "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . ." *Id*. at 1879.

89.     In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason."  *Id*. at 1872.

90.     Because its medical-exemption process provides for discretionary review at multiple levels, California's SB 277 fails the general-applicability test.  California has instituted a system of customized review – delegated first to private physicians and second to the clinical staff at CDPH "with expertise in immunization" – who at each level conduct individualized review of every exemption in order to make a determination.

91.     Therefore, for multiple reasons, California's SB 277 invokes heightened judicial scrutiny.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 279 of 341    Page
ID #:835
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 17 of 20

92.    California's SB 277 cannot withstand strict scrutiny because it is not narrowly tailored.  In the context of government regulations targeting infectious disease, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest" in reducing disease. *Tandon*, 141 S. Ct. at 1296-97.  Where utilization of such less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 578 (1993).

93.    Regarding under-inclusivity, where the government permits secular activities, such as a medical exemption, "it must show that the religious exercise at issue is more dangerous." *Tandon*, 141 S. Ct. at 1297.

94.    When a law is over-inclusive, its "broad scope . . . is unnecessary to serve the interest, and the statute fails for that reason." *Lukumi*, 508 U.S. at 578.

95.    California's SB 277 cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve.  Instead of regulating with the surgical precision necessary to avoid conflict with its citizens' free exercise rights, California has deployed a blunt legislative hammer and, in one stroke, obliterated every possibility for religious observance.

96.    California's compulsory-immunization scheme is under-inclusive because it only applies to children in a school setting.  The mandate does not apply to non-school attending children (who regularly and unavoidably interact with their peers) nor to adults in the state, who comprise over 77% of California's population.

97.    SB 277 is also under-inclusive because children possessing a religious exemption for school-required vaccinations would pose no greater threat than their secular peers with a medical exemption.  Moreover, the immunization requirements do not apply to adults who are employed in California's school system, or to school visitors.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 280 of 341    Page
ID #:836
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 18 of 20

98.    Further, the existence of a religious exemption to vaccinations for attending school would have an immaterial impact on the number of individuals vaccinated in California overall given that it does not apply to adults.  Nor would the existence of a religious exemption materially impact the overall percentage of vaccinated school children.

99.    Given that California boasts one of the highest school vaccination rates in the country, allowing a religious exemption for a handful of students, just as secular medical exceptions are permitted, would constitute an actual attempt at narrow tailoring.

100.    Because California's SB 277 is simultaneously too narrow and too broad to fulfill the government interests in supposedly attempts to accomplish, the regulation lacks the narrow tailoring necessary to survive strict scrutiny review.

101.    Accordingly, the presence of a vaccination medical exemption and the intentional removal of the PBE, and thereby a religious exemption through SB 277, has violated and continues to violate Plaintiffs' rights to free exercise of religion under the First Amendment.

102.    "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm.

103.    Absent injunctive and declaratory relief prohibiting Defendants from enforcing the unconstitutional aspects of SB 277, Plaintiffs will continue to be harmed.

104.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' actions as they relate to SB 277.

105.    Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## **INJUNCTIVE RELIEF ALLEGATIONS**

106.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 281 of 341    Page
ID #:837
Case 2:23-cv-02995-KJM-JDP    Document 1    Filed 12/22/23    Page 19 of 20

107.   Plaintiffs allege that both on its face and as applied, SB 277 violates their First Amendment rights and their right to be free from unlawful statutes.

108.   Plaintiffs are being and will continue to be irreparably harmed unless this Court enjoins Defendants from enforcing SB 277.

109.   Plaintiffs have no plain, speedy, and adequate remedy at law to prevent Defendants from enforcing SB 277.

110.   If not enjoined by this Court, Defendants will continue to implement and enforce SB 277 in violation of Plaintiffs' constitutional rights.

111.   Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

112.   Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

113.   Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether SB 277, which allows for secular but not religious exemptions to school-required vaccinations, violates the United States Constitution.

114.   The case is presently justiciable because SB 277 and the absence of any religious exemption to school-required vaccination to the same applies to Plaintiffs and their children, who are currently harmed by being excluded from school.

115.   Declaratory relief is therefore appropriate to resolve this controversy.

## PRAYER

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that SB 277 is unconstitutional. Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing SB 277.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 282 of 341   Page
ID #:838
Case 2:23-cv-02995-KJM-JDP   Document 1   Filed 12/22/23   Page 20 of 20

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.    A preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees, and any other persons acting on their behalf from implementing and enforcing SB 277 without providing the option for a broad religious exemption to school-required vaccination;

B.    Declare that SB 277 is unconstitutional on its face without a broad religious exemption to school-required vaccination;

C.    Declare that SB 277 is unconstitutional as applied to Plaintiffs insofar as enforcing it violates Plaintiffs' First Amendment right to free exercise of religion;

D.    Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and

E.    For any such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

DATED:  December 22, 2023    **THE NICOL LAW FIRM**

By:   /s/ *Jonathon D. Nicol*
JONATHON D. NICOL
Counsel for Plaintiffs

Plaintiffs demand trial by jury.

Respectfully submitted,

DATED:  December 22, 2023    **THE NICOL LAW FIRM**

By:   /s/ *Jonathon D. Nicol*
JONATHON D. NICOL
Counsel for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# Exhibit 17

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 284 of 341   Page
ID #:840
Case 2:23-cv-02995-KJM-JDP   Document 35   Filed 12/09/24   Page 1 of 27

**THE NICOL LAW FIRM**
Jonathon D. Nicol, State Bar No. 238944
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: 816-514-1178
Facsimile: 816-327-2752
Email: jdn@nicolfirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY DOESCHER, STEVE DOESCHER, DANIELLE JONES, KAMRON JONES, RENEE PATTERSON, and DR. SEAN PATTERSON, individually and on behalf of their minor children,<br><br>Plaintiffs,<br><br>v.<br><br>TOMÁS ARAGÓN, in his official capacity as Department of Public Health Director and as the State Public Health Officer.<br><br>Defendant. | Case No.: 2:23-cv-02995-KJM-JDP<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY DEMANDED**<br><br>**[42 U.S.C. § 1983]** |

1

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 285 of 341    Page
ID #:841
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 2 of 27

## **COMPLAINT**

Is it within California's authority to require families with sincere religious convictions to vaccinate their children for school enrollment, while at the same time granting secular families an exemption from school-vaccination mandates on medical grounds?  Such a policy violates the United States Constitution; therefore, Plaintiffs request declaratory and injunctive relief.  Plaintiffs allege as follows:

## **INTRODUCTION**

1.     This action challenges the constitutionality of Senate Bill (SB) 277[1] under the Free Exercise Clause.

2.     SB 277 eliminated the option for parents to object to vaccinations required to attend public or private school on personal grounds, including based on their religious convictions.  The absence of a rational, let alone compelling, justification for removing religious exemptions to school-required vaccinations raises constitutional questions, especially when religiously exempt students do not pose a greater risk than secularly exempt students.

3.     California stands out as one of a handful of states denying religious students the benefits of private or public education.  A recent decision by a United States District Court found that Mississippi's compulsory-vaccination law (a law similar to SB 277) violated the Free Exercise Clause by excluding religious exemptions.[2]   The Wyoming Supreme Court, in an effort to construe a school vaccination mandate to be constitutional, modified it to include a religious exemption, acknowledging the legislature's lack of authority to infringe on religious exercise.[3]

_____

[1] Codified at Cal. Health & Saf. Code §§ 120325-120375.

[2] *Bosarge et al. v. Edney et al.*, United States District Court for the Southern District of Mississippi, Case No. 1:22-cv-00233-HSO-BWR.

[3] *In re LePage*, 18 P.3d 1177 (Wyo. 2001).

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 286 of 341   Page
ID #:842
Case 2:23-cv-02995-KJM-JDP   Document 35   Filed 12/09/24   Page 3 of 27

4.      Plaintiffs hold unwavering, sincere religious beliefs that prohibit them from vaccinating themselves or their children. California's mandate, requiring various vaccines for students entering public or private schools (Cal. Health & Saf. Code §§ 120325-120375), places Plaintiffs' children at a disadvantage, depriving them of educational access and socialization enjoyed by their secular counterparts.  This unconstitutional mandate has injured the Plaintiffs in many ways, as set forth in detail below.

5.      SB 277 encroaches upon and deprives Plaintiffs' First Amendment rights under the United States Constitution.  Consequently, Plaintiffs seek a declaratory judgment and an injunction to prevent Defendant from enforcing a law that lacks provisions for religious accommodation.

## JURISDICTION AND VENUE

6.      This is a federal question action under 42 U.S.C. § 1983.

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343(a), this being an action arising under, and for the violations of, federal laws.  This action arises under the First and Fourteenth Amendments to the United States Constitution.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district

9.      This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure.  This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

///

///

///

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 287 of 341   Page
ID #:843
Case 2:23-cv-02995-KJM-JDP   Document 35   Filed 12/09/24   Page 4 of 27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PARTIES

## A.   Plaintiffs

10.   Religious exemptions to vaccinations in the school context are based on a *parent's* religious beliefs because *parents* decide the religious habits of their children. *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972).  Courts do not involve themselves with getting between parents and children.  In all states that have directly considered the issue (including, without limitation, Washington, Michigan, Pennsylvania, Arizona, and Mississippi), courts have ruled that the religious objections of the familial unit, as expressed by the parents, are determinative.

11.   Furthermore, parents make their child's educational decisions.  And of course, parents make their child's healthcare decisions – including whether to be vaccinated or not.

12.   Plaintiffs' children are all entitled to benefit from the fundamental right to education provided for by the California constitution.

13.   Each of Plaintiffs has suffered a concrete and actual injury in fact, experiencing a real and present harm, due to the Defendant's actions.  Those harms have included substantial burdens – just because Plaintiffs exercise their religious beliefs – including financial burdens, the inability to use and enjoy a government benefit (public education), changes in behavior (including foregoing employment opportunities because of the need to homeschool their children), and societal stigma that has caused real psychological manifestations.  There can be no doubt here that Defendant is treating comparable secular activity and secular students (many classes who Defendant allows to attend school unvaccinated) more favorably than those who choose to exercise their religious beliefs, with concrete and actual injuries to Plaintiffs.

**Amy and Steve Doescher**

14.   Plaintiffs Amy Doescher and Steve Doescher are citizens of California and reside in Placerville.

4

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 288 of 341   Page
ID #:844
Case 2:23-cv-02995-KJM-JDP   Document 35   Filed 12/09/24   Page 5 of 27

15.     The Doeschers are parents of one school-aged child: A.D. (16-years-old). A.D. received some vaccinations earlier in life, but the Doeschers do not plan to vaccinate her further.  A.D. attends a charter school under independent-study guidelines.  A.D. is exempt from SB 277 and attends the charter school two days a week in person.  At the same time, A.D. is not permitted to attend school outside of the independent-study framework in person more than two days a week because of not being fully vaccinated.  A.D.'s charter school does not support socialization, as A.D. may only attend school for two days a week, then go home to complete homework.

16.     A.D. is caught in between a rock and a hard place.  Her sincere religious beliefs prevent her from being vaccinated.  And her school prevents her from having the typical interactions with children that "normal" children get.  This has caused much stigma for A.D., as children wonder why she is not allowed to attend the full menu of school and school activities.  And the sad truth is, the only answer is her religious beliefs are not accommodated.

17.     As a result, A.D. must engage in outside activities such as gymnastics to make up for the socialization shortcomings caused by SB 277.  The Doeschers spend approximately $10,000.00 per year on independent-study costs, such costs that they would not otherwise have to incur if California offered a religious exemption for A.D. herself or for the Doeschers to secure a religious exemption on A.D.'s behalf.

18.     The Doeschers and A.D. also suffer injury by way of the inadequate socialization inherent to independent study, with limited opportunities for building friendships, academic colleagues, and other social connections otherwise available to students in California's traditional school systems.

19.     The Doeschers attend District Church in El Dorado Hills, California.  Both of the Doeschers have gone on medical mission trips.  The Doeschers tithe monthly.  Steve Doescher leads a junior high ministry youth group at Church of the Foothills in Cameron Park, California.  The Doeschers prayed extensively and consulted the Bible

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 289 of 341    Page
ID #:845
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 6 of 27

when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that vaccinations violate their creed.

20. The Doeschers wish for A.D. to attend public school in California, in-person, five days a week, free from religious discrimination. But in order for the Doeschers' wish to come true, they would have to forego exercising their religious freedom and instead submit to SB 277's vaccination requirements, which currently lack a religious exemption. The Doeschers would in fact enroll A.D. in full-time public school if it were not for the state's vaccination laws. However, because A.D. has not received all required vaccines, A.D. is unable to enroll in public or private school and interact with her friends, whom she is permitted to attend church with and interact with frequently outside of church.

21. Ironically, Steve Doescher, who is a teacher at John Adams Academy in El Dorado Hills, California, submitted a religious exemption to vaccination requirements request for himself through his employer that was granted without issue. There is no reason for California to treat children more poorly than it treats adults.

