ROB BONTA
Attorney General of California
JENNIFER G. PERKELL
Supervising Deputy Attorney General
JACQUELINE YOUNG, SBN 306094
KATHERINE J. GRAINGER, SBN 333901
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3870
  Fax:  (415) 703-5480
  E-mail:  Katherine.Grainger@doj.ca.gov
*Attorneys for Erica Pan, in her official capacity as The Director of the California Department of Public Health*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE, on her own behalf and on behalf of Child 1; WE THE PATRIOTS USA, INC.,**<br><br>                Plaintiffs,<br><br>v.<br><br>**VENTURA UNIFIED SCHOOL DISTRICT; ANTONIO CASTRO, in his official capacity only; ERIK NASARENKO, in his official capacity only; SARA BRUCKER, in her official capacity only; TONY THURMOND, in his official capacity only; ERICA PAN, in her official capacity only,**<br><br>                Defendants. | 2:25-cv-04659-AB-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CALIFORNIA DEPARTMENT OF PUBLIC HEALTH'S MOTION TO STAY ACTION PENDING OUTCOME OF SUBSTANTIALLY SIMILAR CASE**<br><br>Date:        July 25, 2025<br>Time:       10:00 a.m.<br>Courtroom:  7B<br>Judge:      The Honorable Andre Birotte, Jr.<br>Action Filed: 5/22/2025 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................. 1

Statement of Relevant Facts ........................................................................................ 2

    A.    Overview of California Immunization Law ............................... 2

    B.    Parties, Causes of Action, and Status of *Royce v. Pan*, United States District Court, Southern District of California, Case Number 3:23-cv-02012-H-BLM ..................... 4

    C.    Parties, Causes of Action, and Status of *Doescher v. Pan*, United States District Court, Eastern District of California, Case Number 2:23-cv-02995-KJM-JDP ................. 5

    D.    Parties, Causes of Action and Procedural History in the Instant Case ................................................................................... 6

Argument ..................................................................................................................... 7

    I.    The Matter Should Be Stayed Under the First-To-File Rule ................ 7

        A.    The *Royce* and the *Doescher* Cases Were Filed Before This Case ..................................................................................... 8

        B.    The Parties are Substantially Similar in All Three Actions ....... 9

        C.    The Claims and Issues are Substantially Similar in All Three Actions ................................................................................ 11

    II.    A Stay Would Be In Direct Furtherance of the Policy Purposes Animating the First-to-File Rule ......................................................... 12

Conclusion ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Adoma v. University of Phoenix, Inc.*
    711 F.Supp.2d 1142 (E.D. CA 2010) .................................................................. 11

*Alltrade, Inc. v. Uniweld Prod., Inc.*
    946 F.2d 622 (9th Cir. 1991) ................................................................................ 7

*Benson v. JPMorgan Chase Bank*
    N.A., No. C-09-5272-EMC, 2010 WL 1445532, at *2 (N.D. Cal. Apr. 7, 2010) .................................................................................................... 8

*Cadle Co. v. Whataburger of Alice, Inc.*
    174 F.3d 599 (5th Cir. 1999) .............................................................................. 13

*Church of Scientology of Cal. v. U.S. Dep't of Army*
    611 F.2d 738 (9th Cir. 1979) ................................................................................ 8

*Doescher v. Pan*
    No. 2:23-CV-02995-KJM-JDP, 2025 WL 1705012 (E.D. Cal. June 18, 2025) ................................................................................................... *passim*

*FutureLogic, Inc. v. Transact Techs. Inc.*
    No. CV0503754MMMPJWX, 2006 WL 8432105 (C.D. Cal. Jan. 20, 2006) ............................................................................................................ 11

*Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*
    665 F.3d 671 (5th Cir. 2011) .............................................................................. 11

*Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*
    787 F.3d 1237 (9th Cir. 2015) ..................................................................... *passim*

*Love v. State Dep't of Educ.*
    29 Cal.App.5th 980 (2018) ............................................................................... 2, 3

*Pacesetter Sys., Inc. v. Medtronic, Inc.*
    678 F.2d 93 (9th Cir. 1982) .................................................................................. 9

