# Exhibit 1

ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Bethany Onishenko (*Pro Hac Vice*)
bonishenko@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:  (951) 304-7583

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SARA ROYCE**; **SARAH CLARK**; **TIFFANY BROWN**; and **KRISTI CARAWAY**; <br><br> Plaintiffs, <br><br> v. <br><br> **TOMÁS ARAGÓN**, in his official capacity as the State Public Health Officer; <br><br> Defendant. | Case No.:  3:23-cv-02012-H-BLM <br><br> **THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     This action challenges the constitutionality of Senate Bill (SB) 277 under the Free Exercise Clause.

2.     Plaintiffs have religious beliefs that forbid them from vaccinating their children, and their decision to adhere to their religious convictions has required significant sacrifices. California's compulsory vaccination law requires all students

to receive numerous vaccines to enter public or private school. Cal. Health & Saf. Code §§ 120325-120375. Plaintiffs' children are unable to enjoy the benefits of a public and private education that their secular peers enjoy because of California's compulsory vaccination requirements.

3.      California law allows students to object to the required school vaccines for secular reasons, but SB 277 removed the ability for students to object to the compulsory vaccines on religious grounds. Students can still enter public or private school if they are homeless, enrolled in an individualized education program ("IEP"), or have a medical objection.

4.      California also allows children to participate in camps, visit a public library, or participate in extra-curricular activities – all without proof of vaccination. California has no compelling, much less rational, justification for eliminating religious exemptions when religiously exempt students pose no greater risk than secularly exempt students.

5.      Indeed, California is only one of a few states that denies religious students the benefits of a private and public education. Most recently, a court held Mississippi's law violated the Free Exercise Clause because it disallowed religious exemptions to school-mandated vaccinations.

6.      SB 277 also deprives Plaintiffs of their rights under the First Amendment to the United States Constitution. Accordingly, Plaintiffs seek a declaratory judgment and an injunction, prohibiting California from implementing a law that does not provide the option for a religious exemption.

## PARTIES - PLAINTIFF

**Sara Royce**

7.      Plaintiff Sara Royce ("Mrs. Royce") resides in Pala, California. She is the mother of three children, one of whom is school age.

8.      Mrs. Royce and her husband prayed extensively and consulted the Bible when deciding whether to vaccinate their children, and they arrived at the firm

THIRD AMENDED COMPLAINT

religious conviction that they must not. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Royce believes vaccinating her children would cause her and her family to be complicit in abortion. None of Mrs. Royce's children are vaccinated.

9.     Mrs. Royce desires to enroll her elementary aged child in public or private school in California. However, because her child has received no vaccines, her child is unable to enroll in public or private school and interact with her friends, whom she is permitted to attend church with and interact with frequently outside of church.

**Sarah Clark**

10.     Plaintiff Sarah Clark ("Mrs. Clark") resides in Temecula, California. She is the mother of two school-aged children, one in fifth grade and one in sixth grade.

11.     Mrs. Clark's children were vaccinated as newborns and again in 2018-2019. After praying for an extended period, Mrs. Clark believes that the Lord told her to no longer vaccinate her children. Mrs. Clark believes that the body is a temple of the Holy Spirit (1 Corinthians 6:19-20) and that she must honor the Lord with the things she puts into her body. Mrs. Clark believes that vaccines violate the bible because they are a foreign substance and are harmful to the body. Mrs. Clark's children have not received any more vaccinations.

12.     Mrs. Clark would like her children to attend public school, but the school will not accept Mrs. Clark's children without the necessary vaccinations. Receiving the required vaccinations would be violative of the Clark family's religious beliefs. The only option available to the Clark family is homeschooling. This has been a great sacrifice for the Clarks, as Mrs. Clark has had to forego professional opportunities to homeschool her children.

**Tiffany Brown**

13.    Tiffany Brown ("Mrs. Brown") is a resident of Hollister, California. She has three daughters – 18, 14, and 8 years old.

14.    Mrs. Brown vaccinated her children in their early years, but after her children started to experience severe reactions following vaccination, Mrs. Brown began to research and pray about whether she should continue vaccinating her children.

15.     During her research, Mrs. Brown discovered that many vaccines contain aborted fetal cells. Mrs. Brown arrived at the firm religious conviction that she must not continue vaccinating her children, as to do so would cause her and her family to be complicit in abortion. Mrs. Brown's youngest daughter, G.B., has not received any vaccines.

16.    Because of their religious beliefs concerning vaccination, Mrs. Brown's daughters are not allowed to attend public school. Mrs. Brown was forced to homeschool her children and forgo professional opportunities.

**Kristi Caraway**

17.    Kristi Caraway ("Mrs. Caraway") is a resident of Lake Elsinore, California. She has ten biological children.

18.    Mrs. Caraway vaccinated her eldest three children. Her third child, J.C., developed injuries following vaccination, specifically the HepB and MMR vaccines. J.C. was non-verbal until age six and was diagnosed with autism in 2018. Due to his injuries, J.C. has a medical exemption to the vaccine requirement.

19.    Following J.C.'s injuries, Mrs. Caraway and her husband began to research vaccines. They discovered that many vaccines contain aborted fetal cells. The Caraways made the decision to stop vaccinating their children. Because many of the required childhood vaccines were derived from aborted fetal cells, Mrs. Caraway believes vaccinating her children would cause her and her family to be complicit in abortion in violation of their religious beliefs.

20.     Mrs. Caraway did not vaccinate her six youngest children. Accordingly, they are not permitted to attend public or private school. Mrs. Caraway's youngest six children are homeschooled through a charter program. Mrs. Caraway desires to send her children to public school.

### PARTIES - DEFENDANT

21.     Defendant Tomás Aragón is made party to this Action in his official capacity as the State Public Health Officer. He is sued in his official capacity. Under California law, he is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of SB 277 for school-aged children.

### JURISDICTION AND VENUE

22.     This civil rights action raises federal questions under the United States Constitution, specifically the First Amendment, and under federal law, particularly 42 U.S.C. § 1983.

23.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

24.     This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

THIRD AMENDED COMPLAINT

**STATEMENT OF FACTS**

**A.    History of Childhood Vaccination Requirements in California**

26.    In 1961, California began to add required vaccines for public and private school entry. The California Legislature first enacted a single dose of polio vaccination for school attendance.

27.    In 1977, the Legislature added single doses of diphtheria, pertussis, tetanus, and measles vaccines to the school vaccination schedule.

28.    In 1979, the Legislature added single doses of mumps and rubella vaccines to the list.

29.    In 1992, the Legislature added a haemophilus influenzae type b.

30.    In 1995 and 1997, the Legislature added a vaccine for hepatitis B.

31.    In 1999, the Legislature added vaccination for varicella (chicken pox) to the required list of vaccines.

32.    The Legislature added a tetanus, diphtheria, and pertussis booster as a requirement for advancement to the seventh grade in 2010.

33.    The vaccination schedule has drastically changed since its implementation in 1961, which required only a single dose of the polio vaccination. Today, California requires sixteen total doses from five vaccinations prior to school attendance.

34.    Prior to Kindergarten enrollment, students must receive five doses of the DTap/Tdap vaccine, which is a combination vaccine protecting against Diptheria, Tetanus, and Pertussis. Students must also receive four doses of the polio vaccine, three doses of the hepatitis b vaccine, two doses of the combination measles, mumps, and rubella ("MMR") vaccine, and two doses of the varicella (or chickenpox) vaccine before they enroll in kindergarten. Students must receive an

THIRD AMENDED COMPLAINT

additional dose of the Dtap/Tdap vaccine and an additional two doses of the Varicella vaccine prior to advancing to the seventh grade.[1]

**B.     SB 277 Removed The Personal Belief Exemption To Vaccination, Yet California Still Provides Other Categorial Vaccination Exemptions**

35.    In 2015, as a response to the measles outbreak, the California Legislature enacted SB 277, which eliminated the personal belief exemptions ("PBE"). At the time, only approximately 2.5% of students had PBEs.