**Danielle and Kamron Jones**

22. Plaintiffs Danielle and Kamron Jones are citizens of California and reside in Napa.

23. The Joneses are parents to four school-aged children: K.J. (14-years-old); A.J. (11-years-old); J.J. (10-years-old); and H.J. (7-years-old). Of these four children, K.J. is partially vaccinated, and the other three children are not vaccinated.

24. The Joneses attempted to enroll all of their children in public school via the Napa Valley Unified School District, including K.J. in public high school as recently as May 2024. All of the Joneses' children's enrollments were rejected for failing to show proof of having all required immunizations in accordance with SB 277. As a result, the Joneses have been forced to homeschool their children.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 290 of 341    Page
                                    ID #:846
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 7 of 27

25.    The Joneses spend approximately $4,300.00 per year on homeschooling costs for their children, costs they would not otherwise have to incur if California offered a religious exemption for the Joneses' children themselves or for the Joneses to secure religious exemptions on their children's behalf.  Danielle Jones also has lost significant wages and has had to forego professional opportunities due to having to homeschool her children.  Indeed, SB 277 does not force the non-religious to forego employment to home school, just the religious.

26.    In addition to the financial burden and loss that homeschooling brings, the Joneses must sacrifice significant time and resources to find socialization options for their children, such as extracurricular activities.  Homeschooled children like the Joneses' are not automatically socialized as they would be in public or private school, so they must seek out socialization options for their children that are outside of schooling.

27.    Therefore, everyone in the family has been injured.  The family has suffered financially, losing out on benefits and rights (a public education) that are protected by California law, and extended to all other families, save the ones with religious beliefs like theirs.  The children have been injured, not just financially, but in losing the tremendous benefits of a public education and being able to socialize in that way with their peers. Their education and their educational experience have been inferior to that which occurs in public school.  And Danielle Jones has lost out on significant wages and professional opportunities, all so she and her children can remain faithful to their sincerely held religious beliefs.  No one should have to do that.

28.    The Joneses have a long history of deep involvement in their religion. About 15 years ago, the Joneses founded their own Christian church due to a sense of duty and being called by God.  After starting their church, the pastor of The Rock Worship Center suggested that the two churches merge, which they did.  Soon after merging, the pastor of The Rock Worship Center retired, and the Joneses took over as lead pastors.  The Joneses have been lead pastors for ten years.  The Joneses tithe every

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

month.  The Joneses seek the Holy Spirit regarding all aspects of health for their family, and trust in His leading when making decisions regarding what will be placed in their children's bodies.  The Joneses prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that vaccinations violate their creed.

29.   The Joneses wish for their children to attend public school free from religious discrimination.  But in order for the Joneses' wish to come true, they would have to forego exercising their religious freedom and instead submit to SB 277's vaccination requirements, which currently lack a religious exemption.  The Joneses would in fact enroll their children in public school if it were not for the state's vaccination laws.  The Joneses would like their children to attend public school, but the schools will not accept their children without the necessary vaccinations.  Receiving the required vaccinations would be violative of the Joneses' religious beliefs.

**Renee Patterson and Dr. Sean Patterson**

30.   Plaintiffs Renee and Dr. Sean Patterson are citizens of California and reside in El Dorado Hills.

31.   The Pattersons' religious beliefs about vaccination date to 1999, after hearing a man preach about vaccines being antithetical to the Bible and the Book of Revelation.  That sermon referenced a parable about blood pressed from grapes, likened the human cardiovascular system to the rivers in the parable, and expressed the belief that vaccines violate biblical principles.  In 2003 and 2004 in Sacramento, California, the Pattersons and their fellow church members protested legislation seeking to discriminate against religious rights in the vaccine context.  This protest arose from God telling Dr. Patterson that this is *his* fight.  The Pattersons prayed extensively and consulted the Bible when deciding whether or not to vaccinate their children, and they arrived at the firm religious conviction that they must not vaccinate.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

32.    The Pattersons are parents to a 17-year-old school-aged child, C.P.  C.P. is not vaccinated with no plans for future vaccinations.  C.P. currently attends public school where vaccinations are mandatory.

33.    Yet every day, the Pattersons and C.P. fear imminent enforcement of SB 277 which would result in C.P.'s disenrollment.  The school district and the state have distributed unequivocal and pointed missives stating clearly that children who do not meet the vaccination mandate will not be allowed to attend school.  The Pattersons and C.P. fear that because SB 277 discriminates against their religious beliefs, C.P. may soon be forced to change where he attends school – and thus lives in fear of the significant downstream effects of moving schools, changing social groups, leaving teams and clubs, etc.

34.    The Pattersons wish for C.P. to attend public or private school in California free from religious discrimination, and free from the Pattersons' and C.P's constant fear that C.P. will be disenrolled without warning and with negative, stressful, and disruptive effects on them.

35.    The Pattersons have been disheartened by watching C.P. be excluded from the schools that are funded by their tax dollars.  They and C.P. have lost friendships, been spoken to inappropriately, and been treated unfairly.  Members of the public have directed hurtful comments at the Pattersons and C.P., accusing them of endangering others due to their unvaccinated status.  This treatment arises directly from the Pattersons' opposition to SB 277.  SB 277 has isolated the Patterson family within the community, leading to social stigma and exclusion.

36.    For the Pattersons, C.P.'s loss of friendships and suffering negative attention are not merely an injury to C.P. but to them as parents as well.  Watching C.P. struggle with loneliness and rejection deeply affects the Pattersons' emotional well-being and undermines their efforts to provide a nurturing environment.  They grieve alongside C.P., feeling the pain of strained or broken relationships as a personal failure or injustice.  This

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 293 of 341    Page
ID #:849
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 10 of 27

emotional toll compounds the burden the family already bears due to their principled opposition to SB 277 and the resulting ostracism.

**Burdens on All Plaintiffs**

37.    SB 277 unconstitutionally burdens Plaintiffs because it forces them to forego their religious beliefs in order for their children to receive a public or private education and at the same time they suffer financial burdens, the inability to use and enjoy a government benefit (public education), changes in behavior (including foregoing employment opportunities because of the need to homeschool their children), and societal stigma.

38.    The inability to exercise religious practices constitutes an injury.  Even indirect restrictions on religious exercise are considered an injury if they burden the practice of religion, as SB 277 does.  *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993); *Sherbert v. Verner*, 374 U.S. 398 (1963).

39.    SB 277 prevents Plaintiffs from giving their children the same educational opportunities as non-secular students, resulting in actual and concrete injuries to them and their children.  There is no legal reason to force religious people – who *cannot* comply with the vaccination requirements due to their sincerely held beliefs – to be treated differently, or to bear great financial expense, which are constitutional violations.

**B.    Defendant**

40.    Defendant Tomás Aragón is made party to this Action in his official capacity as the Department of Public Health Director and as the State Public Health Officer.  Under California law, Dr. Aragón is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of SB 277 for school-aged children.  He guides and instructs school districts on the state's vaccination requirements, and how religious beliefs offer no succor.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 294 of 341    Page
ID #:850
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 11 of 27

# FACTUAL ALLEGATIONS

*General Background of Compulsory Childhood Vaccination in California*

41.    In 1960, the California Legislature began vaccination requirements for school-age children, including a limited religious exemption for members of recognized denominations relying on prayer for healing.

42.    California required vaccines for school entry in 1961, including a single polio vaccination, and introduced a personal belief exemption (PBE) allowing parents to exempt children based on religious or spiritual beliefs.

43.    Throughout the 1970s and 1990s, the state expanded vaccination requirements to include multiple diseases, with all requirements allowing for a PBE based on sincerely held religious beliefs

44.    In 2012, AB 2109 mandated PBEs be signed by a doctor, with Governor Brown directing the California Department of Public Health to maintain religious exemption alternatives.

45.    By 2014, only 2.5% of students held PBEs, with just 0.7% completely unvaccinated, and most students being partially vaccinated.

*SB 277:  Removal of California's PBE and Its Religious Exemption*

46.    In 2015, the California Legislature passed SB 277, which abolished the PBE, thereby removing parents' ability to decline school-required vaccinations based on their sincerely held religious beliefs.  Nonetheless, SB 277 includes several exemptions to school vaccination requirements, including:

    a.  Medical exemptions (Cal. Health & Safety Code § 120370(a));

    b.  Exemptions for "home-based private school or…an independent study program[,]" (*Id*. at § 120335(f)); and

    c.  Exemptions for students who qualify for an individualized education program ("IEP") (*Id*. at § 120335(h)).

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 295 of 341    Page
ID #:851
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 12 of 27

47.    Medical exemptions are not temporary in nature.  An exemption is provided for the entire duration that the student has their medical condition.  There is no basis to suggest that a student who has a medical contraindication to the school-mandated vaccines will overcome that condition and be medically cleared to the vaccines during the school year.

48.    Federal law may require the implementation of IEPs, but that does not give California justification to discriminate against students with religious exemptions.  In a similar lawsuit filed in the Northern District of California, Santa Clara County tried to justify prioritizing medical exemptions to the COVID-19 vaccine over religious ones by citing federal and disability law.  *UnifySCC v. Cody*, No. 22-CV-01019-BLF, 2022 WL 2357068, at *10 (N.D. Cal. June 30, 2022).  The court rejected this contention and enjoined the practice, stating, "under the Supremacy Clause, the edicts of the federal Constitution trump any obligation to comply with federal or state statutory or regulatory requirements." *Id*.

49.    Students qualifying for one of SB 277's exemptions to school-vaccination requirements are still free to participate in sports and extra-curricular activities with other students who attend their local school districts.  Unvaccinated students sitting in a classroom setting pose no greater risk than exempt students who participate in sports or extra-curricular activities with vaccinated schoolmates.

50.    California also allows migrant students, homeless children, military families and children, and foster youth to attend public and private schools without proof of vaccination:

    a.    <u>Foster Care Children</u>:  Section 48850(f)(8)(B) of the Education Code was amended this year to provide that when foster care children are transferred to a new school, the school "shall immediately enroll the foster child even if the foster child…is unable to produce…records normally required for enrollment, such as…proof of immunization history…"

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 296 of 341    Page
ID #:852
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 13 of 27

b. <u>Homeless Children</u>:  Section 48852.7(c)(3) of the Education Code provides
that to "ensure that the homeless child has the benefit of matriculating with
his or her peers in accordance with the established feeder patterns of school
districts…[t]he new school shall immediately enroll the homeless child even
if the child…is unable to produce…records normally required for
enrollment…including, but not limited to, records or other proof of
immunization history…"

   i.  This section does not require proof of residency or citizenship,
allowing undocumented and unvaccinated migrant students to enroll
in school.

c. <u>Military Families</u>:  Section 48204.6(c)(3) of the Education Code provides
that to "ensure that the pupil who is a child of a military family has the
benefit of matriculating with his or her peers in accordance with the
established feeder patterns of school districts…[t]he new school shall
immediately enroll the pupil who is a child of a military family even if the
child…is unable to produce…records normally required for
enrollment…including, but not limited to, records or other proof of
immunization history…"

Notably, none of these statutory provisions require students to provide proof of
vaccination within a certain period.

51.    Defendant has allowed many schools to permit foster children, homeless
children, and migrant students to enroll in school unvaccinated for the entire duration of
the school year, as allowed by state law.  There is no valid legal reason to treat devout
religious students differently from, say, homeless children.

52.    The state does not uniformly force school districts to disenroll students if
they do not provide proof of vaccination within thirty days.  There are circumstances

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 297 of 341    Page
D #852
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 14 of 27

when school districts, including schools in the Inland Empire of California, spend the entire school year trying to ensure that such students are compliant.

53.    The rolling admission of foster youth, homeless students, migrants, and military families pose a risk of spreading disease.  The moment one of these unvaccinated students steps foot on campus, they present the same health and safety risks as an unvaccinated religious student.  There is no evidence to suggest that an unvaccinated student is immune from contracting or spreading disease for ten days or thirty days.

54.    Indeed, if anything, children living in homeless circumstances or shelters are more likely to be exposed to the kinds of conditions that would spread disease than children living in stable, religious homes.  California has one of the highest rates of children in foster care than any other state.  Homelessness and immigration have steadily increased in California over the past decade.  The average rate of students experiencing homelessness in California is around 4%, with some regions like Monterey and Santa Barbara experiencing rates above 10%.  Scientific studies have shown that migrant students and students experiencing homelessness or living in foster homes are at increased risk of spreading disease due to a multitude of factors, including lack of access to hygiene and healthcare facilities.  Thus, migrant children, homeless children, and children living in foster homes are a greater contagion hazard than unvaccinated students with religious exemptions.

55.    Strikingly, when deliberating SB 277, the California State Senate's Judiciary committee admitted that repealing the PBE "effectively repeals any possible religious exemptions" and ***might conflict with the Free Exercise Clause***.[4]

---

[4]   See Senate Judiciary Committee Hearing, April 27, 2015, at page 16, available at: https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160SB277# (accessed December 7, 2024).

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 298 of 341    Page
ID #:854
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 15 of 27

56.     A dichotomy exists parents are able to continue with work without being vaccinated under an exemption due to their sincerely held religious beliefs, but their children are not afforded the same exemption to attend public or private school in California.