*Royce v. Pan*
    No. 3:23-CV-02012-H-BLM, 2025 WL 834769 (S.D. Cal. Mar. 17, 2025) ........................................................................................................ *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

*West Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*
    751 F.2d 721 (5th Cir. 1985) .................................................................. 13

**STATUTES**

California Health and Safety Code
    § 120335 ............................................................................................ 4, 6, 9
    § 120335(b) ................................................................................................ 2
    § 120372 .................................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................... *passim*

Fourteenth Amendment ................................................................... 7, 9, 12

**OTHER AUTHORITIES**

Cal. Stats. 2019 Reg. Sess., Chapter 278 ..................................................... 4

Cal. Stats. 2019 Reg. Sess., Chapter 278, § 1(c)(1)–(2) ............................. 4

Senate Bill 277 .................................................................................. 3, 4, 5, 6

# INTRODUCTION

Plaintiff Jane Doe is the mother of a school-age child who brings this action against the Director of the California Department of Public Health (CDPH or the Department) alleging that the State's vaccination mandate for school-aged children violates her right to free exercise of religion. In a different action currently pending in the Ninth Circuit Court of Appeals, *Royce v. Pan*, the plaintiffs, also parents of school-aged children, advance the same free exercise claim, also against the Director of CDPH, based on the same factual grounds: that they are unwilling to vaccinate their children to comply with California's vaccine law due to their religious beliefs. And, in a third action, *Doescher v. Pan*, filed in the United States District Court for the Eastern District of California, parents of school-aged children, unwilling to vaccinate their children due to religious beliefs, similarly allege that the State's vaccine mandate violates their Free Exercise rights. That case was just, on June 18, 2025, dismissed without leave to amend and judgment entered in favor of the Department. Litigation in the instant case should thus be stayed pursuant to the "first-to-file rule" pending the Ninth Circuit's decision in *Royce.*

The first-to-file rule was developed for precisely this type of situation. When multiple actions, involving the same or similar parties, and the same legal issues, are brought in different federal courts, in order to reduce the chance of multiple courts deciding the same issues, potentially inconsistently, the first case filed is allowed to proceed while the later-filed cases are stayed pending the outcome of the first. Logically, the courts hearing the later-filed cases may rely on the first-filed case's outcome, opinion, and discussion without having to relitigate the same issues. The result is that time and resources of the courts, and the parties, in the later-filed cases are conserved and relitigation of issues already decided may be precluded, or at least narrowed.

Because the plaintiffs in all three cases are substantially similar, and both the named defendant and the issues are the same, the first-to-file rule should apply here to stay this action pending the outcome on appeal of the first-filed action, *Royce*.

## STATEMENT OF RELEVANT FACTS

### A. Overview of California Immunization Law

For the past century, states have relied on school vaccination requirements to increase vaccination rates, reduce the incidence of childhood disease, and reduce community spread of disease. *See Love v. State Dep't of Educ.*, 29 Cal.App.5th 980, 992 (2018) ("compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases"); CDPH's Req. for Judicial Notice (RJN) Ex. 3. California's school immunization scheme was first implemented in 1961, requiring immunization against polio for all students entering public or private school in California. *See* RJN Ex. 4. The law allowed two exemptions: (1) if a parent or guardian submitted to a school's governing authority "a letter stating that immunization [was] contrary to" the parents' beliefs; or (2) if they submitted a letter from a physician stating immunization was "not considered safe" based on the child's physical condition or medical circumstances. *Id*. Ex. 4 at 2 (§§ 3382, 3384, 3385). Over the next 40 years, the Legislature expanded the list of required immunizations after careful consideration of the public health risks of numerous additional diseases, costs to the state and health system, communicability, and transmission rates. *See id.* Ex. 1 at 4.

Over the last 25 years, the law has consistently required any student attending a public or private childcare center or daycare, elementary school, or high school in California to be immunized against 10 diseases: diphtheria, haemophilus influenzae type b, measles, mumps, pertussis (whooping cough), polio, rubella, tetanus, hepatitis B, and varicella (chickenpox). Cal. Health & Saf. Code, § 120335(b)[1];

---

[1] All further statutory references are to the California Health and Safety Code unless otherwise noted.