36.    Plaintiffs presume that the stated goal of SB 277 was to prevent the transmission of disease. Meanwhile, Cal. Health & Safety Code § 120325(a) stated that when enacting Chapter 1 (entitled Educational and Child Care Facility Immunization Requirements) of Division 105 (Communicable Disease Prevention and Control) it was "the intent of the Legislature to provide: A means for the eventual achievement of total immunization of appropriate age groups against" the list of ten child diseases for which immunizations are required for school attendance. Interestingly, Cal. Health & Safety Code § 120325(c) also states that it is the intent of the legislature to provide "[e]xemptions from immunization for medical reasons."

37.    Indeed, the intent of the legislature in passing SB 277 is revealed in its legislative history. In the Senate Committee on Health's comment section, it states the following: "Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary to preserve herd immunity and prevent future outbreaks." The legislative history further touts the effectiveness of vaccines in preventing disease, further demonstrating that the intent was to prevent the transmission of disease.

---

[1] California Department of Public Health, *California Immunization Requirements for K–12th Grade*, updated May 2024, at 1, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/Immunization/IMM-231.pdf.

ADVOCATES
FOR FAITH & FREEDOM

38.    The legislative history also indicates that the California Senate justified continuing to provide medical exemptions on the speculative belief that less students would request medical exemptions than religious exemptions. In the Senate Floor's Analysis posted on June 25, 2015, they note that even though the percentage of conditional entrants increased for the 2014-15 school year, "[t]he percentage of students with permanent medical exemptions stayed the same at .19 percent…."

39.    Until SB 277, each of the required vaccinations for school entry were subject to a PBE.

40.    With the removal of the PBE, students cannot object to individual vaccinations. Rather, students must receive all vaccinations on the K-12 immunization schedule.

41.    Despite eliminating the PBE, SB 277 still provides exemptions to the vaccination requirements, including medical exemptions, Cal. Health & Safety Code § 120370(a), exemptions for "home-based private school or …an independent study program[,]" *id.* § 120335(f), and exemptions for students who qualify for an IEP, *id.* § 120335(h).

42.    Medical exemptions under Cal. Health & Safety Code § 120370(a) are not temporary in nature. An exemption is provided for the entire duration that the student has his or her medical condition. There is no basis to suggest that a student who has a medical contraindication to the school-mandated vaccines will overcome that condition and be medically cleared to the vaccines during the school year.

43.    Independent studies referenced in Cal. Health & Safety Code § 120335(f) can be organized in the following ways pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code: school-within-a-school; countywide home-based independent study offered by the county superintendent of schools; district or county alternative in a communication location; school-based independent study offered part-time and full-time; countywide home-based independent study offered by the county superintendent of

schools; district dropout prevention centers at selected community sites; district dropout prevention centers at selected community sites; curricular enrichment options offered to high school students with special abilities and interests, scheduling problems, or individual needs that cannot be met in the regular program; alternative school-based independent study, on-or off-site; and some combination of the above.

44.  Cal. Health & Safety Code § 120335(g) also provided a seven year exemption to those students previously granted a PBE: "A pupil who, prior to January 1, 2016, submitted a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization shall be allowed enrollment to any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span."

45.  Under Cal. Health & Safety Code § 120335(g), "grade span" means each of the following: (A) Birth to preschool; (B) Kindergarten and grades 1 to 6, inclusive, including transitional kindergarten; and (C) Grades 7 to 12, inclusive. Effectively, the legislature decided to create a "grandfather" clause granting a continuation of the PBEs to students despite the purported health risks created by PBEs.

46.  Under Cal. Health & Safety Code § 120335(h) also specifies an exemption for every pupil who qualifies for an IEP: "This section does not prohibit a pupil who qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by his or her individualized education program."

47.  Cal. Ed. Code § 48216(b) effectively provides a two-week exemption for any pupil that has not been properly immunized: "The governing board of the district shall notify the parent or guardian of the pupil that they have two weeks to

ADVOCATES
FOR FAITH & FREEDOM

1  supply evidence either that the pupil has been properly immunized, or that the pupil

2  is exempted from the immunization requirement pursuant to Section 120365 or

3  120370 of the Health and Safety Code."

4  48.    Cal. Code Regs. tit. 17, § 6035(d)(1) provides an exemption for 30

5  school days to pupils transferring from another state: "For a pupil transferring into a

6  school in California from another school in the United States at kindergarten through

7  12th grade whose immunization record, as specified in section 6065 or 6070, has not

8  been received by the new school at the time of admission, the governing authority

9  of the school may admit the pupil for up to 30 school days."

10  49.    As described below, California also allows an exemption with an

11  unspecified duration to foster youth, homeless children, migrant students, military

12  families, and children to attend public and private schools without proof of

13  vaccination.

14  50.    Section 48853(f)(8)(B) of the Education Code provides that when a

15  foster child is transferred to a new school, that school "shall immediately enroll the

16  foster child even if the foster child…is unable to produce…records normally

17  required for enrollment, such as…proof of immunization history..."

18  51.    Similarly, Section 48852.7(c)(3) of the Education Code requires the

19  school to immediately "enroll the homeless child even if the child…is unable to

20  produce…records normally required for enrollment…including, but not limited to,

21  records or other proof of immunization history…"

22  52.    Furthermore, the exemption for a "homeless child" includes foreign

23  migrant children as well. Cal. Educ. Code § 48852.7(f)(1) states that a "homeless

24  child … has the same meaning as in Section 11434a(2) of Title 42 of the United

25  States Code." That federal statute includes (iv) "migratory children (as such term is

26  defined in section 6399 of Title 20) who qualify as homeless for the purposes of this

27  part because the children are living in circumstances described in clauses (i) through

28

(iii)." 42 U.S.C.A. § 11434a(2)(B)(iv). A migratory child includes children of parent who is a "migratory agricultural worker or migratory fisher." 20 U.S.C.A. § 6399.

53.     These sections do not require proof of residency or citizenship, allowing undocumented and unvaccinated migrant students to enroll in school.

54.     Section 48204.6(c)(3) of the Education Code provides the same exemption for military families and children.

55.     Notably, Education Code §§ 48853(f)(8)(B), 48852.7(c)(3), and 48204.6(c)(3) do not require students to provide proof of vaccination within a certain time period.

56.     Many schools have allowed foster children, homeless children, and migrant students to enroll in school unvaccinated for the entire duration of the school year, as allowed by state law.

57.     The state does not require the school districts to disenroll students if they do not provide proof of vaccination within thirty days. There are circumstances when school districts, including schools in the Inland Empire of California, spend the entire school year trying to ensure students are compliant.

58.     Indeed, there are circumstances where school districts can take more than an entire school year to confirm compliance. The state is primarily concerned that schools make a good faith effort to ensure compliance.

59.     SB 277 broadened medical exemptions under § 120370(a) to give physicians discretion to write medical exemptions beyond the narrow Center for Disease Control (CDC) guidelines.

60.     When former Governor Brown signed SB 277, he acknowledged that "[t]he Legislature, after considerable debate, specifically amended SB 277, to exempt a child from immunizations whenever the child's physician concludes that there are circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization…."

ADVOCATES
FOR FAITH & FREEDOM

61.     Notably, when considering SB 277, the Senate Judiciary committee highlighted that repealing the PBE "effectively repeals any possible religious exemptions" and may conflict with the Free Exercise Clause. See Senate Judiciary Committee Hearing on SB 277 at *16 (April 28, 2015).

62.     Several civil rights groups, such as the ACLU-CA, noted that removing religious exemptions raises constitutional concerns.

63.     However, the committee minimized any free exercise concerns by noting that the bill was a neutral law of general applicability. *Id*. The committee further rationalized that to "give effect to the religious exception, which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children who have no such religious conviction." *Id*. at 17.

64.     Numerous religious adherents testified about how SB 277 would impact them and their families, but Governor Brown still signed the bill over their objections and in contradiction to his prior conduct. For instance, in 2012, he directed the California Department of Public Health to allow for religious exemptions under AB 2109.

65.     The legislators' treatment and consideration of the religious adherents' concerns were neither tolerant nor respectful of their religious beliefs.

66.     Several legislators, including the author of SB 277, Richard Pan, have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines.

67.     For instance, on social media, Richard Pan stated that people who "opt out of vaccines should be opted out of American society." He even equated these individuals to drunk drivers.

68.     Maral Farsi, who serves as the Deputy Director of Legislative and Inter-Governmental Affairs, has stated that anti-vaxxer parents are "oxygen thieves who don't care about children."