57.     California has school vaccination rates that are higher than the national average for each disease required for school entrance.[5]  Research confirms that herd immunity is achieved against contagious diseases when vaccinations rates reach 80% to 95%.[6]  If the small group of devoted vaccination objectors could exercise religious exemptions to school-required vaccinations, infection rates would not rise with any statistical significance.  Thus, there can be no overriding governmental interest that justifies the infringement on religious belief.

58.     California is unable to establish that students with religious exemptions to vaccinations present a higher risk compared to those with secular exemptions.

59.     SB 277 is further irrational considering that those vaccinated against certain diseases, such as Measles, can still develop infections.  These students are allowed to go home and congregate with unvaccinated family members or family members who no longer have immunity or have waning immunity.

60.     A significant number of individuals are also anergic to vaccines, meaning they can never mount antibodies no matter how protected they are by vaccines.  Thus, there is no evidence to suggest that a ban on religious exemptions is justified considering

---

[5] *See* American Academy of Pediatrics, *Child Vaccination Across America*, available at: https://downloads.aap.org/AAP/Vaccine/index.html (accessed December 7, 2024).

[6] See Carrie MacMillan, *Herd Immunity: Will We Ever Get There?*, Yale Medicine, May 21, 2021, available at:  https://www.yalemedicine.org/news/herd-immunity (accessed December 7, 2024).

15

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 299 of 341    Page
ID #:855
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 16 of 27

a significant number of non-immune students are congregating with each other including those who are anergic and those who no longer have immunity.

61.     California is one of only five states that does not offer a religious exemption from compulsory school-vaccination laws. [7]

62.     In 2001, in the matter *In re LePage*, 18 P.3d 1177 (Wyo. 2001), the Supreme Court of Wyoming held that the state Department of Health was not authorized to inquire about the sincerity of a mother's religious beliefs when determining whether her daughter was exempt from a public school immunization requirement.  The Supreme Court of Wyoming held that that department is required to grant an exemption upon the submission of a written objection and does not allow the department to make an inquiry into the sincerity of the requestor's religious beliefs.  In reversing, the court balanced a valid state interest in protecting schoolchildren from disease with the relatively low number of requests for exemption and its confidence in parents to make decisions in the best interest of their children's physical and spiritual health.

63.     Arkansas previously had a limited religious exemption to school-required vaccinations similar to that allowed in California in 1960.  In *Boone v. Boozman*, 217 F. Supp. 2d 938 (E.D. Ark. 2002), a mother who possessed religious objections unrecognized by the Arkansas statute challenged the limited religious exemption on First Amendment grounds.  *Boone*, *supra*, 217 F. Supp. 2d at 951.  The court held that the limitation of the statutory exemption to a "recognized church or religious denomination" violated the Free Exercise Clause.  *Id*.

64.     More recently, in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the U.S. Supreme Court ruled that a law is not neutral and generally applicable, and thus

---

[7] *See* National Conference of State Legislatures, *States With Religious and Philosophical Exemptions From School Immunization Requirements*, last updated August 3, 2023, available at: https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements (accessed December 7, 2024).

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

invokes strict scrutiny, if it treats "*any* comparable secular activity more favorably than religious exercise." *Id.* at 1296 (emphasis in original). *See, e.g., Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (lack of general applicability alone triggered strict scrutiny review); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018) (non-neutrality alone invoked strict scrutiny).

65.    In *Tandon*, California regulations intended to slow the spread of COVID-19 limited religious gatherings, but treated comparable secular activities – such as getting haircuts and retail shopping – more favorably. *Id.* at 1297. *Tandon* is controlling precedent, and one of the primary bases of Plaintiffs' case.

66.    The Supreme Court employed similar reasoning in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 141 S. Ct. 63 (2020), holding that a New York regulation that prohibited religious gatherings but permitted similar secular conduct violated the First Amendment where the secular and religious activities in question presented comparable contagion risks. *Id.* at 67.

67.    Most recently, in *Bosarge, supra,* (Para. 3, fn. 2), the plaintiffs contended that Mississippi's mandatory vaccine statute requiring students to be vaccinated in order to attend public and private Mississippi schools violated their rights under the Free Exercise Clause. The plaintiffs' minor children were unvaccinated due to their *parents'* religious beliefs. The plaintiffs claimed that due to Mississippi's compulsory vaccination law, their children had not been allowed to enroll at public or private schools in the State of Mississippi.

68.    The *Bosarge* court granted both summary judgment and a permanent injunction in favor of the plaintiffs:

> "Because Mississippi affords a discretionary medical exemption process by statute, it must similarly afford a religious accommodation process. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). For these reasons, and those set forth in the Court's preliminary injunction order (Dkt. 77),

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

[Mississippi's compulsory vaccination law] is DECLARED unconstitutional as applied to Plaintiffs, who have sincerely held religious beliefs about vaccination." (Dkt. 87.)

The *Bosarge* court permanently enjoined the defendants from enforcing Mississippi's compulsory vaccination law unless they provided an option for requesting a religious exemption. (Dkt. 87.)

69.    While California forbids even *submitting* a religious exemption for school-required vaccinations at school enrollment, California has granted tens of thousands of medical exemptions over the past several decades. California employers, colleges, and universities also have granted thousands of religious exemptions during this same time period. At no time have any of these exemptions caused a disease outbreak.

70.    Notably, after constitutional challenges to the University of California's and the California State University's lack of religious exemptions to vaccinations, both education systems this year implemented a religious exemption protocol.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT FREE EXERCISE RIGHTS WITH RESPECT TO PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS

71.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

72.    The First Amendment of the U.S. Constitution provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Fourteenth Amendment applied the First Amendment to the states. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

73.    Parents have the right to "direct the religious upbringing of their children" and "when the interests of parenthood are combined with a free exercise claim […] more than merely a 'reasonable relation to some purpose within the competency of the State' is

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 302 of 341    Page
ID #:858
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 19 of 27

required to sustain the validity of the State's requirement under the First Amendment."
*Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972).

74.    The Supreme Court has repeatedly recognized that "[t]he free exercise of
religion means, first and foremost, the right to believe and profess whatever religious
doctrine one desires." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990).

75.    "In applying the Free Exercise Clause, courts may not inquire into the truth,
validity, or reasonableness of a claimant's religious beliefs." *Hobbie v. Unemployment
Appeals Comm'n*, 480 U.S. 136, 144 n.9, (1987).  The "guarantee of free exercise is not
limited to beliefs which are shared by all of the members of a religious sect." *Thomas v.
Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).

76.    Courts should not inquire into the validity or plausibility of a person's
beliefs; instead, the task is to determine whether "the beliefs professed [] are sincerely
held and whether they are, in [a believer's] own scheme of things, religious." *United
States v. Seeger*, 380 U.S. 163, 185 (1965).

77.    Plaintiffs' sincerely held religious beliefs, which prohibit them from
vaccinating their minor children, have been unconstitutionally burdened by California.
SB 277 unconstitutionally burdens Plaintiffs because it forces them to forego their
religious beliefs for their children to receive a public or private education.  California has
pitted Plaintiffs' consciences and creeds against educating their children.  Nevertheless,
Plaintiffs' children cannot obtain a formal education and everything that comes with it
(socialization, network effects, etc.) without violating their religious convictions.

78.    Further, A.D., and other independent study students exempt from SB 277,
can attend charter schools in person two days a week unvaccinated, yet are not permitted
to attend school outside of the independent study framework in person more than two
days a week because of not being fully vaccinated.  Diseases do not know what day of the
week it is.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 303 of 341    Page
ID #:859
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 20 of 27

79.    The Free Exercise Clause protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U. S. 439, 450 (1988).  "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id*.

80.    However, California families with secular, medical motivations for declining compulsory immunization can be exempted from the same requirements.  Children who are homeless, or who come from foster or military families, can also be exempted from the same requirements in perpetuity, as is the case in some California school districts.

81.    California has made an unconstitutional value judgment that secular motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.  While California may have a general healthcare interest in promoting childhood immunization, the Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.  The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly.  It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (*or abstention from*) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022); 2022 WL 2295034; 2022 U.S. LEXIS 3218 (emphasis added).

82.    A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice." *Id*. at *27.  A policy can fail this test if it "discriminate[s] on its face," or if a religious exercise is otherwise its "object." *Id*.

83.    For multiple reasons, California's SB 277 is neither neutral nor generally applicable.  Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment,

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 304 of 341    Page
ID #:860
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 21 of 27

whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296. *See also Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-01781-PHX-SPL, at *16 (D. Ariz. Nov. 5, 2021) (concluding that a college's COVID-19 vaccine policy was not generally applicable, triggering strict scrutiny under the First Amendment, because "Plaintiffs presented evidence . . . that Defendant has made at least one exception" to the policy).

84.    Whether two activities are comparable for purposes of the Free Exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Id*. Here, with regard to regulating the conduct of its secular and religious citizens, the government holds the same interest in preventing disease. Further, the secular and religious activities at issue are not only comparable, but they are also exactly the same (seeking exemption from compulsory vaccination).

85.    Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton, supra,* 141 S. Ct. at 1877 (citations omitted). California's elevation of secular objections above religious objections is not the result of random happenstance, but rather of deliberate exclusion. The California Legislature intentionally erased a pre-existing personal belief exemption for school-required vaccinations, thereby removing a religious exemption option, and in close temporal proximity enacted a medical exemption to SB 277.

86.    Even if California could show that it did not target religious conduct for intentional exclusion (it cannot), its mandatory immunization regulations invoke heightened scrutiny because the statute fails the general-applicability test. A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*. While California may have a general healthcare interest in promoting childhood vaccination, its interest is not so extraordinary as to prohibit an exemption for secular reasons, which poses a

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 305 of 341    Page
ID #:361
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 22 of 27

similar contagion hazard as a hypothetical religious exemption.  Further, California does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.  Nor does California require that adult faculty, staff members, or school visitors provide proof of immunization.  Indeed, the plaintiffs include a schoolteacher, from the same household as one of his unvaccinated children – who was able to obtain a work religious exemption – while the state simultaneously denies his children the fundamental right to an education at that same school.

87.    California's vaccination laws fail the general applicability test on additional, alternative grounds because the medical exemption system provides for individualized discretionary review.  "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . ."  *Id*. at 1879.  In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason."  *Id*. at 1872.

88.    Because its medical-exemption process provides for discretionary review at multiple levels, California's SB 277 fails the general-applicability test.  California has instituted a system of customized review – delegated first to private physicians and second to the clinical staff at CDPH "with expertise in immunization" – who at each level conduct individualized review of every exemption in order to make a determination.

89.    Therefore, for multiple reasons, California's SB 277 invokes heightened judicial scrutiny.  California's SB 277 cannot withstand strict scrutiny because it is not narrowly tailored.  In the context of government regulations targeting infectious disease, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest" in reducing disease.  *Tandon*, 141 S. Ct. at 1296-97.  Where utilization of such less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 306 of 341    Page
ID #:1862
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 23 of 27

encompasses more protected conduct than necessary to achieve its goal." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 578 (1993).

90.    Regarding under-inclusivity, where the government permits secular activities, such as a medical exemption, "it must show that the religious exercise at issue is more dangerous." *Tandon*, 141 S. Ct. at 1297.  When a law is over-inclusive, its "broad scope . . . is unnecessary to serve the interest, and the statute fails for that reason." *Lukumi*, 508 U.S. at 578.

91.    California's SB 277 cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve.  Instead of regulating with the surgical precision necessary to avoid conflict with its citizens' free exercise rights, California has deployed a blunt legislative hammer and, in one stroke, obliterated every possibility for religious observance.

92.    California's compulsory-immunization scheme is under-inclusive because it only applies to children in a school setting.  The mandate does not apply to non-school attending children (who regularly and unavoidably interact with their peers) nor to adults in the state, who comprise over 77% of California's population.

93.    SB 277 is also under-inclusive because children possessing a religious exemption for school-required vaccinations would pose no greater threat than their secular peers with a medical exemption.  Moreover, the immunization requirements do not apply to adults who are employed in California's school system, or to school visitors.

94.    Further, the existence of a religious exemption to vaccinations for attending school would have an immaterial impact on the number of individuals vaccinated in California overall given that it does not apply to adults.  Nor would the existence of a religious exemption materially impact the overall percentage of vaccinated school children.

95.    Given that California boasts one of the highest school vaccination rates in the country, allowing a religious exemption for a handful of students, just as secular

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 307 of 341    Page
ID #:863
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 24 of 27

medical exceptions are permitted, would constitute an actual attempt at narrow tailoring. Because California's SB 277 is simultaneously too narrow and too broad to fulfill the government interests in supposedly attempts to accomplish, the regulation lacks the narrow tailoring necessary to survive strict scrutiny review.  Accordingly, the presence of a vaccination medical exemption and the intentional removal of the PBE, and thereby a religious exemption through SB 277, has violated and continues to violate Plaintiffs' rights to free exercise of religion.

96.    "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Because of Defendant's actions, Plaintiffs have suffered and continue to suffer irreparable harm.