RJN Ex. 1 at 4.  These diseases pose serious health risks to children, some life-threatening; and, with the exception of tetanus, can be spread by contact with infected children.  RJN Ex. 1 at 4.

In 2015, the State Legislature passed Senate Bill 277 (SB 277), which removed the personal beliefs exemption from the school vaccination requirements.  RJN Ex. 5 at 1.  SB 277 was prompted by a measles outbreak in 2015 that spread in large part because of communities with large numbers of unvaccinated people, where around 131 California residents contracted measles and 19 percent were hospitalized.  See RJN Exs. 6 at 4; 1 at 2, 5.  The Centers for Disease Control and Prevention (CDC) reported that 45 percent of the California patients were known to be unvaccinated and another 43 percent had "unknown or undocumented vaccination status."  *Id*. Exs. 7 at 1; 10 at 8.  The overwhelming majority of the vaccine-eligible but unvaccinated patients were unvaccinated due to personal beliefs; the majority were children.  *Id*. Ex. 7 at 1.

In considering SB 277, the Legislature reviewed alarming evidence of falling vaccination levels in communities across the State, alongside a rise in personal beliefs exemptions submitted by parents to excuse their children from school vaccination requirements.  This included a report showing that more than a quarter of California schools had measles-immunization rates below the threshold recommended by the CDC.  RJN Ex. 1 at 5.  At the same time, the number of personal beliefs exemptions had tripled between 2000 and 2013—from 1 percent of kindergarteners in 2000, to 3.15 percent by 2013.  *Id*. Ex. 1 at 2; *see Love*, 29 Cal.App.5th at 987.  Legislative analysis found these trends were connected, stating that "[s]tudies find that when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease."  RJN Ex. 1 at 5.  And where vaccination rates decrease, communities are more susceptible to outbreaks, making it "difficult to control the spread of disease and [made the State] vulnerable to having the virus re-establish itself."  *Id*.

1    Accordingly, after reviewing this evidence, the Legislature removed the
2    personal beliefs exemption from the vaccine statute.  Section 120335 allows
3    exemptions for a child who has a medical condition that makes vaccination
4    otherwise unsafe; and a homeschool exemption for a child in a home-based private
5    school or enrolled in an independent study program.
6    After an initial increase in statewide school vaccination rates immediately
7    following the passage of SB 277, immunization rates showed signs of decline.  *See*
8    RJN Exs. 8 at 1; 9 at 1.  By the 2018–2019 school year, the Legislature found that
9    16 percent of California counties had kindergarten immunization rates below 90
10   percent.  *See id*. Ex. 2 at 3; Cal. Stats. 2019 Reg. Sess., ch. 278, § 1(c)(1)–(2).  At
11   the same time, in the three years immediately after personal beliefs exemption was
12   eliminated, the rate of medical exemptions tripled.  *See id*. Ex. 10 at 7.  This
13   increase in medical exemptions was associated with physicians issuing exemptions
14   "without medically-justified contraindications" and "a small number of unethical
15   physicians" selling medical exemptions for profit.  *See id*. Ex. 10 at 7, 9.
16   In response to these trends, the Legislature adopted SB 276 in 2019 to prevent
17   misuse of the medical exemption.  Cal. Stats. 2019 Reg. Sess., ch. 278.  Among
18   other changes, the bill enacted objective criteria and standardized requirements for
19   medical exemption certifications, and a process for state-level review of medical
20   exemptions in limited situations.  § 120372(a), (c)-(d).  In the two years after the
21   bill's passage, medical exemptions fell 70 percent for kindergarteners and around
22   75 percent for seventh graders.  *See* RJN Exs. 11 at 3, 5; 12 at 3, 9.

**B.    Parties, Causes of Action, and Status of *Royce v. Pan*, United States District Court, Southern District of California, Case Number 3:23-cv-02012-H-BLM**

25   Plaintiffs in *Royce v. Pan*[2] (*Royce*), filed On October 31, 2023, are four
26   mothers with school-aged children in California who allege that their religious

---

[2] The case was originally filed as *Royce v. Bonta*, was changed to *Royce v. Aragón,* 2:23CV02995 when Attorney General Rob Bonta was dismissed from the
(continued…)

4

beliefs forbid them from vaccinating their children. RJN Ex. 13 at 3-4; Ex. 14 at 2-5. In that case, the plaintiffs sued the CDPH Director, alleging that the state school vaccine mandate, in the absence of a personal beliefs exemption, violates their right to the free exercise of religion. *Id*. Ex. 14 at 30-34.