69.   These statements diminish the sincerely held religious beliefs of parents across California.

70.   The state targeted religion because it expressly eliminated religious exemptions.

71.   Even though the California Legislature stated it enacted SB 277 to achieve total immunization of appropriate age groups, the evidence still demonstrates a targeting of religion because exempt students pose the same risk, if not a greater risk, than students with religious exemptions.

72.   Although SB 277 removed all PBEs, hostility towards religion is still demonstrated because PBEs are still subject to First Amendment protection. Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others, nor do they have to be part of an established religion. They just must be sincere.

## C.   California's Mandatory School Vaccinations Contain Harmful And Morally Objectional Ingredients

73.   Since 2021, after the development of the COVID-19 vaccine, information related to the efficacy of vaccines and religious objections to the development of vaccines became more widely known and understood.

74.   It is now more generally understood that many vaccinations contain harmful and morally objectionable ingredients, including known neurotoxins, aborted fetal cells and tissue, and heavy metals. This knowledge has prompted many parents, including Plaintiffs, to object to their children receiving one, some, or all the mandatory vaccines required for public and private school admission.

75.   Included in the package of a vaccine is a manufacturer insert which provides information about the product and its use from the manufacturer. Inserts provide healthcare providers and patients with information about the intended use for a medication as well as ingredients, warnings, and much more.

76. According to the Center for Disease Control ("CDC"), vaccine ingredients fall into several categories. In addition to weakened or killed disease antigens (such as weakened, killed, or parts of viruses or bacteria), vaccines contain other ingredients, known as excipients.

77. The CDC has created a vaccine excipient table for easy reference, which summarizes the excipients in various vaccinations. A true and correct copy is attached hereto as Exhibit A.

78. According to the excipient table (Ex. A), some excipients are added to a vaccine for a specific purpose. These include:

- **Preservatives,** which prevent contamination. For example, thimerosal is a common preservative used in vaccinations, which is a mercury-based preservative. Mercury is a known neurotoxin.

- **Adjuvants**, which help stimulate a stronger immune response. For example, aluminum salts are a common adjuvant. Aluminum is a known neurotoxin.

- **Stabilizers**, which keep the vaccine potent during transportation and storage. These include sugars and gelatin.

79. Other ingredients were utilized during the manufacturing process and later removed from the vaccine. These include:

- **Cell culture materials,** which are used to grow the vaccine antigens. Common cell culture materials include egg proteins and various culture media.

- **Inactivating ingredients**, which are used to kill viruses and inactive toxins. A common inactivating ingredient used in vaccines is formaldehyde.

- **Antibiotics**, which are used to prevent contamination by bacteria.

80. The vaccine excipient table reflects that two human cell lines (MRC-5 and WI-38) are used to grow the weakened virus strains utilized in many

vaccinations. *See* Ex. A at 2-4. The MRC-5 and WI-38 cell lines have their origins in cells derived from the lung tissue of aborted fetuses.

81. Although these human cell lines could have been produced using cells taken from other sources, they were not. In many cases, there is no other choice than either to make use of a tainted vaccine or to forgo vaccination altogether.

82. For example, the vaccine "MMR (MMR-II)," a widely used vaccine for measles, mumps, and rubella, uses the WI-38 cell line. *See* Ex. A at 3. The chicken pox vaccine "Varivax," uses both MRC-5 and WI-38. *See* Ex. A at 4.

83. The above referenced CDC vaccine excipient list (populated from manufacturer vaccine inserts) shows that DNA from MRC-5 cells is transferred to the patient/recipient, as all ingredients included on the excipient list are "contained in the final formulation of each vaccine." *See* Ex. A at 1.

84. Many individuals' religiously object to vaccinations based on the use of aborted fetal tissue in certain vaccinations.

85. Additionally, many vaccinations contain harmful and known neurotoxins and heavy metals.

86. For example, aluminum is the most commonly used vaccine adjuvant. Aluminum adjuvants are used in vaccines such as hepatitis A, hepatitis B, diphtheria-tetanus-containing vaccines, Haemophilus influenzae type b, and pneumococcal vaccines. Vaccine adjuvants are not used in the live, viral vaccines, such as measles, mumps, rubella, varicella and rotavirus.

87. Studies clearly show that aluminum adjuvants have a potential to induce serious immunological disorders in humans. In particular, aluminum in adjuvant form carries a risk for autoimmunity, long-term brain inflammation and associated neurological complications and may thus have profound and widespread

adverse health consequences.[2] Furthermore, the slow accumulation of aluminum from receiving multiple vaccines containing aluminum adjuvants causes neurodevelopmental defects, as well as neurodegeneration in adults.[3]

88.     Thimerosal is commonly used vaccine preservative. Thimerosal is a mercury-containing organic compound.

89.     Over 89 peer-reviewed published articles link autism, mercury and thimerosal.[4] The science continues to accumulate that mercury and thimerosal are potent drivers of the autism epidemic.

90.     The Food and Drug Administration ("FDA") has begun to address the issue of thimerosal as a preservative in vaccines. However, according to the CDC, the following vaccines still contain thimerosal, Td (Tetanus), Menomune (Meningococcal), as well as many flu vaccines. *See* Ex. A.

91.     Other known neurotoxins contained in the various mandated vaccinations include polysorbate 80, polyethylene glycol, and formaldehyde.

92.     Many people have a sincerely held religious belief that God created the human body as a temple and that the body should not be intentionally injected with viruses, neurotoxins, heavy metals, and other harmful ingredients.

---

[2] Tomljenovic L, Shaw CA. Aluminum vaccine adjuvants: are they safe? Curr Med Chem. 2011;18(17):2630-7. doi: 10.2174/092986711795933740. PMID: 21568886.

[3] Blaylock RL. Additive aluminum as a cause of induced immunoexcitoxicity resulting in neurodevelopmental and neurodegenerative disorders: A biochemical, pathophysiological, and pharmacological analysis. Surg Neurol Int. 2024 May 24;15:171. doi: 10.25259/SNI_296_2024. PMID: 38840623; PMCID: PMC11152537.

[4] Children's Health Defense. *Peer-Reviewed, Published Research Showing Adverse Effects of Mercury*, available at https://childrenshealthdefense.org/wp-content/uploads/autism-mercury-abstracts-2.27.20.pdf

ADVOCATES
FOR FAITH & FREEDOM

**D.    California's Mandatory School Vaccinations Have Known and Stated Risks**

93.    Each vaccine on the school immunization schedule can cause significant adverse reactions, which additionally result in religious objection.

*Varicella Vaccine*

94.    For example, the chickenpox vaccination manufacturer insert states that the vaccine can cause adverse reactions including: anaphylaxis/anaphylactic shock, angioneurotic edema, facial edema, peripheral edema, necrotizing retinitis (in immunocompromised individuals), aplastic anemia, thrombocytopenia (including idiopathic thrombocytopenic purpura (ITP)), varicella (vaccine strain), encephalitis, cerebrovascular accident (stroke), transverse myelitis, impetigo, Guillain-Barre syndrome, bell's palsy, ataxia, non-febrile seizures, aseptic meningitis, meningitis, dizziness, paresthesia, pharyngitis, pneumonia/pneumonitis, Stevens-Johnson syndrome, erythema multiforme, henoch-schönlein purpura, cellulitis, and herpes zoster (shingles).[5]

*Hepatitis B Vaccine*

95.    Some of the severe, manufacturer-listed adverse reactions to the Hep B vaccine include shingles, meningitis, anaphlaxysis, multiple sclerosis, paralysis, seizures, tachycardia, dyspepsia, alopecia (baldness), angioedema, encephalopathy, bell's palsy, and Guillain-Barré syndrome, among many other reactions.[6]

---

[5] VARIVAX® Varicella Virus Vaccine Live Manufacturer Insert, https://www.fda.gov/media/76008/download

[6] ENGERIX-B [Hepatitis B Vaccine (Recombinant)] Manufacturer Insert, https://www.fda.gov/media/119403/download; RECOMBIVAX HB® Hepatitis B Vaccine (Recombinant) Manufacturer Insert, https://www.fda.gov/files/vaccines%2C%20blood%20%26%20biologics/published/package-insert-recombivax-hb.pdf