97.    Absent injunctive and declaratory relief prohibiting Defendant from enforcing the unconstitutional aspects of SB 277, Plaintiffs will continue to be harmed.

98.    Plaintiffs are entitled to a declaration that Defendant violated their First Amendment rights to free exercise of religion and an injunction against Defendant's actions as they relate to SB 277.

99.    Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## INJUNCTIVE RELIEF ALLEGATIONS

100.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

101.    Plaintiffs allege that both on its face and as applied, SB 277 violates their First Amendment rights and their right to be free from unlawful statutes.

102.    Plaintiffs are being and will continue to be irreparably harmed unless this Court enjoins Defendant from enforcing SB 277.

103.    Plaintiffs have no plain, speedy, and adequate remedy at law to prevent Defendant from enforcing SB 277.

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 308 of 341    Page
ID #:864
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 25 of 27

104.   If not enjoined by this Court, Defendant will continue to implement and enforce SB 277 in violation of Plaintiffs' constitutional rights.

105.   Accordingly, injunctive relief is appropriate.

### DECLARATORY RELIEF ALLEGATIONS

106.   Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

107.   Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201. An actual and substantial controversy exists between Plaintiffs and Defendant as to their legal rights and duties with respect to whether SB 277, which allows for secular but not religious exemptions to school-required vaccinations, violates the United States Constitution.

108.   The case is presently justiciable because SB 277 and the absence of any religious exemption to school-required vaccination to the same applies to Plaintiffs and their children, who are currently harmed by being excluded from school.

109.   Declaratory relief is therefore appropriate to resolve this controversy.

### PRAYER

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that SB 277 is unconstitutional. Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendant from enforcing SB 277.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant and provide Plaintiffs with the following relief:

A.    A preliminary and permanent injunction prohibiting Defendant, his agents, servants, employees, and any other persons acting on his behalf from implementing and enforcing SB 277 without providing the option for a broad religious exemption to school-required vaccination;

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 309 of 341   Page
ID #:865
Case 2:23-cv-02995-KJM-JDP   Document 35   Filed 12/09/24   Page 26 of 27

B.   Declare that SB 277 is unconstitutional on its face without a broad religious exemption to school-required vaccination;

C.   Declare that SB 277 is unconstitutional as applied to Plaintiffs insofar as enforcing it violates Plaintiffs' First Amendment right to free exercise of religion;

D.   Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and

E.   For any such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

DATED:  December 9, 2024   **THE NICOL LAW FIRM**

By:   __/s/ *Jonathon D. Nicol*_____

JONATHON D. NICOL

Counsel for Plaintiffs

SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 310 of 341    Page
ID #:866
Case 2:23-cv-02995-KJM-JDP    Document 35    Filed 12/09/24    Page 27 of 27

## **JURY DEMAND**

Plaintiffs demand trial by jury.


Respectfully submitted,

DATED:  December 9, 2024        **THE NICOL LAW FIRM**


By:   _/s/ *Jonathon D. Nicol*_____

JONATHON D. NICOL

Counsel for Plaintiffs

SECOND AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

# Exhibit 18

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 312 of 341    Page
ID #:968
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 1 of 27

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  DARRELL W. SPENCE, State Bar No. 248011
   Supervising Deputy Attorney General
3  DARIN L. WESSEL, State Bar No. 176220
   Deputy Attorney General
4    600 West Broadway, Suite 1800
     San Diego, CA 92101
5    P.O. Box 85266
     San Diego, CA 92186-5266
6    Telephone:  (619) 738-9125
     Fax:  (619) 645-2012
7    E-mail:  Darin.Wessel@doj.ca.gov
   *Attorneys for Defendant*
8  *Tomás Aragón, in his official capacity as Director of*
   *the California Department of Public Health and*
9  *State Public Health Officer*

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14  **AMY DOESCHER, STEVE DOESCHER,**          2:23-cv-02995-KJM-JDP
    **DANIELLE JONES, KAMRON JONES,**
15  **RENEE PATTERSON, and DR. SEAN**          **MEMORANDUM OF POINTS AND**
    **PATTERSON, individually and on behalf of** **AUTHORITIES IN SUPPORT OF**
16  **their minor children,**                  **MOTION BY DEFENDANT TOMÁS**
                                                **ARAGÓN TO DISMISS PLAINTIFFS'**
17                            Plaintiffs,       **SECOND AMENDED COMPLAINT FOR**
                                                **DECLARATORY AND INJUNCTIVE**
18      v.                                      **RELIEF**

19  **TOMÁS ARAGÓN, in his official capacity**  Date:        April 17, 2025
    **as Department of Public Health Director**  Time:        10:00 a.m.
20  **and as the State Public Health Officer,**  Ctrm:        3
                                                Judge:       Hon. Kimberly J. Mueller
21                            Defendant.        Trial Date:  Not Set
                                                Action Filed: 12/22/2023
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................... 1

Background ............................................................................................................ 1

    A.    History of immunization requirements in California ............................... 1

    B.    Senate Bill 277 and removal of the Personal Beliefs Exemption ............. 3

    C.    Plaintiffs' Second Amended Complaint ................................................... 5

Legal standard ...................................................................................................... 5

Argument .............................................................................................................. 6

    I.    Plaintiffs' Claims Should Be Dismissed for Lack of Standing ............................ 6

    II.    Plaintiffs Fail to State a Cognizable First Amendment Claim ............................ 7

    A.    Mandatory vaccination laws without personal beliefs exemptions do not offend the First Amendment ............................................................. 7

    B.    SB 277's repeal of California's prior personal beliefs exemption does not violate the Free Exercise Clause ............................................... 10

        1.    Personal beliefs are not protected by the Free Exercise Clause ....................................................................................... 10

        2.    The vaccination law is rationally related to a legitimate State interest .................................................................................. 10

        3.    SB 277 does not target religious belief ...................................... 12

        4.    SB 277 does not allow discretionary, individualized exemptions ............................................................................... 13

        5.    SB 277 does not contain comparable secular exemptions ........... 15

    C.    Even if Strict Scrutiny Applied, SB 277 Passes Constitutional Muster ................................................................................................. 18

Conclusion ........................................................................................................... 20

i

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 314 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 3 of 27
ID #:3708

1

**TABLE OF AUTHORITIES**

2

<u>**Page**</u>

3

4

Cᴀsᴇs

5

*Boone v. Boozman*
6
    217 F.Supp.2d 938 (E.D. Ark. 2002)......................................................................... 8

7

*Bosarge v. Edney*
    669 F.Supp.3d 598 (S.D. Miss. 2023).................................................................... 15

8

*Brown v. Smith*
9
    24 Cal.App.5th 1135 (2018)......................................................9, 10, 11, 18

10

*Church of Lukumi Babalu Aye v. City of Hialeah* (*Lukumi*)
11
    508 U.S. 520 (1993).................................................................................. 12, 19

12

*Doe v. San Diego Unified School District*
    19 F.4th 1173 (9th Cir. 2021)....................................................................... *passim*

13

*Does 1-6 v. Mills*
14
    16 F.4th 20 (1st Cir. 2021).................................................................................. 12

15

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*
16
    494 U.S. 872 (1990)................................................................................. 11, 13

17

*F.F. v. State*
    194 A.D.3d 80 (N.Y. App. Div. 2021)........................................................... 10, 12

18

*Food & Drug Admin. v. All. for Hippocratic Med.*
19
    602 U.S. 367 (2024).............................................................................. 6, 12

20

*French v. Davidson*
    143 Cal. 658 (1904) .................................................................................. 8, 16

21

22

*Fulton v. City of Philadelphia*
    593 U.S. 522 (2023).................................................................................. *passim*

23

*Grace United Methodist Church v. City of Cheyenne*
24
    451 F.3d 643 (10th Cir. 2006) ............................................................................ 9

25

*Hanzel v. Arter*
    625 F.Supp. 1259 (S.D. Ohio 1985) .............................................................. 8, 10

26

27

*Heller v. Doe by Doe*
    509 U.S. 312 (1993)...................................................................................... 11

28

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 315 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 88-1    Filed 01/27/25    Page 4 of 27
ID #:972

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Jacobson v. Commonwealth of Massachusetts*
   197 U.S. 11 (1905)...................................................................................7, 8, 11, 18

4

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994)........................................................................................ 6

5

6

*Love v. State Dept. of Ed.*
   29 Cal.App.5th 980 (2018)...................................................................... *passim*

7

8

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)........................................................................................ 6

9

*Massachusetts Bd. of Retirement v. Murgia*
   427 U.S. 307 (1976)...................................................................................... 11

10

11

*McGowan v. State of Md.*
   366 U.S. 420 (1961)........................................................................................ 6

12

13

*Milford Christian Church v. Russell-Tucker*
   No. 3:23-CV-304 (VAB), 2023 WL 8358016 (D. Conn. Dec. 1, 2023) ................................ 9

14

*Miller v. McDonald*
   720 F.Supp.3d 198 (W.D.N.Y. 2024) ............................................................ 6

15

16

*Parents for Privacy v. Barr*
   949 F.3d 1210 (9th Cir. 2020) .................................................................... 11

17

18

*Phillips v. City of New York*
   775 F.3d 538 (2d Cir. 2015) .................................................................. 8, 11

19

*Prince v. Massachusetts*
   321 U.S. 158 (1944)........................................................................................ 8

20

21

*Romer v. Evans*
   517 U.S. 620 (1996)...................................................................................... 11

22

23

*Royce v. Bonta*
   725 F.Supp.3d 1126 (S.D. Cal. 2024)...................................................... 9, 10

24

*Spokeo, Inc. v. Robins*
   578 U.S. 330 (2016)........................................................................................ 6

25

26

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ........................................................................ 6

27

28

iii

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 316 of 341    Page
ID #:9738
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 5 of 27

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2
<u>Page</u>

3

*Stormans, Inc. v. Wiesman*
4
    794 F.3d 1064 (9th Cir. 2015) ........................................................... 11, 12, 13, 15

5
*Tandon v. Newsom*
    593 U.S. 61 (2021) ............................................................................. 15

6

7
*Tingley v. Ferguson*
    47 F.4th 1055 (9th Cir. 2022) ........................................................... 13, 15

8
*Torrey-Love v. State of California Dep't of Educ.*
    *supra*, 2017 WL 11636240 ............................................................... 9, 10

9

10
*Walker v. Superior Court*
    47 Cal.3d 112 (1988) ......................................................................... 8

11

12
*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136 (9th Cir. 2003) ........................................................... 6

13
*We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*
    76 F.4th 130 (2d Cir. 2023) ............................................................... *passim*

14

15
*Whitlow v. California*
    203 F. Supp.3d 1079 (S.D. Cal. 2016) ............................................. 8, 9, 10, 18

16
*Wisconsin v. Yoder*
    406 U.S. 205 (1972) ........................................................................... 10

17

18
*Workman v. Mingo County Sch.*
    667 F.Supp.2d 679 (S.D. W. Va. 2009) ........................................... 8

19
*Zamani v. Carnes*
    491 F.3d 990 (9th Cir. 2007) ........................................................... 6

20

21
*Zucht v. King*
    260 U.S. 174 (1922) ......................................................................... 7, 8

22

23
**STATUTES**

24
United States Code, Title 42
    § 11432(g)(3)(C)(iii) ......................................................................... 18

25

26

27

28

iv

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 317 of 341    Page
ID #:873
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 6 of 27

**TABLE OF AUTHORITIES**
(continued)

Page

California Code of Regulations, Title 17
§ 6035(a)(3) ............................................................................................... 16
§ 6035(d) ................................................................................................... 18
§ 6040 ....................................................................................................... 18
§ 6050(a) ................................................................................................... 16
§ 6051(a) ................................................................................................... 16

California Education Code
§ 48204.6(c)(3) ......................................................................................... 17
§ 48852.7(c)(3) ......................................................................................... 17
§ 48853.5(f)(8)(C) .................................................................................... 18
§ 49701 ..................................................................................................... 18
§§ 51744-51749.6 ..................................................................................... 16
§ 56026 ....................................................................................................... 4

Health & Safety Code
§§ 120325-120375 ...................................................................................... 5
§ 120325(a) ................................................................................................. 4
§ 120325(c) ................................................................................................. 4
§ 120325(e) ................................................................................................. 4
§ 120325 *et seq* ...................................................................................... 11
§ 120335 ................................................................................................... 17
§ 120335(b) ................................................................................................. 2
§ 120335(b)(11) .......................................................................................... 4
§ 120335(f) ........................................................................................... 4, 16
§ 120335(h) ........................................................................................... 4, 17
§ 120338 ..................................................................................................... 4
§ 120341(b) ............................................................................................... 17
§ 120372 ................................................................................................... 13
§ 120372(a) ................................................................................................. 5
§ 120372(a)(2)(A)-(H) ............................................................................. 14
§ 120372(a)(2)(C) ..................................................................................... 14
§ 120372(a)(2)(F) ..................................................................................... 14
§ 120372(a)(2)(G ...................................................................................... 16
§ 120372(c)-(d) ........................................................................................... 5
§ 120372(d)(2)-(3) .................................................................................... 14
§ 120372(d)(3)(A) .................................................................................... 14
§ 120375 ................................................................................................... 17

Individuals with Disabilities Education Act ....................................................... 4, 15

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ................................................................................... *passim*

v

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 318 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 7 of 27
ID #:9748

## TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ........................................................................................................ 6
    Rule 12(b)(6) ........................................................................................................ 6

**OTHER AUTHORITIES**

Senate Bill No. 277 ................................................................................................ 1

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 319 of 341    Page
ID #:975
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 8 of 27

**INTRODUCTION**

Plaintiffs challenge Senate Bill No. 277 (SB 277), which eliminated the personal belief exemption (PBE) from California's compulsory school vaccination law in 2015.  Plaintiffs allege that requiring vaccination of their children to attend school infringes on their religious beliefs in violation of the First Amendment.  But courts have repeatedly upheld compulsory school vaccination laws against Free Exercise challenges, and SB 277 itself has already survived three such challenges.  Those cases should foreclose Plaintiffs' claims, which offer nothing new.