On January 10, 2025, defendant Aragón filed a motion to dismiss, which, by Order of March 17, 2025, the federal district court granted, dismissing the case with prejudice. The Court ruled that SB 277 is a neutral law of general applicability that survives rational basis review, and thus that Plaintiffs failed to state a claim under the Free Exercise Clause. *Royce v. Pan*, No. 3:23-CV-02012-H-BLM, 2025 WL 834769, at *5-14 (S.D. Cal. Mar. 17, 2025). The Court determined that "California has a legitimate interest in protecting the health and safety of students and the public at large, and SB 277's repeal of California's prior personal beliefs exemption is rationally related to furthering that interest." *Id*. at *14.

On April 16, 2025, the *Royce* plaintiffs filed a notice of appeal. RJN Ex. 15. This matter is currently at the briefing stage before the Ninth Circuit Court of Appeals, case number 25-2504.

C. **Parties, Causes of Action, and Status of *Doescher v. Pan*, United States District Court, Eastern District of California, Case Number 2:23-cv-02995-KJM-JDP**

Plaintiffs in *Doescher v. Pan* (*Doescher*), filed On December 22, 2023, are three couples who are parents of school-aged children, who also sue the Director of CDPH, similarly alleging that SB 277, in eliminating the personal beliefs exemption, violates their First Amendment rights to free exercise of religion. RJN Ex. 16 at 4-6, Ex. 17 at ¶¶ 71–105.

On January 27, 2025, CDPH filed a motion to dismiss the Second Amended Complaint for failure to state a claim. RJN Ex 18. The Court subsequently requested that the parties be prepared to address at the motion to dismiss hearing

---

case and Tomás Aragón was the Director of CDPH. The case is now *Royce v. Pan*, because Erica Pan has assumed the position of Director of CDPH. To avoid confusion, the case will be referred to as "*Royce*" in this document.

5

whether the case should be stayed in light of the *Royce* case then pending in the Southern District, noting that the "plaintiffs advance very similar claims based on similar allegations, they challenge the same state law, and they are proceeding against the same defendants." *Id*. Ex. 19 at 1-2.

By Order of June 18, 2025, the Court in *Doescher* granted CDPH's motion to dismiss without leave to amend, ruling that, "[n]ow, as before, and like many other school vaccination requirements that have faced legal challenge over the years, SB 277 is constitutional" and does not violate the Free Exercise Clause because the law is neutral and generally applicable, and is rationally related to a legitimate state interest. *Doescher v. Pan*, No. 2:23-CV-02995-KJM-JDP, 2025 WL 1705012, at *12-14 (E.D. Cal. June 18, 2025). Judgment was entered on that same date.

### D. Parties, Causes of Action and Procedural History in the Instant Case

On May 22, 2025, Plaintiffs in this case filed a Complaint for declaratory and injunctive relief. Plaintiff Jane Doe is an adult parent of a child who, until January 7, 2025, was enrolled in public high school in the Ventura Unified School District. ECF No. 1 (Complaint) ¶ 9. Plaintiff We the Patriots USA, Inc. is a nonprofit entity "dedicated to promoting constitutional rights and other freedoms." *Id*. ¶ 8. Plaintiffs bring this action against six defendants: Tony Thurmond, State Superintendent of Public Instruction; Erica Pan as Director of CDPH; Ventura Unified School District, Antonio Castro, Superintendent of the Ventura Unified School District; Erik Nasarenko, Ventura County District Attorney; and Sara Brucker, Deputy District Attorney for the County of Ventura. *Id*. ¶¶ 10–15. To date, CDPH has not been served, and Plaintiffs have not filed any proofs of service reflecting that any defendant in the case has been served. *See* Dkt.