***DTap/TDAP Vaccine***

96.     For the DTap vaccine, the manufacturer lists sudden infant death syndrome ("SIDs") as a potential adverse reaction, among others.[7]

97.     For the TDAP vaccine, two manufacturers make this vaccination. The manufacturer listed adverse reactions on the TDAP vaccine Adacel include anaphylactic reaction, Guillain-Barre syndrome, facial palsy, syncope (fainting), myelitis, and myocarditis, among others. [8]

98.     The manufacturer-listed adverse reactions on the TDAP vaccine Boostrix include encephalitis (brain inflammation), loss of consciousness, exanthem, henoch-schönlein purpura, lymphadenitis, lymphadenopathy, allergic reactions, anaphylactic and anaphylactoid reactions, myocarditis, syncope (fainting), and facial palsy, among others.[9]

***Polio Vaccine***

99.     The polio vaccination manufacturer inserts states that "deaths have occurred in temporal association after vaccination of infants with [the inactivated poliovirus vaccine]." Additionally, the insert states that Guillain-Barré Syndrome "has been temporally related to administration of another inactivated poliovirus vaccine." Other listed adverse reactions include Lymphadenopathy (abnormal lymph nodes), Type I hypersensitivity including allergic reaction, anaphylactic

---

[7] INFANRIX (Diphtheria and Tetanus Toxoids and Acellular Pertussis Vaccine Adsorbed) Manufacturer Insert, https://www.fda.gov/media/75157/download

[8] Adacel (Tetanus Toxoid, Reduced Diphtheria Toxoid and Acellular Pertussis Vaccine Adsorbed) Manufacturer Insert, https://www.fda.gov/media/119862/download.

[9] BOOSTRIX (Tetanus Toxoid, Reduced Diphtheria Toxoid and Acellular Pertussis Vaccine, Adsorbed) Manufacturer Insert, https://www.fda.gov/media/124002/download.

THIRD AMENDED COMPLAINT

reaction, and anaphylactic shock. Arthralgia (joint pain), Myalgia (muscle pain), Convulsion, Febrile convulsion, Headache, Paresthesia (burning, pricking sensation in your limbs, arms, and skin), Somnolence (drowsiness), Syncope (fainting), Rash, and Urticaria (hives).[10]

### *MMR vaccine*

100.   The manufacturer-listed adverse reactions to the MMR vaccine include: Panniculitis, Atypical Measles, Fever, Syncope (Fainting), Headache, Dizziness, Malaise (Discomfort), Irritability, Vasculitis, Pancreatitis, Diarrhea, Vomiting, Parotitis, Encephalitis, Encephalopathy, Measles inclusion body encephalitis (MIBE), Subacute sclerosing panencephalitis (SSPE), Nausea, Thrombocytopenia, Purpura, Lymphadenopathy, Leukocytosis, Anaphylaxis, Anaphylactoid reactions, Angioedema, Peripheral or facial edema, Bronchial spasm, Arthritis, Arthralgia, Myalgia, Urticaria (Hives), Erythema multiforme, Measles-like rash, Papillitis, Orchitis, Epididymitis, Papillitis, Optic neuritis, Retinitis, Otitis media, Nerve deafness, Pruritus, Ataxia, Polyneuritis, Polyneuropathy, Ocular palsies, Paresthesia, Pneumonitis, Sore throat, Cough, Guillain-Barré Syndrome (GBS), Acute disseminated encephalomyelitis (ADEM), Transverse myelitis, Febrile convulsions, Afebrile convulsions or seizures, Pneumonia, Stevens-Johnson syndrome, Rhinitis (stuffy/runny nose), Acute hemorrhagic edema of infancy, Henoch-Schönlein purpura, Conjunctivitis (pink eye), Injection site reactions (pain, erythema, swelling and vesiculation). [11]

---

[10] Sanofi Pasteur 059 IPOL (Poliovirus) Manufacturer Insert, https://www.fda.gov/media/75695/download?attachment.

[11] M-M-R® II (Measles, Mumps, and Rubella Virus Vaccine Live) Manufacturer Insert, https://www.fda.gov/media/75191/download.

**E.     California's Mandatory School Vaccinations Lack Critical Safety Studies**

101.   Even more alarming is the fact that the vaccines required for school admissions lack critical safety information and studies. California's mandatory school vaccinations are not subject to the safety rigors undergone by other pharmaceuticals in the FDA approval process. These vaccinations undergo no large-scale, double-blind, placebo-controlled studies.

102.   Each vaccine on California's mandatory vaccination schedule has been tested in clinical trials against another vaccine (or vaccine-like compound) that has a similar scope of side effects. Not even one vaccine was tested against a true placebo, a neutral compound with no significant side effects.

103.   The clinical trials' designers use this technique to cover up the high rate of adverse events expected with each new vaccine. Thus, a new vaccine can be declared "safe" and its side effects proclaimed "normal," as the recorded side effects do not substantially exceed those of the other vaccine.



104.   The use of this intentionally flawed trial methodology means that every vaccine on the US childhood schedule received FDA approval without a true measurement of the actual magnitude of its adverse events.

105.   Additionally, most vaccine research focuses on the effects of a single vaccine, or the effects of vaccines routinely given in combination at a single visit. No research has been done on the overall schedule and the cumulative effects of vaccinations. The schedule is not re-evaluated when a new vaccine comes on the market or is added to the schedule. Factors like the age of a child at vaccination, the effects of multiple vaccinations on the body over a period of time, or the frequency and order in which vaccines are received have not been rigorously studied.

106.   This lack of scientific evidence makes it impossible to quantify the overall benefit (positive or negative) of the childhood vaccination program.

107.    Notably, under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to 300aa-34, vaccine manufacturers cannot be liable in a civil

action for damages arising from a vaccine-related injury or death. Vaccine manufacturers do not have liability for adverse reactions caused by their products.

108.   Instead, the federal government is liable for vaccine injuries and death through the National Vaccine Injury Compensation Program. 42 U.S.C. §§ § 300aa–10 to § 300aa–19.

109.   As of Fiscal Year 2023, over $5 billion dollars has been paid by the federal government (through your taxes) to victims of vaccine adverse reactions[12], meaning adverse reactions are known and occurring, despite being severely underreported.

## F.      SB 277 Is Not Congruent with California's Interest in Slowing the Spread of Disease and Increasing Herd Immunity

110.   California vaccination rates are high – higher than the national average for each disease listed on the CDC schedule.[13]

111.   Additionally, just prior to SB 277's passage, childhood vaccination rates were on the rise in California. Although PBEs were increasing from 2000 through 2012, vaccine rates increased 0.2% for Kindergarteners and 1.2% for seventh graders between the 2013/14 and 2014/15 school years, while PBEs were declining.[14]

---

[12] Health Resources and Services Administration, *Vaccine Injury Compensation Program Data and Statistics,* July 1, 2023, https://www.hrsa.gov/sites/default/files/hrsa/vicp/vicp-stats.pdf.

[13] *See* American Academy of Pediatrics, *Child Vaccination Across America*, available at: https://downloads.aap.org/AAP/Vaccine/index.html (accessed September 28, 2023).

[14] *See* California Department of Public Health Immunization Branch, *2014-2015 Kindergarten Immunization Assessment Results* at *1; *See* California Department of Public Health Immunization Branch, *2014-2015 7th Grade Immunization Assessment Results* at *1-2 both available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

112.   In 2015-2016, the year before SB 277 went into effect, California's seventh grade students were vaccinated at an overall rate of 97.8%. The percentage of students with PBEs this same year was 1.66%, while the percentage of students with medical exemptions was 0.14%.[15] For entering kindergarten students in the 2015-2016 school year, 92.9% had received all required vaccines. The percentage of kindergarten students with PBEs this same year was 2.38%, while the percentage of kindergarten students with medical exemptions was 0.17%.[16]

113.   Given that religious exemptions declined the year prior to when SB 277 went into effect, there is no evidence to suggest that religious exemptions would increase or increase more than medical exemptions.

114.   Indeed, since 2016, medical exemptions in California have increased rapidly.

115.   Vaccination rates for entering kindergarten students during the 2020-21 school year was 94%. The overwhelming majority of counties have vaccination rates above 90%.