Plaintiffs' Second Amended Complaint (SAC) remains deficient for several reasons.  Plaintiffs fail to state a valid First Amendment claim because they fail to allege facts (beyond mere conclusions) establishing that SB 277 violates their religious beliefs or tenets, and therefore lack standing.  But, even if they do have standing, SB 277 is a neutral and generally applicable law that meets rational basis review.  Finally, even if SB 277 were not neutral or generally applicable, which it is, it satisfies strict scrutiny.  This is because SB 277 is a narrowly tailored law that carefully balances the interests of protecting the health and safety of students and the community with students' educational rights.  Thus, while it repealed the PBE, which had become a broad loophole undermining public health, it provided limited exemptions protecting students' right to access education.  For these reasons, the Court should dismiss the SAC.

**BACKGROUND**

**A.    History of immunization requirements in California**

Vaccination is one of the greatest public health achievements in preventing death and illness due to communicable diseases.  *See* Request for Judicial Notice (RJN) Ex. 13 at 3. Vaccination reduces a person's risk of infection to a disease by working with the body's natural defenses to help it safely develop immunity to that disease.  *Id.* at 2.  While vaccination provides individual immunity, it is also critical to developing "community immunity" or "herd immunity." *See id.* at 4-5; RJN Ex. 12 at § 1(f).  This is when a significant portion of the population has immunity to a disease, such that transmission of the disease from person to person becomes unlikely.  *See* RJN Ex. 13 at 4-5, Ex. 12 at § 1(g).  Community immunity protects the health of those who are unvaccinated (including those who are immunocompromised or too young to

1

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 320 of 341    Page
ID #:3976
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 9 of 27

1   receive vaccinations) and lessens the risk of outbreaks.  *Id.*  For highly contagious diseases, like

2   measles, community immunity is reached when approximately 95 percent of the local population

3   is fully immunized.  RJN Ex. 13 at 2.

4        For the past century, states have commonly relied on school vaccination requirements to

5   increase vaccination rates and reduce the incidence of childhood disease and community spread

6   of disease.  *See Love v. State Dept. of Ed.*, 29 Cal.App.5th 980, 992 (2018) ("compulsory

7   immunization has long been recognized as the gold standard for preventing the spread of

8   contagious diseases").  California's current school immunization scheme was put in place in

9   1961, requiring immunization against polio for all students entering public or private school in

10  California.  *See* RJN Ex. 2.  The law allowed two exemptions: if a parent or guardian submitted to

11  a school's governing authority "a letter stating that immunization [was] contrary to" the parents'

12  beliefs, or if they submitted a letter from a physician stating immunization was "not considered

13  safe" based on the child's physical condition or medical circumstances.  *Id.* at 3 (§§ 3382, 3384,

14  3385).  Over the next 40 years, the Legislature expanded the list of required immunizations after

15  careful consideration of the public health risks of these diseases, costs to the state and health

16  system, communicability, and rates of transmission.  *See* RJN Exs. 3-10; Ex. 13 at 8-9.  The

17  Legislature also added other institutionalized childcare settings to the law.  *See* RJN Exs. 4, 5.

18  During this time, PBEs and medical exemptions continued.  *Id.*

19       For the past 25 years, the law has consistently required any student attending public or

20  private childcare center or daycare, elementary school and secondary school in California to be

21  immunized against 10 diseases: diphtheria, haemophilus influenzae type b, measles, mumps,

22  pertussis (whooping cough), polio, rubella, tetanus, hepatitis B, and varicella (chickenpox).  Cal.

23  Health & Safe. Code § 120335(b)[1]; RJN Ex. 13 at 4.  These diseases pose serious health risks to

24  children, some life-threatening.  *Id.*  These diseases, except tetanus, can be spread by contact with

25  infected children.[2]  *Id.*

26  

_____

27     [1] All further statutory references are to the California Health and Safety Code unless
otherwise noted.

28     [2] While tetanus is not communicable by contact with others, the Legislature included it
because it is highly fatal and easily preventable by vaccination.  *Id.*

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 321 of 341    Page
ID #:973
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 10 of 27

**B.    Senate Bill 277 and removal of the Personal Beliefs Exemption**

In 2015, the Legislature passed SB 277, which primarily removed the PBE from the school vaccination law.  *See* RJN Ex. 11.  SB 277 was prompted by a measles outbreak in late 2014 and early 2015 that was spread in large part because of communities with large numbers of unvaccinated people.  *See* RJN Ex. 13 at 2.  During that outbreak, 131 California residents contracted measles, 20 percent of whom had to be hospitalized.  *Id.* at 5.  A CDC report on the outbreak indicated that 45 percent of the California patients were known to be unvaccinated and 43 percent had "unknown or undocumented vaccination status."  *See* RJN Exs. 15 at 8 and 26. The overwhelming majority of the vaccine-eligible but unvaccinated patients were intentionally not vaccinated due to personal beliefs; the majority were children.  RJN Ex. 26 at 1.

In considering SB 277, the Legislature reviewed alarming evidence of falling vaccination levels in communities across the State, alongside a rise in PBEs submitted by parents to excuse their children from school vaccination requirements.  RJN Ex. 13 at 2.  This included a report showing that more than a quarter of California schools had measles-immunization rates below the threshold recommended by the CDC.  *Id.*, at 5.  At the same time, the number of personal-belief exemptions tripled between 2000 and 2013—from 1 percent of kindergarteners in 2000, to 3.15 percent by 2013.  *Id.* at 2; *see Love*, 29 Cal.App.5th at 987.  Legislative analysis found these trends were connected, stating that "Studies find that when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease."  RJN Ex. 13 at 5.

The high rates of unvaccinated children in some local communities were particularly worrisome.  The Legislature reviewed evidence that vaccination rates varied widely across the state, in part because, research had shown, people with lower vaccine acceptance tend to group together in communities.  RJN Ex. 13 at 5.  Communities with low vaccination rates were not only more susceptible to outbreaks, they made it "difficult to control the spread of disease and make [the State] vulnerable to having the virus re-establish itself."  *Id.*  Studies had documented clusters of schools with high rates of personal belief exemptions in suburbs of various California cities.  *Id.*  Perhaps most alarming was that "in certain geographic pockets of California, [personal belief] exemption rates [we]re 21 percent or more."  *Id.*

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 322 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 58-1    Filed 01/27/25    Page 11 of 27
ID #:878

1    SB 277 drew fervent support and opposition.  *See* RJN Ex. 14 at 11.  Supporters presented

2    removing the personal belief exemption as a means to make schools safer from outbreaks, to

3    protect infants too young for vaccination and immunocompromised students, and to protect the

4    community at large from outbreaks.  *Id.* at 7.  In addition to raising parental rights concerns,

5    opponents argued that bill would infringe on "mandated rights of services to students with

6    disabilities under the federal [Individuals with Disabilities Education Act (IDEA)]."  *Id.* at 11.

7    In adopting SB 277, the Legislature stated its intent for the school vaccine law to provide

8    "[a] means for the eventual achievement of total immunization of appropriate age groups" for the

9    ten childhood diseases covered within the law, as well as other diseases deemed appropriate by

10   the California Department of Public Health (Department).  § 120325(a).  It also stated its intent

11   for the school vaccine law to include a medical exemption, and to incentivize "public health

12   authorities to design innovative and creative programs that will promote and achieve full and

13   timely immunization of children."  § 120325(c), (e).

14   SB 277 removed the PBE from the school vaccination law, while keeping the medical

15   exemption and adding two further limitations.  The first was an exemption for "a student in a

16   home-based private school or a pupil who is enrolled in an independent study program . . . *and*

17   *does not receive classroom-based instruction*."  § 120335(f), emphasis added.  Second, in

18   response to opponents' IDEA concerns, the Legislature added a provision that the law "does not

19   prohibit a pupil who qualifies for an individualized education program, pursuant to federal law

20   and Section 56026 of the Education Code, from accessing any special education and related

21   services required by his or her individualized education program."  § 120335(h).  It also

22   authorized the Department to add to the list of required vaccines for school entry without

23   Legislative action, subject to the condition that any such additional immunizations must include

24   exemptions for both medical reasons and personal beliefs.  §§ 120335(b)(11); 120338.

25   After an initial increase in statewide school vaccination rates immediately following

26   enactment of SB 277, immunization rates began to decline.  *See* RJN Ex. 16 at 13.  By the 2018-

27   2019 school year, the Legislature found, 16 percent of California counties had kindergarten

28   immunization rates below 90 percent.  *See* RJN Ex. 12 at § 1(c)(2).  At the same time, in the three

4

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 323 of 341    Page
ID #:879
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 12 of 27

1  years immediately after elimination of PBEs, the rate of medical exemptions tripled.  *See* RJN Ex.

2  15 at 7.  And again, the Legislature reported, there were pockets of the State where the local

3  exemption rate far exceeded the statewide exemption rate and impacted community immunity.

4  *Id.*  For instance, at 60 schools, medical exemption rate rose to 10 percent, compared to the 0.9

5  percent statewide average.  *Id.*, RJN Ex. 31 at 1.  This rise in medical exemptions was associated

6  with physicians issuing exemptions "without medically-justified contraindications" and "a small

7  number of unethical physicians" selling medical exemptions for profit.  *See* RJN Ex. 15 at 7, 9.

8      The Legislature responded by amending the vaccination law in 2019 to prevent misuse of

9  the medical exemption.  Among other changes, the Legislature implemented objective criteria and

10  standardized requirements for medical exemption certifications, and established a process for

11  state-level review of medical exemptions in limited situations.  § 120372(a), (c)-(d).  In the two

12  years after the changes, medical exemptions fell by 70 percent for kindergarteners and 75 percent

13  for seventh graders.  *See* RJN Ex. 17 at 10, Ex. 18 at 11.

14      **C.    Plaintiffs' Second Amended Complaint**

15      Plaintiffs here are three couples—the Doeschers, Joneses, and Pattersons—with partially or

16  wholly unvaccinated school-aged children.  SAC ¶¶ 15, 23, 32.  The Doeschers and Joneses

17  allege that after extensive prayer, "they arrived at the firm religious conviction that vaccinations

18  violate their creed."  *Id.* at ¶¶ 19, 28.  The Pattersons provide greater detail by referencing a

19  sermon they heard in 1999 and a parable in the Bible in arriving "at the firm religious conviction

20  that they must not vaccinate."  *Id.* at ¶ 31.  Plaintiffs confirm that their children have not been

21  vaccinated since forming their religious beliefs.  *Id.* at ¶¶ 15, 23, 32.  They further confirm their

22  children have access to education in California—the Doeschers' child attends a charter school

23  under independent-study guidelines, the Joneses' children are homeschooled, and the Pattersons'

24  child attends a public school.  *Id.* at ¶¶ 15, 24, 32. They assert one claim alleging that SB 277

25  violates their First Amendment right to free exercise of religion.  *Id.* at ¶¶ 71-109; *see id.* at ¶ 1, n.

26  1 (defining SB 277 to include §§ 120325-120375, as later amended).

27      **LEGAL STANDARD**

28      The party asserting federal subject matter jurisdiction bears the burden of establishing it

5

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 324 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 98-1    Filed 01/27/25    Page 13 of 27
ID #:909

1    exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A jurisdictional

2    challenge under Federal Rule of Civil Procedure 12(b)(1) may be made either on the face of the

3    pleadings or based upon extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

4    1136, 1139 (9th Cir. 2003). A complaint may be dismissed under Rule 12(b)(6) for failure to

5    state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to

6    support a cognizable legal theory." *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007). In

7    evaluating whether a complaint states a claim, the court accepts as true all of the material factual

8    allegations but need not accept as true "allegations that contradict matters properly subject to

9    judicial notice" or "are merely conclusory, unwarranted deductions of fact, or unreasonable

10   inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation

11   omitted).

12                                            **ARGUMENT**

13   **I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING**

14          Plaintiffs continue to fail to allege injury sufficient to establish standing. A plaintiff

15   possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that is fairly

16   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

17   favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (citing *Lujan v. Defenders

18   of Wildlife*, 504 U.S. 555, 560 (1992)). To establish an injury in fact, a plaintiff must show a

19   "concrete and particularized" or "de facto" injury. *Id.* at 340; *Lujan*, 504 U.S. at 560.