Plaintiff Jane Doe alleges compliance with Section 120335 of California's Health and Safety Code, California's law mandating vaccinations for school-aged children, would violate her religious beliefs. Complaint ¶ 51. Plaintiffs Jane Doe

6

and We the Patriots allege that by not allowing for a religious exemption for vaccinations of school-aged children, the State violates their First Amendment right to free exercise of religion. *Id*. ¶¶ 7, 18–22. Plaintiff Jane Doe also alleges violation of her purported First and Fourteenth Amendment right to child rearing. *Id*. ¶¶ 104–121.

On May 24, 2025, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order to seeking enjoin the enforcement of California's school vaccine statute. ECF No. 12. On June 17, 2025, the Court denied Plaintiffs' Application for a Temporary Restraining Order, ruling that Plaintiffs had failed to establish irreparable harm warranting urgent court intervention. ECF No. 22 at 3. Plaintiffs have also filed a Motion to Proceed Anonymously (ECF No. 14), which is currently set for hearing Friday, June 27, 2025, despite the fact that Plaintiffs have not served CDPH, have filed no proof of service as to any defendant, and multiple defendants have not appeared in this case.

## ARGUMENT

### I. THE MATTER SHOULD BE STAYED UNDER THE FIRST-TO-FILE RULE

The litigation in this case should be promptly stayed pending the decision of the Ninth Circuit Court of Appeals in the *Royce* matter because the earlier filed *Royce* suit advances virtually identical claims under Free Exercise Clause challenging the same law—California's vaccine mandate for school-aged children—based on substantially similar factual allegations.

The first-to-file rule is a discretionary doctrine that permits a district court to stay, transfer, or dismiss proceedings "if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The first-to-file rule should be applied to "maximize 'economy, consistency, and comity" and, accordingly, "should not be disregarded lightly." *Kohn Law Group, Inc.*, 787 F.3d

at 1239-40 (internal citations omitted).  Also known as the "federal comity doctrine[,]" the rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Benson v. JPMorgan Chase Bank,* N.A., No. C-09-5272-EMC, 2010 WL 1445532, at *2 (N.D. Cal. Apr. 7, 2010) (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

When deciding whether to apply the first-to-file rule, a court analyzes: (1) the chronology of the lawsuits; (2) the similarities of the parties; and (3) the similarity of the issues.  *Kohn Law Group, Inc.*, 787 F.3d at 1240.  Applying these factors here, it is clear that economy, consistency, and comity will be best served by staying this action pending the outcome of the Ninth Circuit *Royce* appeal.

**A.  The *Royce* and the *Doescher* Cases Were Filed Before This Case**

Of the three cases, the instant action is the most recent, and the *Royce* and *Doescher* cases were earlier filed.

The first case, *Royce*, was filed on October 31, 2023, in the United States District Court, Southern District of California (case no. 3:23-cv-02012-H-BLM).  RJN Ex. 13.  The *Royce* matter is currently in the briefing stage before the Ninth Circuit Court of Appeals.  See Docket No. 25-2504.

The second case, *Doescher*, was filed on December 22, 2023, in the United States District Court, Eastern District of California (case no. 2:23-cv-02995-KJM-JDP).  RJN Ex. 16.  At the briefing stage, the district court in the *Doescher* matter expressly asked the parties to be prepared to discuss at a hearing on April 17, 2025, the first-to-file rule as it pertained to the earlier filed *Royce* case.  *Id*. Ex 18.  Subsequently, on June 18, 2025, the district court granted defendant CDPH's motion to dismiss without leave to amend and entered judgment for defendant.  *Doescher,* 2025 WL 1705012, at *12-14.

The instant case, having been filed on May 22, 2025, is the most recent of the three cases and, thus, the chronology of the lawsuits supports application of a stay of this matter under the first-to-file rule.

**B.   The Parties are Substantially Similar in All Three Actions**

Second, because the parties in *Royce*, *Doescher*, and the instant case are either the same or substantially similar, this factor also supports a stay under the first-to-file rule.

The second factor considered by the court when applying the first-to-file rule is the similarity of the parties in each case. The rule "does not require exact identity of the parties," but rather only "substantial similarity." *Kohn Law Group, Inc.*, 787 F.3d. at 1240 (citations omitted). This rule is not intended to be inflexible, and thus should not be applied "mechanically." *Pacesetter Sys., Inc. v. Medtronic, Inc.* 678 F.2d 93, 95 (9th Cir. 1982). Accordingly, even when a defendant is not named in one of the cases at issue, this does not defeat application of the first-to-file rule. *Kohn Law Group, Inc.*, 787 F.3d at 1241.