116.   The social benefit attributed to vaccines is largely based on the notion of herd immunity. Herd immunity means that enough people in a group or area have achieved immunity (protection) against a virus or other infectious agent to make it very difficult for the infection to spread.

---

[15] *See* California Department of Public Health Immunization Branch, *2015-2016 7th Grade Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

[16] *See* California Department of Public Health Immunization Branch, *2015-2016 Kindergarten Immunization Assessment Results* at *1, available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/School/tk-12-reports.aspx# (accessed September 28, 2023).

117.   The herd immunity threshold range for most diseases, excluding measles, is 80% to 90%. If immunity is above the herd immunity threshold for a group of people, then an infectious disease might cause a few cases, but it will quickly stop spreading because enough people are protected.

118.   There is no evidence to suggest that students with PBEs who would be granted full access to traditional classroom settings pose a greater risk to students enrolled in a home-based private school or independent study program without classroom instruction.

119.   The evidence to date demonstrates that the overwhelming majority of students in public school are vaccinated. Allowing religious exemptions to the required vaccines would not drop the compliance rate below the herd immunity threshold.

120.   From an epidemiological standpoint, pooling unvaccinated students in a home-based private school or independent study program creates an equal, if not greater, risk of transmission than the small number of unvaccinated students pooled together with a majority of vaccinated students in public schools.

121.   Students enrolled in independent study programs are still free to participate in sports and extra-curricular activities with other students who attend their local school districts. Students sitting in a classroom setting pose no greater risk than students shouting, singing, or chanting in their local sports league or extra-curricular activity.

122.   Students enrolled in an independent study program or home-based private school are still able to gather and congregate with other students in the park, store, or church – settings that pose an equal risk as classroom settings.

123.   SB 277 is further irrational considering that many of the required vaccinations do not contribute to herd immunity, and those vaccinated against certain diseases, such as Measles, can still develop infections or can shed the virus to others after vaccination.

124.   For example, according to the CDC, "Some people who get two doses of MMR vaccine may still get measles, mumps, or rubella if they are exposed to the viruses that cause these diseases…..About 3 out of 100 people who get two doses of MMR vaccine will get measles if exposed to the virus….Two doses of MMR vaccine are 88% (range 32% to 95%) effective at preventing mumps. Mumps outbreaks can still occur in highly vaccinated U.S. communities, particularly in settings where people have close, prolonged contact, such as universities and close-knit communities."[17]

125.   Vaccinated individuals may also still contract and transmit the chickenpox. The CDC labels this "breakthrough chickenpox." According to the CDC, "some people who have been vaccinated against chickenpox can still get the disease…. But some vaccinated people who get chickenpox may have disease similar to unvaccinated people."[18]

126.   The DTap vaccination is a combination vaccine, used to protected against Diptheria, Tetanus, and Pertussis (whopping cough). Regarding pertussis, the manufacturer insert for the DTap vaccination admits that the vaccinations "role in either the pathogenesis of, or immunity to, pertussis has not been clearly defined."[19] If the role of immunity to Pertussis is not clearly defined, the manufacturer cannot know that the DTAP shot will provide protection to the patient.

---

[17] Center for Disease Control, *Measles, Mumps, and Rubella (MMR) Vaccination: What Everyone Should Know*, last updated January 26, 2021, https://www.cdc.gov/vaccines/vpd/mmr/public/index.html.

[18] Center for Disease Control, *Chickenpox Symptoms and Complications*, last updated May 10, 2024, https://www.cdc.gov/chickenpox/signs-symptoms/?CDC_AAref_Val=https://www.cdc.gov/chickenpox/about/symptoms.html.

[19] DAPTACEL (Diphtheria and Tetanus Toxoids and Acellular Pertussis Vaccine Adsorbed) Manufacturer Insert, https://www.fda.gov/media/74035/download.

127.  Notably, cutting-edge science indicates that the pertussis vaccine does not confer herd immunity.[20] A 2014 study concluded that even if a vaccinated individual does not come down with pertussis, the vaccinated can carry the bacterium and infect others for weeks after exposure (possibly even longer than the unvaccinated).[21] The study found that the current pertussis vaccine does not prevent infection or transmission of the bacterium, and therefore does not confer herd immunity.

128.  Regarding Diphtheria, the DTap vaccine works against the toxin, not the bacterium, and therefore does not prevent infection and transmission. There is no solid evidence for herd protection from Diphtheria.[22]

129.  Tetanus is similarly not person to person transmissible. Rather, the bacterium penetrates the human body through a wound and is not excreted from the body in a way that might normally lead to the infection of another person. The tetanus vaccine is not a barrier to infection with the bacterium and hence does not confer herd immunity.[23]

130.  The Hep B vaccination also does not substantially contribute to herd immunity. Unlike classic childhood diseases such as chickenpox, measles, or pertussis, transmission of hepatitis B does not occur in ordinary daily encounters. Rather, transmission occurs through sexual contact, the use of dirty hypodermic

---

[20] Warfel, Jason M et al. "Acellular pertussis vaccines protect against disease but fail to prevent infection and transmission in a nonhuman primate model." *Proceedings of the National Academy of Sciences of the United States of America* vol. 111,2 (2014): 787-92. doi:10.1073/pnas.1314688110

[21] Id.

[22] *See* Anonymous, Turtles All the Way Down: Vaccine Science and Myth, in HERD IMMUNITY, pgs. 327-334 (2022).

[23] *Id.* at pgs. 318-319.

needles (in medical procedures or narcotic drug injections), or a carrier mother giving birth.[24]

131. The prevalence of hepatitis B chronic carriers in Western countries is around 1% of the population or less. The 1% or less of children who are at risk of contracting the virus – that is, they live with chronic carriers – provide their family and contacts with herd protection. The vaccine protects them from infection and thus reduces the risk of viral spread. [25]

132. However, for the remaining 99% of children, who are not members of any risk group, any herd immunity provided by Hep B vaccine is irrelevant. These children already possess better herd protection than the vaccine can provide: They belong to a family with no carriers. The risk of hepatitis B infection for these children is close to zero.[26]

133. Additionally, many of the mandated vaccinations shed. According to the CDC, vaccine shedding is the release or discharge of any of the vaccine components in or outside of the body.[27] This most likely occurs when a vaccine contains a live weakened version of the virus.

134. The following mandated vaccinations contain live viruses: Measles, Mumps, Rubella (MMR) and Chickenpox (Varicella). This is why the CDC advises against vaccinations that could shed onto immunocompromised individuals.[28]

---

[24] *Id.* at pgs. 337-342.

[25] Id.

[26] Id.

[27] Center for Disease Control, *Myths and Facts About Covid-19 Vaccines*, https://www.cdc.gov/covid/vaccines/myths-facts.html?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html.

[28] Center for Disease Control, *Who Should NOT Get Vaccinated with these Vaccines?*, last updated April 2, 2020, https://www.cdc.gov/vaccines/vpd/should-not-vacc.html.

135.   For the MMR vaccine, studies have identified a potential shedding period of two weeks for vaccinated patients.[29] Additionally, a measles vaccine-type virus has been found in the throat of a child after vaccination, "showing that subcutaneous injection of an attenuated measles strain can result in respiratory excretion of the virus."[30] Accordingly, disease outbreaks can be causes by wild or vaccine strains.

136.   While the polio vaccine is not a live virus vaccine, the CDC states that individuals who receive the inactivated polio vaccine ("IPV") can "excrete virus in stools following exposure to wild or vaccine poliovirus."[31] The CDC further admits that "[t]he duration of [vaccine] immunity is not known with certainty…"[32]

137.   The World Health Organization further asserts that the polio vaccination is incapable of producing substantial herd immunity. A WHO official document states that the vaccine "induces only very low-level immunity to poliovirus inside the gut. As a result, it […] only marginally reduces the spread of wild poliovirus. In a person immunized with IPV, wild virus can still multiply inside the intestines and be shed in the stool. Because of this, IPV could not possibly be used to eradicate polio."[33]

---

[29] Rota, P A et al. "Detection of measles virus RNA in urine specimens from vaccine recipients." *Journal of clinical microbiology* vol. 33,9 (1995): 2485-8. doi:10.1128/jcm.33.9.2485-2488.1995.