20          Plaintiffs have failed to allege any harm to themselves, despite bringing suit in their

21   individual capacities. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381

22   (2024) (plaintiff does not have standing to challenge state action simply based on moral or

23   ideological objections). Specifically, claims based on infringement of free exercise require injury

24   to free exercise itself—tangential economic costs are insufficient. *See McGowan v. State of Md.*,

25   366 U.S. 420, 429 (1961); *Miller v. McDonald*, 720 F.Supp.3d 198, 208 (W.D.N.Y. 2024)

26   (unvaccinated Amish plaintiffs lacked standing in the absence of allegations that state officer

27   threatened to take action against them with respect to state's mandatory vaccination law). Here,

28   Plaintiffs concede that since forming their religious beliefs against vaccination, they have freely

                                                     6

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 325 of 341   Page
Case 2:23-cv-02995-KJM-JDP   Document 38-1   Filed 01/27/25   Page 14 of 27
ID #:9816

1   exercised those beliefs and have not vaccinated their children.  SAC ¶¶ 15, 23, 32.  Plaintiffs

2   concede their children have access to education and there are no allegations that their children's

3   education is inferior.  *Id.*  For example, the Doeschers admit their child, A.D., attends a charter

4   school through independent study two days per week, as allowed under SB 277.  SAC ¶ 15.[3]  The

5   Jones children are homeschooled, as is allowed for unvaccinated children under SB 277.  SAC ¶¶

6   24–25.  And the Pattersons admit that their 17-year-old child, C.P., "currently attends public

7   school" even though unvaccinated.  SAC ¶ 32.  Plaintiffs' attempt to plead injury by claiming

8   they must avail themselves of extra-curricular activities, like gymnastics, for socialization is

9   likewise unavailing.  SAC ¶¶ 17, 26.  Such extra-curricular activities are typical for all children,

10  even those who attend public schools.  Finally, even if Plaintiffs alleged some de facto injury to

11  their religious beliefs (which they have not), no allegations trace any such injury to SB 277's

12  requirements, as opposed to their own independent decisions regarding how to educate their

13  children.  For these reasons, Plaintiffs lack standing and their claims should be dismissed.

14  **II.   PLAINTIFFS FAIL TO STATE A COGNIZABLE FIRST AMENDMENT CLAIM**

15       **A.   Mandatory vaccination laws without personal beliefs exemptions do not
             offend the First Amendment**
16

17       The authority of the California Legislature to require student vaccinations to protect the

18  health and safety of other students and the public at large, irrespective of their parents' personal

19  beliefs, is firmly embedded in our jurisprudence and embodies a quintessential function of

20  government to protect its people from preventable harm.  The State has an unquestionably

21  legitimate and compelling interest in protecting public health and safety, as recognized by the

22  Supreme Court in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), which

23  upheld the constitutionality of a state's smallpox vaccination requirement and recognized states'

24  ability to make vaccination a pre-condition to enter or remain in public schools.  *Id.* at 32.

25  Following *Jacobson*, the Supreme Court reiterated that "it is within the police power of a state to

26  provide for compulsory vaccination" in *Zucht v. King*, 260 U.S. 174, 175–177 (1922).  The

27

28       [3] Plaintiffs allege that A.D. "attends [a] charter school two days a week in person."  SAC
          ¶ 15.  By law, she is not allowed to receive any classroom-based instruction.  *See* RJN Ex. 22.

7

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 326 of 341    Page
ID #:983
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 15 of 27

1    Supreme Court further held in *Prince v. Massachusetts*, 321 U.S. 158 (1944), that "neither the

2    rights of religion nor rights of parenthood are beyond limitation," and both can be interfered with

3    when necessary to protect a child. *Id.*, at 166. In so holding, it reaffirmed that a parent "cannot

4    claim freedom from compulsory vaccination for the child more than for himself on religious

5    grounds. The right to practice religion freely does not include liberty to expose the community or

6    the child to communicable disease or the latter to ill health or death." *Id.*

7       California courts have come to the same conclusion. In *Walker v. Superior Court*, 47

8    Cal.3d 112 (1988), the California Supreme Court agreed that "parents have no right to free

9    exercise of religion at the price of a child's life, regardless of the prohibitive or compulsive nature

10   of the governmental infringement." *Id.*, at 140, citing *Jacobson* and *Prince*. Similarly, in *French

11   v. Davidson*, 143 Cal. 658 (1904), the Court upheld a municipal vaccination requirement,

12   explaining that "the proper place to commence in the attempt to prevent the spread of a contagion

13   was among the young, where they were kept together in considerable numbers in the same room

14   for long hours each day . . . children attending school occupy a natural class by themselves, more

15   liable to contagion, perhaps, than any other class that we can think of." *Id.* at 662.

16      Since *Jacobson*, *Zucht*, *Prince*, *Abeel*, and *French*, *supra*, federal and state courts have

17   repeatedly upheld mandatory vaccination laws over constitutional challenges. *See. e.g., Phillips

18   v. City of New York,* 775 F.3d 538, 543 (2d Cir. 2015); *Workman v. Mingo County Sch.,* 667

19   F.Supp.2d 679, 690-691 (S.D. W. Va. 2009); *Boone v. Boozman*, 217 F.Supp.2d 938, 956 (E.D.

20   Ark. 2002); *Hanzel v. Arter,* 625 F.Supp. 1259 (S.D. Ohio 1985).

21      In California, district and state courts previously rejected First Amendment Free Exercise

22   claims against SB 277 in multiple cases. In *Whitlow v. California*, 203 F. Supp.3d 1079, 1085-86

23   (S.D. Cal. 2016), the district court found that the plaintiffs were unlikely to prevail on their free

24   exercise arguments against SB 277. The *Whitlow* plaintiffs alleged that SB 277 violated the Free

25   Exercise Clause by (1) failing to provide a religious exemption to the vaccination mandate; (2)

26   forcing parents to choose between faith dictates and their children's education; and (3) offering

27   secular exemptions (medical, home schooling and Individualized Education Program (IEP)) while

28   failing to provide a religious exemption. *Id.* Relying on *Workman*, *Phillips*, and *Prince*, the court

8

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 327 of 341    Page
ID #:883
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 16 of 27

1   reasoned that plaintiffs were unlikely to prevail on their first two arguments: because the right to

2   free exercise does not outweigh the state's interest in public health and safety, mandatory

3   vaccination as a condition to school admission does not violate the Free Exercise Clause. *Id.* at

4   1086.  The court also rejected plaintiffs' secular exemption argument because a majority of the

5   Circuit Courts of Appeal refused to find that providing a secular exemption necessarily requires a

6   religious exemption. *Id.* at 1086-87, citing *Grace United Methodist Church v. City of Cheyenne*,

7   451 F.3d 643, 651 (10th Cir. 2006).  This remains true post-*Fulton v. City of Philadelphia*, 593

8   U.S. 522, 533 (2023), as addressed below.[4]

9       In *Torrey-Love v. State of California Dep't of Educ.*, *supra*, 2017 WL 11636240, at *3–*4,

10  the Central District dismissed plaintiffs' substantive due process and equal protection challenges

11  to SB 277 with prejudice.  The *Torrey-Love* court rejected plaintiffs' theories that SB 277

12  violated rights to refuse medical treatment and asserted rights to education. *Id.*

13      Subsequently, in *Brown v. Smith*, 24 Cal.App.5th 1135, 1144-45 (2018), the appellate court

14  rejected claims (similar to *Whitlow*) that SB 277 violated California's constitutional freedom of

15  religion clause. The court relied on federal authority in reaching its conclusion and further

16  reasoned that, even if it applied strict scrutiny, SB 277 survived strict scrutiny. *Id.* at 1145.

17      The court in *Love v. State Dep't of Educ.*, 29 Cal.App.5th 980, 988-995 (2018) rejected

18  additional constitutional challenges to SB 277 and followed the rationale in *Brown* to reject

19  plaintiffs' free exercise claim as well. *Id.* at 996.

20      Significantly, these decisions have been relied upon and reaffirmed in recent challenges to

21  other states' vaccination laws repealing religious exemptions.  *See We The Patriots USA, Inc. v.*

22  *Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 137, 147-148 (2d Cir. 2023) (upholding

23  dismissal of a Free Exercise challenge to a Connecticut law that repealed the state's religious

24  exemption to vaccination requirements); *Milford Christian Church v. Russell-Tucker*, No. 3:23-

25  CV-304 (VAB), 2023 WL 8358016, at *11 (D. Conn. Dec. 1, 2023) (dismissing challenge to

26  related Connecticut law); *see also Doe v. San Diego Unified School District*, 19 F.4th 1173 (9th

27      [4] The Southern District recently concluded that SB 277 withstood a similar Free Exercise
    Clause challenge.  *See Royce v. Bonta*, 725 F.Supp.3d 1126, 1140 (S.D. Cal. 2024).  The district
28  court allowed an opportunity to amend because the plaintiffs were on their original complaint.

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 328 of 341    Page
ID #:8838
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 17 of 27

1    Cir. 2021) (upholding school district's COVID-19 vaccine mandate); *F.F. v. State*, 194 A.D.3d

2    80, 87–88 (N.Y. App. Div. 2021) (upholding New York's repeal of its religious belief

3    exemption).  Nothing in this lawsuit upsets the seminal decisions discussed above.

**B.    SB 277's repeal of California's prior personal beliefs exemption does not violate the Free Exercise Clause**

6    Here, Plaintiffs' claims continue to fail for the same reasons articulated by the courts in

7    *Whitlow*, *Brown*, *Torrey-Love*, *Love*, *We The Patriots*, *F.F.*, and *Royce v. Bonta*, 725 F.Supp.3d at

8    1132-1140.[5]   Indeed, the conclusion is more compelling in relation to SB 277, which repealed

9    PBEs, as compared to the religion-based exemption repealed in *We The Patriots* and *F.F.*

**1.    Personal beliefs are not protected by the Free Exercise Clause**

11    The Free Exercise Clause does not protect subjectively held personal beliefs against

12    mandatory vaccination laws.  In *Wisconsin v. Yoder*, 406 U.S. 205 (1972) (*Yoder*), our Supreme

13    Court held that "*philosophical and personal . . . belief[s] [do] not rise to the demands of the*

14    *Religion Clauses*."  *Id.*, at 216 (italics added).  In *Hanzel*, plaintiffs objected to the immunization

15    of their children because they believed that the injection of foreign substances into the body is of

16    no benefit and can only be harmful.  *Hanzel*, 625 F.Supp. at 1260.  The *Hanzel* court disagreed,

17    stating, "[a]s made clear by the Supreme Court in *Yoder*, philosophical beliefs do not receive the

18    same deference in our legal system as do religious beliefs, even when the aspirations flowing

19    from each such set of beliefs coincide."  *Id.* at 1265.  Because SB 277 eliminated all PBEs it does

20    not violate the Free Exercise Clause.

21    Plaintiffs' Free Exercise Clause claims also fail because California's mandatory school

22    vaccination laws have not prevented Plaintiffs from exercising their religious beliefs against

23    vaccination.  SAC ¶¶ 15, 23, 32.  Their children remain unvaccinated.  *Id.*

**2.    The vaccination law is rationally related to a legitimate State interest**

25    Even if there were a burden on Plaintiffs' free exercise of religion, California's vaccine law

26    nevertheless would be subject only to deferential rational basis review, which it clearly satisfies.

27    _____

[5] For purposes of this motion only, it is presumed that Plaintiffs' new allegations related to the basis for their religious beliefs against vaccination are sufficient to implicate the Free Exercise clause.  *See* SAC ¶¶ 28, 31.

10

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 329 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 58-1    Filed 01/27/25    Page 18 of 27
ID #:985

1    Governmental restrictions that incidentally burden religious activity are not discriminatory—and

2    as such are subject to rational basis review—if they are neutral and of general applicability.  *Emp.*

3    *Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878-82; *Stormans, Inc. v. Wiesman*,

4    794 F.3d 1064, 1075 (9th Cir. 2015); *see also Fulton*, 593 U.S. at 532-534 (declining to overturn

5    *Smith*).  California's vaccination requirement applies to all children in public and private schools

6    and childcare facilities.  § 120325 *et seq.*  Thus, rational basis review is the correct level of

7    scrutiny.  *See Phillips*, 775 F.3d at 543, n. 5 ("no court appears ever to have held" that *Jacobson*

8    now demands strict scrutiny); *Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020).

9         "[T]he rational-basis standard . . . employs a relatively relaxed standard."  *Massachusetts*

10   *Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976).  A law is upheld "so long as it bears a

11   rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631(1996).  "[C]ourts

12   are compelled . . . to accept a legislature's generalizations even when there is an imperfect fit

13   between means and ends."  *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993).)  "[A] legislative

14   choice is not subject to courtroom fact[-]finding and may be based on rational speculation

15   unsupported by evidence or empirical data . . . . A statute is presumed constitutional . . . and [t]he

16   burden is on the one attacking the legislative arrangement to negate every conceivable basis

17   which might support it."  *Id.* at 320-21.