*We the Patriots*

In this case, Plaintiff Jane Doe is the mother of a school-aged child who is not permitted to attend California public school due to the child's unvaccinated status pursuant to California Health and Safety Code section 120335. Complaint ¶ 53. Jane Doe refuses to have her child vaccinated because of her religious beliefs. *Id.* ¶¶ 48–53. Jane Doe alleges that California's vaccine law violates her First Amendment right to the free exercise of religion and her First and Fourteenth Amendment "parental rights." *Id.* ¶¶ 104–21.

Plaintiff We the Patriots is an organization whose stated mission is to "advance[] religious freedom, medical freedom, parental freedom, and educational freedom." Complaint ¶ 8. We the Patriots alleges that California's vaccine law deprives its "members" of their First and Fourteenth Amendment rights to direct the upbringing of their children by excluding children from private and public school if

9

their parents "determine it is inappropriate to administer a treatment" (i.e., vaccine) to their children because it is contrary to their religious beliefs. *Id*. ¶ 117.

Plaintiffs bring this action against the following defendants: California State Superintendent of Public Instruction Tony Thurmond, in his official capacity; Erica Pan, in her official capacity as Director of CDPH; the Ventura Unified School District; Superintendent of the Ventura Unified School District, Antonio Castro; Ventura County District Attorney Erik Nasarenko; and Deputy District Attorney Sara Bruker. Complaint ¶¶ 10–15.

*Royce*

The plaintiffs in *Royce* are substantially similar to Jane Doe and We the Patriots. The *Royce* plaintiffs are, as is Jane Doe, four mothers with school-aged children in California who allege that their religious beliefs forbid them from vaccinating their children, as a consequence of which their children are not permitted under the State's vaccine mandate for school-aged children to participate in California public or private school. RJN Ex. 14 at 2-5. This lawsuit is also brought against the Director of CDPH. *Id*.

*Doescher*

The plaintiffs in *Doescher* are also substantially similar to the named plaintiffs in *We the Patriots* and *Royce*. Once again, in *Doescher*, the plaintiffs are parents of school-aged children who refuse to vaccinate their children because of their religious beliefs and who allege that California's immunization laws violate their First Amendment religious rights by conditioning their children's school attendance on vaccination. RJN Ex. 17 at ¶¶ 71–105. The plaintiffs in *Doescher* also bring their action against the Director of CDPH. *Id*.

In sum, the plaintiffs in all three actions are substantially similar since they are all parents of school-aged children who refuse to vaccinate their children due to their religious beliefs and who allege that, because of California's mandatory vaccination rule, their children are barred from attending public and private

schooling in violation of their First Amendment Free Exercise rights. Similarly, the named defendants in all three actions include the Director of CDPH (Tomás Aragón, and now Erica Pan), in the Director's official capacity. Although there are additional defendants named in this case who are not named defendants in *Royce* or *Doescher*, that is immaterial, both because the Defendant Director *is* identical across all three suits, and because parties are not required to be identical under the first-to-file rule in any event. *Kohn Law Group, Inc.*, 787 F.3d at 1241.

### C. The Claims and Issues are Substantially Similar in All Three Actions

Finally, the claims in all three cases are the same and present identical or substantially similar issues for resolution. This fact further confirms that a stay is necessary to "maximize 'economy, consistency, and comity.'"

The third factor considered by the courts in determining application of the first-to-file rule is whether the claims and issues are "substantially similar" in each case. *Kohn Law Group, Inc.*, 787 F.3d at 1240. Again, because the purpose of the first-to-file rule is to maximize judicial economy, consistency, and comity, the issues in both cases "need not be identical." *Id.* at 1240–41; *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010). Accordingly, "it is not a prerequisite to application of the rule that the movant show that success in the first-filed case will furnish it with a defense in the second." *FutureLogic, Inc. v. Transact Techs. Inc.*, No. CV0503754MMMPJWX, 2006 WL 8432105, at *4 n. 26 (C.D. Cal. Jan. 20, 2006). To determine whether two suits involve substantially similar issues, courts look at whether there is "substantial overlap" between the suits. *Kohn Law Group, Inc.*, 787 F.3d at 1241; *Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011).