[30] Morfin, Florence et al. "Detection of measles vaccine in the throat of a vaccinated child." *Vaccine* vol. 20,11-12 (2002): 1541-3. doi:10.1016/s0264-410x(01)00495-9.

[31] Center for Disease Control, *Chapter 18: Poliomyelitis*, https://www.cdc.gov/pinkbook/hcp/table-of-contents/chapter-18-poliomyelitis.html?CDC_AAref_Val=https://www.cdc.gov/vaccines/pubs/pinkbook/polio.html.

[32] Id.

[33] World Health Organization, *POLIO: The beginning of the end*, p. 20, May 1997, https://cdn.who.int/media/docs/default-source/biologicals/vaccine-quality/polio-the-beginning-of-the-end85aa6ead-a400-45ed-bd21-9508be9d0b6f.pdf?sfvrsn=c3220f24_1&download=true.

THIRD AMENDED COMPLAINT

138.   Of California's 5 mandated injections (17 total doses), only two confer any herd immunity benefit: MMR and Varicella (Chickenpox). Three vaccinations, Polio, DTap, and Hep B, have no impact on herd immunity.

139.   While research shows that the MMR vaccination and Varicella vaccination contribute to herd immunity, the CDC admits that vaccinated individuals can still contract and transmit measles, mumps, rubella, or the chickenpox if they are exposed to the viruses. The CDC further admits that mumps outbreaks in particular can still occur in highly vaccinated U.S. communities. Additionally, the MMR vaccine is known to shed for up to two weeks after vaccination.

140.   Nevertheless, the students who receive these vaccines are allowed to go home and congregate with unvaccinated family members or family members who no longer have immunity or have waning immunity.

141.   A significant number of individuals are also anergic to vaccines, meaning they can never mount antibodies no matter how protected they are by vaccines. Thus, there is no evidence to suggest that a ban on religious exemptions is justified considering a significant number of non-immune students are congregating with each other, including those who are anergic and those who no longer have immunity.

142.   Moreover, these exempt unvaccinated children, as well as foster youth, homeless students, migrants, and military families are still free to gather in other congregate settings like sports leagues, public extracurricular activities, and hours of services at churches and synagogues. These settings pose the same risk of transmission as classroom settings.

143.   The rolling admission of foster youth, homeless students, migrants, and military families pose a similar risk of spreading disease. The moment an unvaccinated student steps foot on campus, he or she presents the same health and safety risks as an unvaccinated religious student. There is no evidence to suggest

that an unvaccinated student is immune from contracting or spreading disease for ten days or thirty days.

144.   Indeed, if anything, children living in homeless circumstances or shelters are more likely to be exposed to the kinds of conditions that would spread disease than children living in stable homes.

145.   California has one of the highest rates of children in foster care than any other state.

146.   Homelessness and immigration have steadily increased in California over the past decade. The average rate of students experiencing homelessness in California is around 4%, with some regions like Monterey and Santa Barbara experiencing rates above 10%. Scientific studies have shown that migrant students and students experiencing homelessness or living in foster homes are at increased risk of spreading disease due to a multitude of factors, including lack of access to hygiene and healthcare facilities.

147.   Thus, migrant children, homeless children, and children living in foster homes are a greater contagion hazard than unvaccinated students with religious exemptions.

148.   Forty-five states and the District of Columbia currently offer religious exemptions from compulsory school vaccination laws.[34] California is one of only five states that does not offer a religious exemption from compulsory school vaccination laws.

---

[34] *See* National Conference of State Legislatures, *States With Religious and Philosophical Exemptions From School Immunization Requirements*, last updated August 3, 2023, https://www.ncsl.org/health/states-with-religious-and-philosophical-exemptions-from-school-immunization-requirements

## FIRST CAUSE OF ACTION

### Violation of the Free Exercise Clause of the

### First Amendment to the United States Constitution

### (42 U.S.C. § 1983)

149.   Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 148, as if fully set forth herein.

150.   The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."

151.   Plaintiffs' sincerely held religious beliefs prohibit them from vaccinating their minor children. SB 277 burdens Plaintiffs because it forces them to forego their religious beliefs to receive a public or private education.

152.   The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn*., 485 U. S. 439, 450 (1988). "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

153.   The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.

154.   Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct.  1294, 1296 (2021) (emphasis in original).

155.   Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious

THIRD AMENDED COMPLAINT

nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2023) (internal citations omitted).

156.   The State has taken the additional step to single out religious adherents for worse treatment by officially announcing that religious exemptions are categorically excluded from consideration. The Health Department's website states that it will consider medical exemptions, but not religious exemptions ("Starting in 2016, exemptions for religious or other personal beliefs are no longer an option for the vaccines that are currently required for entry into school or childcare in California.").[35]

157.   SB 277 is a demonstration of hostility towards religion, as evidenced by the comments of legislators diminishing the sincerely held religious beliefs of parents.

158.   Furthermore, a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877 (internal citations omitted).

159.   A student with an exemption for secular reasons poses a similar contagion hazard as a student with a hypothetical religious exemption.

160.   California does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.

161.   California's secular exemption system provides for individualized discretionary review. The Supreme Court recently reaffirmed that a policy that provides a "mechanism for individualized exemptions" is not generally applicable. *Id.*

_____

[35] *See* California Department of Public Health, *Personal Belief Exemptions FAQs*, last updated August 24, 2023, https://eziz.org/assets/docs/shotsforschool/PBEFAQs.pdf.

162.   California's secular exemption also allows for exemptions to individual vaccinations. Religious objectors are not permitted to individually object to any vaccination. Rather, religious objectors must receive all vaccinations on California's K-12 immunization schedule prior to school admission.

163.   In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason." *Id.* at 1872.

164.   Here, the California Department of Public Health's secular exemption process provides medical exemptions on an individualized basis, and the Department maintains the right to rescind exemptions in whole or in part based upon their discretionary review. Simultaneously, SB 277 requires the State to refuse to extend the possibility for an exemption to those with religious objections.

165.   Furthermore, the legislative scheme provides for numerous secular exemptions as articulated above in paragraphs 41 to 60, but excludes religious exemptions despite the fact that the granting of a religiously-based exemption as to one or more of the vaccinations would cause no greater risk of the spread of the listed childhood diseases than would the secular based exemptions.

166.   The scientific evidence surrounding vaccinations show that the State of California has no compelling government interest in mandating vaccinations without the opportunity for religious exemption. All of California's mandatory student vaccinations cause clinically significant adverse reactions. Additionally, many vaccinations contain harmful and morally objectionable ingredients, do not contribute to herd immunity, and lack critical safety studies.

167.   These practices are not generally applicable, and they must therefore survive strict scrutiny.

168.   SB 277 fails strict scrutiny because it is not narrowly tailored to meet any compelling government interest. SB 277 mandates vaccines that are not

necessary and are injurious to students. And the state cannot show that exempt students pose a greater risk than students with religious exemptions.

169. SB 277 is not narrowly tailored because students cannot object to vaccinations individually. Rather, the State takes an all or nothing approach, requiring students to receive all vaccines on the K-12 immunization schedule without exception.

170. SB 277 is not narrowly tailored because it could allow for exemptions from those diseases that are not transmissible like tetanus.

171. SB 277 is not narrowly tailored because California Code of Regulations § 6060(b) already provides the local health officer authority to exclude students from school: "Whenever the governing authority has good cause to believe that a pupil who is not completely immunized against a particular communicable disease may have been exposed to that disease, the governing authority shall immediately inform the local health officer. The local health officer shall determine whether the pupil is at risk of developing or transmitting the disease and, if so, may require the exclusion of the pupil from that school or pre-kindergarten facility until the completion of the incubation period or, if infection is suspected or occurs, until completion of the period in which the disease is communicable." Therefore, just like any student with a medical exemption, authorities can remove a student with a religious exemption to satisfy the governmental interests.

172. Even if rational basis applies to SB 277, it fails considering the lack of adequate safety studies, the known adverse reactions cause by vaccination, the harmful ingredients contained in vaccinations, and the State's all or nothing vaccination approach, which does not allow religious objectors to object to vaccinations collectively or individually despite known risks and despite the fact that some may have religious objections only to particular vaccines due to individualized factors.