18        Plaintiffs cannot plausibly assert their claims because it is well-established that

19   immunization laws, such as SB 277, are rationally related to legitimate state interests.  The U.S.

20   Supreme Court, the California Supreme Court, and numerous other federal and state courts have

21   uniformly held that state immunization laws serve a rational, if not a compelling, state interest in

22   protecting the public from the spread of communicable diseases.  This interest was recognized by

23   the U.S. Supreme Court in *Jacobson* over 110 years ago and is consistently affirmed today.  *See,*

24   *e.g., Phillips*, 775 F.3d at 542.

25        SB 277 is rationally related to the legitimate state interest of protecting the public from the

26   spread of debilitating, and potentially fatal, diseases, as its legislative history confirms: "Vaccine

27   coverage at the community level is vitally important for people too young to receive

28   immunizations and [for] those unable to receive immunizations due to medical reasons."  RJN

11

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

1  Ex. 14 at 6.  "[W]hen belief exemptions to vaccination guidelines are permitted, vaccination rates

2  decrease."  *Id*. at Ex. 15 at 5.  "Given the highly contagious nature of [these] diseases . . .

3  vaccination rates of up to 95% are necessary to preserve herd immunity and prevent future

4  outbreaks."  *Id.* at Ex. 14 at 5.

5              **3.    SB 277 does not target religious belief**

6          Despite Plaintiffs' conclusory allegations to the contrary, SB 277 is content neutral because

7  it addressed a broad category of "philosophical" objections to vaccination and did not target

8  religion.  A law is not "neutral" only if it targets religious belief or has a purpose of suppressing

9  religion.  *Church of Lukumi Babalu Aye v. City of Hialeah* (*Lukumi*), 508 U.S. 520, 533 (1993).

10        Plaintiffs' assertion that SB 277 was not neutral to religion rests solely on the fact that the

11  law "intentionally" repealed the PBE and "thereby remov[ed] a religious exemption option" from

12  vaccination requirements.  SAC ¶ 85.  This, of course, ignores the fact that in removing the PBE,

13  SB 277 applied neutrally to all belief-based objections to vaccination.  *See* RJN Ex. 14 at 16;

14  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1077 (9th Cir. 2015) (regulation was neutral because

15  it "applies to *all* objections . . . that do not fall within an exemption, regardless of the motivation

16  behind those objections"); *Does 1-6 v. Mills*, 16 F.4th 20, 30 (1st Cir. 2021), cert. den. 142 S. Ct.

17  1112 (2022).  On its face, SB 277 focused on this range of philosophical objections to vaccination

18  and not on religion.[6]

19        In fact, the legislative history for SB 277 shows respectful and considered debate over the

20  removal of California's PBE, with a recognition that the repeal would have an incidental impact

21  on the subset of parents who previously obtained PBEs based on religious beliefs.  *See, e.g.*, RJN

22  Ex. 14 at 16-17.[7]  SB 277's legislative history shows no animosity to those beliefs.  *Id.*  Nor does

23

24          [6] Even if it had repealed a religious exemption, this would still be insufficient to show
   religious expression was targeted.  *See We The Patriots*, 76 F.4th at 149 ("that the Legislature
25  repealed a previously authorized religious exemption does not in and of itself transmute the law
   into a non-neutral law that targets religious beliefs").

26          [7] Plaintiffs suggest animus because the Legislature allegedly adopted SB 277 knowing it
   "might conflict with the Free Exercise Clause."  SAC ¶ 55.  But mere recognition of legal risks
27  does not amount to religious animus.  *See We The Patriots*, 76 F.4th at 148-149; *F.F.*, 194 A.D.3d
   at 86-88.  Moreover, while the legislative committee report cited by Plaintiffs flags that SB 277
28  *opponents* raised a free exercise concern, the report's analysis makes clear committee staff
   understood the bill was consistent with the First Amendment.  RJN Ex. 14 at 16-18.

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 331 of 341    Page
ID #:983
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 20 of 27

1   it show any differential treatment.  *Id.*  Instead, it shows removal of the PBE applied equally to all

2   Californians who may have personal beliefs against vaccination, regardless of whether those

3   beliefs were secular or religiously motivated.  *Id.*  Because Plaintiffs have not alleged any facts

4   amounting to animus, they have failed to dispute that SB 277 is neutral and subject to rational

5   basis review.

6           **4.**    **SB 277 does not allow discretionary, individualized exemptions**

7       SB 277 is also generally applicable because it did not create a "formal and discretionary

8   mechanism for individual exceptions."  *Tingley v. Ferguson*, 47 F.4th 1055, 1088 (9th Cir. 2022).

9   Under the individualized exemption doctrine, a law is not generally applicable if it provides a

10   "formal mechanism" for granting individual exceptions to the law that vests discretion with the

11   law's enforcing officers.  *Id.*  Plaintiffs allege the medical exemption in California's vaccine law

12   falls within this doctrine because it grants doctors and CDPH staff "individualized review of

13   every exemption in order to make a determination."  SAC ¶¶ 46, 87-88.  Plaintiffs fail to specify

14   what exact determination Department staff make.  But to the extent they seek to infer that

15   Department staff have discretionary power to grant individual exemptions, they misconstrue Free

16   Exercise precedents and misunderstand the statutory scheme at issue.

17       The individualized exemptions doctrine has "nothing to do with an across-the-board"

18   categorical exemption like the medical exemption contained in Health and Safety Code section

19   120372.  *See Smith*, 494 U.S. at 884.  As the Ninth Circuit explained, the doctrine developed in

20   cases where state law used an "open-ended, purely discretionary standard" ("good cause") that

21   required an "individualized governmental assessment of the reasons for the relevant conduct."

22   *Stormans*, 794 F.3d at 1081; *see also Fulton*, 593 U.S. at 534-535 (holding a municipal contract

23   created a mechanism for individualized exemptions subject to strict scrutiny because it expressly

24   afforded a city official "sole discretion" without limits to grant exemptions to the city's anti-

25   discrimination policy).  The Ninth Circuit has made clear that only this type of "unfettered

26   discretion" to create case-by-case exemptions to an otherwise applicable law is at issue in the

27   individualized exemptions doctrine.  *Stormans*, 794 F.3d at 1081-1082.  By contrast, if an

28   exemption is "tied to particularized, objective criteria," the law remains generally applicable.  *Id.*;

13

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 332 of 341   Page
ID #:888
Case 2:23-cv-02995-KJM-JDP   Document 58-1   Filed 01/27/25   Page 21 of 27

1   *see also Doe*, 19 F.4th at 1180 ("the rigidity of the medical exemption" to vaccine policy meant

2   no individualized exemptions existed).

3       California's medical exemption relies on particularized, objective criteria that leaves no

4   discretion to officials. Specifically, the exemption relies on (1) concrete statutory criteria, (2)

5   published recommendations by medical organizations, and (3) objective standards of care

6   governing licensed medical professionals. For a child to obtain a medical exemption for a

7   required vaccine, a licensed physician must issue a sworn certification that meets particular

8   criteria enumerated in code. § 120372(a)(2)(A)-(H). This includes a "description of the medical

9   basis for which the exemption for each individual immunization is sought" and a statement that

10  the child was evaluated "consistent with the relevant standard of care." § 120372(a)(2)(C), (F).

11  *See We the Patriots*, 76 F.4th at 150-151 (reliance on doctors' professional judgment to determine

12  if a child qualifies for a medical exemption does not make an exemption discretionary; statutory

13  "shall be exempt" language made exemption mandatory once criteria was established).

14      Contrary to Plaintiffs' implied suggestion, the Department does not review every medical

15  exemption submitted by doctors. Rather, only in limited situations where the Legislature deemed

16  there was a sufficiently high risk of non-compliance will a registered nurse or licensed physician

17  with the Department review submitted certification forms to ensure compliance with these

18  standards of care. § 120372(d)(2)-(3) (review limited to schools with immunization rate below 95

19  percent, medical providers who have submitted five or more medical exemptions in a year, and

20  schools that fail to report their immunization rates). Specifically, the Department nurse or

21  physician reviews the submitted documentation to identify medical exemptions that "do not meet

22  applicable . . . criteria for appropriate medical exemptions," as specifically set forth by the

23  Advisory Committee on Immunization Practices (ACIP) of the federal Centers for Disease

24  Control and Prevention (CDC), and the American Academy of Pediatrics. § 120372(d)(3)(A); *see*

25  RJN Exs. 19, 20. And while the Department reviewer "may accept a medical exemption that is

26  based on other contraindications or precautions" (i.e., not included on the published

27  recommendations), such an exemption must still be consistent with the relevant medical standard

28  of care and be supported by written documentation. *See* § 120372(d)(3)(A); RJN Ex. 21 at 7

14

Memo. Points & Authorities in Support of Motion to Dismiss Second Amd. Complaint (2:23-cv-02995-KJM-JDP)

1    (U.S. Dept. of Health and Human Services' Standards for Pediatric Immunization Practice).  The

2    medical exemption is thus firmly tethered to objective standards, leaving Department staff with

3    no discretion.  *See We the Patriots*, 76 F.4th at 151.

4         This reliance on objective standards of care is notably distinguishable from the Mississippi

5    vaccine law enjoined in *Bosarge v. Edney,* 669 F.Supp.3d 598, 610 (S.D. Miss. 2023) and cited in

6    the SAC.  That law allowed medical exemptions only when, in the "opinion" of a local health

7    officer, the "exemption will not cause undue risk to the community."  *Id.* at 610.  Untethered to

8    any stated criteria, that law was much closer to an "open-ended" standard subject to strict

9    scrutiny.  *See Stormans*, 794 F.3d at 1081.  But because California's medical exemption does not

10   provide for any discretionary, individualized exemptions, it is subject to rational basis review.

11        **5.    SB 277 does not contain comparable secular exemptions**

12        Finally, Plaintiffs fail to establish that the vaccine requirement contains a comparable

13   secular exemption justifying strict scrutiny.  A law is not generally applicable if it selectively

14   prohibits "conduct motivated by religious belief, but fails to include in its prohibitions substantial,

15   comparable secular conduct that would similarly threaten the government's interest."  *Stormans*,

16   794 F.3d at 1079; *see Tingley*, 47 F.4th at 1088-89.  Whether secular and religious activities are

17   "comparable" is evaluated "against the asserted government interest that justifies the regulation at

18   issue" and requires a focus on the risks posed, not the reasons for the conduct.  *Id.* (citing *Tandon

19   v. Newsom*, 593 U.S. 61, 62 (2021)).  Thus, a law lacks general applicability if it "prohibits

20   religious conduct while permitting secular conduct that undermines the government's asserted

21   interests in a similar way."  *Fulton*, 593 U.S. at 534.

22        Plaintiffs allege that three secular exemptions to the vaccine law exist for: (1) home-based

23   private schooling or independent study programs, (2) medical exemptions, and (3) students with

24   individualized education programs (IEPs) pursuant to the IDEA.  SAC ¶ 46.  But Plaintiffs fail to

25   allege any facts showing that these three alleged exemptions are actually comparable.  Nor can

26   they, since the alleged exemptions do not pose the same risk to the State's goal of protecting the

27   health and safety of students through increased immunization that PBEs posed.

28        First, the exemption for home-schooling or independent study applies only to students who

                                          15

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 334 of 341    Page
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 23 of 27
ID #:800

1    remain outside of the school setting, either receiving private instruction at home or instruction

2    from their school district that is delivered remotely without any presence in a classroom.  *See*

3    § 120335(f); RJN Ex. 22 (guidance describing independent study); Cal. Educ. Code §§ 51744-

4    51749.6 (statutory requirements for independent study).  On its face, this non-institutionalized

5    setting poses a lower risk to the spread of communicable disease than unvaccinated children

6    receiving in-person instruction in the classroom for the entire day throughout their entire K-12

7    grade education.  *See French*, 143 Cal. at 662 ("children attending school occupy a natural class

8    by themselves, more liable to contagion, perhaps, than any other class that we can think of").

9        Second, the medical exemption (described in detail above) is similarly not comparable to a

10    religious exemption in terms of risk to the State's interest in protecting child health and safety.

11    The medical exemption actually furthers the State's interest in protecting the small portion of

12    students who cannot be vaccinated due to the risk of harm that a particular vaccine may inflict on

13    them.  *See id.* at 153; *Doe*, 19 F.4th at 1178 (holding medical exemption "serves the primary

14    interest for imposing the mandate" and "does not undermine the District's interests as a religious

15    exemption would").  By contrast, a religious exemption would directly harm these medically

16    vulnerable students, for whom community immunity is critical, by threatening that community

17    immunity.  In addition, medical exemptions, unlike personal belief exceptions, may be limited in

18    duration.  *See* § 120372(a)(2)(G); Cal. Code Regs., tit. 17, § 6035(a)(3).  Medical exemptions

19    only exempt the specific vaccination or vaccinations that are medically contraindicated—all other

20    vaccinations are still required.  Cal. Code Regs., tit. 17, §§ 6050(a), 6051(a).