As discussed above, parent plaintiffs in all three cases allege that they refuse to vaccinate their children because of their religious beliefs, and that California's vaccine mandate for school-aged children, absent a personal beliefs exemption,

violates their First Amendment Free Exercise rights by conditioning their children's public or private school attendance on compliance with that mandate. *See* Complaint ¶¶ 48–53; ¶¶ 104–121 (alleging violation of Free Exercise rights, along with claimed First and Fourteenth Amendment "parental rights"); RJN Ex. 14 ¶¶ 149-73; Ex. 17 ¶¶ 71–105. All plaintiffs similarly allege, and have subsequently argued in briefing, that the challenged vaccine law lacks neutrality and general applicability, and does not survive strict scrutiny. *See id.* The district courts in *Royce* and *Doescher*, in granting, in each case respectively, defendant CDPH Director's motion to dismiss without leave to amend, have rejected those arguments. *Royce*, 2025 WL 834769, at *5-14; *Doescher*, 2025 WL 1705012, at *12-14. As noted above, the disposition of these claims and arguments is now pending review on appeal before the Ninth Circuit in *Royce*.

In sum, the central issue alleged by the plaintiffs in all three cases is the same: SB 277, by eliminating the "personal beliefs" exemption to California's vaccine mandate, violates plaintiffs' First Amendment rights to free exercise of religion. The additional claim in this case of alleged violation of so-called "parental rights" stems from the same set of underlying facts and the same issue of the Legislature's elimination of the personal beliefs exemption from the State's vaccine mandate. Thus, all three of the factors under the first-to-file rule are squarely satisfied here, supporting the immediate issuance of a stay.

## II. A STAY WOULD BE IN DIRECT FURTHERANCE OF THE POLICY PURPOSES ANIMATING THE FIRST-TO-FILE RULE

Because the first-to-file rule's criteria are satisfied here, this case should be stayed pending the Ninth Circuit's decision in *Royce* in order to further the policy purposes animating the rule.

As noted above, the first-to-file rule is a doctrine used to maximize judicial economy and "minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case

pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985). For these reasons, as noted above, the rule "should not be disregarded lightly." *Kohn Law Group, Inc.*, 787 F.3d at 1239.

Because the issues in this case are virtually identical to those in *Royce* and *Doescher*, Defendant Pan anticipates making the same arguments in opposition to this case as those made by the Director in the earlier cases. Thus, this Court will be charged with deciding the same issues, as between substantially similar plaintiffs and the same defendant. In fact, absent the State's participation due to Plaintiffs' ongoing failure to serve the State, this Court has already preliminarily ruled on these precise issues in denying Plaintiffs' motion for temporary restraining order. *See* ECF No. 22. This underscores the necessity for an immediate stay so as to avoid the imminent risk of further unnecessary duplication of resources and inconsistent decisions.

A stay pending resolution of *Royce* before the Ninth Circuit will afford this Court the benefit of having important precedent that will guide, and indeed likely control, its determination of the issues here. A stay will also benefit the parties because, even if the *Royce* decision does not bar this litigation entirely under *res judicata* principles, it will allow the parties to refine their arguments in light of controlling circuit precedent and avoid wasting this Court's time and resources in deciding moot or otherwise unmeritorious issues.

## CONCLUSION

Because the *Royce* and *Doescher* cases were filed before the instant case, the plaintiffs in all three cases are substantially similar, defendant Director of CDPH is

the same, and the issues are the same, under the first-to-file rule this Court should stay this case pending the outcome of *Royce.*

Dated: June 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
JENNIFER G. PERKELL
Supervising Deputy Attorney General

/s/ Katherine J. Grainger

KATHERINE J. GRAINGER
Deputy Attorney General
*Attorneys for Erica Pan, in her official capacity as the Director of the California Department of Public Health*

SF2025801746
44657761

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for CDPH, certifies that this brief contains 4,296 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

/s/ Katherine J. Grainger

KATHERINE J. GRAINGER
Deputy Attorney General
*Attorneys for Erica Pan in her official capacity as Director of the California Department of Public Health*