173. As a direct and proximate result of Defendant's violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to attorneys' fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. A declaratory judgment that SB 277 is unconstitutional;

2. A declaratory judgment that SB 277's prohibition of allowing religiously based exemptions as to individual vaccinations is unconstitutional.

3. Temporary, preliminary, and permanent injunctive relief enjoining California Health and Safety Code §§ 120335, 120370 and any other state law or regulation prohibiting a religiously based objection to the state's vaccination mandate as referenced herein;

4. For costs, attorneys' fees, and interest, as allowed by law; and

5. For such other relief the Court determines is proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Respectfully submitted,

DATED: December 20, 2024     ADVOCATES FOR FAITH & FREEDOM

By: /s/ Robert H. Tyler
       Robert H. Tyler, Esq.

THIRD AMENDED COMPLAINT

EXHIBIT "A"

## Appendix B

## Vaccine Excipient Summary

### Excipients Included in U.S. Vaccines, by Vaccine

In addition to weakened or killed disease antigens (such as weakened, killed, or parts of viruses or bacteria), vaccines contain very small amounts of other ingredients – excipients.

Some excipients are added to a vaccine for a specific purpose. These include:

- **Preservatives**, to prevent contamination. For example, thimerosal.
- **Adjuvants**, to help stimulate a stronger immune response. For example, aluminum salts.
- **Stabilizers**, to keep the vaccine potent during transportation and storage. For example, sugars or gelatin.

Others are residual trace amounts of materials that were used during the manufacturing process and removed. These can include:

- **Cell culture materials**, used to grow the vaccine antigens. For example, egg protein, various culture media.
- **Inactivating ingredients**, used to kill viruses or inactivate toxins. For example, formaldehyde.
- **Antibiotics**, used to prevent contamination by bacteria. For example, neomycin.

The following table lists substances, other than active ingredients (i.e., antigens), shown in the manufacturers' package insert (PI) as being contained in the final formulation of each vaccine. **Substances used in the manufacture of a vaccine but not listed as contained in the final product (e.g., culture media) can be found in each PI, but are not shown on this table.** Each PI, which can be found on the FDA's website (see below) contains a description of that vaccine's manufacturing process, including the amount and purpose of each substance. In most PIs, this information is found in Section 11: "Description." Please refer to the PI for a complete list of ingredients or excipients. A table listing vaccine excipients and media by excipient is published by the Institute for Vaccine Safety at Johns Hopkins University, and can be found at http://www.vaccinesafety.edu/components-Excipients.htm.

**B**

# Appendix B

## Vaccine Excipient Table

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Adenovirus | 10/2019 | monosodium glutamate, sucrose, D-mannose, D-fructose, dextrose, human serum albumin, potassium phosphate, plasdone C, anhydrous lactose, microcrystalline cellulose, polacrilin potassium, magnesium stearate, cellulose acetate phthalate, alcohol, acetone, castor oil, FD&C Yellow #6 aluminum lake dye |
| Anthrax (Biothrax) | 11/2015 | aluminum hydroxide, sodium chloride, benzethonium chloride, formaldehyde |
| BCG (Tice) | 02/2009 | glycerin, asparagine, citric acid, potassium phosphate, magnesium sulfate, iron ammonium citrate, lactose |
| Cholera (Vaxchora) | 06/2016 | ascorbic acid, hydrolyzed casein, sodium chloride, sucrose, dried lactose, sodium bicarbonate, sodium carbonate |
| Dengue (Dengvaxia) | 06/2019 | sodium chloride, essential amino acids (including L-phenylalanine), non-essential amino acids, L-arginine hydrochloride, sucrose, D-trehalose dihydrate, D-sorbitol, trometamol, urea |
| DT (Sanofi) | 06/2018 | aluminum phosphate, isotonic sodium chloride, formaldehyde |
| DTaP (Daptacel) | 01/2021[b] | aluminum phosphate, formaldehyde, glutaraldehyde, 2-phenoxyethanol |
| DTaP (Infanrix) | 01/2021[b] | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 (Tween 80) |
| DTaP-IPV (Kinrix) | 01/2021[b] | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 (Tween 80), neomycin sulfate, polymyxin B |
| DTaP-IPV (Quadracel) | 02/2021 | formaldehyde, aluminum phosphate, 2-phenoxyethanol, polysorbate 80, glutaraldehyde, neomycin,  polymyxin B sulfate, bovine serum albumin |
| DTaP-HepB-IPV (Pediarix) | 01/2021[b] | formaldehyde, aluminum hydroxide, aluminum phosphate, sodium chloride, polysorbate 80 (Tween 80), neomycin sulfate, polymyxin B, yeast protein |
| DTaP-IPV/Hib (Pentacel) | 12/2019 | aluminum phosphate, polysorbate 80, sucrose, formaldehyde, glutaraldehyde, bovine serum albumin, 2-phenoxyethanol, neomycin, polymyxin B sulfate |
| DTaP-IPV-Hib-HepB (Vaxelis) | 10/2020 | polysorbate 80, formaldehyde, glutaraldehyde, bovine serum albumin, neomycin, streptomycin sulfate, polymyxin B sulfate, ammonium thiocyanate, yeast protein, aluminum |
| Ebola Zaire (ERVEBO) | 01/2021[b] | Tromethamine, rice-derived recombinant human serum albumin, host cell DNA, benzonase, rice protein |
| Hib (ActHIB) | 05/2019 | sodium chloride, formaldehyde, sucrose |
| Hib (Hiberix) | 04/2018 | formaldehyde, sodium chloride, lactose |
| Hib (PedvaxHIB) | 01/2021[b] | amorphous aluminum hydroxyphosphate sulfate, sodium chloride |
| Hep A (Havrix) | 01/2021[b] | MRC-5 cellular proteins, formalin, aluminum hydroxide, amino acid supplement, phosphate-buffered saline solution, polysorbate 20, neomycin sulfate, aminoglycoside antibiotic |
| Hep A (Vaqta) | 01/2021[b] | amorphous aluminum hydroxyphosphate sulfate, non-viral protein, DNA, bovine albumin, formaldehyde, neomycin, sodium borate, sodium chloride, other process chemical residuals |
| Hep B (Engerix-B) | 01/2021[b] | aluminum hydroxide, yeast protein, sodium chloride, disodium phosphate dihydrate, sodium dihydrogen phosphate dihydrate |
| Hep B (Recombivax) | 12/2018 | formaldehyde, potassium aluminum sulfate, amorphous aluminum hydroxyphosphate sulfate, yeast protein |
| Hep B (Heplisav-B) | 05/2020 | yeast protein, yeast DNA, deoxycholate, phosphorothioate linked oligodeoxynucleotide, sodium phosphate, dibasic dodecahydrate, sodium chloride, monobasic dehydrate, polysorbate 80 |
| Hep A/Hep B (Twinrix) | 01/2021[b] | MRC-5 cellular proteins, formalin, aluminum phosphate, aluminum hydroxide, amino acids, sodium chloride, phosphate buffer, polysorbate 20, neomycin sulfate, yeast protein |
| HPV (Gardasil 9) | 08/2020 | amorphous aluminum hydroxyphosphate sulfate, sodium chloride, L-histidine, polysorbate 80, sodium borate, yeast protein |