21        Moreover, medical exemptions are not comparable because they are extremely narrow in

22    scope, as shown by annual statewide school immunization data published by the Department.  *See*

23    *We the Patriots*, 76 F.4th at 152-53 (courts compare risk between secular and religious

24    exemptions based on the aggregate risk of the activities at issue, and not risk of individual

25    behavior in a particular setting).  That data shows only 0.3% of kindergarteners and 0.1% of

26    seventh graders had permanent medical exemptions in the 2021-22 school year.  *See* RJN Exs. 17

27    at 10, 18 at 11.  These rates are notably lower than the rates of PBEs in 2015-16 when that

28    exemption was repealed; that school year, 2.5% of kindergarteners and 2.1% of seventh graders

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 335 of 341    Page
ID #:893
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 24 of 27

1  had PBEs.  RJN Exs. 17 at 10, 18 at 11.  That is a difference of 830% among kindergarteners and

2  2100% among seventh graders.  This difference is only further heightened when the data is

3  broken out regionally, as personal belief exemptions occurred in deep pockets before they were

4  eliminated, with exemptions reaching up to 21 percent of students in some school districts in

5  2015—well below the threshold for herd immunity.  *See* RJN Ex. 13 at 2.

6      Finally, the IEP provision is similarly not comparable.  *See Doe*, 19 F.4th at 1179

7  (recognizing "in-person attendance by unvaccinated students with an IEP is not comparable to in-

8  person attendance by students with religious objections to vaccination").  That provision provides

9  that the vaccine law "does not prohibit a pupil" with an IEP "from accessing any special

10  education and related *services* required by his or her [IEP]."  § 120335(h), italic added.  As a

11  general matter, federal law requires implementation of IEPs, *see Doe*, 19 F.4th at 1179, which

12  vary in terms of the in-classroom requirements for students.  In any event, as with the medical

13  exemption, recent immunization data shows that the number of unvaccinated students in

14  California with IEPs is dwarfed by the historical rates of personal belief exemptions.  For

15  instance, the combined total of "others lacking immunization" (which includes independent

16  studies, IEP services and home-based private schools) was 1.7% for kindergartners in 2020-2021

17  and first graders in 2021-2022.  RJN Ex. 17 at 10, 14.  By contrast, the BPE rate was 2.5% in

18  2014-15.  *See* RJN Ex. 17 at 10.  And, as with the medical exemption, this provision actually

19  furthers the vaccine law's goals in that it does not force vaccination on children with physical or

20  other disabilities that may make them medically vulnerable, while maintaining the community

21  immunity needed to protect them.

22      Plaintiffs' reliance on conditional admission provisions for foster, homeless, migrant

23  children and active-duty military families also fail because they are not comparable.  *See* SAC ¶¶

24  50-53.  State law allows these students to *transfer* to and enroll in a new school without delay,

25  even if the new school has not received their immunization records, in recognition of the

26  students' vulnerable status.  *See* Cal. Ed. Code §§ 48204.6(c)(3), 48852.7(c)(3); 48853.5(f)(8)(B).

27  These students remain subject to the vaccine requirements.  *See* §§ 120335, 120341(b), 120375;

28  RJN Ex. 28 at 9 ("the law still requires that the school obtain the student's immunization record

17

Case 2:25-cv-04659-AB-JC   Document 24-1   Filed 06/24/25   Page 336 of 341   Page
Case 2:23-cv-02995-KJM-JDP   Document 38-1   Filed 01/27/25   Page 25 of 27
D #:8038

1    and ensure that these students meet all immunization requirements").  As with all transfer

2    students, state law requires proof of vaccination within 30 school days of enrollment.  Cal. Code

3    Regs. tit. 17, § 6035(d); Cal. Ed. Code § 49701 (30-day requirement for youth of military

4    families); RJN Ex. 28 at 8-9; *see also* Cal. Ed. Code § 48853.5(f)(8)(C) (burden on new school to

5    request foster youth's records from prior school); 42 U.S.C. § 11432(g)(3)(C)(iii) (school must

6    assist homeless students to obtain missing paperwork or immunizations).  A student who does not

7    comply must be excluded.  Cal. Code Regs. tit. 17, § 6040.  The Ninth Circuit has recognized that

8    conditional enrollment is not the risk equivalent of a vaccine exemption.  *Doe*, 19 F.4th at 1179.

9        Because there are no comparable secular exemptions, the vaccine law is generally

10   applicable and subject to rational basis review only.

11       **C.    Even if Strict Scrutiny Applied, SB 277 Passes Constitutional Muster**

12       Even if this Court were to presume strict scrutiny applies, the school vaccination law

13   survives because it is narrowly tailored to achieve a compelling governmental interest.  *See*

14   *Fulton*, 593 U.S. at 541.  Courts have long recognized the State has a compelling interest in

15   protecting the health and safety of its residents, including the students in its schools and daycares,

16   by preventing the spread of communicable diseases.  *Jacobson*, 197 U.S. at 11; *Love*, 29

17   Cal.App.5th at 990.  More specifically, it has a compelling interest in increasing vaccination rates

18   at schools and daycares statewide in order to prevent outbreaks of communicable diseases in

19   schools statewide, to protect children unable to be vaccinated who attend those schools (because

20   they are too young or are immunocompromised), and to prevent community spread by preventing

21   childhood diseases from taking root in schools.  To that end, "[c]onditioning school enrollment on

22   vaccination has long been accepted by the courts as a permissible way for States to inoculate

23   large numbers of young people and prevent the spread of contagious diseases."  *Whitlow*, 203

24   F.Supp.3d at 1091; *see Love*, 29 Cal.App.5th at 992 ("compulsory immunization has long been

25   recognized as the gold standard for preventing the spread of contagious diseases").

26       It bears repeating that two courts have already determined that SB 277 was narrowly

27   tailored to achieve these ends.  *Brown*, 24 Cal.App.5th at 1145; *Love*, 29 Cal.App.5th at 996.

28       In 2015—faced with a measles outbreak on the one hand, and alarming pockets of

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 337 of 341    Page
ID #:893
Case 2:23-cv-02995-KJM-JDP    Document 38-1    Filed 01/27/25    Page 26 of 27

1    unvaccinated communities on the other—the California Legislature determined that it needed to

2    take significant action to ensure the gold standard of compulsory school vaccination was not

3    undermined.  The State did not take blanket action to eliminate all vaccination exemptions,

4    recognizing, for instance, that some children are too young or have medical conditions that make

5    vaccination unsafe.  *See* RJN Ex. 13 at 7.  Rather, the Legislature took specific action to eliminate

6    the personal belief exemption that was a growing and unrestricted loophole preventing schools

7    from reaching community immunity and undermining the effectiveness of the school

8    immunization law.  *See id.* at 2.  At the same time, to ensure that elimination of the personal-

9    belief exemption did not impact students' rights under the State constitution to equal education,

10   the Legislature added an exemption for public school independent study programs with no

11   classroom component and home-based schools (as these settings did not carry the same risk of

12   transmitting communicable disease as classroom-based instruction).  Similarly, the Legislature

13   added a provision to ensure that the elimination of PBEs would not impact the ability of students

14   to receive special education services mandated by State and federal law.  Finally, while the

15   Legislature empowered the Department to impose additional requirements, it limited this ability

16   by requiring future vaccines mandated without Legislative action include medical and PBEs.

17       Plaintiffs concede that the State has a compelling interest "in promoting childhood

18   vaccination," but allege that this interest "is not so extraordinary as to prohibit an exemption for

19   secular reasons, which poses a similar contagion hazard as a hypothetical religious exemption."

20   SAC ¶ 86.  However, as explained above, medical exemptions, access to IEP services,

21   independent study without classroom instruction, and home schooling are not comparable to

22   PBEs.

23       Plaintiffs additionally allege that "California does not prohibit unvaccinated children from

24   attending camp, visiting public libraries or museums, or from interacting with their peers in any

25   other way."  SAC ¶ 86.  But the lack of a mandatory vaccination requirement in these other areas

26   does not make the law underinclusive.  *See Lukumi*, 508 U.S. at 546.  Critically, the State does

27   not require mandatory attendance of children in camps, libraries or museums, as it does

28   elementary and secondary school.  *See We the Patriots*, 76 F.4th at 156 (requiring "children be

19

1  vaccinated to attend school – as opposed to participate in community sports leagues, religious

2  gatherings, and social gatherings of all types," is rational because only school attendance

3  mandated by law).  Nor is there any allegation that such environments pose the same risk of

4  transmitting disease as schools, where the State has well-established compelling interest to ensure

5  children's safety.

6       Similarly, Plaintiffs allege that California does not "require that adult faculty, staff

7  members, or school visitors provide proof of immunization."  SAC ¶ 86.  This is misleading,

8  since the SAC acknowledges that local workplace requirements are in place across the State that

9  that would mitigate such a risk.  *See id.*  But even if true, this does not establish the law is

10  underinclusive since there is no allegation that adult immunization rates in schools have the same

11  impact on the spread of childhood communicable disease as vaccination of children.

12       Because SB 277 and the school vaccination law are narrowly tailored to advance the State's

13  interest in preventing childhood communicable diseases, preventing outbreaks, and protecting

14  vulnerable students, the law meets strict scrutiny.

15                              **CONCLUSION**

16       For the reasons above, the SAC should be dismissed in its entirety without leave to amend.

17  Dated:  January 27, 2025                    Respectfully submitted,

18                                              ROB BONTA
                                                Attorney General of California
19                                              DARRELL W. SPENCE
                                                Supervising Deputy Attorney General
20
                                                */s/ DARIN L. WESSEL*
21                                              DARIN L. WESSEL
                                                Deputy Attorney General
22                                              *Attorneys for Defendant Tomás Aragón, in
                                                his official capacity as Director of the
23                                              California Department of Public Health and
                                                State Public Health Officer*
24  SA2023306716
    84934100.docx
25

26

27

28

                                       20

# Exhibit 19

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 340 of 341    Page
ID #:896
Case 2:23-cv-02995-KJM-JDP    Document 43    Filed 03/12/25    Page 1 of 2

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Amy Doescher, et al.,                          No. 2:23-cv-02995-KJM-JDP

12                          Plaintiffs,              ORDER

13          v.

14    Tomás Aragón,

15                          Defendant.

16

17          In this action, the parents of several school-aged children allege California's

18    immunization laws deprive them of their rights under the First Amendment because they cannot

19    vaccinate their children without violating their religious convictions. *See generally* Second Am.

20    Compl., ECF No. 35. Defendant moves to dismiss for lack of subject matter jurisdiction and for

21    failure to state a claim, under Rules 12(b)(1) and 12(b)(6), respectively. *See generally* Mot., ECF

22    No. 38.

23          In a different action currently pending in the United States District Court for the Southern

24    District of California, the plaintiffs advance very similar claims based on similar allegations, they

25    challenge the same state law, and they are proceeding against the same defendant. *See generally*

26    Am. Compl., *Royce v. Aragón*, Case No. 3:23-cv-02012-H-BLM (S.D. Cal. Dec. 20, 2024), ECF

27    No. 48. Defendant Aragón also moves to dismiss for failure to state a claim in the *Royce* action,

28    and his arguments in that motion are similar to those he advances in this action.

                                                    1

Case 2:25-cv-04659-AB-JC    Document 24-1    Filed 06/24/25    Page 341 of 341    Page
ID #:897
Case 2:23-cv-02995-KJM-JDP    Document 43    Filed 03/12/25    Page 2 of 2

1      This case was originally filed on December 22, 2023.  *See generally* Compl., ECF No. 1.

2    The *Royce* action was filed a few weeks earlier, on October 31, 2023.  *See generally* Compl.,

3    Case No. 23-2012 (S.D. Cal. Oct. 31, 2023), ECF No. 1.  The Southern District court took the

4    pending motion in *Royce* under submission after hearing oral arguments on March 10, 2025.  *See*

5    Mins., ECF No. 58.  This court has scheduled arguments on defendant's motion to dismiss in this

6    action for April 17, 2025.  *See* Mins., ECF No. 41.

7      Defendant previously stated his position in a notice of related cases that "[j]udicial

8    economy would not be served by consolidation of the two cases *at the present time*."  Not.

9    Related Case at 2, ECF No. 15 (emphasis in original).  In response, this court did not relate the

10   cases because the relevant Local Rule "concerns the relation of actions filed within this district,

11   not the transfer or reassignment of cases from one district to the next."  Order (Apr. 3, 2024),

12   ECF No. 17.  Since then, the parties appear not to have addressed whether they believe this court

13   can or should stay this action under the first-to-file rule, *see Kohn L. Grp., Inc. v. Auto Parts Mfg.*

14   *Miss., Inc.*, 787 F.3d 1237, 1239–41 (9th Cir. 2015), whether they believe this action can or

15   should be transferred, *see* 28 U.S.C. § 1404(a), nor whether this court should reserve a decision

16   on defendant's motion to dismiss pending the Southern District court's order in *Royce*.  The

17   parties are therefore **ordered** to be prepared to discuss those issues at the hearing on April 17,

18   2025.

19     IT IS SO ORDERED.

20    DATED:  March 11, 2025.

21

               _____
               UNITED STATES DISTRICT JUDGE

2