**B**

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Influenza (Afluria) Quadrivalent[c] | 03/2021 | sodium chloride, monobasic sodium phosphate, dibasic sodium phosphate, monobasic potassium phosphate, potassium chloride, calcium chloride, sodium taurodeoxycholate, ovalbumin, sucrose, neomycin sulfate, polymyxin B, beta-propiolactone, hydrocortisone, thimerosal (multi-dose vials) |
| Influenza (Fluad) Quadrivalent[c] | 03/2021 | squalene, polysorbate 80, sorbitan trioleate, sodium citrate dihydrate, citric acid monohydrate, neomycin, kanamycin, hydrocortisone, egg protein, formaldehyde |
| Influenza (Fluarix) Quadrivalent[c] | 2021 | octoxynol-10 (TRITON X-100), α-tocopheryl hydrogen succinate, polysorbate 80 (Tween 80), hydrocortisone, gentamicin sulfate, ovalbumin, formaldehyde, sodium deoxycholate, sodium phosphate-buffered isotonic sodium chloride |
| Influenza (Flublok) Quadrivalent[c] | 03/2021 | sodium chloride, monobasic sodium phosphate, dibasic sodium phosphate, polysorbate 20 (Tween 20), baculovirus and *Spodoptera frugiperda* cell proteins, baculovirus and cellular DNA, Triton X-100 |
| Influenza (Flucelvax) Quadrivalent[c] | 10/2021[b] | Madin Darby Canine Kidney (MDCK) cell protein, phosphate buffered saline, protein other than HA, MDCK cell DNA, polysorbate 80, cetyltrimethlyammonium bromide, and β-propiolactone, thimerosal (multi-dose vials) |
| Influenza (Flulaval) Quadrivalent[c] | 2021 | ovalbumin, formaldehyde, sodium deoxycholate, α-tocopheryl hydrogen succinate, polysorbate 80, phosphate-buffered saline solution |
| Influenza (Fluzone) Quadrivalent[c] | 2021 | formaldehyde, egg protein, octylphenol ethoxylate (Triton X-100), sodium phosphate-buffered isotonic sodium chloride solution, thimerosal (multi-dose vials) |
| Influenza (Fluzone) High Dose[c] | 07/2021 | egg protein, octylphenol ethoxylate (Triton X-100), sodium phosphate-buffered isotonic sodium chloride solution, formaldehyde |
| Influenza (FluMist) Quadrivalent[c] | 08/2021 | monosodium glutamate, hydrolyzed porcine gelatin, arginine, sucrose, dibasic potassium phosphate, monobasic potassium phosphate, ovalbumin, gentamicin sulfate, ethylenediaminetetraacetic acid (EDTA) |
| IPV (Ipol) | 01/2021[b] | calf bovine serum albumin, 2-phenoxyethanol, formaldehyde, neomycin, streptomycin, polymyxin B, M-199 medium |
| Japanese Encephalitis (Ixiaro) | 09/2018 | aluminum hydroxide, protamine sulfate, formaldehyde, bovine serum albumin, host cell DNA, sodium metabisulphite, host cell protein |
| MenACWY (Menactra) | 04/2018 | sodium phosphate buffered isotonic sodium chloride solution, formaldehyde, diphtheria toxoid protein carrier |
| MenACWY (MenQuadfi) | 01/2021[b] | sodium chloride, sodium acetate, formaldehyde |
| MenACWY (Menveo) | 07/2020 | formaldehyde, $CRM_{197}$ protein |
| MenB (Bexsero) | 01/2021[b] | aluminum hydroxide, sodium chloride, histidine, sucrose, kanamycin |
| MenB (Trumenba) | 2018 | polysorbate 80, aluminum phosphate, histidine buffered saline |
| MMR (MMR-II) | 12/2020 | sorbitol, sucrose, hydrolyzed gelatin, recombinant human albumin, neomycin, fetal bovine serum, WI-38 human diploid lung fibroblasts |
| MMRV (ProQuad) (Frozen: Recombinant Albumin) | 01/2021[b] | MRC-5 cells including DNA and protein, sucrose, hydrolyzed gelatin, sodium chloride, sorbitol, monosodium L-glutamate, sodium phosphate dibasic, recombinant human albumin, sodium bicarbonate, potassium phosphate monobasic, potassium chloride, potassium phosphate dibasic, neomycin, bovine calf serum, other buffer and media ingredients |
| PCV13 (Prevnar 13) | 08/2017 | $CRM_{197}$ carrier protein, polysorbate 80, succinate buffer, aluminum phosphate |
| PPSV-23 (Pneumovax) | 09/2020 | isotonic saline solution, phenol |
| Rabies (Imovax) | 10/2019 | human albumin, neomycin sulfate, phenol red, beta-propiolactone |
| Rabies (RabAvert) | 2018 | chicken protein, polygeline (processed bovine gelatin), human serum albumin, potassium glutamate, sodium EDTA, ovalbumin, neomycin, chlortetracycline, amphotericin B |
| Rotavirus (RotaTeq) | 01/2021[b] | sucrose, sodium citrate, sodium phosphate monobasic monohydrate, sodium hydroxide, polysorbate 80, cell culture media, fetal bovine serum |

**B**

# Appendix B

| Vaccine (Trade Name) | Package Insert Date | Contains[a] |
|---|---|---|
| Rotavirus (Rotarix) | 01/2021[b] | dextran, Dulbecco's Modified Eagle Medium (sodium chloride, potassium chloride, magnesium sulfate, ferric (III) nitrate, sodium phosphate, sodium pyruvate, D-glucose, concentrated vitamin solution, L-cystine, L-tyrosine, amino acids, L-glutamine, calcium chloride, sodium hydrogenocarbonate, and phenol red), sorbitol, sucrose, calcium carbonate, sterile water, xanthan [Porcine circovirus type 1 (PCV1) is present in Rotarix. PCV-1 is not known to cause disease in humans.] |
| Smallpox (Vaccinia) (ACAM2000) | 03/2018 | HEPES, 2% human serum albumin, 0.5 - 0.7% sodium chloride USP, 5% Mannitol USP, neomycin, polymyxin B, 50% Glycerin USP, 0.25% phenol USP |
| Td (Tenivac) | 11/2019 | aluminum phosphate, formaldehyde, sodium chloride |
| Td (TDVAX) | 09/2018 | aluminum phosphate, formaldehyde, thimerosal |
| Tdap (Adacel) | 12/2020 | aluminum phosphate, formaldehyde, 2-phenoxyethanol, glutaraldehyde |
| Tdap (Boostrix) | 09/2020 | formaldehyde, aluminum hydroxide, sodium chloride, polysorbate 80 |
| Typhoid (Typhim Vi) | 03/2020 | formaldehyde, phenol, polydimethylsiloxane, disodium phosphate, monosodium phosphate, sodium chloride |
| Typhoid (Vivotif Ty21a) | 9/2013 | sucrose, ascorbic acid, amino acids, lactose, magnesium stearate, gelatin |
| Varicella (Varivax) Frozen | 01/2021[b] | sucrose, hydrolyzed gelatin, sodium chloride, monosodium L-glutamate, sodium phosphate dibasic, potassium phosphate monobasic, potassium chloride, MRC-5 human diploid cells including DNA & protein, sodium phosphate monobasic, EDTA, neomycin, fetal bovine serum |
| Yellow Fever (YF-Vax) | 2/2019 | sorbitol, gelatin, sodium chloride |
| Zoster (Shingles) (Shingrix) | 01/2021[b] | sucrose, sodium chloride, dioleoyl phosphatidylcholine (DOPC), 3-*O*-desacl-4'monophosphoryl lipid A (MPL), QS-21 (a saponin purified from plant extract *Quillaja saponaria* Molina), potassium dihydrogen phosphate, cholesterol, sodium dihydrogen phosphate dihydrate, disodium phosphate anhydrous, dipotassium phosphate, polysorbate 80, host cell protein and DNA |

**Abbreviations:** DT = diphtheria and tetanus toxoids; DTaP = diphtheria and tetanus toxoids and acellular pertussis; Hep A = Hepatitis A; Hep B = Hepatitis B; Hib = *Haemophilus influenzae* type b; HPV = human papillomavirus; IPV = inactivated poliovirus; LAIV = live, attenuated influenza vaccine; MenACWY = quadrivalent meningococcal conjugate vaccine; MenB = serogroup B meningococcal vaccine; MMR = measles, mumps, and rubella; MMRV = measles, mumps, rubella, varicella; PCV13 = pneumococcal conjugate vaccine; PPSV23= pneumococcal polysaccharide vaccine; Td = tetanus and diphtheria toxoids; Tdap = tetanus toxoid, reduced diphtheria toxoid, and acellular pertussis.

[a]All information was extracted from manufacturers' package inserts. The date shown in the Date column of the table is the edition date of the PI in use in January 2021 by month and year. In some cases, only a year was printed on the PI. If in doubt about whether a PI has been updated since this table was prepared, check the FDA's website at:

http://www.fda.gov/BiologicsBloodVaccines/Vaccines/ApprovedProducts/ucm093833.htm

[b]The PI was not dated and this is the date the PI was reviewed for this table.

[c]All influenza vaccine in this table are 2021-22 northern hemisphere formulation.                    November 2021

**B**